1  SHEPPARD MULLIN RICHTER & HAMPTON LLP
   P. CRAIG CARDON, Cal. Bar No. 168646
2  DYLAN J. PRICE, Cal. Bar No. 258896
   BENJAMIN O. AIGBOBOH, Cal. Bar No. 268531
3  ERIC J. DIIULIO, Cal. Bar No. 301439
   Four Embarcadero Center, 17th Floor
4  San Francisco, California 94111-4109
   Telephone: 415.434.9100
5  Facsimile:  415.434.3947
   Email:    ccardon@sheppardmullin.com
6             dprice@sheppardmullin.com
              baigboboh@sheppardmullin.com
7             ediiulio@sheppardmullin.com

8  *Attorneys for Defendants*
   WILLIAMS-SONOMA, INC., WILLIAMS-SONOMA DTC,
9  INC., WILLIAMS-SONOMA ADVERTISING, INC.,
   WILLIAMS-SONOMA STORES, INC., POTTERY BARN,
10 INC., POTTERY BARN KIDS, INC., POTTERY BARN
   TEEN, INC., and WEST ELM, INC.

11

12                **UNITED STATES DISTRICT COURT**

13        **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| 14  WILLIAM RUSHING, Individually and on Behalf of all Others Similarly Situated, | Case No. 3:16-cv-01421-WHO |
| 15 | *Assigned to the Hon. William H. Orrick* |
| 16              Plaintiff, | **CLASS ACTION** |
| 17        v. | **DEFENDANTS':** |
| 18  WILLIAMS-SONOMA, INC., a Delaware corporation, d/b/a WILLIAMS-SONOMA and WILLIAMS-SONOMA HOME; WILLIAMS- | **(1)  NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS COMPLAINT; AND** |
| 19  SONOMA DTC, INC., a California corporation; WILLIAMS-SONOMA | |
| 20  ADVERTISING, INC., a California corporation; WILLIAMS-SONOMA | **(2)  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 21  STORES, INC., a California corporation; POTTERY BARN, INC., a California | |
| 22  corporation; POTTERY BARN KIDS, INC., a California corporation; POTTERY BARN | Hearing |
| 23  TEEN, INC., a California corporation also d/b/a PBTEEN and PB Dorm; WEST ELM, | Date:          June 8, 2016 Time:          2:00 p.m. Courtroom:   2 |
| 24  INC., a California corporation; and DOES 1-30, | |
| 25              Defendants. | Complaint Filed:  January 29, 2016 Action Removed: March 23, 2016 Trial Date:        None Set |
| 26 | |

27

28

1  **TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF**

2  **RECORD:**

3      **PLEASE TAKE NOTICE** that on June 8, 2016 at 10:00 a.m., or as soon thereafter as

4  counsel may be heard, in Courtroom 2 on the 17th floor of the United States District Court for the

5  Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San

6  Francisco, California 94102, the Honorable William H. Orrick presiding, Defendants Williams-

7  Sonoma, Inc., Williams-Sonoma DTC, Inc., Williams-Sonoma Advertising, Inc., Williams-

8  Sonoma Stores, Inc., Pottery Barn, Inc., Pottery Barn Kids, Inc., Pottery Barn Teen, Inc., and West

9  Elm, Inc. (collectively "**Defendants**") will and hereby do move the Court, pursuant to Federal

10 Rule of Civil Procedure 12(b)(6), for an order dismissing the First Amended Class Action

11 Complaint (the "**FAC**") filed by Plaintiff William Rushing ("**Plaintiff**") for failure to state facts

12 sufficient to constitute a cause of action.

13     Defendants' motion to dismiss (the "**Motion**") is made on the following grounds.  First,

14 Plaintiff lacks standing to pursue claims for violations of California's Unfair Competition Law

15 ("**UCL**") and False Advertising ("**FAL**"), for breach of express warranty and implied warranty of

16 merchantability, or for unjust enrichment based on advertising statements he did not see, and

17 products he did not purchase.  Plaintiff alleges that he viewed a *single* advertisement and

18 purchased a *single* product from Defendant Williams-Sonoma Inc.'s Williams-Sonoma Home

19 brand.  This does not confer standing to pursue claims arising from advertising and sale of *all*

20 bedding by *all* Defendants.  Second, with regard to the actual advertisement that Plaintiff viewed

21 and product he purchased, Plaintiff's:  (1) FAL claims fail because the alleged false or misleading

22 statement complies with applicable law and is not false or misleading; (2) UCL claims fail because

23 Plaintiff has not adequately alleged any unlawful, unfair, or fraudulent conduct; (3) breach of

24 warranty claims fail because Plaintiff has not alleged pre-suit notice or any actual breach; and (4)

25 unjust enrichment claims fail because unjust enrichment is not a cognizable claim in California

26 and, even if it were, it is duplicative of Plaintiff's other claims, and Plaintiff has not alleged any

27 unjust benefit to Defendants.

28

1    This Motion is based on this Notice, the accompanying Memorandum of Points and

2    Authorities, all pleadings, papers and other documentary materials in the Court's file for this

3    action, those matters of which this Court may or must take judicial notice, and such other matters

4    as the Court may consider.

5    Dated:  April 20, 2016             SHEPPARD MULLIN RICHTER & HAMPTON LLP

6

7                                        By _____
                                                    /s/ Benjamin O. Aigboboh
                                                    P. CRAIG CARDON
8                                                   DYLAN J. PRICE
                                                    BENJAMIN O. AIGBOBOH
9                                                   ERIC J. DIIULIO

10
                                                *Attorneys for Defendants*
11                                       WILLIAMS-SONOMA, INC., WILLIAMS-
                                         SONOMA DTC, INC., WILLIAMS-SONOMA
12                                       ADVERTISING, INC., WILLIAMS-SONOMA
                                         STORES, INC. POTTERY BARN, INC., POTTERY
13                                       BARN KIDS, INC., POTTERY BARN TEEN, INC.,
                                         and WEST ELM, INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................ 1

II.    ALLEGATIONS IN THE FAC ......................................................................... 2

       A.    The Parties ............................................................................................. 2

             1.    Plaintiff ...................................................................................... 2

             2.    Defendants ................................................................................. 2

       B.    Plaintiff's Alleged Purchase ................................................................ 3

       C.    Allegations Regarding Products Other Than The WSH Signature Bedding ........... 4

       D.    Plaintiff's Claims ................................................................................. 4

III.   STANDARDS APPLICABLE TO THE MOTION TO DISMISS ("MOTION") ............... 5

IV.    PLAINTIFF LACKS STANDING TO PURSUE CLAIMS OTHER THAN
       THOSE RELATED TO THE WSH SIGNATURE BEDDING .......................................... 5

V.     PLAINTIFF'S FAL CLAIMS BASED ON ADVERTISING OF THE WSH
       SIGNATURE BEDDING FAIL .......................................................................... 7

       A.    Plaintiff's FAL Claims Based On "Thread Count" Fail ......................... 9

             1.    Advertising Of The WSH Signature Bedding's "Thread Count"
                   Complies With Applicable Law .............................................. 9

             2.    Plaintiff Has Not Alleged An FAL Claim Based On Advertising Of
                   The WSH Signature Bedding's "Thread Count" With Sufficient
                   Particularity ............................................................................ 10

       B.    Plaintiff's FAL Claims Based On "Origin," "Yarn Quality" Or "Quality" Of
             The WSH Signature Bedding Fail ....................................................... 11

             1.    Plaintiff Has Not Alleged That Advertising Of The "Origin" Or
                   "Yarn Quality" Of The WSH Bedding Was Untrue Or Misleading .......... 11

             2.    Plaintiff's FAL Claims Regarding "Quality" Of The WSH Signature
                   Bedding Cannot Be Based On Mere "Puffery" ................................ 12

VI.    PLAINTIFF'S UCL CLAIMS FAIL ................................................................ 12

       A.    Plaintiff Has Not Alleged A Claim Under The Unlawful Prong Of The UCL ....... 12

       B.    Plaintiff Has Not Alleged A Claim Under The Unfair Prong Of The UCL ........... 14

       C.    Plaintiff Has Not Alleged A Claim Under The Fraudulent Prong Of The
             UCL ....................................................................................................... 15

VII.    PLAINTIFF'S WARRANTY CLAIMS FAIL ................................................................ 16

    A.    The FAC Does Not Allege Pre-Suit Notice ............................................................ 16

    B.    The FAC Does Not Allege A Breach Of Express Warranty ................................... 17

    C.    The FAC Does Not Allege A Breach Of The Implied Warranty Of
    Merchantability ..................................................................................................... 18

VIII.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS ............................................. 18

IX.     CONCLUSION ............................................................................................................. 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Cases</u>

4
*Alvarez v. Chevron Corp.*
    656 F.3d 925 (9th Cir. 2011)..............................................................9, 17, 18

5

6
*Anderson v. Clow*
    89 F.3d 1399 (9th Cir. 1996) ...................................................................5

7
*Andrade v. Pangborn Corp.*
    2004 U.S. Dist. LEXIS 22704 (N.D. Cal. Oct. 22, 2004) ........................17

8

9
*Arevalo v. Bank of Am. Corp.*
    850 F. Supp. 2d 1008 (N.D. Cal. 2011) ...................................................19

10
*Arroyo v. TP-Link USA Corp.*

11
    2015 U.S. Dist. LEXIS 133473 (N.D. Cal. Sept. 29, 2015)...................6, 7

12
*Ashcroft v. Iqbal*
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 26 868 (2009) ...................5, 20

13

14
*Baltazar v. Apple, Inc.*
    2011 U.S. Dist. LEXIS 13187 (N.D. Cal. Feb. 10, 2011)...................17, 18

15

16
*Bell Atl. Corp. v. Twombly*
    550 U.S. 544, 127, S. Ct. 1955, 167 L. Ed. 929 (2007) .......................5, 20

17
*Birdsong v. Apple, Inc.*
    590 F.3d 955 (9th Cir. 2009)...................................................................19

18

19
*Brothers v. Hewlett-Packard Co.*
    2006 U.S. Dist. LEXIS 82027 (N.D. Cal. Oct. 31, 2006) ........................5

20
*Carrea v. Dreyer's Grand Ice Cream, Inc.*

21
    2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10, 2011) ..........................6

22
*Cel-Tech Comms., Inc. v. L.A. Cellular Tell. Co.*
    20 Cal. 4th 163 (1999)........................................................................10, 13

23

24
*Churchill Village, LLC. v. General Electric Co.*
    169 F. Supp. 2d 1119 (N.D. Cal. 2000) ...................................................15

25
*Davis v. HSBC Bank*

26
    691 F.3d 1152 (9th Cir. 2012)...........................................................8, 9, 15

27
*Farmers Ins. Exchange v. Sup. Ct.*
    2 Cal. 4th 377 (1992)...............................................................................13

28

SMRH:476003018.12
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS COMPLAINT

*Fazio v. Apple, Inc.*
  2016 U.S. App. LEXIS 3373 (9th Cir. Feb. 25, 2016) ....................................8, 11, 13

*Granfield v. Nvidia Corp.*
  2012 U.S. Dist. LEXIS 98678 (N.D. Cal. 2012) ...........................................6, 7

*Guttmann v. La Tapatia Tortilleria, Inc.*
  2015 U.S. Dist. LEXIS 156800 (N.D. Cal. Nov. 18, 2015) .......................................5

*Hodsdon v. Mars, Inc.*
  2016 U.S. Dist. LEXIS 19268 (N.D. Cal. Feb. 17, 2016) ....................................14, 15

*In re iPhone 4s Consumer Litig.*
  2013 U.S. Dist. LEXIS 103058 (N.D. Cal. Jul. 23, 2013) .......................................12

*Johns v. Bayer Corp.*
  2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010) .......................................6, 7

*Khoury v. Maly's of Cal., Inc.*
  14 Cal. App. 4th 612 (1993) ...............................................................13

*Lectrodryer v. Seoulbank*
  77 Cal. App. 4th 723 (2000) ................................................................6

*Leonhart v. Nature's Path Foods, Inc.*
  2014 U.S. Dist. LEXIS 46413 (N.D. Cal. Mar. 31, 2014) ......................................6, 7

*Mee v. I A Nutrition, Inc.*
  2015 U.S. Dist. LEXIS 106934 (N.D. Cal. Aug. 13, 2015) ....................................8, 12

*Merritt v. Countrywide Fin. Corp.*
  2014 U.S. Dist. LEXIS 142842 (N.D. Cal. Oct. 7, 2014) .........................................5

*Morgan v. AT&T Wireless Servs., Inc.*
  177 Cal. App. 4th 1235 (2009) .............................................................15

*Moroney v. Am. Int'l Group (In re Bacon)*
  415 F. Supp. 2d 1027 (N.D. Cal. 2006) ......................................................13

*Nguyen v. Wells Fargo Bank N.A.*
  2015 U.S. Dist. LEXIS 100851 (C.D. Cal. Feb. 18, 2015) ......................................19

*Parent v. MillerCoors LLC*
  2015 U.S. Dist. LEXIS 145071 (S.D. Cal. Oct. 26, 2015) ........................................9

*POM Wonderful LLC v. Coca Cola Co.*
  2013 U.S. Dist. LEXIS 33501 (C.D. Cal. Feb. 13, 2013) .........................................9

*S. Cal. Stroke Rehab. Assocs. v. Nautilus, Inc.*
  2012 U.S. Dist. LEXIS 135521 (S.D. Cal. Sept. 21, 2012) ......................................17

*T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*
    83 F. Supp. 3d 855, 875-876 (N.D. Cal. 2015) ...................................................18, 19

*Videtto v. Kellogg USA*
    2009 U.S. Dist. LEXIS 43114 (E.D. Cal. May 20, 2009) .........................................15

*Viggiano v. Hansen Natural Corp.*
    944 F. Supp. 2d 877 (C.D. Cal. 2013)..................................................................18

*Werbel ex rel v. Pepsico, Inc.*,
    2010 U.S. Dist. LEXIS 76289, *8 (N.D. Cal. Jul. 2, 2010) .....................................15

*Western Mining Council v. Watt*
    643 F.2d 618 (9th Cir. 1981)...........................................................................5, 15

**<u>Statutes</u>**

Cal. Comm. Code § 2313(1)(b)...............................................................................18

Cal. Comm. Code § 2607(3)(a)...............................................................................17

**<u>Other Authorities</u>**

16 C.F.R. §§ 1.1 *et seq.* ....................................................................................13

19 C.F.R § 141.0 ..............................................................................................10

19 C.F.R § 141.81 ............................................................................................10

19 C.F.R § 141.83(c)(1) .....................................................................................10

19 C.F.R § 141.89 ............................................................................................10

19 C.F.R § 141.89(a) .........................................................................................10

Fed. R. Civ. P. 9(b)...............................................................................8, 11, 12, 13

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

Plaintiff William Rushing ("**Plaintiff**") spends 40 pages and 160 paragraphs to make what is a simple claim—that Defendants[1] marketed sheets and a pillowcase set that Plaintiff purchased as having qualities that Plaintiff alleges they do not have.  Based on Plaintiff's online purchase of a set of Williams-Sonoma Home "Signature" sheets and an extra set of "Signature" pillow cases, Plaintiff attempts to state claims against each and every brand and/or subsidiary owned and operated by Defendant Williams-Sonoma, Inc. for each brand's and/or subsidiary's sale of *all* "bedding" over the last four years.  Plaintiff, however, has failed to state a claim against any of the Defendants, and the First Amended Class Action Complaint ("**FAC**") should be dismissed.

As an initial matter, Plaintiff lacks standing to pursue claims for violation of California's False Advertising Law, codified at Cal. Bus. & Prof. Code § 17500 *et seq*. (the "**FAL**"), violation of California's Unfair Competition Law, codified at Cal. Bus. & Prof. Code § 17200 *et seq*. (the "**UCL**"), breach of express warranty, breach of implied warranty of merchantability, and unjust enrichment based on advertising that Plaintiff did not view, or products that Plaintiff did not purchase because Plaintiff cannot establish any injury arising from such advertising or products.  Thus, Plaintiff's claims arising from bedding other than the Williams-Sonoma Home "Signature" sheets and pillow cases he purchased fail.  Furthermore, because Plaintiff does not allege that Defendants WSS, Pottery Barn, PBKids, PBteen, or West Elm sold or marketed the Williams-Sonoma Home "Signature" sheets and pillow cases he purchased, all claims against them fail, and they should be dismissed.

Plaintiff also cannot state any claims based on the Williams-Sonoma Home "Signature" sheets and pillow cases he purchased.  First, Plaintiff's FAL claims fail because WSI's, WSDTC's, and WSA's purported advertising of the Williams-Sonoma Home "Signature" sheets and pillow cases as "600-thread-count two ply" complies with federal regulations that require

---

[1]  Williams-Sonoma, Inc. ("**WSI**"), Williams-Sonoma DTC, Inc. ("**WSDTC**"), Williams-Sonoma Advertising Inc. ("**WSA**"), Williams-Sonoma Stores, Inc. ("**WSS**"), Pottery Barn, Inc. ("**Pottery Barn**"), Pottery Barn Kids, Inc. ("**PBKids**"), Pottery Barn Teen, Inc. ("**PBteen**"), and West Elm, Inc. ("**West Elm**") are referred to herein collectively as "**Defendants**."

individual threads within multi-ply yarns to be counted individually.  Further, these statements are neither untrue nor misleading as they clearly identify that the sheets and pillow cases Plaintiff purchased are "two ply."  Plaintiff's other FAL allegations related to the bedding he purchased—that they are not actually from Italy and are not Egyptian cotton—are not supported by any facts.  Second, Plaintiff's UCL claim fails because he has not alleged any unlawful, fraudulent, or unfair conduct by WSI, WSDTC, or WSA.  The alleged advertising statements comply with applicable law and are not false or misleading.  Third, Plaintiff's warranty claims fail because Plaintiff has not alleged any pre-suit notice or any actual breach.  Finally, Plaintiff's unjust enrichment claim fails because it is not a cognizable claim in California and—even if it is treated as one—it is duplicative of Plaintiff's other claims, and unavailing because Plaintiff has not alleged that Defendants unjustly retained a benefit conferred upon them by Plaintiff.

## II.      ALLEGATIONS IN THE FAC

### A.      The Parties

#### 1.      Plaintiff

Plaintiff is a citizen and resident of Kentucky.  (FAC ¶ 15.)

#### 2.      Defendants

Plaintiff alleges that:  (1) Defendant WSI sells home furnishings through retail stores, catalogs and e-commerce, and owns and operates several brands, *inter alia*, Williams-Sonoma, which Plaintiff alleges sells cookware and related items, and Williams-Sonoma Home, which Plaintiff alleges WSI opened in 2005 as its upscale furniture and home furnishings division; (2) Defendant WSDTC is a wholly-owned subsidiary of WSI, and manages WSI's online and catalog sales; (3) Defendant WSA is a wholly-owned subsidiary of WSI, and is responsible for advertising WSI's products; (4) Defendant WSS is a wholly-owned subsidiary of WSI, and is responsible for operating WSI's brick-and-mortar stores; (5) Defendant Pottery Barn is a wholly-owned subsidiary of WSI, and sells furniture and home furnishings through retail stores, Pottery Barn catalogs, and Pottery Barn's e-commerce website available at www.potterybarn.com; (6) Defendant PBKids is a wholly-owned subsidiary of WSI, and sells furniture and home furnishings through retail stores, Pottery Barn catalogs, and Pottery Barn's e-commerce website; (7)

1  Defendant PBteen is a wholly-owned subsidiary of WSI, and sells furniture and home furnishings

2  through retail stores, Pottery Barn catalogs, and Pottery Barn's e-commerce website; and (8)

3  Defendant West Elm is a wholly-owned subsidiary of WSI, and sells furniture and home

4  furnishings through its retail stores, catalogs, and e-commerce website.  (FAC ¶¶ 16-25.)

5       **B.       Plaintiff's Alleged Purchase**

6       Plaintiff alleges that, in early 2015, he wanted to purchase a set of sheets and pillowcases

7  for his wife for Valentine's Day.  (FAC ¶ 117.)  Plaintiff had "purchased other items from

8  Williams-Sonoma and was aware that it would be more expensive than buying from other

9  retailers," but believed it would be worth the expense to provide his wife "soft, luxurious, high-

10 quality sheets" to mark the special occasion.  (*Id.*)

11      On or about February 10, 2015, Plaintiff purchased Williams-Sonoma Home-branded

12 "Signature 600-Thread-Count Sateen Bedding" and a set of matching pillowcases (collectively,

13 the "**WSH Signature Bedding**") from the Williams-Sonoma Home website.  (FAC ¶¶ 118-119.)

14 Plaintiff made his purchase through the Williams-Sonoma Home website because "Williams-

15 Sonoma Home products are not sold in [his] home state" of Kentucky  (*Id.* ¶ 119.)  As a result,

16 Plaintiff relied solely on the representations about the WSH Signature Bedding on the Williams-

17 Sonoma Home website when making his purchase decision.  (*Id.*)

18      Plaintiff chose the WSH Signature Bedding because the Williams-Sonoma Home "website

19 advertised [it] as being 600 thread count, made in Italy, made of Egyptian cotton, and the retailer's

20 'Signature' line."  (FAC ¶ 118.)  Plaintiff alleges that the product listing for the WSH Signature

21 Bedding described it as "[s]ewn from lustrous 600-thread-court two ply Egyptian-cotton sateen"

22 and "Italian bedding."  (*Id.* ¶ 120.)  The final cost for the WSH Signature Bedding was $774.20.

23 (*Id.* ¶ 122.)

24      Plaintiff alleges that, when he received the WSH Signature Bedding, it was not "of high

25 quality, extremely soft [or] luxurious."  (FAC ¶ 125.)  Plaintiff therefore decided not to give the

26 WSH Signature Bedding to his wife for Valentine's Day.  (*Id.*)  Plaintiff does not allege what he

27 did with the WSH Signature Bedding or if he attempted to return it.

28

Plaintiff alleges that "testing that complies with the ASTM International Standard Designation D3775-12" reveals that the WSH Signature Bedding "is not 600 thread count, but merely 291." (FAC ¶ 52.) Plaintiff contends that the WSH Signature Bedding is not 600 thread count because "WSI improperly counted the two plies of the thread in calculating the thread count…." (FAC ¶ 55.) Plaintiff alleges that he recently learned the WSH Signature Bedding "was only approximately 291 thread count and that it was overpriced," and that, "[b]ecause of the falsely stated thread count, he also doubts with [*sic*] the sheets are actually Egyptian cotton or made in Italy…." (*Id.*)

**C.    Allegations Regarding Products Other Than The WSH Signature Bedding**

The FAC is not limited to the WSH Signature Bedding actually purchased by Plaintiff through the Williams-Sonoma Home website. The FAC also includes the following allegations about specific products offered by Defendants, but which were not purchased by Plaintiff: (1) Pottery Barn's "700 THREAD-COUNT SHEET SET" ("**Pottery Barn Sheet Set**"), which Plaintiff alleges is marketed as "1 PLY," is "made of single ply thread," and has "a thread count of approximately 570"; (2) PBteen's "400 Thread-Count Sheet Set" ("**PBteen Sheet Set**"), which Defendants "did not market…as being more than one-ply," is "made of a single ply thread," and has "a thread count of approximately 208"; and (3) West Elm's "350 Thread Count Organic Cotton Sateen Sheet Set" ("**West Elm Sheet Set**"), which Plaintiff alleges "has a thread count of approximately 320." (FAC ¶¶ 60, 63, 66.)

**D.    Plaintiff's Claims**

Based on the allegations in the FAC, Plaintiff has asserted claims for (1) "Misleading and Deceptive Advertising" under Cal. Bus. & Prof. Code § 17500; (2) "Untrue Advertising" under Cal. Bus. & Prof. Code § 17500; (3) "Unlawful Business Practices" under Cal. Bus. & Prof. Code § 17200; (4) "Unfair Business Practices" under Cal. Bus. & Prof. Code § 17200; (5) "Fraudulent Business Practices" under Cal. Bus. & Prof. Code § 17200; (6) "Breach of Express Warranty" under U.C.C. Article 2; 76) "Breach of Implied Warranty of Merchantability" under U.C.C. Article 2; and (8) "Unjust Enrichment." (FAC ¶¶ 128-183.)

## III.   STANDARDS APPLICABLE TO THE MOTION TO DISMISS ("MOTION")

A motion to dismiss should be granted when the complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127, S. Ct. 1955, 1973, 167 L. Ed. 929, 949 (2007).  The complaint must plead sufficient facts from which a court could "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 26 868, 884 (2009).

Although courts draw reasonable inferences in favor of the non-moving party in ruling on a motion to dismiss, a valid legal theory must exist to save a claim from dismissal.  *Anderson v. Clow*, 89 F.3d 1399, 1403 (9th Cir. 1996).  Courts not need "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Complaints that demonstrate "an obvious alternative explanation of legality" do not plausibly establish a claim to relief.  *Iqbal*, 556 U.S. at 682.

## IV.   PLAINTIFF LACKS STANDING TO PURSUE CLAIMS OTHER THAN THOSE RELATED TO THE WSH SIGNATURE BEDDING

In order to have standing under the FAL, which prohibits false or mislead advertising, a plaintiff must plead that he or she "suffered injury in fact and lost money or property" as a result of the allegedly misleading or untrue advertising.  *Merritt v. Countrywide Fin. Corp.*, 2014 U.S. Dist. LEXIS 142842, at *10 (N.D. Cal. Oct. 7, 2014) (quoting Cal. Bus. & Prof. Code § 17204).  Similarly, standing under the UCL, which prohibits unlawful, fraudulent, and unfair business practices, requires that plaintiffs "allege facts showing that they lost money or property as a result of Defendants' alleged unlawful, unfair, or fraudulent acts."  *Id*. at *11.  A plaintiff seeking to pursue claims for breach of express warranty or implied warranty of merchantability must establish an injury-in-fact arising from the warranty for the particular product.  *See*, *e.g.*, *Guttmann v. La Tapatia Tortilleria, Inc.*, 2015 U.S. Dist. LEXIS 156800, at **10-11 (N.D. Cal. Nov. 18, 2015); *Brothers v. Hewlett-Packard Co.*, 2006 U.S. Dist. LEXIS 82027, at **9-10 (N.D. Cal. Oct. 31, 2006).  Finally, to the extent unjust enrichment is even a cognizable claim in California (it is not, as is discussed below), a plaintiff must show that he or she was injured by conferring a benefit

1    upon defendant which defendant unjustly retained at plaintiff's expense.  *Lectrodryer v.*

2    *Seoulbank*, 77 Cal. App. 4th 723, 727 (2000).

3        Plaintiff cannot establish standing for claims based on products he did not purchase.

4    Plaintiff purchased the WSH Signature Bedding.  (FAC ¶¶ 118-120.)  Plaintiff, however, seeks to

5    pursue claims for "all bedding" sold by Defendants including, but not limited to, the Pottery Barn

6    Sheet Set, the PBteen Sheet Set, and the West Elm Sheet Set.  (*Id.* ¶¶ 60, 63, 66, 96.)  Plaintiff did

7    not purchase these products, and lacks standing to pursue claims based on them because he cannot

8    establish any injury related to them.  *See, e.g.*, *Arroyo v. TP-Link USA Corp.*, 2015 U.S. Dist.

9    LEXIS 133473, at **9-11 (N.D. Cal. Sept. 29, 2015) (dismissing UCL and FAL claims because

10   plaintiff did not have "standing for products the Plaintiff did not purchase…."); *Leonhart v.*

11   *Nature's Path Foods, Inc.*, 2014 U.S. Dist. LEXIS 46413, at **14-15 (N.D. Cal. Mar. 31, 2014)

12   (dismissing UCL and FAL claims because plaintiff lacked standing to "assert[] claims

13   regarding…products she did not buy.").[2]

14       Similarly, Plaintiff cannot pursue claims based on advertising he did not see.  Plaintiff

15   alleges that he viewed the listing for the WSH Signature Bedding on the Williams-Sonoma Home

16   website.  (FAC ¶¶ 118-121.)  Plaintiff, however, asserts claims based on "descriptions of

17   [Defendants] offerings" via "the Internet, catalogs, and showrooms, marketing and promotional

18   materials…."  (*Id.* ¶ 130.)  Plaintiff does not allege that he viewed any advertising in catalogs or

19   showrooms, saw any Internet advertising—other than the product listing for the WSH Signature

20   Bedding—or viewed any other marketing or promotional materials.  In fact, Plaintiff admits that

21   "[a]s Williams-Sonoma Home products are not sold in Mr. Rushing's home state, he had to rely

22   on WSI and its Advertising and Marketing Subsidiaries' representations about the product on

23   _____

24   [2]  *See also Granfield v. Nvidia Corp.*, 2012 U.S. Dist. LEXIS 98678, at **18-19 (N.D. Cal. 2012)
     (striking allegations related to products that plaintiff did not purchase because "a plaintiff has
     standing to assert injury based on a defective product or false advertising only if the plaintiff
25   experienced injury stemming from the purchase of that product."); *Carrea v. Dreyer's Grand Ice
     Cream, Inc.*, 2011 U.S. Dist. LEXIS 6371, at **7-8 (N.D. Cal. Jan. 10, 2011) ("Plaintiff has not,
26   however, alleged that he purchased Defendant's Dibs products or otherwise suffered any injury or
     lost money or property with respect to those products.  Any claims as to the Dibs products are
27   therefore dismissed without prejudice for lack of standing."); *Johns v. Bayer Corp.*, 2010 U.S.
     Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010) (no standing because a plaintiff "cannot
28   expand the scope of his claims to include a product he did not purchase….").

WSI's website." (*Id.* ¶ 119.) Plaintiff lacks standing to pursue claims for any advertising statements other than those he allegedly encountered on the Williams-Sonoma Home website.[3] *See*, *e.g.*, *Arroyo*, 2015 U.S. Dist. LEXIS 133473, at **9-11 (dismissing UCL and FAL claims because plaintiff did not have "standing for…marketing material he did not view."); *Leonhart*, 2014 U.S. Dist. LEXIS 46413, at **14-15 (dismissing UCL and FAL claims because plaintiff lacked standing to "assert[] claims regarding statements she never saw….").[4]

Finally, Plaintiff lacks standing to pursue claims against Defendants that did not sell or advertise the WSH Signature Bedding. Plaintiff alleges that he purchased the WSH Signature Bedding from WSI. (FAC ¶¶ 117-127.) Plaintiff alleges that he "had to rely on WSI and its Advertising and Marketing Subsidiaries' representations" about the WSH Signature Bedding in the product listing on the Williams-Sonoma Home website. (FAC ¶ 119.)[5] Plaintiff cannot pursue claims against WSS, which "is in the business of managing WSI's brick-and-mortar stores," (FAC ¶ 21), stores that Plaintiff never visited (*id.* ¶ 119), and Pottery Barn, PBKids, PBteen, and West Elm because Plaintiff did not view any of their advertising or purchase any of their products. All claims against WSS, Pottery Barn, PBKids, PBteen, and West Elm must be dismissed.

## V.   PLAINTIFF'S FAL CLAIMS BASED ON ADVERTISING OF THE WSH SIGNATURE BEDDING FAIL

The FAL "makes it unlawful for any person to 'induce the public to enter into any obligation' based on a statement that is 'untrue or misleading, and which is known, or which by

---

[3]   Additionally, the alleged misrepresentations related to the products that Plaintiff did not purchase—the Pottery Barn Sheet Set, the PBteen Sheet Set, and the West Elm Sheet Set—are different than the alleged misrepresentation about the WSH Signature Bedding. Specifically, Plaintiff alleges that the Pottery Barn Sheet Set, the PBteen Sheet Set, and the West Elm Sheet Set were marketed as one-ply, but that the one-ply thread counts were incorrect. (FAC ¶¶ 60, 63, 66.). These alleged misrepresentations are different in nature than the alleged misrepresentations about the WSH Signature Bedding, which was allegedly marketed as "[s]ewn from lustrous 600-thread-count two ply Egyptian-cotton sateen" (*id.* ¶¶ 118-120), which Plaintiff contends was based on Defendants' alleged "multipli[cation] of the true thread count of 291 by the number of plies, here two, to get to the advertised 600 thread counts" (*id.* ¶ 3).

[4]   *See also Granfield*, 2012 U.S. Dist. LEXIS 98678, at **18-19; *Johns*, 2010 U.S. Dist. LEXIS 10926, at *13 (no standing because a plaintiff "cannot expand the scope of his claims to include…advertisements…that he did not rely upon.").

[5]   The FAC defines WSDTC as WSI's "Marketing Subsidiary" and WSA and WSI's "Advertising Subsidiary." (FAC ¶¶ 19-20.)

1   the exercise of reasonable care should be known, to be untrue or misleading.'"  *Davis v. HSBC*

2   *Bank*, 691 F.3d 1152, 1161-62 (9th Cir. 2012) (quoting Cal. Bus. & Prof. Code § 17500).  Because

3   Plaintiff's FAL claims arising from WSI's, WSDTC's, and WSA's alleged advertisement of the

4   WSH Signature Bedding are "grounded in fraud," they must satisfy the heightened pleading

5   requirements of Federal Rule of Civil Procedure 9(b).  *Fazio v. Apple, Inc.*, 2016 U.S. App.

6   LEXIS 3373, at *3 (9th Cir. Feb. 25, 2016).  This requires Plaintiff to "state with particularity the

7   circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Thus, Plaintiff must allege, in detail, "the

8   who, what, when, where, and how" of the alleged misconduct to state a FAL claim.  *Fazio*, 2016

9   U.S. App. LEXIS 3373, at **3-4 (dismissing claim that Apple's representations were misleading

10  because "[f]ailure to meet plaintiffs' undefined expectations of consistency does not render

11  Apple's representations misleading.")  Moreover, "[a]llegations based on 'information and belief

12  usually do not satisfy the degree of particularity required under Rule 9(b).'"  *Mee v. I A Nutrition,*

13  *Inc.*, 2015 U.S. Dist. LEXIS 106934, at **28-29 (N.D. Cal. Aug. 13, 2015) (quoting *Wool v.*

14  *Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987)).  Such allegations can only

15  establish the requisite particularity if they set forth "the facts upon which the belief is founded."

16  *Id*. at *28.

17        Plaintiff's FAL claims are based on WSI's, WSDTC's, and WSA's alleged false or

18  misleading description of the "thread count," "quality," "origin," and "yarn quality" of the WSH

19  Signature Bedding.  (FAC ¶¶ 132, 137.)  Plaintiff's FAL claims arise from the following

20  "webpage offering…Williams-Sonoma Home's 'Signature 600-Thread-Count Sateen Bedding'":



(FAC ¶¶ 120-121.)  Plaintiff alleges that he purchased the WSH Signature Bedding because the Williams-Sonoma Home "website advertised them as being 600 thread count, made in Italy, made of Egyptian cotton, and the retailer's 'Signature' line."  (*Id*. at ¶ 118; *see also id*. at ¶ 124.) Plaintiff alleges that he "expected the sheets to be of high quality, extremely soft and luxurious." (*Id*. at ¶ 125.  Plaintiff also alleges that the sheets falsely stated the thread count, and because of that, "he also doubts with [*sic*] the sheets are actually Egyptian cotton or made in Italy as the advertising and packaging suggests."  (*Id*. at ¶ 107.)  As set forth below, Plaintiff's allegations are insufficient to state a claim under the FAL.

### A.   Plaintiff's FAL Claims Based On "Thread Count" Fail

Plaintiff's FAL claims based on advertising of the "thread count" of the WSH Signature Bedding fail because:  (1) the "thread count" disclosures comply with federal law; and (2) Plaintiff has failed to allege how WSI's, WSDTC's, or WSA's advertising of the WSH Signature Bedding as "600-thread-count two ply" is untrue or misleading.

#### 1.   Advertising Of The WSH Signature Bedding's "Thread Count" Complies With Applicable Law

Conduct that complies with state or federal statutes or regulations cannot be a violation of the FAL.  *Alvarez v. Chevron Corp*., 656 F.3d 925, 933-34 (9th Cir. 2011); *Davis*, 691 F.3d at 1165; *Parent v. MillerCoors LLC*, 2015 U.S. Dist. LEXIS 145071 (S.D. Cal. Oct. 26, 2015); *POM Wonderful LLC v. Coca Cola Co*., 2013 U.S. Dist. LEXIS 33501, at **14-15 (C.D. Cal. Feb. 13, 2013); *Cel-Tech Comms., Inc. v. L.A. Cellular Tell. Co*., 20 Cal. 4th 163, 183 (1999).  Here, federal customs regulations require that individual threads within multi-ply yarns in an imported textile like the WSH Signature Bedding be counted individually, such that a textile "containing 100 two-ply yarns in one square centimeter must be reported as 200 single threads"—exactly how Plaintiff alleges that WSI, WSDTC, and WSA counted the threads in the WSH Signature Bedding. (FAC ¶ 3.)

Plaintiff alleges that the WSH Signature Bedding was "Made in Italy."  (FAC ¶ 51.) Imported products are governed by the Customs and Border Protections Regulations of the United States codified in Title 19 of the Code of Federal Regulations.  19 C.F.R § 141.0 (1973) ("This

part sets forth general requirements and procedures for the entry of imported merchandise…."). Pursuant to 19 C.F.R § 141.81 (1973), "[a] commercial invoice shall be presented for each shipment of merchandise at the time the entry summary is filed, subject to the conditions set forth in these regulations."  The invoice must be "filed for each shipment of merchandise" and "prepared in the manner customary in the trade, [and] contain the information required by §§ 141.86 through 141.89…."  19 C.F.R § 141.83(c)(1) (1973).

19 C.F.R § 141.89 provides that the invoices for certain "classes of merchandise, classifiable under the Harmonized Tariff Schedule of the United States (HTSUS), shall set forth…additional information."  Invoices for cotton fabrics must include, *inter alia*, the "[n]umber of single threads per square centimeter (***All ply yarns must be counted in accordance with the number of single threads contained in the yarn; to illustrate: a cloth containing 100 two-ply yarns in one square centimeter must be reported as 200 single threads***)…."  19 C.F.R § 141.89(a) (1973) (emphasis added).  Here, the Plaintiff alleges that the WSH Signature Bedding was described as "[s]ewn from lustrous ***600-thread-count two ply*** Egyptian-cotton sateen" (FAC ¶¶ 118-120 (emphasis added)) based on Defendants' "multipli[cation] of the true thread count of 291 by the number of plies, here two, to get to the advertised 600 thread counts" (*id*. ¶ 3). Defendants' alleged method of counting threads complies with the federal regulations in 19 C.F.R § 141.89(a).  As such, Plaintiff's FAL claims based on advertising of the WSH Signature Bedding fail as a matter of law, and should be dismissed.

### 2. Plaintiff Has Not Alleged An FAL Claim Based On Advertising Of The WSH Signature Bedding's "Thread Count" With Sufficient Particularity

To state a claim based on alleged false or misleading descriptions of "thread count" in the WSH Signature Bedding, Plaintiff must satisfy Federal Rule of Civil Procedure 9(b) and allege, in detail, "the who, what, when, where, and how" of the alleged misconduct.  *Fazio*, 2016 U.S. App. LEXIS 3373, at *3.  Plaintiff has failed to do so.

In particular, Plaintiff has not sufficiently alleged how WSI's, WSDTC's, and WSA's description of the WSH Signature Bedding as "600-thread-count two ply" is untrue or misleading. The advertising disclosed that WSH Signature Bedding was "600 thread-count two ply."  As

1  Plaintiff's own allegations confirm, the WSH Signature Bedding that he purchased included 291

2  two ply yarns (*i.e.*, yarns created by twisting two yarns together) meaning that the total number of

3  "threads" was 582.  This was clearly disclosed in the advertising of the WSH Signature Bedding

4  (FAC ¶ 121) in accordance with relevant federal regulations, and the two-ply thread count is well

5  within the 5% maximum deviation that Plaintiff alleges, without citation, that "[t]he textile

6  industry allows for…."  (*Id.* ¶ 36.)[6]  WSI, WSDTC, and WSA did not advertise the WSH

7  Signature Bedding as "600-thread-count" alone or as "600-thread-count single ply," and cannot be

8  subject to liability under the FAL based on Plaintiff's apparent subjective belief that the WSH

9  Signature Bedding was "600-thread-count single ply."  *Fazio*, 2016 U.S. App. LEXIS 3373, at

10  **3-4 (dismissing claim that representations were misleading because "[f]ailure to meet plaintiffs'

11  undefined expectations of consistency does not render…representations misleading.")

   **B.**     **Plaintiff's FAL Claims Based On "Origin," "Yarn Quality" Or "Quality" Of**
   **The WSH Signature Bedding Fail**

13  Plaintiff's FAL claims based on the "origin," "yarn quality" or other alleged advertised

14  characteristics of the WSH Signature Bedding fail because:  (1) Plaintiff has not alleged any

15  actually untrue and misleading statement; and (2) FAL claims cannot be based on mere marketing

16  "puffery."

   **1.**     **Plaintiff Has Not Alleged That Advertising Of The "Origin" Or "Yarn**
   **Quality" Of The WSH Bedding Was Untrue Or Misleading**

19  As with claims based on "thread count," Plaintiff's FAL claims arising from allegedly

20  untrue or misleading statements about the "origin" or "yarn quality" (FAC ¶¶ 132, 137) of the

21  WSH Signature Bedding must be stated with particularity.  Plaintiff, however, has not alleged any

22  facts supporting his claim that WSI's, WSDTC's, or WSA's descriptions of the "quality" or

23  "origin" of the WSH Signature Bedding were false or misleading.  Instead, Plaintiff alleges that

24  "he has doubts" whether the WSH Signature Bedding is "actually Egyptian cotton or made in Italy

---

26  [6]  Because the advertising for the WSH Signature Bedding disclosed that the WSH Signature
   Bedding was "600-thread-count two ply," it complies with the FTC staff advisory opinion cited by

27  Plaintiff, in which FTC opined that "[a] ***possible*** non-deceptive way to disclose both the thread
   count and the yarn ply would be to state, ***for example***, '300 thread count, 2 ply yarn.'"  (FAC ¶ 41

28  (emphasis added).)

as the advertising or packaging suggests." (*Id.* ¶ 126.)  This allegation is insufficient to satisfy

Rule 9(b), and to the extent Plaintiff's FAL claims rely on these allegations, they must be

dismissed.  *Mee*, 2015 U.S. Dist. LEXIS 106934, at **28-29 (dismissing FAL claim because

plaintiff did not allege a basis for claim based on alleged false description of product).

### 2.    Plaintiff's FAL Claims Regarding "Quality" Of The WSH Signature Bedding Cannot Be Based On Mere "Puffery"

Words like "elegant," "lustrous" or "rich" (FAC ¶ 121) cannot serve as the basis for FAL

claims.  Such "'generalized, vague, and unspecific assertions [are] mere 'puffery' upon which a

reasonable consumer could not rely'" and "cannot form the basis" of FAL claims  *In re iPhone 4s

Consumer Litig.*, 2013 U.S. Dist. LEXIS 103058, at *38 (N.D. Cal. Jul. 23, 2013) (quoting *Glen

Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003)).  To the extent that

Plaintiff's FAL claims related to the purported "quality" of the WSH Signature Bedding (FAC ¶

132) rely on these allegations, they must be dismissed.

## VI.    PLAINTIFF'S UCL CLAIMS FAIL

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

Cal. Bus. Prof. Code § 17200.  UCL claims are analyzed under one or more of three prongs:

"unlawful," "unfair" and "fraudulent."  Like Plaintiff's FAL claims, Plaintiff's UCL claims arising

from WSI's, WSDTC's, or WSA's advertisement of the WSH Signature Bedding are grounded in

fraud and must satisfy the heightened pleading requirements of Rule 9(b).  *Fazio*, 2016 U.S. App.

LEXIS 3373, at *3.  Plaintiff has failed to allege a claim under any of the UCL's prongs.

### A.    Plaintiff Has Not Alleged A Claim Under The Unlawful Prong Of The UCL

A UCL cause of action based on an unlawful business practice borrows violations of other

laws and treats those violations as independently actionable.  *Farmers Ins. Exchange v. Sup. Ct.*, 2

Cal. 4th 377, 383 (1992).  A plaintiff must specifically identify the underlying statute that has been

violated.  *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).  As with the FAL,

conduct that is authorized by law constitutes a "safe harbor" precluding liability under the UCL.

*Cel-Tech*, 20 Cal. 4th at 182.

1    Plaintiff generally alleges that the "business practices alleged" in the FAC are unlawful

2  under:  (1) "the Federal Trade Commission Act (FTCA) § 45(a), which forbids deceptive

3  advertising"; (2) "California's Consumer Legal Remedy Act ('CLRA'), which also forbids

4  deceptive advertising"; (3) "§ 17200 by virtue of violating § 17500, which forbids untrue and

5  misleading advertising"; and (4) "Deerings Ann. UCC § 2313" as a breach of express warranty,

6  "Deerings Ann. UCC § 2315" as a breach of implied warranty for fitness for a particular purpose,

7  and "Deerings Ann. UCC § 2314" as a breach of implied warranty of merchantability.  (FAC ¶¶

8  145-148.)[7]  Plaintiff's "Unlawful Business Practice" claim fails for a number of reasons.

9    First, Plaintiff has not sufficiently pled a basis for finding that WSI's, WSDTC's, or

10  WSA's alleged conduct related to the WSH Signature Bedding violated the FTCA, the CLRA, or

11  Deerings Ann. UCC § 2315.  A UCL plaintiff "may not simply set forth a catalogue of statutes

12  that purportedly were violated by defendants."  *Moroney v. Am. Int'l Group (In re Bacon)*, 415 F.

13  Supp. 2d 1027, 1034 (N.D. Cal. 2006).  Plaintiff has not asserted claims under the FTCA, the

14  CLRA, or Deerings Ann. UCC § 2314, alleged the elements of those claims, or identified the facts

15  that Plaintiff contends satisfy those causes of action.  As such, to the extent that Plaintiff's UCL

16  claims are based on alleged violations of FTCA, the CLRA, or Deerings Ann. UCC § 2315, they

17  should be dismissed.  *Id.*

18    Second, as set forth above, Plaintiff has failed to allege a violation of the FAL because:  (1)

19  the "two ply" thread count advertised for the WSH Signature Bedding complies with federal law;

20  (2) Plaintiff has failed to allege anything false or untrue in the advertising of the WSH Signature

21  Bedding as "600-thread-count two ply"; (3) Plaintiff has not sufficiently alleged that the

22  representations about the "origin" and "yarn quality" of the WSH Signature Bedding are false or

23

24

25  [7]  Despite the fact that Plaintiff spends several pages of the FAC describing ASTM International's
   purported "Standard Test Method," the FTC staff opinion dated August 2, 2015, and alleged
26  consumer research articles (*see* FAC ¶¶ 35-44), Plaintiff has not alleged that they constitute a law
   that may serve as a predicate violation under the unlawful prong of the UCL.  (FAC ¶¶ 145-148.)
27  In fact, the FTC opinion is merely a "staff advisory" opinion, as opposed to an FTC opinion (FAC
   ¶ 41 at 13:3-5), is governed by 16 C.F.R. §§ 1.1 *et seq.*, and is subject to revision or rescission by
28  the FTC.

1   misleading; and (4) Plaintiff cannot base claims on mere marketing "puffery" like "soft" or

2   "luxurious."

3          Finally, as set forth in below, Plaintiff has not alleged claims for breach of express

4   warranty or implied warranty of merchantability, or unjust enrichment based on the WSH

5   Signature Bedding.

6          **B.        Plaintiff Has Not Alleged A Claim Under The Unfair Prong Of The UCL**

7          Because "the precise contours of an 'unfair business practice' under the UCL are currently

8   in flux," it appears that a plaintiff alleging a violation of the "unfair prong" of the UCL must

9   satisfy one of two tests.  *Hodsdon v. Mars, Inc.*, 2016 U.S. Dist. LEXIS 19268, at *21 (N.D. Cal.

10  Feb. 17, 2016).

11         Under the first test, a plaintiff must establish that the alleged unfair business practice

12  "offends an established public policy or…is immoral, unethical, oppressive, unscrupulous or

13  substantially injurious to consumers."  *Hodsdon*, 2016 U.S. Dist. LEXIS 19268, at *21 (quoting *S.*

14  *Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886-87 (1999)).  This test

15  requires "courts to examine the practice's impact on its alleged victim, balanced against the

16  reasons, justifications and motives of the alleged wrongdoer."  *Id.* (internal quotations omitted).

17  Despite the fact that this test is sometimes applied by federal courts, the California Supreme Court

18  "has criticized this approach…as 'too amorphous' to provide meaningful 'guidance to courts and

19  businesses.'"  *Id.* (quoting *Cel-Tech*, 20 Cal. 4th at 185).  Under the second test, a claim for

20  violation of the unfair prong of the UCL must "be tethered to some specific constitutional,

21  statutory, or regulatory provisions."  *Hodsdon*, 2016 U.S. Dist. LEXIS 19268, at *21.  A business

22  practice that is authorized by law cannot be considered unfair under either test.  *Churchill Village,*

23  *LLC. v. General Electric Co.*, 169 F. Supp. 2d 1119, 1130 (N.D. Cal. 2000).

24         Plaintiff's unfairness claim fails at the outset because, as set out above, WSI's, WSDTC's,

25  WSA's alleged unfair conduct is expressly authorized by law.

26         Further, the FAC fails the first test because the only allegation that attempts to satisfy the

27  first test is plainly conclusory.  FAC, ¶ 154 ("Purchasers of WSI's bedding that is falsely

28  described suffered a substantial injury by virtue of paying an excessive price for unfairly

1   advertised bedding.").  The Court need not accept this legal conclusion clothed as a factual

2   allegation.  *Western Mining Council*, 643 F.2d at 624.

3       Plaintiff fails the second test because he cannot establish a predicate violation.  Plaintiff

4   does not even attempt to establish violations of the FTCA, the CLRA, or Deerings Ann. UCC §

5   2315.  And, as set forth herein, Plaintiff cannot establish violations of the FAL, breach of

6   warranties, or a claim for unjust enrichment.  Plaintiff's unfairness claim should be dismissed.

7       **C.        Plaintiff Has Not Alleged A Claim Under The Fraudulent Prong Of The UCL**

8       To state a claim for violation of the fraudulent prong of the UCL, the FAC must establish

9   that "members of the public are likely to be deceived."  *Davis v. HSBC Bank Nevada, N.A.*, 691

10  F.3d 1152, 1169 (9th Cir. 2012); *Morgan v. AT&T Wireless Servs., Inc.,* 177 Cal. App. 4th 1235,

11  1254 (2009).  Courts apply a "reasonable consumer" standard to make this determination.  *Davis*,

12  691 F.3d at 1169 (citing *Puentes v. Wells Fargo Home Mortg., Inc*., 160 Cal. App. 4th 638, 645

13  (2008)).  Dismissal of fraudulent business practice claims is appropriate where review of a

14  allegedly fraudulent statements demonstrates that consumer confusion is unlikely as a matter of

15  law.  *See, e.g., Werbel ex rel v. Pepsico, Inc*., 2010 U.S. Dist. LEXIS 76289, *8 (N.D. Cal. Jul. 2,

16  2010); *Videtto v. Kellogg USA*, 2009 U.S. Dist. LEXIS 43114, *8 (E.D. Cal. May 20, 2009).

17      Here, both the advertising for, and packaging of, the WSH Signature Bedding clearly and

18  accurately describes the WSH Signature Bedding as "600 thread count, two ply":

19



| Packaging | Advertising |
|---|---|

1   (FAC ¶¶ 51, 121.)  Plaintiff fails to allege how this description would deceive a reasonable

2   consumer, particularly where the description of the WSH Signature Bedding complies with

3   applicable federal law.  As such, Plaintiff's claim for fraudulent business practice fails.

4   **VII.    PLAINTIFF'S WARRANTY CLAIMS FAIL**

5        Plaintiff's sixth cause of action for "Breach of Express Warranty (U.C.C. Article 2)" and

6   seventh cause of action for "Breach of Implied Warranty of Merchantability (U.C.C. Article 2)"

7   must be dismissed because Plaintiff failed to provide Defendants with reasonable notice of the

8   alleged breach.  Even if Plaintiff had provided reasonable notice, Plaintiff's warranty claims

9   would still fail because he has not alleged the elements of either claim.[8]

10       **A.    The FAC Does Not Allege Pre-Suit Notice**

11       To plead a claim for breach of express or implied warranty under California law, a plaintiff

12  must plead that he or she provided the defendant with pre-suit notice of the alleged breach.  Cal.

13  Comm. Code § 2607(3)(a); *S. Cal. Stroke Rehab. Assocs. v. Nautilus, Inc.*, 2012 U.S. Dist. LEXIS

14  135521, at *4 (S.D. Cal. Sept. 21, 2012) (applying California law) ("[C]auses of action for breach

15  of express and implied warranties expressly require as an essential element of each claim that the

16  buyer provide the seller with reasonable notice of the breach.  Notice must be given prior to the

17  filing of a lawsuit."); *Baltazar v. Apple, Inc.*, 2011 U.S. Dist. LEXIS 13187, at *5 (N.D. Cal. Feb.

18  10, 2011) (applying California law); *Andrade v. Pangborn Corp.*, 2004 U.S. Dist. LEXIS 22704,

19  at **61-64 (N.D. Cal. Oct. 22, 2004) (applying California law).  "The purpose of giving notice of

20  breach is to allow the breaching party to cure the breach and thereby avoid the necessity of

21  litigating the matter in court."  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011)

22  (applying California law) (dismissing warranty claims without leave to amend for failure to

23  provide pre-suit notice); *see also S. Cal. Stroke Rehab. Assocs.*, 2012 U.S. Dist. LEXIS 135521, at

24  *5.

25

26  _____

27  [8]  Plaintiff has not alleged whether he is asserting his warranty claims under California law.  Given
    this, and the fact that Plaintiff's other claims are under California law, Defendants assume for the
    purposes of this Motion that Plaintiff has pled warranty claims under California's version of the

28  Uniform Commercial Code codified at Cal. Comm. Code §§ 1101, *et seq.*

Plaintiff's warranty claims fail because he has not alleged that he provided pre-suit notice to Defendants.  (*See* FAC at ¶¶ 121-26.)  Plaintiff alleges that he purchased the WSH Signature Bedding on or around February 10, 2015.  (*Id*. ¶ 118.)  Plaintiff alleges that he inspected the WSH Signature Bedding upon receipt and "was so disappointed in the quality…that he decided not to give them to his wife for Valentine's Day."  (*Id*. ¶ 125.)  Plaintiff does not allege that he attempted to return the WSH Signature Bedding, or otherwise notify Defendants of their alleged breach despite feeling "betrayed."  (*Id*. ¶ 126.)  Instead, Plaintiff filed the FAC nearly a year after initially receiving—and allegedly being disappointed with—the WSH Signature Bedding.  Because Plaintiff has not alleged any pre-suit notice, his warranty claims should be dismissed with prejudice.  *Alvarez*, 656 F.3d at 932-35.

### B.      The FAC Does Not Allege A Breach Of Express Warranty

"To plead an action for breach of express warranty under California law, a plaintiff must allege: (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury."  *Baltazar*, 2011 U.S. Dist. LEXIS 13187, at *5 (citing *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)).  A "specific and unequivocal" factual description of the goods may create an express warranty.  *T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 875-876 (N.D. Cal. 2015); *see also* Cal. Com. Code § 2313(1)(b); *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013) (to state a claim for breach of express warranty, a plaintiff must allege that the defendant's statements constituted an affirmation of fact or promise or a description of the goods).  Certain statements, however—like affirmations of value or opinion—do not create an express warranty.  *Id*. at 875-76.

Here, Plaintiff alleges that "Defendants warranted in the advertising and packaging of the bedding Plaintiff purchased that the bedding was '[t]ailored from 600-thread-count-two-ply Egyptian cotton sateen, our luxe and lustrous Italian sheeting becomes even richer in texture with use and laundering.'"  (FAC ¶ 169.)  Plaintiff alleges that Defendants "breached this warranty by providing…sheeting [that] contains less than one-half the 600 thread count warranted."  (*Id*. ¶ 170.)  Plaintiff, however, has failed to allege any actual breach.  As Plaintiff admits, the WSH

1   Signature Bedding was advertised as "600-thread-count-two-ply"—a description that is factually

2   accurate and complies with applicable federal law.  Furthermore, Plaintiff has failed to allege that

3   WSI's, WSDTC's, or WSA's alleged conduct was the proximate cause of his injury.  Plaintiff

4   does not allege that he gave any of the Defendants notice of their alleged breach to enable them to

5   cure, or attempted to return the WSH Signature Bedding when he became aware of the fact that

6   they did not comply with the alleged warranty.  *Alvarez*, 656 F.3d at 932.

### C.   The FAC Does Not Allege A Breach Of The Implied Warranty Of Merchantability

"The implied warranty of merchantability does not 'impose a general requirement that

goods precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of

quality.'"  *T&M Solar*, 83 F. Supp. 3d at 878 (quoting *Am. Suzuki Motor Corp. v. Sup. Ct.*, 37 Cal.

App. 4th 1291 (1995)).  Thus, "to state a claim for breach of the implied warranty of

merchantability, a plaintiff must allege a "fundamental defect that renders the product unfit for its

ordinary purpose."  *Id.*  "In other words, a plaintiff claiming breach of an implied warranty of

merchantability must show that the product 'did not possess even the most basic degree of fitness

for ordinary use'....."  *Id.* (internal citations omitted); *see also Birdsong v. Apple, Inc.*, 590 F.3d

955, 958 (9th Cir. 2009) ("A breach of the warranty of merchantability occurs if the product lacks

even the most basic degree of fitness for ordinary use.").  The allegations in the FAC do not meet

this standard.  Plaintiff does not allege that the WSH Signature Bedding did not "possess even the

most basic degree of fitness for ordinary use."  Instead, Plaintiff merely alleges that he was

"disappointed" in the "quality" of the WSH Signature Bedding.  (FAC ¶ 125.)  This is insufficient

to state a claim for breach of implied warranty.

## VIII.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS

Plaintiff's claim for unjust enrichment fails because, as discussed above, he has failed to

allege any wrongful conduct by Defendants related to the WSH Signature Bedding.

Furthermore, most California courts do not recognize unjust enrichment as "a proper cause

of action under California law."  *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1028 (N.D.

Cal. 2011) ("California courts appear to agree.  '[T]here is no cause of action in California for

1    unjust enrichment.'") (quoting *Melchior v. New Line Prod., Inc.*, 106 Cal. App. 4th 779, 793

2    (2003)); *see also Nguyen v. Wells Fargo Bank N.A.*, 2015 U.S. Dist. LEXIS 100851, at *21 (C.D.

3    Cal. Feb. 18, 2015) ("Plaintiff's unjust enrichment claim fails because the majority of state and

4    federal district courts in California do not recognize unjust enrichment as a freestanding claim.").

5    For this reason, Plaintiff's unjust enrichment claim should be dismissed.

6          Furthermore, to the extent California courts ever recognize a claim for "unjust

7    enrichment," it is only where the claim seeks restitution. *Arevalo*, 850 F. Supp. 2d at 1028.

8    Where a plaintiff seeks restitution under other legal theories, "the unjust enrichment claim add[s]

9    nothing to the relief available to him," and the claim should be dismissed.  *Id.* (dismissing unjust

10   enrichment claim with prejudice where plaintiffs sought restitution under the UCL and FAL).[9]

11   Here, Plaintiff seeks restitution for, at least his FAL and UCL claims.  (FAC ¶¶ 133, 141, 149,

12   160, 166.)  Finally, Plaintiff has failed to allege any benefit conferred on Defendants, which

13   Defendants unjustly retained.  The WSI Signature Bedding was marketed accurately and in

14   compliance with applicable law.  Accordingly, even if the Court decides to recognize a claim for

15   "unjust enrichment" (it should not), Plaintiff's unjust enrichment claim should be dismissed.

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   _____

25   [9]  Defendants also note that Plaintiff's sole unjust enrichment allegations are:  (1) "[a]s a result of deceptive conduct, WSI was enriched at the expense of Plaintiff and those similarly situated;" (2) "[i]t would be unjust and inequitable for Defendants to retain its [sic] profits earned from

26   misrepresenting its [sic] products to increase sales;" and (3) [t]herefore, the funds that Defendants have received from consumers should be disgorged as illegally gotten gains."  (FAC ¶¶ 181-83.)

27   These "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678, and do not state "enough facts to state a claim to relief that is

28   plausible on its face," *Twombley*, 550 U.S. at 570.

IX.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion, and dismiss the FAC with prejudice.

Dated:  April 20, 2016                    SHEPPARD MULLIN RICHTER & HAMPTON LLP


                                        By   _____
                                                    */s/ Benjamin O. Aigboboh*
                                                    P. CRAIG CARDON
                                                    DYLAN J. PRICE
                                                    BENJAMIN O. AIGBOBOH
                                                    ERIC J. DIIULIO

                                                    *Attorneys for Defendants*
                                            WILLIAMS-SONOMA, INC., WILLIAMS-
                                            SONOMA DTC, INC., WILLIAMS-SONOMA
                                            ADVERTISING, INC., WILLIAMS-SONOMA
                                            STORES, INC. POTTERY BARN, INC., POTTERY
                                            BARN KIDS, INC., POTTERY BARN TEEN, INC.,
                                            and WEST ELM, INC.