SHEPPARD MULLIN RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal. Bar No. 168646
DYLAN J. PRICE, Cal. Bar No. 258896
BENJAMIN O. AIGBOBOH, Cal. Bar No. 268531
ERIC J. DIIULIO, Cal. Bar No. 301439
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947
Email:    ccardon@sheppardmullin.com
          dprice@sheppardmullin.com
          baigboboh@sheppardmullin.com
          ediiulio@sheppardmullin.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM RUSHING, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAMS-SONOMA, INC., a Delaware corporation, d/b/a Williams-Sonoma and Williams-Sonoma Home; WILLIAMS-SONOMA DTC, INC., a California corporation; WILLIAMS-SONOMA ADVERTISING, INC., a California corporation; WILLIAMS-SONOMA STORES, INC., a California corporation; POTTERY BARN, INC., a California corporation; POTTERY BARN KIDS, INC., a California corporation, also d/b/a Pottery Barn Baby; POTTERY BARN TEEN, INC., a California corporation also d/b/a PB Teen and PB Dorm; WEST ELM, INC., a California corporation; and DOES 1-30,<br><br>Defendants. | Case No. 3:16-cv-01421-WHO<br><br>*Assigned to the Hon. William H. Orrick*<br><br>**CLASS ACTION**<br><br>**DEFENDANTS':**<br><br>**(1)  NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED CLASS COMPLAINT; AND**<br><br>**(2)  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**<br><br>Hearing<br>Date:        August 10, 2016<br>Time:        2:00 p.m.<br>Courtroom:  2<br><br>Complaint Filed:  January 29, 2016<br>Action Removed:  March 23, 2016<br>TAC Filed:        June 6, 2016<br>Trial Date:        None Set |

TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 10, 2016 at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 2 on the 17th floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable William H. Orrick presiding, Defendants Williams-Sonoma, Inc., Williams-Sonoma DTC, Inc., Williams-Sonoma Advertising, Inc., Williams-Sonoma Stores, Inc., Pottery Barn, Inc., Pottery Barn Kids, Inc., Pottery Barn Teen, Inc., and West Elm, Inc. (collectively "**Defendants**") will and hereby do move the Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing the Third Amended Class Action Complaint ("**TAC**") filed by Plaintiff William Rushing ("**Plaintiff**") for failure to state facts sufficient to constitute a cause of action.

Defendants' motion to dismiss (the "**Motion**") is made on the following grounds. First, Plaintiff lacks standing to pursue claims for violations of California's Consumers Legal Remedies Act ("**CLRA**"), False Advertising Law ("**FAL**"), Unfair Competition Law ("**UCL**"), for breach of contract and implied covenant of good faith and fair dealing, or for unjust enrichment based on advertising statements he did not see, and products he did not purchase. Plaintiff alleges that he viewed a *single* advertisement and purchased a *single* product from Defendant Williams-Sonoma Inc.'s Williams-Sonoma Home brand. This does not confer standing to pursue claims arising from advertising and sale of *all* "higher thread count" bedding (a category invented by Plaintiff) by *all* Defendants. Second, with regard to the actual advertisement that Plaintiff viewed and product he purchased, Plaintiff's: (1) CLRA and FAL claims fail because the alleged false or misleading statement complies with applicable law and is not false or misleading; (2) UCL claims fail because Plaintiff has not adequately alleged any unlawful, unfair, or fraudulent conduct; (3) breach of contract and implied covenant of good faith and fair dealing claims fail because Plaintiff has not alleged pre-suit notice or any actual breach; and (4) unjust enrichment claim fails because unjust enrichment is not a cognizable claim in California and, even if it were, it is duplicative of Plaintiff's other claims, barred because Plaintiff has alleged a claim for breach of contract, and

unavailing because Plaintiff has not alleged any unjust benefit to Defendants.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, all pleadings, papers and other documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice, and such other matters as the Court may consider.

Dated: June 27, 2016

SHEPPARD MULLIN RICHTER & HAMPTON LLP


By _____
                    */s/ Benjamin O. Aigboboh*
                    P. CRAIG CARDON
                    DYLAN J. PRICE
                    BENJAMIN O. AIGBOBOH
                    ERIC J. DIIULIO

                    *Attorneys for Defendants*
          WILLIAMS-SONOMA, INC., WILLIAMS-
          SONOMA DTC, INC., WILLIAMS-SONOMA
          ADVERTISING, INC., WILLIAMS-SONOMA
          STORES, INC. POTTERY BARN, INC., POTTERY
          BARN KIDS, INC., POTTERY BARN TEEN, INC.,
          and WEST ELM, INC.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................... 1

II. RELEVANT BACKGROUND ................................................................................... 3

    A. Relevant Allegations ....................................................................................... 3

        1. The Parties ............................................................................................ 3

        2. Plaintiff's Alleged Purchase ................................................................ 4

        3. Allegations Regarding Products Other Than The WSH Signature Bedding ................................................................................................. 5

    B. Procedural History .......................................................................................... 5

    C. Plaintiff's Claims ............................................................................................ 5

III. STANDARDS APPLICABLE TO THE MOTION TO DISMISS ........................... 6

IV. PLAINTIFF LACKS STANDING TO PURSUE CLAIMS OTHER THAN THOSE RELATED TO THE WSH BEDDING ......................................................... 6

    A. Plaintiff Does Not Have Standing To Pursue CLRA, FAL, Or UCL Claims Based On Products He Did Not Purchase Or Advertising He Did Not View .......... 6

    B. Plaintiff Does Not Have Standing To Pursue Contract Or Unjust Enrichment Claims Based On Products He Did Not Purchase Or Advertising He Did Not View .................................................................... 11

    C. Plaintiff Cannot Pursue Claims Against Defendants That Did Not Sell Or Advertise The WSH Bedding ................................................................... 12

V. PLAINTIFF'S CLAIMS BASED ON THE WSH BEDDING FAIL ...................... 12

    A. Plaintiff's CLRA Claim Based On the WSH Bedding Fails ......................... 12

        1. Plaintiff's CLRA Claim Fails Because Advertising Of The WSH Bedding's Complies With Applicable Law ................................. 13

    B. Plaintiff Has Not Alleged A CLRA Claim Based On Advertising Of The WSH Bedding With Sufficient Particularity ........................................... 14

    C. Plaintiff's FAL Claims Based On The WSH Bedding Fail ..................... 16

    D. Plaintiff's UCL Claims Based On The WSH Bedding Fail ..................... 17

        1. Plaintiff Has Not Alleged A Claim Under The Unlawful Prong ............... 17

        2. Plaintiff Has Not Alleged A Claim Under The Unfair Prong .................... 18

        3. Plaintiff Has Not Alleged A Claim Under The Fraudulent Prong ............. 19

E.     Plaintiff's Breach Of Contract Claim Arising From The WSH Bedding Fails ....... 20

     1.     Plaintiff's Contract Claim Fails Because There Was No Pre-Suit Notice ........................................................................................... 20

     2.     Plaintiff's Contract Claims Fails Because There Is No Alleged Breach.......................................................................................... 21

F.     Plaintiff's Breach Of Implied Covenant Claim Arising From The WSH Bedding Fails.............................................................................. 22

     1.     Plaintiff's Implied Covenant Claim Fails Because There Was No Pre-Suit Notice ...................................................................... 22

     2.     Plaintiff's Implied Covenant Claim Fails Because It Is Duplicative Of His Claim For Breach Of Contract ....................... 22

G.     Plaintiff's Unjust Enrichment Claim Fails ............................................. 23

VI.     PLAINTIFF LACKS STANDING TO PURSUE INJUNCTIVE RELIEF ....................... 24

VII.     CONCLUSION ................................................................................. 25

# **TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Acoustics, Inc. v. Trepte Constr. Co.*
    14 Cal. App. 3d 887 (1971)....................................................................................21

*Alvarez v. Chevron Corp.*
    656 F.3d 925 (9th Cir. 2011)..........................................................13, 15, 17, 20, 21, 22

*Am. Marine Corp. v. Blue Shield of Cal.*
    2011 U.S. Dist. LEXIS 40452 (N.D. Cal. Apr. 13, 2011)......................................23

*Anderson v. Clow*
    89 F.3d 1399 (9th Cir. 1996)...............................................................................6

*Andrews v. Metro N. C. R. Co.*
    882 F.2d 705 (2d Cir. 1989)................................................................................8

*Annunziato v. eMachines, Inc.*
    402 F. Supp. 2d 1133 (C.D. Cal. 2005)..............................................................10

*Apodaca v. Whirlpool Corp.*
    2013 U.S. Dist. LEXIS 176363 (C.D. Cal. Nov. 8, 2013).........................................10

*Arevalo v. Bank of Am. Corp.*
    850 F. Supp. 2d 1008 (N.D. Cal. 2011)..............................................................23

*Arroyo v. TP-Link USA Corp.*
    2015 U.S. Dist. LEXIS 133473 (N.D. Cal. Sept. 29, 2015)..................................7, 12

*Ashcroft v. Iqbal*
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 26 868 (2009) ................................6, 24

*Astiana v. Hain Celestial Grp., Inc.*
    783 F.3d 753 (9th Cir. 2015)...............................................................................24

*Banaga v. Taylor Bean Mortg. Co.*
    2011 U.S. Dist. LEXIS 122804 (N.D. Cal. Oct. 24, 2011) .......................................8

*Bates v. UPS*
    511 F.3d 974 (9th Cir. Cal. 2007) ...................................................................24, 25

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544, S. Ct. 1955, 167 L. Ed. 929 (2007) ............................................6, 24

*Cardinal Health 301, Inc. v. Tyco Electronics Corp.*
    169 Cal. App. 4th 116 (2008).............................................................................21

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*
    222 Cal. App. 3d 1371 (1990)...........................................................................23

*Carrea v. Dreyer's Grand Ice Cream, Inc.*
    2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10, 2011) .........................................7

*Cel-Tech Comms., Inc. v. L.A. Cellular Tell. Co.*
    20 Cal. 4th 163 (1999)...........................................................................17, 18, 19

*Churchill Village, LLC. v. Gen. Elec. Co.*
    169 F. Supp. 2d 1119 (N.D. Cal. 2000) ...........................................................19

*Dachauer v. NBTY, Inc.*
    2016 U.S. Dist. LEXIS 78213 (N.D. Cal. June 3, 2016) ......................................25

*Davis v. Apperience Corp.*
    2014 U.S. Dist. LEXIS 154758 (N.D. Cal. Oct. 31, 2014) .........................21, 22, 23

*Davis v. HSBC Bank*
    691 F.3d 1152 (9th Cir. 2012)................................................................16, 17, 19

*Dysthe v. Basic Research LLC*
    2011 U.S. Dist. LEXIS 137315 (C.D. Cal. June 13, 2011)......................................8

*Farmers Ins. Exchange v. Sup. Ct.*
    2 Cal. 4th 377 (1992)................................................................................17

*Fazio v. Apple, Inc.*
    2016 U.S. App. LEXIS 3373 (9th Cir. Feb. 25, 2016)...................13, 14, 15, 16, 17

*Fulford v. Logitech, Inc.*
    2008 U.S. Dist. LEXIS 95175 (N.D. Cal. Nov. 14, 2008)......................................12

*Gerlinger v. Amazon.com, Inc.*
    311 F. Supp. 2d 838 (N.D. Cal. 2004) ...........................................................24

*Granfield v. Nvidia Corp.*
    2012 U.S. Dist. LEXIS 98678 (N.D. Cal. 2012)....................................................7

*Gustavson v. Wrigley Sales Co.*
    961 F. Supp. 2d 1100 (N.D. Cal. 2013) ...........................................................12

*Guttmann v. La Tapatia Tortilleria, Inc.*
    2015 U.S. Dist. LEXIS 156800 (N.D. Cal. Nov. 18, 2015)......................................6

*Harrington v. City of Nashua*
    610 F.3d 24 (1st Cir. 2010) ...........................................................................8

*Herron v. Best Buy Co.*
    924 F. Supp. 2d 1161 (E.D. Cal. 2013) ...........................................................16

*Hodgers-Durgin v. De La Vina*
    199 F.3d 1037 (9th Cir. 1999)..........................................................................25

*Hodsdon v. Mars, Inc.*
    2016 U.S. Dist. LEXIS 19268 (N.D. Cal. Feb. 17, 2016).............................18, 19

*In re iPhone 4S Consumer Litig.*
    2014 U.S. Dist. LEXIS 19363 (N.D. Cal. Feb. 14, 2014).............................21, 22

*Johns v. Bayer Corp.*
    2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010) ...........................7, 12, 13

*Kearns v. Ford Motor Co.*
    567 F.3d 1120 (9th Cir. 2009)..........................................................................13

*Khoury v. Maly's of Cal., Inc.*
    14 Cal. App. 4th 612 (1993)..............................................................................18

*Larsen v. Trader Joe's Co.*
    2012 U.S. Dist. LEXIS 162402 (N.D. Cal. June 14, 2012) ...............................7

*Layton v. Ocwen Loan Servicing, LLC*
    2015 U.S. Dist. LEXIS 97097 (C.D. Cal. July 23, 2015) ................................11

*Lectrodryer v. Seoulbank*
    77 Cal. App. 4th 723 (2000)..............................................................................12

*Leonhart v. Nature's Path Foods, Inc.*
    2014 U.S. Dist. LEXIS 46413 (N.D. Cal. Mar. 31, 2014) .............................7, 12

*Long v. Graco Children's Prods.*
    2013 U.S. Dist. LEXIS 121227 (N.D. Cal. 2013)............................................10

*Mee v. I A Nutrition, Inc.*
    2015 U.S. Dist. LEXIS 106934 (N.D. Cal. Aug. 13, 2015) ..........................13

*Melchior v. New Line Prod., Inc.*
    106 Cal. App. 4th 779 (2003).............................................................................23

*Merritt v. Countrywide Fin. Corp.*
    2014 U.S. Dist. LEXIS 142842 (N.D. Cal. Oct. 7, 2014) ................................6

*Morello v. AMCO Ins. Co.*
    2014 U.S. Dist. LEXIS 74080 (N.D. Cal. May 29, 2014) ...............................19

*Morgan v. AT&T Wireless Servs., Inc.*
    177 Cal. App. 4th 1235 (2009).........................................................................19

*Nguyen v. Wells Fargo Bank N.A.*
    2015 U.S. Dist. LEXIS 100851 (C.D. Cal. Feb. 18, 2015) ............................23

*Oestreicher v. Alienware Corp.*
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ..............................................................10

*Parent v. MillerCoors LLC*
    2015 U.S. Dist. LEXIS 145071 (S.D. Cal. Oct. 26, 2015)............................17

*POM Wonderful LLC v. Coca Cola Co.*
    2013 U.S. Dist. LEXIS 33501 (C.D. Cal. Feb. 13, 2013) ..............................17

*Porter v. Winter*
    2007 U.S. Dist. LEXIS 71231 (E.D. Cal. Sept. 14, 2007) ...............................8

*Puentes v. Wells Fargo Home Mortg., Inc.*
    160 Cal. App. 4th 638 (2008)..........................................................................19

*Robinson v. Salazar*
    885 F. Supp. 2d 1002 (E.D. Cal. 2012) .............................................................8

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*
    72 Cal. App. 4th 861 (1999)............................................................................18

*Smith v. Allmax Nutrition, Inc.*
    2015 U.S. Dist. LEXIS 171897 (E.D. Cal. Dec. 23, 2015)............................24

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*
    903 F. Supp. 2d 942 (S.D. Cal. 2012) .............................................................14

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) ...........................................................10

*Sumer v. Carrier Corp.*
    2015 U.S. Dist. LEXIS 20731 (N.D. Cal. Feb. 20, 2015).............................10

*Videtto v. Kellogg USA*
    2009 U.S. Dist. LEXIS 43114 (E.D. Cal. May 20, 2009).............................19

*Werbel ex rel v. Pepsico, Inc.*
    2010 U.S. Dist. LEXIS 76289 (N.D. Cal. Jul. 2, 2010) ................................19

*Western Mining Council v. Watt*
    643 F.2d 618 (9th Cir. 1981).............................................................................6

*Wilson v. Frito-Lay N. Am.*
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) .............................................................8

<u>Statutes</u>

Cal. Bus. & Prof. Code § 17200..............................................3, 4, 6, 7, 10, 17, 18, 19, 24

Cal. Bus. & Prof. Code § 17500..................................................3, 6, 7, 10, 16, 17, 18, 19, 24

Cal. Civ. Code § 1750 .................................................3, 6, 7, 10, 12, 13, 14, 15, 16, 17, 18, 19, 24

Cal. Civ. Code § 1770(a) ...........................................................................................................12, 13

Cal. Civ. Code § 1770(a)(5) ...............................................................................................................13

Cal. Civ. Code § 1770(a)(7) ...............................................................................................................13

Cal. Civ. Code § 1770(a)(9) ...............................................................................................................13

Cal. Civ. Code § 1780(a) ....................................................................................................................13

Cal. Com. Code § 2607(3)(A) ......................................................................................................20, 22

FTCA .................................................................................................................................................19

FTCA § 5(a) .......................................................................................................................................18

Other Authorities

16 C.F.R. § 1.1 ...................................................................................................................................18

19 C.F.R § 141.0 ................................................................................................................................14

19 C.F.R § 141.81 ..............................................................................................................................14

19 C.F.R § 141.83(c)(1) .....................................................................................................................14

19 C.F.R §§ 141.86 -141.89 ...............................................................................................................14

19 C.F.R § 141.89 ..............................................................................................................................14

19 C.F.R § 141.89(a) ....................................................................................................................14, 17

Fed. R. Civ. P. 8 .................................................................................................................................24

Fed. R. Civ. P. 8(e)(2) ........................................................................................................................24

Fed. R. Civ. P. 9(b)..............................................................................................................13, 14, 16, 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff William Rushing ("**Plaintiff**") alleges that he purchased a set of Williams-Sonoma Home-branded sheets and pillowcases from Defendant Williams-Sonoma, Inc. ("**WSI**")[1] that were advertised by WSI, WSDTC, and WSA as "***600-thread-count two-ply*** Egyptian-cotton sateen." Plaintiff admits that the bedding he purchased is made of "two-ply" yarn and does not dispute that it is "Egyptian-cotton sateen." Plaintiff, instead, contends that the bedding is not "600-thread-count" because individual threads within "two-ply" yarn should not be counted. According to Plaintiff, the thread count of the bedding he purchased is 291 if individual threads are not counted. Applicable federal law, however, provides that individual threads within "two-ply" yarn should be counted. When the thread count is calculated using this federal standard, the thread count is 582—a number that is well within the "± 5 maximum deviation allowance" that Plaintiff alleges, without support, governs the "textile industry." Even if federal law did not apply, the marketing for the bedding purchased by Plaintiff is not deceptive or misleading, as it clearly indicates that it is "600-thread-count" based on "two-ply" construction.

In short, this a dispute over how to count and/or disclose threads in the two-ply bedding purchased by Plaintiff—a fact made clear by Defendants' motion to dismiss the First Amended Complaint ("**FAC**"). In response, Plaintiff has filed a Third Amended Complaint ("**TAC**") that attempts to expand the dispute into a nationwide class action against each and every brand and/or subsidiary owned and operated by WSI for each brand's and/or subsidiary's marketing and/or sale of ***all "higher thread count" sheets and pillowcases***—a term that Plaintiff arbitrarily defines to include any sheets or pillowcases "labeled as having a thread count of 350 or more."

To do this, Plaintiff has made the TAC ***more vague*** than the previous pleadings by omitting key allegations and admissions. For example, Plaintiff confirmed in the FAC that the bedding he purchased is marketed as "two-ply" and is made of two-ply yarn. He also confirmed

---

[1] WSI, Williams-Sonoma DTC, Inc. ("**WSDTC**"), Williams-Sonoma Advertising Inc. ("**WSA**"), Williams-Sonoma Stores, Inc. ("**WSS**"), Pottery Barn, Inc. ("**Pottery Barn**"), Pottery Barn Kids, Inc. ("**PBKids**"), Pottery Barn Teen, Inc. ("**PBteen**"), and West Elm, Inc. ("**West Elm**") are referred to herein collectively as "**Defendants**."

that the other bedding on which the FAC was based—bedding that Plaintiff did not purchase—is marketed as "one-ply" and is made of single-ply yarn. Plaintiff has omitted these allegations from the TAC. The reason for this is clear—Plaintiff hopes that the Court will ignore that Plaintiff's true claim is based on his contention that WSI, WSDTC, and WSA incorrectly counted threads in the two-ply bedding he purchased. It should not. The allegations in the FAC are admissions that clarify Plaintiff's claims. Ignoring these allegations, and the fact that Plaintiff's claim is based solely on alleged miscounting of threads in two-ply bedding, will lead to absurd results. Even if Plaintiff's TAC survives, his claims will be subject to defenses that are separate from those that apply to claims arising from single-ply bedding. Thus, the Court and the parties could find themselves in a situation where Plaintiff's claims are dismissed or defeated—*i.e.*, because the counting of threads in two-ply bedding complies with law and/or is non-deceptive—and there is no plaintiff left to represent the class of purchasers of allegedly deceptive "one-ply" bedding.

The TAC also adds allegations to further obscure the nature of Plaintiff's claims. The TAC expounds at length about an alleged practice of "inflating thread counts" that is pure fiction. There is no such practice. In fact, Plaintiff admits that several of the sheets he tested did not have "inflated thread counts." To get around this fact, and to attempt to state the broadest claims possible, Plaintiff has created an arbitrary category of "higher-thread count bedding." Similarly, Plaintiff spends dozens of paragraphs in the TAC describing allegedly systematic "marketing deceptions" by Defendants to portray themselves as "luxury and quality brands" through their "branding, advertising, packaging, labeling, pricing, product placement, store location, store appearance, and employee policies" since WSI's founding in 1956. The alleged "marketing deceptions"—purported descriptions of Defendants' goods, brands, and stores as "premier," "high-quality" or "luxurious"—are nothing more than marketing "puffery"—statements of opinion that are not susceptible to any measurement, and could not be reasonably relied on or form the basis of clams for fraud or deception. Despite this, the TAC goes to great lengths to allege these representations constitute Defendants' decades-long scheme to establish themselves as the "premier" purveyors of "high-quality" goods, so that they could dupe unsuspecting customers into purchasing apparently "low quality" sheets and pillowcases. This is nonsensical.

When the true nature of Plaintiff's claim is brought into focus—that WSI, WSDTC, and WSA improperly counted and/or disclosed individual threads in the two-ply bedding that he purchased—it is clear that the TAC must be dismissed. Plaintiff's claims arising from bedding other than the two-ply bedding he purchased fail. Plaintiff lacks standing to pursue claims for violation of California's Consumers Legal Remedies Act (the "**CLRA**"), False Advertising Law (the "**FAL**"), violation of California's Unfair Competition Law (the "**UCL**"), breach of contract, breach of implied covenant, and unjust enrichment based on advertising that Plaintiff did not view, or products that Plaintiff did not purchase because Plaintiff cannot establish any injury arising from such advertising or products. Furthermore, because Plaintiff does not allege that WSS, Pottery Barn, PBKids, PBteen, or West Elm sold or marketed the bedding he purchased, all claims against them fail, and they should be dismissed.

Plaintiff also cannot state any claims based on the bedding he purchased. Plaintiff's CLRA, FAL, UCL claims fail because WSI's, WSDTC's, and WSA's purported advertising of the bedding as "600-thread-count two-ply" complies with federal regulations and, regardless, the advertising is not untrue or misleading as it clearly identifies the bedding as "two-ply." Plaintiff's breach of contract and implied covenant claims fail because Plaintiff has not alleged any pre-suit notice or any actual breach. Finally, Plaintiff's unjust enrichment claim fails because it is not a cognizable claim in California and—even if it is treated as one—it is duplicative of Plaintiff's other claims, barred because Plaintiff has alleged a contract between the parties, and unavailing because Plaintiff has not alleged that WSI, WSDTC, or WSA unjustly retained any benefit.

## II. RELEVANT BACKGROUND

### A. Relevant Allegations

#### 1. The Parties

Plaintiff is a citizen and resident of Kentucky. (Dkt. 22 (TAC) ¶ 26.)

Plaintiff alleges that: (1) WSI sells home furnishings through retail stores, catalogs and e-commerce, and owns and operates several brands, *inter alia*, Williams-Sonoma Home, which Plaintiff alleges WSI opened in 2005 as its upscale division; (2) WSDTC is a wholly-owned subsidiary of WSI, and manages WSI's online and catalog sales; (3) WSA is a wholly-owned

subsidiary of WSI, and is responsible for advertising WSI's products; (4) WSS is a wholly-owned subsidiary of WSI, and is responsible for operating WSI's brick-and-mortar stores; (5) Pottery Barn, PBKids, and PBteen are a wholly-owned subsidiaries of WSI, and sell furniture and home furnishings through retail stores, Pottery Barn catalogs, and Pottery Barn's e-commerce website; (6) West Elm is a wholly-owned subsidiary of WSI, and sells furniture and home furnishings through its retail stores, catalogs, and e-commerce website. (*Id.* ¶¶ 27-36.)

## 2. Plaintiff's Alleged Purchase

Plaintiff alleges that, in early 2015, he wanted to purchase a set of sheets and pillowcases for his wife for Valentine's Day. (Dkt. 22 (TAC) ¶ 132.) Plaintiff had "purchased other items from Williams-Sonoma and was aware that it would be more expensive than buying from other retailers," but believed it would be worth the expense to provide his wife "soft, luxurious, high-quality sheets" to mark the special occasion. (*Id.*)

On or about February 10, 2015, Plaintiff purchased Williams-Sonoma Home-branded "Signature 600-Thread-Count Sateen Bedding" and a set of matching pillowcases (collectively, the "**WSH Bedding**") from the Williams-Sonoma Home website because "Williams-Sonoma Home products are not sold in [his] home state." (Dkt. 22 (TAC) ¶¶ 133, 134.) Plaintiff has never entered a WSI-brand store that sells or markets bedding. (*Id* ¶ 131.) Plaintiff alleges, for the first time in the TAC, that he consulted an unidentified Williams-Sonoma Home catalog before making his purchase. (*Id.* ¶ 132.) Plaintiff does not allege that the WSH Bedding was listed in the catalog, or that he made the purchase through the catalog.

Plaintiff chose the WSH Bedding because the Williams-Sonoma Home "website advertised [it] as being 600 thread count, made in Italy, made of Egyptian cotton, and the retailer's 'Signature' line." (Dkt. 22 (TAC) ¶ 133.) Plaintiff alleges that the product listing for the WSH Bedding described it as "[s]ewn from lustrous 600-thread-count two-ply Egyptian-cotton sateen" and "Italian bedding." (*Id.* ¶ 135.) The final cost was $774.20. (*Id.* ¶ 137.)

Plaintiff alleges that, when he received the WSH Bedding, it was not "high quality," "extremely soft." or "luxurious." (Dkt. 22 (TAC) ¶ 140.) Plaintiff decided not to give it to his wife. (*Id.*) Plaintiff alleges that "testing that complies with the ASTM International Standard

Designation D3775-12" establishes that the WSH Bedding 291 thread count. (*Id*. ¶ 72.) Plaintiff does not state what he did with the WSH Bedding or if he tried to return it.

### 3. Allegations Regarding Products Other Than The WSH Bedding

The TAC is not limited to the WSH Bedding. The TAC also includes allegations about products offered by certain Defendants, but which were not purchased by Plaintiff: (1) Pottery Barn's "700 THREAD-COUNT SHEET SET" ("**Pottery Barn Sheets**"), which Plaintiff alleges has "a thread count of approximately 570"; (2) PBteen's "400 Thread-Count Sheet Set" ("**PBteen Sheets**"), which Plaintiff alleges has "a thread count of approximately 208"; and (3) West Elm's "350 Thread Count Organic Cotton Sateen Sheet Set" ("**West Elm Sheets**"), which Plaintiff alleges "has a thread count of approximately 320." (Dkt. 22 (TAC) ¶¶ 81, 84, 87.)

Based on his purchase of the WSH Bedding, and his alleged testing of a single set of the Pottery Barn Sheets, PB Teen Sheets, and the West Elm Sheets, Plaintiff purports to bring claims arising from no less than 30 different bedding products (the "**Unpurchased Products**") based solely on Plaintiff's allegation that Defendants "advertised [them] as having higher-thread counts (thread counts over 350)." (Dkt. 22 (TAC) ¶¶ 76, 78.)

### B. Procedural History

Plaintiff filed the Complaint on January 29, 2016 and FAC on March 8, 2016 in California state court. (Dkt. 1 at 1:13-15.) Defendants filed a Notice of Removal of the FAC on March 23, 2016. (*Id*.) On April 20, 2016, Defendants filed a motion to dismiss the FAC. (Dkt. 12.) While the motion was pending, the parties stipulated that Plaintiff could file a Second Amended Complaint ("**SAC**") and Third Amended Complaint ("**TAC**"). (Dkt. 19.). Plaintiff filed his SAC on May 10, 2016, and his TAC on June 6, 2016. (Dkt. 21, 22.) On June 23, 2016, the parties stipulated to extend Defendants' time to respond to the TAC to June 27, 2016. (Dkt. 25.)

### C. Plaintiff's Claims

Based on the allegations in the TAC, Plaintiff has asserted the following claims: (1) "Consumer Legal Remedies Act" under Cal. Civ. Code § 1750; (2) "Misleading and Deceptive Advertising" under Cal. Bus. & Prof. Code § 17500; (3) "Untrue Advertising" under Cal. Bus. & Prof. Code § 17500; (4) "Unlawful Business Practices" under Cal. Bus. & Prof. Code § 17200; (5)

"Unfair Business Practices" under Cal. Bus. & Prof. Code § 17200; (6) "Fraudulent Business Practices" under Cal. Bus. & Prof. Code § 17200; (7) "Breach of Contract"; (8) "Breach of Implied Covenant of Good Faith and Fair Dealing"; and (9) "Unjust Enrichment." (Dkt. 22 (TAC) ¶¶ 144-238.) Plaintiff prays for an injunction, rescission, damages, and restitution. (*Id*. at Prayer.)

## III.  STANDARDS APPLICABLE TO THE MOTION TO DISMISS

A motion to dismiss should be granted when the complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127, S. Ct. 1955, 1973, 167 L. Ed. 929, 949 (2007). The complaint must plead sufficient facts from which a court could "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 26 868, 884 (2009). Although courts draw reasonable inferences in favor of the non-moving party in ruling on a motion to dismiss, a valid legal theory must exist to save a claim from dismissal. *Anderson v. Clow*, 89 F.3d 1399, 1403 (9th Cir. 1996). Courts not need "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Complaints that demonstrate "an obvious alternative explanation of legality" do not plausibly establish a claim to relief. *Iqbal*, 556 U.S. at 682.

## IV.  PLAINTIFF LACKS STANDING TO PURSUE CLAIMS OTHER THAN THOSE RELATED TO THE WSH BEDDING

### A.  Plaintiff Does Not Have Standing To Pursue CLRA, FAL, Or UCL Claims Based On Products He Did Not Purchase Or Advertising He Did Not View

To have standing under the CLRA or FAL, a plaintiff must allege an economic injury caused by defendant's purported misrepresentation. *Guttmann v. La Tapatia Tortilleria, Inc.*, 2015 U.S. Dist. LEXIS 156800, at *6 (N.D. Cal. Nov. 18, 2015). Similarly, standing under the UCL requires that plaintiffs "allege facts showing that they lost money or property as a result of Defendants' alleged unlawful, unfair, or fraudulent acts." *Merritt v. Countrywide Fin. Corp.*, 2014 U.S. Dist. LEXIS 142842, at *11 (N.D. Cal. Oct. 7, 2014). Thus, under the CLRA, FAL, and UCL, a plaintiff alleging claims based on purported false statements does not have standing to pursue claims arising from products he did not purchase or advertising statements he did not encounter. *See, e.g., Arroyo v. TP-Link USA Corp.*, 2015 U.S. Dist. LEXIS 133473, at **9-11

SMRH:478145365.11

(N.D. Cal. Sept. 29, 2015) (dismissing UCL, FAL and CLRA claims because plaintiff did not have "standing for products the Plaintiff did not purchase, or whose marketing material he did not view."); *Leonhart v. Nature's Path Foods, Inc.*, 2014 U.S. Dist. LEXIS 46413, at **14-15 (N.D. Cal. Mar. 31, 2014) (dismissing UCL and FAL claims because plaintiff lacked standing to "assert[] claims regarding…statements she never saw and products she did not buy.").[2]

Plaintiff purchased the WSH Bedding. (Dkt. 22 (TAC) ¶¶ 136-137.) Despite this, he seeks to pursue claims arising from all sales of "higher thread count"—arbitrarily defined by Plaintiff as anything higher than 350—sheets and pillowcases sold by Defendants including, but not limited to, the Unpurchased Bedding. (*Id*. ¶¶ 14, 76, 118.) Because Plaintiff did not purchase these products, he cannot establish any injury related to them, and lacks standing to pursue CLRA, UCL, or FAL claims.

Contrary to Plaintiff's contention, "[t]he resolution of the asserted claims" will not be the "same between the both the bedding [Plaintiff] purchased and the [Unpurchased Bedding]." (*Id*. ¶ 78.) It is not enough to claim that they are all "sheets and accompanying pillowcases." In fact, Plaintiff has confirmed that the sheets and pillowcases identified in the TAC are materially different. Plaintiff contends that WSH Bedding that he purchased is marketed as "600-count two-ply," is actually "two-ply," and has an actual thread count of 582 when the threads in the "two-ply" bedding are counted according to federal law. (Dkt. 1-10 (FAC) ¶ 3 ("WSI multiplied the true thread count of 291 by the number of plies, here two, to get nearer to the advertised 600 thread counts."); Dkt. 22 (TAC) ¶ 71.) The other sheets that Plaintiff allegedly tested—the Pottery Barn Sheets, PBteen Sheets, and West Elm Sheets—are all marketed as "one-ply," are "one-ply,"

[2] *See also Granfield v. Nvidia Corp.*, 2012 U.S. Dist. LEXIS 98678, at **18-19 (N.D. Cal. 2012) ("A plaintiff has standing to assert injury based on a defective product or false advertising only if the plaintiff experienced injury stemming from the purchase of that product."); *Larsen v. Trader Joe's Co.*, 2012 U.S. Dist. LEXIS 162402, at *14 (N.D. Cal. June 14, 2012) (dismissing claims based on unpurchased products with prejudice because, "as a matter of law, [plaintiffs] could not have suffered a particularized injury as required by Article III."); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 U.S. Dist. LEXIS 6371, at **7-8 (N.D. Cal. Jan. 10, 2011) (dismissing claims because "Plaintiff has not…alleged that he purchased Defendant's Dibs products or otherwise suffered any injury or lost money or property with respect to those products."); *Johns v. Bayer Corp.*, 2010 U.S. Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010) (dismissing UCL and CLRA claims because plaintiff cannot "expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon.").

and, thus, are not subject to the alleged multiplication of threads.[3]  With regard to the other Unpurchased Bedding, Plaintiff has done nothing more than list it in the TAC and allege it has advertised thread counts of more than 350.  This is not sufficient to establish standing to pursue claims based on the two-ply bedding that Plaintiff purchased.  *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1141-42 (N.D. Cal. 2013) (dismissing with prejudice claims based on non-purchased products because "Plaintiffs simply provide a list of Non-Purchased Products, attach barely-legible labels…and assert that these labels are unlawful or misleading.  This is not enough….") (internal citations omitted).[4]

Nor does Plaintiff's claim that the WSH Bedding and the Unpurchased Bedding were "advertised as having higher-thread counts (thread counts over 350)" serve to justify resolving Plaintiff's distinct claim along with claims related to the Unpurchased Products.  (Dkt. 22 (TAC) ¶ 77(c).)  Plaintiff has provided no basis for his claim that bedding with thread counts over 350 is "higher thread count" bedding, or that all such bedding should be treated as similar.  The ASTM standards cited at length in the TAC do not support such a contention (in fact, they relate solely to Plaintiff's allegations regarding how two-ply yarns should be counted).  (*See id.* ¶¶ 46-60.)

---

[3]  Plaintiff admits that the Pottery Barn Sheets, PBteen Sheets, and West Elm Sheets were marketed as one-ply and are one-ply.  (Dkt. 1-10 (FAC) at ¶¶ 60, 63, 66.).  Plaintiff has omitted these allegations from the TAC to attempt to obfuscate the clear differences between the bedding he purchased and the representations about it and the Unpurchased Bedding and representations made about it.  Allegations in prior complaints, however, are judicial admissions, and should not be disregarded in ruling on the motion to dismiss.  *Andrews v. Metro N. C. R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989) ("A party…cannot advance one version of the facts in [his] pleadings, conclude that [his] interests would be better served by a different version, and amend [his] pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories.'") (internal citations omitted); *Robinson v. Salazar*, 885 F. Supp. 2d 1002, 1025 (E.D. Cal. 2012) ("[T]he prior pleading may be admissible in evidence against the pleader; e.g., as an admission or prior inconsistent statement by the pleader:  The amendment of a pleading does not make it any the less an admission of the party.") (internal quotations omitted); *Banaga v. Taylor Bean Mortg. Co.*, 2011 U.S. Dist. LEXIS 122804, at **18-19 (N.D. Cal. Oct. 24, 2011) ("[O]rdinarily, a pleading admitting a fact alleged in an antecedent pleading is treated as a binding judicial admission.") (quoting *Harrington v. City of Nashua*, 610 F.3d 24, 31 (1st Cir. 2010)); *Porter v. Winter*, 2007 U.S. Dist. LEXIS 71231 (E.D. Cal. Sept. 14, 2007) ("The amendment of a pleading does not make it any the less an admission of the party.").

[4]  *See also Dysthe v. Basic Research LLC*, 2011 U.S. Dist. LEXIS 137315, at *13 (C.D. Cal. June 13, 2011) (holding that plaintiff lacked standing to bring claims because, although the products had similar ingredients, "[h]aving a few common ingredients is simply not enough…  In fact, this is true for just about any type of product.  After all, just because an Old Fashioned and a Manhattan both have bourbon doesn't mean they're the same drink.").

Plaintiff does not allege that Defendants marketed bedding with thread counts 350 or greater as "higher thread count" bedding. (*Id.* ¶ 2 ("Over the last two decades, unnamed "manufacturers, merchants, and marketers have…educate[d] consumers about factors that lead to better quality sheets" including "the fabric's thread count, with the message being 'the higher, the better.'"))

Similarly, the only advertising material for the WSH Bedding that Plaintiff viewed was the listing for the WSH Bedding on the Williams-Sonoma Home website. Plaintiff, however, asserts broad claims based on, *inter alia*, "descriptions of [Defendants'] offerings" via "the Internet, catalogs, and showrooms, marketing and promotional materials…." (Dkt. 22 (TAC) ¶ 173.) Plaintiff cannot pursue claims based on purported misrepresentations regarding bedding made in "showrooms" or stores because he admits that he has never visited any showroom or store owned or operated by Defendants that advertises or sells bedding. (*Id.* ¶ 131.) Further, Plaintiff cannot state claims based on the unidentified Williams-Sonoma Home catalog that he allegedly reviewed before his purchased—an allegation made for the first time in the TAC. (*Id.* ¶ 132.)[5] Plaintiff has not identified the purported misrepresentations contained in the unidentified catalog (or a purported misrepresentation made in any catalog whatsoever), has not identified the specific products advertised, or even alleged that the WSH Bedding was in the unidentified catalog.

Instead of identifying specific misrepresentations, Plaintiff attempts to allege that Defendants "are engaged in a continuous and concerted marketing pattern designed to…make [consumers] believe that WSI's Brands are purveyors or high quality, luxury goods" (Dkt. 22 (TAC) ¶ 40.) Plaintiff supports his allegations with purported quotations of certain of Defendants' websites that use words like "premier," "high-quality," "stylish," "quality," and "luxury" (*id.* ¶¶ 40-45) and his unsupported contention regarding Defendants' "sleek high-end catalogs and stores designed to appeal to sophisticated and affluent consumers" (*id.* ¶ 66). Plaintiff's vague and unsupported allegations, however, do not establish that he has standing to pursue claims based on advertising he did not see.

---

[5] Indeed, in the FAC, Plaintiff did not allege that he reviewed any catalogs, and admitted that he solely "rel[ied] on WSI and its Advertising and Marketing Subsidiaries' representations about the product on WSI's website." (Dkt. 1-10 (FAC) at ¶ 119.)

Alleged statements regarding quality or luxuriousness of goods are not "false," nor can they be. Claims regarding the "quality, comfort, elegance, style and prestige" (Dkt. 22 (TAC) ¶ 65) of goods are mere non-actionable "puffery." *Sumer v. Carrier Corp.*, 2015 U.S. Dist. LEXIS 20731, at *4 (N.D. Cal. Feb. 20, 2015) (dismissing CLRA, UCL, and FAL claims because "[g]eneral statements about the reliability and quality of [defendant's goods] are non-actionable puffery."); *In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010) (representations that products was "were of 'high' or 'superior' quality…are mere puffery and cannot support a claim under the UCL, FAL, or CLRA."). This is because representations about the "quality, comfort, elegance, style and prestige" of goods are "generalized opinions," *Apodaca v. Whirlpool Corp.*, 2013 U.S. Dist. LEXIS 176363, at *13 (C.D. Cal. Nov. 8, 2013), "upon which a reasonable consumer could not rely," *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008). In fact, as this Court has held, advertising bearing words like "luxury," "quality," "comfort," or "elegance," "hardly describes (or 'misdescribes') a 'specific' or 'absolute' characteristic and [is] puffery because it is not 'a specific factual assertion which could be established or disproved through discovery.'" *Long v. Graco Children's Prods.*, 2013 U.S. Dist. LEXIS 121227, at **16-18 (N.D. Cal. 2013) (Orrick, J.) (quoting *Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133 (C.D. Cal. 2005)). In short, there is simply no standard by which to determine whether Defendants' purported representations regarding the "quality" of goods they offer for sale are false. Furthermore, the fact that the purported puffery occurs over time is of no consequence. *Apodaca*, 2013 U.S. Dist. LEXIS 176363, at **13-15 (dismissing claims based on marketing beginning in 1967 that goods were "built to last," "dependable," "built strong," and the brand has "unequaled tradition of quality production and unrivaled performance" because marketing was mere puffery).

Moreover, even if representations about the "quality" of Defendants' goods were not non-actionable puffery, Plaintiff has not alleged any "pattern" of falsity. The TAC does not allege that any product offered for sale by Defendants other than "higher thread count" bedding is not "high quality." Nor has Plaintiff established that the WSH Bedding, Pottery Barn Sheets, PBteen Sheets, West Elm Sheet Sets, or any of the other Unpurchased Bedding are not "high quality."

For example, Plaintiff alleges that the Pottery Barn Sheets are market as "1-PLY" and have an actual single-ply thread count of 570 (Dkt. 1-10 (FAC) ¶ 60 (FAC); Dkt. 22 (TAC) ¶ 18)—a thread count that Plaintiff contends represents the "finest…construction."  (Dkt. 22 (TAC) ¶ 66.) Plaintiff has not even established any basis to determine that a sheet set with a thread count of 291—the alleged thread count of the WSH Bedding—is not quality or luxurious.  Further, although Plaintiff alleges that several "factors…lead to better quality sheets" (*id.* ¶ 2), he has not alleged that Defendants' representations about any of these purported factors are untrue or misleading.[6]

Therefore, Plaintiff lacks standing to pursue claims for any advertising statements other than those he allegedly encountered on the Williams-Sonoma Home website, and his attempt to modify his allegations to support his claim of far-ranging misrepresentations fails.

**B.** **Plaintiff Does Not Have Standing To Pursue Contract Or Unjust Enrichment Claims Based On Products He Did Not Purchase Or Advertising He Did Not View**

To have standing to sue for breach of contract, the plaintiff must be a party to the contract. *Layton v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 97097, at *8 (C.D. Cal. July 23, 2015) ("[O]ne who is not a party to a contract does not have standing to sue for breach of that contract.").  Plaintiff does not have standing to pursue breach of contract or implied covenant claims based on goods he did not purchase.  Even assuming that an advertisement of goods is an offer and purchase of the advertisement constitutes acceptance, as Plaintiff alleges (Dkt. 22 (TAC) ¶¶ 217-221), Plaintiff did not buy the Unpurchased Bedding, so there can be no contract.  Further, to the extent unjust enrichment is even a cognizable claim in California (it is not), a plaintiff must show that he or she was injured by conferring a benefit upon defendant which defendant unjustly retained at plaintiff's expense.  *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 727 (2000).  Because Plaintiff did not purchase anything other than the WSH Bedding, he cannot allege that he conferred a benefit upon Defendants from the Unpurchased Bedding.

---

[6]  Plaintiff made such allegations in the FAC, but has not included them in the TAC.  (Dkt. 1-10 (FAC) at ¶¶ 126, 132, 137; Dkt. 22 (TAC) at ¶¶ 144-238.)

**C.** **Plaintiff Cannot Pursue Claims Against Defendants That Did Not Sell Or Advertise The WSH Bedding**

Plaintiff lacks standing to pursue claims against Defendants that did not sell or advertise the WSH Bedding. Plaintiff alleges that he purchased the WSH Bedding from WSI. (Dkt. 22 (TAC) ¶¶ 131-142.) Plaintiff has, at best, alleged that he relied on advertising on Williams-Sonoma Home's website and in a Williams-Sonoma Home catalog created by WSI, WSDTC, and WSA. (*Id.* ¶¶ 30-31, 134.) Thus, Plaintiff cannot pursue claims against WSS, which manages "WSI's brick-and-mortar stores," (*id.* ¶ 32), because the sole Williams-Sonoma store that Plaintiff visited did not sell or advertise any bedding (*id.* ¶ 131). Plaintiff also cannot pursue claims against or Pottery Barn, PBKids, PBteen, or West Elm because Plaintiff did not view any of their advertising or purchase any of their products. *See, e.g.*, Cal. Civ. Code § 1770(a) (applies only to acts or practices "in a transaction intended…which results in the sale…of goods…to any consumer"); *Arroyo*, 2015 U.S. Dist. LEXIS 133473, at **9-11; *Leonhart*, 2014 U.S. Dist. LEXIS 46413, at **14-15; *Johns*, 2010 U.S. Dist. LEXIS 10926, at *13; *Fulford v. Logitech, Inc.*, 2008 U.S. Dist. LEXIS 95175, at * (N.D. Cal. Nov. 14, 2008) (dismissing CLRA claims because Plaintiff failed to allege that defendant "engaged in such acts in the course of a transaction with him"). A purchase from WSI through the Williams-Sonoma Home website does not give Plaintiff the ability to pursue claims against brands from which Plaintiff has never made a purchase, whose advertising he has never viewed, and whose stores he has never visited just because they are subsidiaries of WSI. *See Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1133 (N.D. Cal. 2013) ("parent-subsidiary relationship…is an insufficient basis, standing alone," for holding defendants liable for one another's conduct). Thus, all claims against WSS, Pottery Barn, PBKids, PBteen, and West Elm must be dismissed.

**V.** **PLAINTIFF'S CLAIMS BASED ON THE WSH BEDDING FAIL**

**A.** **Plaintiff's CLRA Claim Based On the WSH Bedding Fails**

The CLRA prohibits a specified list of deceptive acts or practices, Cal. Civil Code § 1770(a), and a plaintiff must allege a violation of one to bring a claim, *id.* § 1780(a). Plaintiff alleges that WSI, WSDTC, and WSA's purported "mislabeling of the [WSH Bedding] to assert

SMRH:478145365.11

false thread counts" and "active concealment of material facts" violate:  (1) Cal. Civil Code §

1770(a)(5), which prohibits "[r]epresenting that goods…have…characteristics…which they do not

have"; (2) Section 1770(a)(7), which prohibits "[r]epresenting that goods…are of a particular

standard, quality, or grade…if they are of another"; and (3) Section 1770(a)(9), which prohibits

"[a]dvertising goods…with intent not the sell them as advertised."  (Dkt 22 (TAC) ¶¶ 145-160.)

Because Plaintiff's CLRA claims arising from WSI's, WSDTC's, and WSA's alleged

advertisement of the WSH Bedding are "grounded in fraud," they must satisfy Fed. R. Civ. P.

9(b)'s heightened pleading requirements.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th

Cir. 2009); *Johns*, 2010 U.S. Dist. LEXIS 10926, at **13-14.  Fed. R. Civ. P. 9(b) requires a

plaintiff to "state with particularity the circumstances constituting fraud."  Thus, Plaintiff must

allege, in detail, "the who, what, when, where, and how" of the misconduct to state a claim.  *Fazio*

*v. Apple, Inc.*, 2016 U.S. App. LEXIS 3373, at **3-4 (9th Cir. Feb. 25, 2016).  "Allegations based

on information and belief usually do not satisfy the degree of particularity required…."  *Mee v. I A*

*Nutrition, Inc.*, 2015 U.S. Dist. LEXIS 106934, at **28-29 (N.D. Cal. Aug. 13, 2015) (internal

quotations omitted).

### 1.    Plaintiff's CLRA Claim Fails Because Advertising Of The WSH Bedding Complies With Applicable Law

Conduct that complies with state or federal statutes or regulations cannot be a violation of

the CLRA.  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933-34 (9th Cir. 2011).  Here, federal

customs regulations require that individual threads within multi-ply yarns in an imported textile

like the WSH Bedding be counted individually, such that a textile "containing 100 two-ply yarns

in one square centimeter [is] reported as 200 single threads"—exactly how Plaintiff contends WSI,

WSDTC, and WSA counted the threads in the WSH Bedding.  (Dkt. 1-10 (FAC) ¶ 3.)

Plaintiff alleges that the WSH Bedding was "Made in Italy."  (Dkt. 22 (TAC) ¶ 136.)

Imported products are governed by the Customs and Border Protections Regulations of the United

States codified in Title 19 of the Code of Federal Regulations.  19 C.F.R § 141.0 (1973) ("This

part sets forth general requirements and procedures for the entry of imported merchandise….").

Pursuant to 19 C.F.R § 141.81 (1973), "[a] commercial invoice shall be presented for each

shipment of merchandise at the time the entry summary is filed, subject to the conditions set forth in these regulations." The invoice must be "filed for each shipment of merchandise" and "prepared in the manner customary in the trade, [and] contain the information required by §§ 141.86 through 141.89…." 19 C.F.R § 141.83(c)(1) (1973).

19 C.F.R § 141.89 provides that the invoices for certain "classes of merchandise, classifiable under the Harmonized Tariff Schedule of the United States (HTSUS), shall set forth…additional information." Invoices for cotton fabrics must include, *inter alia*, the "[n]umber of single threads per square centimeter (***All ply yarns must be counted in accordance with the number of single threads contained in the yarn; to illustrate: a cloth containing 100 two-ply yarns in one square centimeter must be reported as 200 single threads***)…." 19 C.F.R § 141.89(a) (1973) (emphasis added). Here, the Plaintiff alleges that the WSH Bedding is described as "[s]ewn from lustrous ***600-thread-count two-ply*** Egyptian-cotton sateen" (Dkt. 22 (TAC) ¶ 136 (emphasis added)) and contends that this representation is based on the "multipli[cation] of the true thread count of 291 by the number of plies, here two, to get to the advertised 600 thread counts" (Dkt. 1 (FAC) ¶ 3)—the method required by 19 C.F.R § 141.89. Tellingly, as discussed below, when the threads are counted as required, the purported actual thread count of the WSH Bedding falls well within Plaintiff's alleged "industry standard."

**B.** **Plaintiff Has Not Alleged A CLRA Claim Based On Advertising Of The WSH Bedding With Sufficient Particularity**

Plaintiff must satisfy Rule 9(b) to state a CLRA claim based on alleged false or misleading descriptions of "thread count" in the WSH Bedding. *Fazio*, 2016 U.S. App. LEXIS 3373, at *3; *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 967 (S.D. Cal. 2012) (a plaintiff alleging CLRA violation grounded in fraud "must state the time, place, and specific content of the false misrepresentations as well as the identities of the parties to the misrepresentation" and "set forth an explanation as to why the statement or omission complained of was false and misleading."). Plaintiff has failed to do so.

In particular, Plaintiff has not sufficiently alleged how WSI's, WSDTC's, and WSA's description of the WSH Bedding as "600-thread-count two-ply" is untrue or misleading. The

advertising disclosed that WSH Bedding was "600 thread-count two-ply." (Dkt. 22 (TAC) ¶¶ 71,

135.) Plaintiff admits that the WSH Bedding included 291 "two-ply" yarns (*i.e.*, yarns created by

twisting two threads together) meaning that the total number of "threads" was 582. (Dkt. 1-10

(FAC) ¶ 3.) This was clearly disclosed in the advertising of the WSH Bedding (Dkt. 22 (TAC) ¶

136) in accordance with relevant federal regulations, and the two-ply thread count is well within

the 5% maximum deviation that Plaintiff alleges, without citation, governs the textile industry.

(*Id*. ¶¶ 73-74.)[7] WSI, WSDTC, and WSA did not advertise the WSH Bedding as "600-thread-

count" alone or as "600-thread-count single-ply," and cannot be subject to liability under the

CLRA based on Plaintiff's apparent subjective belief that the WSH Bedding was "600-thread-

count single-ply." *Fazio*, 2016 U.S. App. LEXIS 3373, at **3-4 (dismissing claim that

representations were misleading because "[f]ailure to meet plaintiffs' undefined expectations of

consistency does not render…representations misleading.")

       Plaintiff's allegations regarding purported "active concealment of material facts" fail for

the same reason. The description of the WSH Bedding as "600 thread-count two-ply" is accurate,

and complies with applicable law. No CLRA claim may be stated on this basis. *Alvarez*, 656 F.3d

at 933-34. Furthermore, Plaintiff cannot establish that WSI, WSDTC, or WSA "actively

concealed" any facts about the WSH Bedding. To state a claim for active concealment, a plaintiff

must allege "specific affirmative acts on the part of the defendants in hiding, concealing or

covering up the matters complained of." *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1176

(E.D. Cal. 2013) (internal quotations omitted). Plaintiff has not alleged facts supporting his

"active concealment" claim and only concludes that WSI, WSDTC, and WSA

"conceal[ed]…material facts. (Dkt. 22 (TAC) ¶¶ 154-156; *see also* Dkt. 22 (TAC) ¶¶ 112(d)-(e),

---

[7] Because the advertising for the WSH Bedding disclosed that it is "600-thread-count two-ply," it complies with the FTC staff advisory opinion cited by Plaintiff, in which the FTC opined that "[a] ***possible*** non-deceptive way to disclose both the thread count and the yarn ply would be to state, ***for example***, '300 thread count, 2 ply yarn.'" (Dkt. 22 (TAC) ¶ 58 (emphasis added).) Furthermore, the FTC staff advisory opinion ***does not*** "confirm[] that a yarn's ply count should not be included in calculating thread count." (*Id*.) Instead, it clearly provides that one possible method to disclose "thread count and yarn ply" would be to state a thread count and the number of plies. The only potentially deceptive representation identified in the opinion is "a representation of '600 thread count'" alone, and without any indication of the number of plies. (*Id*.)

1   113, 116, 117.)  Conclusory allegations of active concealment are insufficient to state a claim.

2   *Herron*, 924 F. Supp. 2d at 1176 (dismissing claim because "Plaintiff's only active concealment

3   allegation is the conclusory assertion that Defendants actively concealed material facts from

4   Plaintiff and the Class.").

5            **C.       Plaintiff's FAL Claims Based On The WSH Bedding Fail**

6            The FAL "makes it unlawful for any person to 'induce the public to enter into any

7   obligation' based on a statement that is 'untrue or misleading, and which is known, or which by

8   the exercise of reasonable care should be known, to be untrue or misleading.'"  *Davis v. HSBC*

9   *Bank*, 691 F.3d 1152, 1161-62 (9th Cir. 2012) (quoting Cal. Bus. & Prof. Code § 17500).  Just as

10  with the CLRA, FAL claims "grounded in fraud" must satisfy Rule 9(b)'s heightened pleading

11  requirements.  *Fazio*, 2016 U.S. App. LEXIS 3373, at *3.

12           Plaintiff's FAL claims are based on WSI's, WSDTC's, and WSA's alleged false or

13  misleading description of the thread count of the two-ply WSH Bedding on a single page on the

14  Williams-Sonoma Home website.  (Dkt. 22 (TAC) ¶¶ 136-137, 173, 179.)  Plaintiff alleges that he

15  purchased the WSH Bedding because the Williams-Sonoma Home website "boasted" that it was

16  "[s]ewn from lustrous 600-thread-count two-ply Egyptian-cotton sateen" and made in Italy.  (*Id.* ¶

17  134.)  Plaintiff alleges that he "expected the sheets to be of high quality, extremely soft and

18  luxurious."  (*Id.* ¶ 140).  Plaintiff's allegations are insufficient to state a claim under the FAL

19  because:  (1) the "thread count" disclosures comply with federal law; and (2) Plaintiff has failed to

20  allege how WSI's, WSDTC's, or WSA's advertising of the WSH Bedding as "600-thread-count

21  two-ply" is untrue or misleading.

22           As discussed above, federal customs regulations require that threads within multi-ply yarns

23  in an imported textile like the WSH Bedding be counted individually—which is how the threads

24  were counted.  19 C.F.R § 141.89(a).  Because the WSH Bedding's threads were counted in

25  compliance will applicable law, there is no violation of the FAL.  *Alvarez*, 656 F.3d at 933-34;

26  *Davis*, 691 F.3d at 1165; *Parent v. MillerCoors LLC*, 2015 U.S. Dist. LEXIS 145071 (S.D. Cal.

27  Oct. 26, 2015); *POM Wonderful LLC v. Coca Cola Co.*, 2013 U.S. Dist. LEXIS 33501, at **14-15

28  (C.D. Cal. Feb. 13, 2013); *Cel-Tech Comms., Inc. v. L.A. Cellular Tell. Co.*, 20 Cal. 4th 163, 183

(1999).  Furthermore, Plaintiff has not met Rule 9(b)'s particularity requirement.  As discussed above, Plaintiff has not sufficiently alleged how the description of the WSH Bedding as "600-thread-count two-ply" is untrue or misleading.  The advertising clearly discloses that WSH Bedding is "600 thread-count two-ply"—a disclosure that is completely accurate under applicable law.  Plaintiff cannot state a FAL claim based on his  subjective belief that the WSH Bedding was "600-thread-count single-ply."  *Fazio*, 2016 U.S. App. LEXIS 3373, at **3-4.[8]

### D.    Plaintiff's UCL Claims Based On The WSH Bedding Fail

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. Prof. Code § 17200.  UCL claims are analyzed under one or more of three prongs: "unlawful," "unfair" and "fraudulent."  Like the CLRA and FAL claims, Plaintiff's UCL claims arising from WSI's, WSDTC's, or WSA's advertisement of the WSH Bedding are grounded in fraud, and must satisfy the heightened pleading requirements of Rule 9(b).  *Fazio*, 2016 U.S. App. LEXIS 3373, at *3.  Plaintiff has failed to allege a claim under any of the UCL's prongs.

### 1.    Plaintiff Has Not Alleged A Claim Under The Unlawful Prong

A UCL cause of action based on an unlawful business practice borrows violations of other laws and treats those violations as independently actionable.  *Farmers Ins. Exchange v. Sup. Ct.*, 2 Cal. 4th 377, 383 (1992).  A plaintiff must specifically identify the underlying statute that has been violated.  *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).  As with the FAL, conduct that is authorized by law constitutes a "safe harbor" precluding liability under the UCL.  *Cel-Tech*, 20 Cal. 4th at 182.

Plaintiff alleges that the "business practices alleged" in the TAC are unlawful under:  (1) "the Federal Trade Commission Act (FTCA) § 5(a), 14 U.S.C.A. § 45(a), which designates as 'unlawful' all 'unfair or deceptive acts or practice in or affecting commerce'"; (2) the CLRA; and

---

[8]  Plaintiff asserted FAL claims based on the "origin," "yarn quality" or other alleged advertised characteristics of the WSH Bedding in the FAC.  (Dkt. 1-10 (FAC) ¶¶ 126, 132, 137).  Defendants' moved to dismiss these claims, and they do not appear in the TAC.  (*See* Dkt. (TAC) 22 ¶¶ 170-185).  Thus, Defendants do not address them.  To the extent Plaintiff intends to proceed based on statements other than thread count, any FAL claims are barred for the reasons set forth in Defendants' motion to dismiss the FAC.  (Dkt. 12 at 11:12-12:13.)

(3) the FAL. (Dkt. 22 (TAC) ¶¶ 188-193.)[9]  Plaintiff's "Unlawful Business Practice" claim fails. As set forth above, Plaintiff has failed to allege a violation of the FTCA, CLRA or FAL because: (1) the "two-ply" thread count advertised for the WSH Bedding complies with federal law; (2) Plaintiff has failed to allege anything false or untrue in the advertising of the WSH Bedding as "600-thread-count two-ply"; and (3) Plaintiff cannot pursue any claims based on mere non-actionable "puffery" about the WSH Bedding such as claims that it is "soft" or "luxurious."

### 2.    Plaintiff Has Not Alleged A Claim Under The Unfair Prong

Because "the precise contours of an 'unfair business practice' under the UCL are currently in flux," it appears that a plaintiff alleging a violation of the "unfair prong" of the UCL must satisfy one of two tests. *Hodsdon v. Mars, Inc.*, 2016 U.S. Dist. LEXIS 19268, at *21 (N.D. Cal. Feb. 17, 2016).  Under the first test, a plaintiff must establish that the alleged unfair business practice "offends an established public policy or…is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id*. at *21 (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886-87 (1999)).  This test requires "courts to examine the practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Id*. (internal quotations omitted).  Despite the fact that this test is sometimes applied by federal courts, the California Supreme Court "has criticized this approach…as 'too amorphous' to provide meaningful 'guidance to courts and businesses.'" *Id*. (quoting *Cel-Tech*, 20 Cal. 4th at 185).  Under the second test, a claim for violation of the unfair prong of the UCL must "be tethered to some specific constitutional, statutory, or regulatory provisions." *Hodsdon*, 2016 U.S. Dist. LEXIS 19268, at *21.

---

[9]  Despite the fact that Plaintiff spends several pages of the TAC describing ASTM International's purported "standard test," the FTC staff opinion, and alleged consumer research articles (*see* Dkt. 22 (TAC) at ¶¶ 46-61), Plaintiff has not alleged that they constitute a "law" that may serve as a predicate violation under the unlawful prong because they are not. (*Id*. at ¶¶ 186-195.)  That the ASTM test is purportedly "universally used in the textile industry" does not make it law (and, as Plaintiff's own allegations confirm, is not true). (*Id*. at ¶¶ 3, 46.)  In fact, the ASTM test is not even publicly-available, and the portions included in the TAC are reprinted only with permission from ASTM.  Similarly, the FTC opinion is merely a "staff advisory" opinion, is governed by 16 C.F.R. §§ 1.1 *et seq*., and is subject to revision or rescission by the FTC.

A business practice that is authorized by law cannot be considered unfair under either test. *Churchill Village, LLC. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1130 (N.D. Cal. 2000). Therefore, neither test is necessary because WSI's, WSDTC's, and WSA's alleged unfair conduct is expressly authorized by law. *Id*. at 1130-31. Regardless, the TAC fails the first test because it does not establish that WSI, WSDTC's, and WSA's marketing of the WSH Bedding as "600-thread-count two-ply" is untrue or deceptive. Thus, it cannot be considered "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See Morello v. AMCO Ins. Co.*, 2014 U.S. Dist. LEXIS 74080, at * (N.D. Cal. May 29, 2014). The TAC also fails the second test because it does not establish specific violations of constitutional, statutory, or regulatory provisions" including, but not limited to the FTCA, CLRA, or FAL for the reasons set forth above.

### 3. Plaintiff Has Not Alleged A Claim Under The Fraudulent Prong

To state a claim for violation of the fraudulent prong of the UCL, Plaintiff must establish that "members of the public are likely to be deceived." *Davis*, 691 F.3d at 1169; *Morgan v. AT&T Wireless Servs., Inc.,* 177 Cal. App. 4th 1235, 1254 (2009). Courts apply a "reasonable consumer" standard to make this determination. *Davis*, 691 F.3d at 1169 (citing *Puentes v. Wells Fargo Home Mortg., Inc*., 160 Cal. App. 4th 638, 645 (2008)). Dismissal of fraudulent business practice claims is appropriate where review of a allegedly fraudulent statements demonstrates that consumer confusion is unlikely as a matter of law. *See, e.g.*, *Werbel ex rel v. Pepsico, Inc*., 2010 U.S. Dist. LEXIS 76289, *8 (N.D. Cal. Jul. 2, 2010); *Videtto v. Kellogg USA*, 2009 U.S. Dist. LEXIS 43114, *8 (E.D. Cal. May 20, 2009).

Here, both the advertising for, and packaging of, the WSH Bedding clearly and accurately describes the WSH Bedding as "600-thread-count two-ply":

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

| Packaging | Advertising |
|---|---|
|  | |

(Dkt. 22 (TAC) ¶¶ 71, 136.)  Even if this description did not comply with federal law (it does), as

set forth above, Plaintiff does not sufficiently allege how it would deceive a reasonable consumer.

Plaintiff's claim for fraudulent business practice fails.

**E.      Plaintiff's Breach Of Contract Claim Arising From The WSH Bedding Fails**

**1.      Plaintiff's Contract Claim Fails Because There Was No Pre-Suit Notice**

To plead a claim for breach of contract under California law, a plaintiff must plead that he

provided the defendant with pre-suit notice of the alleged breach.  Cal. Com. Code § 2607(3)(A)

("The buyer must, within a reasonable time after he or she discovers or should have discovered

any breach, notify the seller of breach or be barred from any remedy[.]"); *Alvarez*, 656 F.3d at

931-932 (affirming district court's dismissal of breach of contract claim because plaintiff had

failed to allege pre-suit notice).  "The purpose of giving notice of breach is to allow the breaching

party to cure the breach and thereby avoid the necessity of litigating the matter in court."  *Alvarez*,

656 F.3d at 932 (dismissing breach of contract claim without leave to amend for failure to provide

pre-suit notice); *see also In re iPhone 4S Consumer Litig.*, 2014 U.S. Dist. LEXIS 19363, at **27-

28 (N.D. Cal. Feb. 14, 2014) ("The notice requirement 'is designed to allow the seller the opportunity to repair the defective item, reduce damages, avoid defective products in the future, and negotiate settlements.'") (quoting *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116, 135 (2008)).

Plaintiff's contract claim fails because he has not alleged that he provided pre-suit notice to Defendants.  (*See* Dkt. 22 (TAC) ¶¶ 133-143, 216-224.)  Plaintiff alleges that he purchased the WSH Bedding on or around February 10, 2015.  (*Id.* ¶ 133.)  Plaintiff alleges that he inspected the WSH Bedding upon receipt and "was so disappointed in the quality…that he decided not to give them to his wife for Valentine's Day."  (*Id.* ¶ 140.)  Plaintiff does not allege that he attempted to return the WSH Bedding, or otherwise notify Defendants of their alleged breach despite feeling "betrayed."  (*Id.* ¶ 141.)  Instead, Plaintiff merely filed the his original complaint nearly a year (and his TAC nearly a year and a half) after initially receiving—and allegedly being disappointed with—the WSH Bedding.  Because Plaintiff has not alleged any pre-suit notice, his contract claim should be dismissed with prejudice.  *Alvarez*, 656 F.3d at 932-35; *Davis v. Apperience Corp.*, 2014 U.S. Dist. LEXIS 154758, at **10-16 (N.D. Cal. Oct. 31, 2014) (dismissing breach of contract claim for failure to provide pre-suit notice).

### 2.  Plaintiff's Contract Claim Fails Because There Is No Alleged Breach

To state a claim for breach of contract, a plaintiff must plead "(1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom."  *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1971).  Even assuming that a valid contract exists,[10] Plaintiff has not alleged any breach.  Plaintiff alleges that the "webpage offering" the WSH Bedding contained the following terms:  that the WSH Bedding was "[s]ewn from 600-thread-count two-ply Egyptian cotton sateen," and that Plaintiff would

---

[10]  Plaintiff alleges that "***Defendants***' packaging, labeling and offer to sell" the WSH Bedding constituted an offer that he accepted when he purchased the WSH Bedding.  (Dkt. 22 (TAC) ¶¶ 136, 217-219 (emphasis added).)  Even assuming that this creates a valid and enforceable contract (Defendants' do not dispute this here, as it is not necessary for the Court to decide the motion), the contracting parties could only be WSI—the entity offering the WSH Bedding for sale—and Plaintiff.  Furthermore, Plaintiff did not view the packaging prior to his purchase and, as such, it cannot constitute an offer under Plaintiff's theory.

1    receive the WSH Bedding as advertised.  (Dkt. 22 (TAC) ¶¶ 136, 217-219.)  Plaintiff alleges that

2    WSI breached the alleged contract by failing to provide him with bedding that matched the

3    description.  (*Id*. ¶ 223.)  This is not true.  The description of WSH Bedding as "600-thread-count

4    two-ply" is factually accurate and complies with applicable federal law.  Furthermore, Plaintiff has

5    not sufficiently alleged that WSI's alleged conduct was the proximate cause of his alleged injury.

6    Plaintiff does not allege that he gave WSI notice of its alleged breach to enable it to cure, or

7    attempted to return the WSH Bedding when he became aware of the fact that it did not comply

8    with the alleged contract.  *Alvarez*, 656 F.3d at 932.

9    **F.**    **Plaintiff's Breach Of Implied Covenant Claim Arising From The WSH Bedding Fails**

10

11        **1.**    **Plaintiff's Implied Covenant Claim Fails Because There Was No Pre-Suit Notice**

12        Cal. Com. Code § 2607(3)(A)'s pre-suit notice requirement applies equally to claims for

13    breach of contract and breach of implied contract.  *See Davis*, 2014 U.S. Dist. LEXIS 154758, at

14    **13-14 (N.D. Cal. Oct. 31, 2014) (rejecting argument that Cal. Com. Code § 2607(3)(A) does not

15    apply to "common law breaches of contract or implied breaches of the covenant of good faith and

16    fair dealing.").  That Cal. Com. Code § 2607(3)(A)'s  notice requirement applies to breaches of the

17    implied covenant is particularly clear in this case, as the purported breach was the sale of a

18    defective or unsatisfactory item, and the purpose of the notice requirement is to afford the seller

19    with an opportunity to remedy the alleged breach.  *Alvarez*, 656 F.3d at 932; *In re iPhone 4S*

20    *Consumer Litig.*, 2014 U.S. Dist. LEXIS 19363, at **27-28.  Plaintiff has not alleged any pre-suit

21    notice.  Therefore, his breach of implied covenant claim must be dismissed.

22        **2.**    **Plaintiff's Implied Covenant Claim Fails Because It Is Duplicative Of His Claim For Breach Of Contract**

23

24        Under California law,

25    If the allegations in a breach of implied covenant claim do not go beyond the statement of

26    a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.

27

28    *Davis*, 2014 U.S. Dist. LEXIS 154758, at **16-17 (quoting *Careau & Co. v. Sec. Pac. Bus.*

*Credit, Inc.*, 222 Cal. App. 3d 1371 (1990)). Courts routinely dismiss "claims of breach of the implied covenant of good faith and fair dealing where those claims failed to go beyond the breach of contract claims alleged in those cases." *Id.* Here, Plaintiff's claims for breach of contract and breach of implied covenant are based on identical allegations—namely, that WSI misrepresented thread counts thereby allegedly breaching the parties' express contract and the implied covenant of good faith and fair dealing. (Dkt. 22 (TAC) ¶¶ 216-232.) Thus, Plaintiff's claim for breach of implied covenant must be dismissed. *See, e.g.*, *Am. Marine Corp. v. Blue Shield of Cal.*, 2011 U.S. Dist. LEXIS 40452, at **7-9 (N.D. Cal. Apr. 13, 2011) (dismissing "claim for breach of the covenant of good faith and fair dealing as duplicative of its breach of contract claim.").

### G. <u>Plaintiff's Unjust Enrichment Claim Fails</u>

Plaintiff's claim for unjust enrichment fails because, as discussed above, he has failed to allege any wrongful conduct by WSI, WSDTC, or WSA related to the WSH Bedding. Furthermore, most California courts do not recognize unjust enrichment as "a proper cause of action under California law." *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1028 (N.D. Cal. 2011) ("California courts appear to agree. '[T]here is no cause of action in California for unjust enrichment.'") (quoting *Melchior v. New Line Prod., Inc.*, 106 Cal. App. 4th 779, 793 (2003)); *see also Nguyen v. Wells Fargo Bank N.A.*, 2015 U.S. Dist. LEXIS 100851, at *21 (C.D. Cal. Feb. 18, 2015) ("Plaintiff's unjust enrichment claim fails because the majority of state and federal district courts in California do not recognize unjust enrichment as a freestanding claim."). For this reason, Plaintiff's unjust enrichment claim should be dismissed.

To the extent California courts ever recognize a claim for "unjust enrichment," it is only where the claim seeks restitution. *Arevalo*, 850 F. Supp. 2d at 1028. Where a plaintiff seeks restitution under other legal theories, "the unjust enrichment claim add[s] nothing to the relief available to him," and the claim should be dismissed. *Id.* (dismissing unjust enrichment claim with prejudice where plaintiffs sought restitution under the UCL and FAL).[11] Plaintiff seeks

---

[11] Defendants also note that Plaintiff's unjust enrichment allegations—that Defendants wrongfully accepted and retained benefits, at the expense of Plaintiff, "[a]s a result of [their] unfair and deceptive conduct"—constitute nothing more than "threadbare recitals of the elements of a cause

1  restitution for his CLRA, FAL, and UCL claims.  (Dkt. 22 (TAC) ¶¶ 169, 175, 185, 194, 205,

2  214.)  Moreover, even if the Court were to decide to treat Plaintiff's claim for unjust enrichment as

3  a claim for restitution, it must be dismissed because, under California law, a plaintiff cannot

4  pursue claims for breach of express contract and unjust enrichment.  *Smith v. Allmax Nutrition,*

5  *Inc.*, 2015 U.S. Dist. LEXIS 171897, at **27-28 (E.D. Cal. Dec. 23, 2015) ("In *Astiana* [*v. Hain*

6  *Celestial Grp., Inc.*, 783 F.3d 753, 757 (9th Cir. 2015)], the Ninth Circuit held that '[w]hen a

7  plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract

8  claim seeking restitution.'  'Although [Fed. R. Civ. P. 8] allows a party to state multiple, even

9  inconsistent claims, the rule does not allow a plaintiff invoking state law to assert an unjust

10  enrichment claim while also alleging an express contract.'") (internal citations omitted); *Gerlinger*

11  *v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (Even though [Fed. R. Civ. P.

12  8(e)(2)] allows a party to state multiple, even inconsistent claims, it does not alter a substantive

13  right between the parties and accordingly does not allow a plaintiff invoking state law to an unjust

14  enrichment claim while also alleging an express contract.").

15       Finally, Plaintiff has not alleged any benefit conferred on WSI, WSDTC, or WSA, which

16  they unjustly retained.  The WSI Bedding is marketed accurately and in compliance with

17  applicable law.  Accordingly, even if the Court decides to recognize a claim for "unjust

18  enrichment" (it should not), Plaintiff's unjust enrichment claim should be dismissed.

19  **VI.    PLAINTIFF LACKS STANDING TO PURSUE INJUNCTIVE RELIEF**

20       A plaintiff seeking injunctive relief must allege not only that he "has suffered or is

21  threatened with a 'concrete and particularized' legal harm,…, coupled with 'a sufficient likelihood

22  that he will again be wronged in a similar way.'"  *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. Cal.

23  2007) (internal citations omitted).  A "sufficient likelihood" requires a showing of a "real and

24  immediate threat of repeated injury."  *Id*.  In a class action, "[u]nless the named plaintiffs are

25  themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."

26  *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).  Consumers allegedly misled

27  _____

28  of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, and do not state
    "enough facts to state a claim to relief that is plausible on its face," *Twombley*, 550 U.S. at 570.

1  by product labels lack standing for injunctive relief when there is no danger that they will be

2  misled in the future.  *Dachauer v. NBTY, Inc.*, 2016 U.S. Dist. LEXIS 78213, at **1-2 (N.D. Cal.

3  June 3, 2016).  Here, Plaintiff admits that he would not purchase the WSH Bedding if he knew

4  that it was 291 thread count based on Plaintiff's purported counting method.  Thus, dismissal of

5  Plaintiff's claims and prayer for injunctive relief is proper.  *Id.* (dismissing claims for injunctive

6  relief because plaintiff "alleges that he would not have purchased the [product] had he known

7  what he knows now.  Given what [he] knows now, there's no possibility that he'll be wronged

8  again in a similar way.") (internal citations omitted).

9  **VII.  CONCLUSION**

10      For the foregoing reasons, Defendants respectfully request that the Court grant their

11  motion, and dismiss the TAC with prejudice.

12

13  Dated:  June 27, 2016                    SHEPPARD MULLIN RICHTER & HAMPTON LLP

14

15                              By _____
                                          */s/ Benjamin O. Aigboboh*
16                                         P. CRAIG CARDON
                                           DYLAN J. PRICE
17                                         BENJAMIN O. AIGBOBOH
                                           ERIC J. DIIULIO

18                                         *Attorneys for Defendants*
19                              WILLIAMS-SONOMA, INC., WILLIAMS-
                                SONOMA DTC, INC., WILLIAMS-SONOMA
20                              ADVERTISING, INC., WILLIAMS-SONOMA
                                STORES, INC. POTTERY BARN, INC., POTTERY
21                              BARN KIDS, INC., POTTERY BARN TEEN, INC.,
                                          and WEST ELM, INC.
22

23

24

25

26

27

28