BAKER LAW, PC
George Richard Baker, Cal. Bar No. 224003
436 N. Stanley Avenue
Los Angeles, California 90036
Telephone: 323.452.9685
Email:  richard@bakerlawpc.com

ROSE LAW GROUP, PC
Kathryn Honecker (*pro hac vice*)
Audra Petrolle (*pro hac vice* pending)
Lauren Nageotte (*pro hac vice*)
7144 E. Stetson Drive, Suite 300
Scottsdale, Arizona 85251
Telephone: 480.505.3936
Email:   khonecker@roselawgroup.com
         apetrolle@roselawgroup.com
         lnageotte@roselawgroup.com
         docket@roselawgroup.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM RUSHING, Individually and on Behalf of all Others Similarly Situated, | Case No. 3:16-cv-01421-WHO |
| Plaintiff, | |
| v. | <u>CLASS ACTION</u> |
| WILLIAMS-SONOMA, INC., a Delaware corporation, also d/b/a WILLIAMS-SONOMA and WILLIAMS-SONOMA HOME; WILLIAMS-SONOMA DTC, INC., a California corporation; WILLIAMS-SONOMA ADVERTISING, INC., a California corporation; WILLIAMS-SONOMA STORES, INC., a California corporation; POTTERY BARN, INC., a California corporation; POTTERY BARN KIDS, INC., a California corporation, also d/b/a Pottery Barn Baby; POTTERY BARN TEEN, INC., a California corporation also d/b/a PB TEEN and PB Dorm; WEST ELM, INC., a California corporation; and DOES 1-30, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED CLASS COMPLAINT** |
| | *Assigned to the Hon. William H. Orrick* |
| | Hearing:      August 10, 2016<br>Time:          2:00 p.m.<br>Courtroom:   2 |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 1

STANDARD OF REVIEW ........................................................................................................ 3

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... 4

ARGUMENT ............................................................................................................................. 4

    A.  MR. RUSHING STATED CAUSES OF ACTION UNDER THE CLRA AND FAL .......... 4

        1.  Section 141.89(a) of The Tariff Act Does Not Provide a "Safe Harbor." .......................... 4

        2.  Mr. Rushing's Allegations Satisfied Rule 9(b). ..................................................... 8

        3.  Plaintiff's Thread Count Expectations Were Not Based on Subjective Belief. ................. 9

        4.  Mr. Rushing Sufficiently Pleaded Defendants' Active Concealment. ............................. 10

    B.  MR. RUSHING STATED A CAUSE OF ACTION UNDER THE UCL ......................... 11

        1.  Mr. Rushing has Alleged a Claim Under the Unlawful Prong. ....................................... 11

        2.  Mr. Rushing has Alleged a Claim Under the Unfair Prong. ............................................ 12

        3.  Mr. Rushing has Alleged a Claim Under the Fraudulent Prong. ..................................... 14

    C.  MR. RUSHING STATED CAUSES OF ACTION FOR BREACH OF CONTRACT AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ........ 14

        1.  Defendants Received Sufficient Notice. ........................................................................ 14

        2.  Mr. Rushing Sufficiently Pleaded Breach and Causation. ............................................. 16

        3.  Mr. Rushing is Permitted to Plead in the Alternative. .................................................... 17

    D.  MR. RUSHING STATED A CAUSE OF ACTION FOR UNJUST ENRICHMENT ....... 17

    E.  MR. RUSHING HAS STANDING TO PURSUE INJUNCTIVE RELIEF ...................... 19

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

F.   MR. RUSHING HAS STANDING TO PURSUE CLAIMS FOR UNPURCHASED
     PRODUCTS ................................................................................................. 20

   1.   The Injuries and Claims Associated with the Unpurchased Products Are Substantially
        Similar to Those Associated with the Purchased Product. .................................. 20

   2.   Mr. Rushing's Claims Based on the Unpurchased Products Were Adequately Pled. ...... 22

   3.   Because Mr. Rushing Alleges Substantially Similar Claims and Injury, His Exposure to
        the Advertising of the Unpurchased Products Has No Effect On His Standing to Bring
        the Claims Outlined in the TAC. ..................................................................... 23

G.   MR. RUSHING DOES NOT CHALLENGE MERE "PUFFERY" ................................... 24

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*,
  31 P.3d 821 (Ariz. App. 2001)..................................................................................21

*Ang v. Bimbo Bakeries USA, Inc.*,
  No. 13-cv-01196, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014)..................................21

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) .............................................................................................3

*Armstrong v. Davis*,
  129 S. Ct. 1937 (2009) ...........................................................................................22

*Abramson v. Gardner*,
  170 Cal. Rptr. 3d 125 (App. 2014) ...........................................................................15

*Arroyo v. TP-Link USA Corp.*,
  No. 5:14-CV-04999, 2015 WL 5698752 (N.D. Cal. Sept. 29, 2015).....................17, 22

*Astiana v. Hain Clestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015).....................................................................................18

*Bates v. UPS*,
  511 F.3d 974 (9th Cir. 2007)...............................................................................19, 20

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008)......................................................................................8

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) ....................................................................................8

*Bohac v. General Mills, Inc.*,
  No. 12–cv–05280–WHO, 2014 WL 1266848 (N.D. Cal. Mar. 26, 2014).................9, 25

*Cardenas v. NBTY, Inc.*,
  870 F. Supp. 2d 984 (E.D. Cal. 2012)........................................................................22

*Cel-Tech Commc'n Inc. v. L.A. Cellular Tel. Co.*,
  973 P.2d 527 (Cal. 1999).......................................................................................4, 24

*Cook v. Royal Caribbean Cruises, Ltd.*,
  No. 11-20723-CIV, 2012 WL 1792628 (S.D. Fla. May 15, 2012) ...........................7, 10

*Cook, Perkiss and Liehe, Inc.*,
  911 F.2d 242 (9th Cir. 1990)......................................................................................24

*Copart, Inc. v. Sparta Consulting, Inc.*
No. 2:14-CV-0046-KJM-CKD, 2015 WL 5357931 (E.D. Cal. Sept. 14, 2015)....19

*Corvello v. Wells Fargo Bank, NA,*
728 F.3d 878 (9th Cir. 2013) ...................................................................................24

*Dachauer v. NBTY, Inc,*
No. 16-CV-00216, 2016 WL 3176612 (N.D. Cal. June 3, 2016) ...........................19, 20

*David K. Lindemuth Co. v. Shannon Fin. Corp.*,
637 F. Supp. 991 (N.D. Cal. 1986) .............................................................................8

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012)...............................................................4, 5, 6, 12, 22

*DeSoto v. Yellow Freight Sys., Inc.,*
957 F.2d 655 (9th Cir.1992) ....................................................................................25

*Dinosaur Dev., Inc. v. White*,
265 Cal. Rptr. 525 (App. 1989) ................................................................................17

*Donlon v. Gluck Grp, LLC*,
No. Civ.A. 09-5379, 2011 WL 6020574 (D.N.J Dec. 2, 2011) ...........................7, 10, 15

*Dorfman v. Nutramax Labs., Inc.*,
No. 13cv0873, 2013 WL 5353043 (S.D. Cal. Sept. 23, 2013) ..................................23

*Exim Brickell LLC v. PDVSA Servs.*,
516 F. App'x 742 (11th Cir. 2013)............................................................................15

*Falk v. Gen. Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007) ...............................................................10, 11

*Fresh Direct, LLC v. Blue Martini Software, Inc.*,
776 N.Y.S.2d 301 (App. Div. 2004) .........................................................................15

*Fuls v. Shastina Props. Inc.*,
448 F. Supp. 983 (N.D. Cal. 1978) ...........................................................................24

*Gallagher v. Bayer AG*,
No. 14-CV-04601, 2015 WL 1056480 (N.D. Cal. Mar. 10, 2015) ...............................20

*Garrison v. Whole Foods Market Grp., Inc.*,
No. C14-2389, 2014 WL 3749984 (N.D. Cal. July 29, 2014).....................................19

*Ghirado v. Antonioli*,
924 P.2d 996 (Cal. 1996)....................................................................................17, 18

*Gilmore v. Wells Fargo Bank N.A.*,
827 F.2d 1368, 1371 (9th Cir. 1987). .......................................................... 6

*Gitson. v. Trader Joe's Co.*,
No. 13-CV-01333-WHO, 2014 WL 1048640 (N.D. Cal. Mar. 14, 2014) ........ 8, 9, 21, 22

*Haddix v. Gen. Mills, Inc.*,
No. 2:15-CV-02625-MCE-AC, 2016 WL 2901589 (E.D. Cal. May 17, 2016) ............. 16

*Hofmann v. Fifth Generation, Inc.*,
No. 14-CV-2569 JM (JLB), 2015 WL 5440330 (S.D. Cal. Mar. 18, 2015) ................ 5, 6

*Hobbs v. GMC*,
134 F. Supp. 2d 1277 (M.D. Ala. 2001) ....................................................... 15

*Holderbaum v. Carnival Corp.*,
87 F. Supp. 3d 1345 (S.D. Fla. 2015) ..................................................... 7, 10

*I.B. by & through Bohannon v. Facebook, Inc.*,
82 F. Supp. 3d 1115 (N.D. Cal. 2015) ........................................................ 20

*Innovative Bus. P'ship, Inc. v. Inland Ctys. Reg'l Ctr., Inc.*,
123 Cal. Rptr. 3d 525 (App. 2011) ........................................................... 17

*In re Adobe Sys., Inc. Privacy Litig.*,
66 F. Supp.3d 1197 (N.D. Cal. 2014) ......................................................... 22

*In re Fluidmaster, Inc.*,
---F. Supp. 3d---, 2016 WL 406327 (N.D. Ill. Feb. 3, 2016) .......................... 19

*In re iPhone 4s Consumer Litigation (Fazio)*,
637 Fed. Appx. 414 (9th Cir. 2016) ......................................................... 8, 10

*In re HP Inkjet Printer Litig.*,
No. C 05-3580 JF, 2006 WL 563048 (N.D. Cal. Mar. 7, 2006) ...................... 15

*In re Napster, Inc. Copyright Litig.*,
354 F. Supp.2d 1113 (N.D. Cal. 2005) ...................................................... 24

*Jogani v. Superior Court*,
81 Cal. Rptr. 3d 503 (App.2008)………………………………………………………………..15, 16

*Johnson v. California*,
543 U.S. 499 (2005) ........................................................................... 22

*Krumme v. Mercury*,
20 Cal. Rptr. 3d 485, 500-01 (App. 2004)................................................. 4, 6

*Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 299 F.3d 769 (9th Cir.), *reh'g en banc on*

*other grounds*, 341 F.3d 987 (9th Cir. 2003) ................................................................ 17

*Lauriedale Assoc., Ltd. v. Wilson*,
    9 Cal. Rptr. 2d 774 (App. 1992) ................................................................................. 1

*Leonhart v. Nature's Path Foods, Inc.*,
    No. 5:13-cv-0492, 2014 WL 1338161 (N.D. Cal. Mar. 31, 2014) ............................... 22

*Maloney v. Scottsdale Ins. Co.*,
    256 Fed. Appx. 29 (9th Cir. 2007) .............................................................................. 21

*Marubeni Am. Corp. v. U.S.*,
    35 F.3d 530 (Fed. Cir. 1994) ........................................................................................ 5

*Marvin Lumber & Cedar Co. v. PPG Indus.*,
    No. 115CV00695, 2016 WL 232319 (E.D. Cal. Jan. 20, 2016) .................................. 15

*McMillan v. Lowe's Home Centers*, LLC,
    854 P.2d 1134 (Ariz. 1993) ........................................................................................ 18

*Medline Indus., Inc. v. U.S.*,
    62 F.3d 1407 (Fed. Cir. 1995) ...................................................................................... 6

*Melchior v. New Line Prods., Inc.*,
    131 Cal. Rptr. 2d 347 (App. 2003). ...................................................................... 17, 18

*Miller v. Ghirardelli Chocolate Co.*,
    912 F. Supp.2d 861 (N.D. Cal. 2012) ......................................................................... 22

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) .................................................................................................... 20

*Pantron I Corp.*,
    33 F.3d 1088 (9th Cir. 1995) ...................................................................................... 12

*Pisano v. Am. Leasing*,
    194 Cal. Rptr. 77, 80 (App. 1983) ................................................................................ 7

*R. North Beach, Inc. v. Country Visions, Inc.*,
    No. 2:15-CV-02014-TLN-CKD, 2016 WL 1682046 (E.D. Cal. April 27, 2016). .......... 19

*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) ................................................................................ 20

*Ries v. Hornell Brewing Co., Inc.*,
    No. 5:10-cv-01139, 2011 WL 1299286 (N.D. Cal. Apr. 4, 2011) ............................... 22

*Schnall v. Hertz Corp.*,
    93 Cal. Rptr. 2d 434 (App. 2000) ................................................................................. 5

Case No. 3:16-cv-01421-WHO

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

*Smith v. Jackson,*
    84 F.3d 1213 (9th Cir. 1996)..................................................................3

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.,*
    72 Cal. App. 4th 861 (1999) ........................................................1, 13

*Tietsworth v. Sears, Roebuck, and Co.,*
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ......................................11

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.,*
    709 F. Supp. 2d 821 (C.D. Cal. 2010)........................................24

*U.S. v. Mead Corp.,*
    533 U.S. 218, 221 (2001)................................................................6

*Valdez-Lopez v. Chertoff,*
    656 F.3d 851 (9th Cir. 2011)........................................................21

*Walker v. USAA Cas. Ins. Co.,*
    474 F. Supp. 2d 1168 (E.D. Cal. 2007) ....................................18

*Werdebaugh v. Blue Diamond Growers,*
    No. 12-CV-02724, 2013 WL 5487236 (N.D. Cal. Oct. 2, 2013)............22, 23

*Williams v. Gerber Prod. Co.,*
    550 F.3d 934 (9th Cir. 2008)....................................................8, 9

*Yamada v. Nobel Biocare Holding AG,*
    275 F.R.D. 573 (C.D. Cal. 2011)................................................16

*Yumul v. Smart Balance, Inc.,*
    733 F.Supp.2d 1117 (C.D. Cal. 2010) .........................................8

**Statutes**

15 U.S.C. § 45 ..............................................................................7, 15, 16

15 U.S.C.A. § 45(a)(1) ........................................................................12

15 U.S.C.A. § 45(n) ............................................................................12

15 U.S.C. §§ 70, *et seq.* .......................................................................7

16 C.F.R. § 1.4...................................................................................15

16 C.F.R. §§ 303, *et seq.*....................................................................7

19 C.F.R. § 11.12(b).............................................................................7

Case No. 3:16-cv-01421-WHO

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

19 C.F.R. § 141.0 .............................................................................................5

19 C.F.R § 141.0a(a)-(d) ...................................................................................5

19 C.F.R. § 141.89 .....................................................................................5, 16

19 C.F.R. § 141.89(a) .........................................................................4, 5, 6, 7

Cal. Bus. & Prof. Code §§ 17200, *et. seq.* ..................................................11, 12


**Other Authorities**

ASTM D3775 ....................................................................................... *ad passim*

HTSUS, General Rules of Interpretation, Rule 3 (2015) ....................................6

HTSUS Chapter 52 .............................................................................................5

    § 5208 .........................................................................................................5

    § 5209 .........................................................................................................5

    § 5210 .........................................................................................................5

    § 5211 .........................................................................................................5

    § 5212 .........................................................................................................5

HTSUS Chatper 63 .............................................................................................6

    § 6302.31 ....................................................................................................6

Plaintiff, William Rushing, by counsel, respectfully submits this memorandum of law in opposition to Defendants' Motion to Dismiss Plaintiff's Third Amended Class Complaint.[1]

## INTRODUCTION

This is a case about truth in advertising. The product at issue is luxury bedding, in particular high thread count sheets and pillowcases. Unfortunately for consumers, Defendants' affirmative representations about thread count were and continue to be false. They inflated their products' thread count numbers—and not just for two-ply bedding as Defendants suggest—to justify the high price consumers, like Mr. Rushing, paid for these products. What consumers do not know is that Defendants have disregarded the textile industry's standard method for calculating thread count and as a result the thread counts on Defendants' packaging, catalogs, and websites have no relation to thread counts advertised by other retailers. In essence, Defendants' thread counts mean nothing. As a result, Mr. Rushing, like many others, ordered and paid hundreds of dollars each for bedding with an advertised thread count of 600, but received bedding with an actual thread count of only 291.

As with their thread count numbers, Defendants' arguments here are baseless. Defendants improperly seek safe harbor behind an inapplicable federal regulation, ignore or dispute Mr. Rushing's well-pleaded allegations as to how Defendants' non-conformance with the industry standard is unlawful, untrue, and fraudulent; rely upon allegations from earlier complaints; and fail to support their arguments with applicable authority. As Mr. Rushing has properly and completely stated his claims for relief, Defendants' Motion to Dismiss must be denied.

## FACTUAL BACKGROUND

The manufacturer, merchant, and marketer in this case are all the same—Williams-Sonoma, Inc. ("WSI"). WSI is one of the country's largest retailers of home goods through a variety of store brands, including Williams-Sonoma, Williams-Sonoma Home, Pottery Barn, Pottery Barn Kids, Pottery Barn Baby, Pottery Barn Teen, PB Teen, PB Dorm, and West Elm (collectively, "Defendants"). ¶¶ 1, 27-37. Consumers have come to associate high quality luxury sheets and

---

[1] All internal citations and quotation marks are omitted unless otherwise noted. Paragraph references ("¶") are to the Third Amended Class Action Complaint ("TAC") (Doc. No. 22). The Motion to Dismiss Third Amended Class Complaint (Doc. No. 26) will be cited as "MTD."

pillowcases (collectively, "bedding") with higher thread counts. ¶¶ 2, 61, 94. Capitalizing on this belief, Defendants represent their brands as purveyors of high quality luxury bedding, offering both lower and higher thread counts and corresponding price tags. ¶¶ 7, 8, 12, 40-45, 64.[2]

Mr. Rushing previously visited a WSI culinary store and received WSI's catalogs in the mail. ¶¶ 131-32. In one such catalog, Mr. Rushing learned that WSI also sold bedding through its Williams-Sonoma Home brand. *Id.* For Valentine's Day 2015, Mr. Rushing sought out soft, luxurious, high-quality sheets for his wife. *Id.* He knew from prior experience that Williams-Sonoma's products would be more expensive than most, but, like most consumers, he equated the more expensive higher thread count sheets with better quality. ¶¶ 61, 131-32, 139. Relying on Defendants' misleading description of their bedding options, Mr. Rushing paid $774.20 for one of Defendants' highest thread count sheet sets and extra pillowcases—the "600-Thread-Count Sateen Bedding" ("Purchased Product"). ¶¶ 131-33. When the Purchased Product arrived, however, he was so disappointed in its quality that he did not give it to his wife. ¶ 140. Upon further investigation, an ASTM-compliant test revealed that the "600-Thread-Count Sateen Bedding" had a true thread count of 291. ¶¶ 11, 69-74, 141. Defendants' deceptive practices caused Mr. Rushing to pay a premium price for what was not the premium product advertised. ¶¶ 68, 75, 136-42.

American Society for Testing and Materials International ("ASTM") Standard D3775 sets forth the industry standard for calculating bedding thread count. ¶¶ 46-59. Thread count is the physical count of vertical plus horizontal yarns weaved into a square inch of fabric. ¶¶ 49-51. In counting the yarns, testers tally individual yarns as single units, regardless of whether the yarn is made of one-ply, two-ply, or more. ¶¶ 46-49, 52. In 2005, the Federal Trade Commission ("FTC") recognized ASTM D3775 as the industry standard and confirmed that, based on that standard and industry practice, a yarn's ply count should not be included in calculating thread count for bedding, as it "would likely mislead consumers about the quality of the product being purchased." ¶ 58; *See* Declaration of Kathryn Honecker in Support of Plaintiff's Opposition to Defendants' Motion to

---

[2] The term "Defendants" also includes WSI's wholly owned and operated marketing, advertising, and managing subsidiaries, Williams-Sonoma DTC, Inc., Williams-Sonoma Advertising, Inc., and Williams-Sonoma Stores, Inc., respectively. ¶¶ 30-32.

Dismiss Third Amended Class Complaint ("Honecker Decl."), ¶ 3, Ex. B. The textile industry standard allows advertised thread count to deviate within 5% of actual thread count. ¶¶ 59, 74. Unbeknownst to consumers, Defendants do not follow the industry standard or FTC guidance, but instead inflate their beddings' advertised thread counts to justify higher prices. ¶¶ 62-90. The falsely advertised thread counts—touted in product names, on labels, and in advertisements online, in stores, and in catalogs—are grossly misstated. *See* Honecker Decl., ¶ 2, Ex. A (advertisements for bedding specifically discussed in TAC); *see also* ¶¶ 63-65, 67, 71-89. Indeed, Plaintiff tested four sets of bedding Defendants described as 350 thread count or higher, and each greatly exceeded the allowed 5% deviation. ¶¶ 72-89 (true thread counts revealed up to 1000% of the allowed deviation).

Mr. Rushing brought this action on behalf of himself and all persons in the United States who purchased during the limitations period bed sheets or pillowcases from one of Defendants' brands that were advertised as having a thread count of 350 or greater. ¶¶ 76, 90, 118. Mr. Rushing would like Defendants to change their unlawful practice and conform to the industry standard. ¶ 143. As one of the country's largest retailers of home goods, Mr. Rushing would likely purchase bedding from one of the Defendant brands in the future if the advertised thread counts were accurately calculated according to industry standards and labeled, marketed, and advertised (collectively, "Advertised") according to the industry standards and the FTC's recommendations. *Id.* In short, he wants to make an informed decision. Mr. Rushing advised Defendants of their misleading practices in a May 4, 2016 letter that was emailed to their counsel and mailed to each Defendant. ¶¶ 165-66, *see* TAC, Ex. B (copy of emailed notice), Ex. C (copy of certified mail receipts). Defendants failed to correct their conduct, replace the bedding, or offer Mr. Rushing a refund or any other relief. ¶ 167.

## STANDARD OF REVIEW

In ruling on a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson,* 84 F.3d 1213, 1217 (9th Cir. 1996). If a complaint contains well-pleaded factual allegations, a court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950 (2009). The Plaintiff's complaint easily meets this standard.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Does 19 C.F.R. § 141.89(a) shield Defendants from liability under the CLRA and FAL?

2. Did Plaintiff plead sufficient facts under Rule 9(b) to state CLRA and FAL claims?

3. Did Plaintiff state a claim under the UCL?

4. Did Plaintiff state a claim for breach of contract?

5. Did Plaintiff state a claim for breach of the implied covenant of good faith and fair dealing?

6. Does California recognize a cause of action for unjust enrichment?

7. Does Plaintiff have standing to pursue injunctive relief?

8. Does Plaintiff have standing to assert claims for unpurchased, but substantially similar products?

**ARGUMENT**

**A. MR. RUSHING STATED CAUSES OF ACTION UNDER THE CLRA AND FAL**

 **1. Section 141.89(a) of The Tariff Act Does Not Provide a "Safe Harbor."**

  Defendants argue that 19 C.F.R. § 141.89(a) protects them from liability under the Consumer Legal Remedies Act ("CLRA") and the False Advertising Law ("FAL") because it purportedly requires they count each ply in multi-ply threads ("ply-multiplication") in order to calculate and Advertise thread counts in "cotton fabric," such as bedding. MTD at 13-17. This fallacy fails to acknowledge the safe harbor doctrine's purpose,[3] which is to prevent people from using consumer statutes to plead around legislation otherwise barring relief. *Cel-Tech Commc'n Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 541 (Cal. 1999). For the doctrine to apply "another provision must actually *'bar' the action* or *clearly permit the conduct*." *Id.* (emphasis added). Section 141.89 does neither.

  *a) Section 141.89(a) does not bar the action or clearly permit Defendants' conduct.*

  Perhaps recognizing that § 141.89(a) does not bar this action, Defendants instead argue that the regulation clearly permits their conduct. MTD at 13-17. This is untrue. To determine if § 141.89(a) provides a safe harbor, its language must be read "'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.'" *Krumme v. Mercury*

---

[3] While Defendants do not use the term "safe harbor," they rely upon the "safe harbor" theory and cite to a "safe harbor" case to support their proposition that they are not liable due to compliance with a law. MTD at 16 (citing *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012)).

*Ins. Co.*, 20 Cal. Rptr. 3d 485, 500-01 (App. 2004). A review of § 141.89(a) in context shows that it does not "clearly allow" or even address Defendants' conduct. Section 141.89(a) merely specifies how importers are to identify certain merchandise on commercial invoices. 19 C.F.R. §§ 141.0, 141.0a(a)-(d) (1973). These invoices are not revealed to consumers, but to U.S. Customs' Office to calculate tariffs on imported goods. 19 C.F.R. §§ 141.81, 141.89 (1973). Defendants do not point to any language clearly allowing them to Advertise thread counts based on ply-multiplication, nor do they argue that compliance with § 141.189 and the industry standard is impossible. MTD at 13-17.

*Davis*, supports this outcome. 691 F.3d at 1166-67. While the Ninth Circuit in *Davis* held that a retailer's credit card application's language fell in the safe harbor because a federal statute and regulation "expressly permit[ted] and require[d]" the conduct, Defendants neglect to address the Ninth Circuit's other finding—no safe harbor existed where the retailer failed to disclose an annual fee in its advertisement. *Id.* at 1167. The Court explained it was not enough that the statute and regulation "merely fail to prohibit such an omission," as they must "clearly permit the omission of the annual fee disclosure from such advertisements." *Id.* The safe harbor did not apply because, as here, the statute and regulation at issue in *Davis* did not clearly permit the omission of information from the advertisements. *Id.*; *see also, e.g., Hofmann v. Fifth Generation, Inc.*, No. 14-CV-2569 JM (JLB), 2015 WL 5440330, at *7 (S.D. Cal. Mar. 18, 2015); *Schnall v. Hertz Corp.*, 93 Cal. Rptr. 2d 434, 453-54 (App. 2000).

Notably, Defendants know that § 141.89(a)'s "cotton fabric" ply-multiplication rule upon does not apply to the bedding at issue here. Indeed, § 141.89's "cotton fabric" requirements only apply to five categories of cotton fabric set forth in Harmonized Tariff Schedule of the United States ("HTSUS") Chapter 52.[4] 19 C.F.R. § 141.89. While whether Defendants' bedding falls within any of these five categories is a question of fact that cannot be resolved on a motion to dismiss,[5] Defendants already know the answer—sheets and pillowcases do not fall within Chapter 52, which applies to the general topic of cotton fabric. *See* Honecker Decl., ¶ 8, Ex. G (HTSUS, Chapter 52). On at least three separate occasions from 2005 through 2011, WSI asked U.S. Customs for a ruling to clarify under

---

[4] The five HTSUS headings are 5208, 5209, 5210, 5211, and 5212. 19 C.F.R. § 141.89(a).
[5] *Marubeni Am. Corp. v. U.S.*, 35 F.3d 530, 533 (Fed. Cir. 1994).

which HTSUS category its imported sheets and pillowcases fall, and in response to each, U.S. Customs held that WSI's bedding was properly classified under HTSUS Chapter 63, which narrowly focuses on "[b]ed linen, table linen, toilet linen and kitchen linen," with Category 6302.31 focusing specifically on cotton bedding, including sheets and pillowcases. *See* Honecker Decl., ¶¶ 4-6, Exs. C-E (tariff classification rulings); ¶ 9, Ex. H (HTSUS Chapter 63). Accordingly, Defendants cannot claim a safe harbor when they know that its requirements do not apply to their product. *Krumme*, 20 Cal. Rptr. 3d at 500-01.

Judicial review demonstrates that tariff classification rulings are at the very least "eligible to claim respect according to [their] persuasiveness." *U.S. v. Mead Corp.*, 533 U.S. 218, 221 (2001). The HTSUS's General Rules of Interpretation ("GRI") explain that goods are to be classified into the most specific description, and the Court of Appeals for the Federal Circuit has confirmed that bed linens are properly classified under HTSUS 6302. *Medline Indus., Inc. v. U.S.*, 62 F.3d 1407, 1409-10, 1409 n.1 (Fed. Cir. 1995); Honecker Decl., ¶ 7, Ex. F (HTSUS GRI, Rule 3 (2015)). As Defendants' bedding is properly classified under Chapter 63, Chapter 52 and § 141.89's ply-multiplication requirement for "Cotton fabric" does not apply.

Defendants also ignored the fact that § 141.89(a) contains separate requirements for "Bed Linen." Section 141.89(a) provides that commercial invoices for imported bed linens must provide a "[s]tatement as to whether or not the article contains any embroidery, lace, braid, edging, trimming, piping or applique work." 19 C.F.R. § 141.89(a). Identifying the number of threads, meanwhile, is not required. Defendants' cited regulation therefore fails to bar this action or "clearly permit" Defendants' method of Advertising thread count to consumers. *Davis*, 691 F.3d at 1166-67. As such, Defendants' repeated argument that its description complied with a federal regulation rings hollow.

Accordingly, because Defendants' safe harbor argument rests upon a misapplication of § 141.89(a), they have failed to satisfy their burden of showing that the safe harbor applies. *Gilmore v. Wells Fargo Bank N.A.*, No. C14-2389, 2014 WL 3749984, at *3 n.4 (N.D. Cal. July 29, 2014); *see also, e.g., Hofmann*, 2015 WL 5440330, at *7.

### b) Describing the "300 thread count, two ply" bedding as "600 thread count two-ply" was inaccurate and failed to comply with the law or industry standard.

Defendants do not dispute Mr. Rushing's allegations that their Advertising of thread count does not comply with ASTM D3775. Instead, they argue their thread count descriptions are accurate and comply with the law and industry standard, namely § 141.89(a). MTD at 13-17. Defendants' arguments fail because: (1) Mr. Rushing has pleaded facts to support his allegation that testing revealed that Defendants' thread counts were inaccurate, nevertheless, whether their thread counts are accurate is a question of fact inappropriate for resolution on a motion to dismiss; (2) § 141.89(a) does not provide a legal basis for Defendants' conduct and the FTC has opined that the same conduct would violate 15 U.S.C. § 45;[6] and (3) to the extent they dispute Mr. Rushing's well-pleaded allegation that ASTM D3775 is the appropriate industry standard,[7] Defendants' argument raises another question of fact. *Pisano v. Am. Leasing*, 194 Cal. Rptr. 77, 80 (App. 1983); *see, e.g., Donlon v. Gluck Group,* LLC, Civ.A. 09-5379, 2011 WL 6020574, at *4 n.5 (D.N.J. Dec. 2, 2011); *Holderbaum v. Carnival Corp.*, 87 F. Supp. 3d 1345, 1353-54 (S.D. Fla. 2015); *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11-20723-CIV, 2012 WL 1792628, at *4 (S.D. Fla. May 15, 2012).

To argue that their description of 291 thread count bedding as 600 thread count bedding complied with this FTC staff opinion, Defendants quote the FTC's opinion out of context and reverse its analysis. MTD at 15 n.7. Defendants argue that the opinion allows them to inflate thread counts by multiplying the actual count by the number of plies within the yarn—the exact conduct the FTC held would likely mislead consumers and violate 15 U.S.C. § 45's prohibition against unfair and deceptive labeling. *Compare* MTD at 15 n.7 *with* Honecker Decl., ¶ 3, Ex. B at 2. According to the

---

[6] While Defendants feign compliance with The Tariff Act, they fail to recognize that its regulations defer to the Textile Fiber Products Identification Act (TFPIA) and the FTC's regulations on the Advertising issue. 19 C.F.R. § 11.12(b). But as with § 141.89, neither the TFPIA nor its regulations "clearly allow" the use of Defendants' ply-multiplication method. *See generally* 15 U.S.C. § 70, *et seq*.; 16 C.F.R. § 303, *et seq*.

[7] The TAC sets forth the history, use, and acceptance of ASTM D3775 as the textile industry's sole thread count standard from which this Court can find Plaintiff's claim that the ASTM standard is the industry standard plausible on its face. ¶¶ 46-59. The TAC also discusses the FTC opinion letter, wherein the FTC, following ASTM D3775 as the industry standard, opined that the use of ply-multiplication in calculating bedding thread counts would "likely mislead customers." ¶¶ 57-58; Honecker Decl., ¶ 3, Ex. B, at 2.

FTC's letter, Defendants should have labeled the Purchased Product as "300 thread count, 2 ply yarn." By not doing so, Defendants description was inaccurate and violated the law and industry standard.

### 2. Mr. Rushing's Allegations Satisfied Rule 9(b).

The parties agree that Rule 9(b) is satisfied by alleging "the who, what, when, where, and how" of the misconduct charged. MTD at 13 (quoting *In re iPhone 4s Consumer Litigation (Fazio)*, 637 Fed. Appx. 414, 415-16 (9th Cir. 2016) (unpublished)).[8] Defendants only challenge Mr. Rushing's pleading of one element, arguing that he "has not sufficiently alleged *how* . . . [the] description of the WSH Bedding as '600-thread count two-ply' is untrue or misleading." MTD at 14 (emphasis added), 17. However, "Rule 9 must be read in light of Rule 8(a) requiring averments to be simple, concise and direct." *David K. Lindemuth Co. v. Shannon Fin. Corp.*, 637 F. Supp. 991, 993 (N.D. Cal. 1986). Thus, "[a] plaintiff is not required to plead detailed evidentiary matters." *Id.* at 994. Instead, Rule 9(b) only requires allegations regarding the circumstances constituting the fraud to be "specific enough to give defendants notice of the particular misconduct . . . alleged to constitute the fraud charged so that they can defend against [it] and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). No more is needed, if the allegations give the court "some assurance that [the plaintiff's] theory has a basis in fact." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 989-90 (9th Cir. 2008).

To sufficiently allege the "how" of a CLRA claim, a plaintiff must plead facts showing how an alleged statement or omission could mislead a "reasonable consumer." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125-26 (C.D. Cal. 2010). A plaintiff meets this burden by showing that a significant portion of the general consuming public or targeted consumers, acting reasonably under the circumstances, could be misled, *id.*, which may be accomplished by referring to a defendant's advertising materials. *See, e.g., Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008); *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-WHO, 2014 WL 1048640, at *13 (N.D. Cal. Mar. 14, 2014). In *Williams*, for example, parents filed a putative class action against Gerber for deceptive

---

[8] Although not challenged, for the Court's convenience, the allegations for the who, what, when, and where elements can be found in the following paragraphs of the TAC: who (¶¶ 6, 12-13, 40-45, 92-93, 96, 113-15, 152-60), what (¶¶ 7, 62-72, 135-37), when (¶¶ 69-92), and where (¶¶ 9, 10, 64-66, 78, 113, 133-35).

labeling of snack packaging that pictured different fruits and claimed it was "made with 'fruit juice and other all natural ingredients,'" when it was not. 552 F.3d at 936, 941. Denying a motion to dismiss, the court held that the statements could mislead consumers, rejecting Gerber's argument that a reasonable consumer would look beyond the product packaging. *Id.* at 939-40. The court explained that "whether a business practice is deceptive [is usually] a question of fact not appropriate for decision on a demurrer." *Id.* at 938-39 (9th Cir. 2008); *accord Gitson*, 2014 WL 1048640, at *13.

While the same is true here, Mr. Rushing's complaint details the industry's thread count standard, ¶¶ 3, 46-59, why thread count composition is material to consumers, ¶¶ 2, 12, 46-61,94, 96, 102, 153, 157, and how Defendants' thread count practice would mislead a reasonable consumer, ¶¶ 8-11, 46-91, 94-95, 97-112, 133, 135-36. Mr. Rushing also identified and included images of the precise product label, packaging, and website page conveying these misrepresentations. ¶¶ 70-71, 133, 136. And, he quotes from the FTC's opinion letter, confirming his allegations that using ply-multiplication and/or describing 300 thread count two-ply bedding as 600 thread count, instead of "300 thread count, 2 ply yarn" would be misleading. ¶¶ 5, 57-58. *See Bohac v. General Mills, Inc.*, No. 12–cv–05280–WHO, 2014 WL 1266848, at *6 (N.D. Cal. Mar. 26, 2014) (finding FTC statement "warn[ed] marketers that use of 'natural' may be deceptive"). Also, like the consumer in *Williams*, Plaintiff specified how the affirmative statements, product labels, packaging, and advertisements misled him and could be misleading to other reasonable consumers. ¶¶ 138-41. Viewed in the light most favorable to Plaintiff, he has pleaded sufficient facts to state a claim.

### 3. Plaintiff's Thread Count Expectations Were Not Based on Subjective Belief.

Defendants also wrongly assert that Plaintiff's claim is based on his "subjective belief that the WSH Signature Bedding was '600-thread count single ply.'"[9] MTD at 15, 17. But Plaintiff's expectation that Defendants would follow the industry standard to measure and Advertise thread counts is by no means subjective. This is a measurable aspect of Defendants' bedding; a matter of arithmetic, not subjective belief. ¶¶ 46-52, 62-94. To avoid market confusion, the textile industry adopted ASTM D3775 standard for the universal method of calculating thread count. ¶¶ 53-57. This

---

[9] Contrary to Defendants' suggestion through the use of quotation marks, the quoted language is found nowhere in Mr. Rushing's complaint.

allows consumers to compare different sets of bedding and make informed decisions. ¶¶ 58, 60-61, 143. It also prevents one company from gaining a competitive advantage by misstating its thread counts. ¶¶ 2-3, 60-63. Relying on widespread industry practice of indicating a bedding's thread count, Plaintiff reasonably believed Defendants' listed thread counts complied with the industry's practice. As Plaintiff alleged, however, testing revealed the bedding Defendants advertised as being 600 thread count, in reality, only had a thread count of 291 when tested using the ASTM standard. ¶¶ 11, 72. Courts have found industry standards such as the ASTM persuasive and used them to develop legal standards. *See, e.g., Cook*, 2012 WL 1792628, at *4. Indeed, many courts have held that the mere act of pleading non-conformance with an ASTM standard creates a factual jury dispute often resolved in favor of the plaintiff. *See, e.g., Holderbaum*, 87 F. Supp. 3d at 1357; *Donlon*, 2011 WL 6020574, at *4 n.4-5. Mr. Rushing's belief, therefore, was not subjective.

Defendants' reliance on *Fazio* is misplaced. In *Fazio*, the plaintiff asserted claims against Apple alleging it misrepresented the iPhone's voice recognition system's ("Siri") performance. 637 Fed. Appx. at 415. Instead of pointing to Apple's specific misrepresentations, the plaintiffs relied on a general advertising campaign and failed to allege how Siri's actual performance demonstrate the misrepresentation. *Id.* at 415-16. Based on the lack of any of these necessary details, the Ninth Circuit found that "it could not determine if a reasonable consumer would be misled by Apple's representations." *Id.* at 416. That is not the situation here. Defendants made specific and affirmative statements about a measureable attribute of their bedding—that it was 600 thread count, when it was in fact 291. ¶¶ 65-72, 133, 135-36, 139, 153-56. Therefore, *Fazio* is inapposite.

**4. Mr. Rushing Sufficiently Pleaded Defendants' Active Concealment.**

Defendants claim that Plaintiff also failed to state a CLRA claim by omission. MTD at 15-16. Plaintiff meticulously pleaded facts establishing a probable claim of an industry standard and how Defendants knew, or should have known, of that standard but still failed to comply. ¶¶ 5-12, 54, 78-90, 210. This is simply not true. The CLRA makes actionable any "omission contrary to a [defendant's] representation actually made … or an omission of a fact … defendant was obliged to disclose. *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007). A defendant has a duty to disclose when it has exclusive knowledge of material facts, unknown to plaintiff, or where

a defendant actively conceals a fact from plaintiff. *See Tietsworth v. Sears, Roebuck, and Co.*, 720 F. Supp. 2d 1123, 1138 (N.D. Cal. 2010); *accord Falk*, 496 F. Supp. at 1095 (noting the materiality of omitted facts is judged by the reasonable consumer standard).

Mr. Rushing has done what is required. He pleaded why thread count composition is material to consumers, ¶¶ 12, 94, 96, 157, how consumers are unable to discern thread counts with the naked eye, and must rely on a merchant's representations, ¶ 204, and how Defendants' failed to disclose their exclusive knowledge of the thread count for their bedding. ¶¶ 12, 113. The TAC shows that Defendants and the bedding industry cultivated the perception among consumers that higher thread counts are associated with higher quality. ¶¶ 2, 12, 94, 96, 102, 153, 157. Plaintiff also pleaded facts putting Defendants on notice as to how their omissions violated their duty to disclose by describing the industry standard and how Defendants' arbitrary thread count practice did not comply with that standard. ¶¶ 53-61, 74, 78, 113, 153. Based on Defendants' own claims as a "premier specialty retailer of home furnishings," Defendants knew or should have known the industry standard for counting threads. ¶ 113. ¶ 204. Thus, Defendants owed a duty to share this material information with consumers. Defendants' argument that Plaintiff did not allege facts of active concealment, such as Defendants' "hiding, concealing, or covering up the matters complained of" fails for the same reasons. MTD at 15. Defendants' failure to disclose their use of a non-standard thread count method constitutes fraudulent omission, while their decision to continue this practice suggests an affirmative attempt to cover up their misconduct. As such, Defendants' arguments provide no basis for dismissal.

**B.    MR. RUSHING STATED A CAUSE OF ACTION UNDER THE UCL**

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, untrue or misleading advertising and any act prohibited by [the FAL]." Cal. Bus. & Prof. Code §§ 17200, *et. seq.* Plaintiff's complaint adequately asserts claims under each of the UCL's three prongs, any one of which is sufficient to bring a UCL claim. *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1168 (E.D. Cal. 2013).

**1.    Mr. Rushing has Alleged a Claim Under the Unlawful Prong.**

Mr. Rushing alleged a claim under UCL's first prong by alleging facts that Defendants engaged in an unlawful business act or practice. ¶¶ 9-15, 40, 60-68, 71-77, 80-81, 83-84, 86-87, 92-

105, 144-195. The UCL "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *Cel-Tech*, 973 P.2d at 539-40; *see* Cal. Bus. & Prof. Code § 17200. "Virtually any state, federal or local law can serve as the predicate for an action under [the UCL]." *Davis*, 691 F.3d at 1168.

In disputing Mr. Rushing's allegations as to predicate violations of the Federal Trade Commission Act ("FTCA"), CLRA, and/or FAL, Defendants merely reiterate their contentions that: "(1) the 'two-ply' thread count advertised for the WSH Bedding complies with federal law; (2) Plaintiff has failed to allege anything false or untrue in the advertising of the WSH Bedding as '600-thread-count two-ply';[10] and (3) Plaintiff cannot pursue any claims based on mere non-actionable 'puffery' about the WSH bedding such as claims that it is 'soft' and 'luxurious.'" MTD at 18.[11] As set forth elsewhere in this response, however, (1) the Tariff Act does not provide Defendants a "safe harbor," bar Mr. Rushing's claims, or permit Defendant's conduct; (2) the TAC adequately alleges and provides facts demonstrating that by failing to conform to the industry standard when Advertising their products, the Defendants provided false, untrue, and misleading advertising of its products; and (3) Mr. Rushing's claims are not based on mere puffery, but on practices and misrepresentations that attribute specific virtues or characteristics to bedding, including a numerical thread count, despite the fact that the bedding does not possess those specific virtues or characteristics.

**2. Mr. Rushing has Alleged a Claim Under the Unfair Prong.**

Although Defendants concede that a series of competing tests have been employed by state and federal courts for purposes of establishing "unfair" conduct pursuant to the UCL, Defendants

---

[10] Notably, the Purchased Product is called ""Signature 600-Thread-Count-Sateen Bedding" and its title makes no mention of it being "two-ply." *See* Honecker Decl., ¶ 2, Ex. A.

[11] Plaintiff brought counts alleging separate claims under both the CLRA and FAL. However, there is no private right of action for violations of the FTCA. This does not prevent Plaintiff from bringing claims for such a violation under the UCL, as "a private plaintiff may bring a UCL action even when 'the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no right of action." *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950, 45 P.3d 243 (2002). Section 5(a) of the FTCA declares "unfair or deceptive acts or practices in or affecting commerce . . . unlawful." 15 U.S.C.A. § 45(a)(1). Plaintiff appropriately alleges Defendants business practices to be both "unfair" and "deceptive" in the TAC. TAC at ¶¶ 188-190; *see also* 15 U.S.C.A. § 45(n); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1995).

1  contend that none of the tests is applicable because their conduct is purportedly authorized by law.

2  MTD at 18-19. As detailed above, Defendants' misconduct is not authorized by law.

3  In the alternative, Defendants contend that, even assuming their conduct is not authorized by

4  law, the conduct is not "unfair" when assessed under the *South Bay* or *Cel-Tech* test. The *South Bay*

5  test provides that a business practice is unfair if "the utility of a practice was outweighed by the harm

6  it posed to a victim" and such conduct offended "an established public policy or [was] immoral,

7  unethical, oppressive, unscrupulous or substantially injurious to consumers." *South Bay Chevrolet v.*

8  *Gen. Motors Acceptance Corp.*, 85 Cal. App. 4th 861, 886-87 (1999). Criticizing this test as too

9  amorphous, 973 P.2d at 543, the California Supreme Court in *Cel-Tech* presented an alternative test

10 for cases involving competitors and anticompetitive practices, requiring the alleged unfairness be

11 tethered "to some legislatively declared policy or proof of some actual or threatened impact on

12 competition," but failed to provide a consumer specific test. *Id.* at 544-45, n.12. In the absence of

13 clear, affirmative precedent, a series of inconsistent opinions emerged and, ultimately, the Ninth

14 Circuit determined conduct may be unfair if (1) it is tied to specific constitutional, statutory, or

15 regulatory provision or (2) its harm to consumers outweighs its utility. *Id.*

16 Defendants contend that the TAC fails the *South Bay* test because it "does not establish that

17 [Defendants'] marketing of the [Purchased Product] as '600-thread-count two-ply' is untrue and

18 deceptive," therefore, their conduct cannot be considered "immoral, unethical, oppressive,

19 unscrupulous, or substantial injurious to consumers." MTD at 18-19. Contrary to this assertion,

20 Plaintiff has adequately alleged that Defendants' misconduct is not only deceptive, misleading, and

21 directly contrary to industry standard, but also "immoral, unethical, oppressive, unscrupulous or

22 substantially injurious to consumers."[12] ¶¶ 196-206; s*ee generally*, ¶¶ 46-115. Moreover, Defendants

23 fail to point to any purported utility or benefit whatsoever associated with its deceptive sales and

24 marketing practices. *Cf.* ¶ 203. By comparison, Mr. Rushing and other victims of Defendants' actions

25 did suffer ascertainable harm as a result of Defendants' actions. *E.g.* ¶ 202. In the absence of any

26 purported utility whatsoever, it is indisputable that the harm incurred outweighs any perceived utility.

27

28
_____

[12] *South Bay*, 72 Cal. App. 4th at 886-87, 85 Cal.Rptr.2d 301; MTD at 19:4-10.

Further, Defendants contend that because the TAC "does not establish specific violations of constitutional, statutory, or regulatory provisions," it fails the test set out in *Cel-Tech*. *Id.* at 19:8-10. Contrary to this contention, the TAC expressly asserts that Defendants' actions violate the FTCA, CLRA, and the FAL, therefore, Plaintiff has adequately alleged unlawful conduct to which he may tether his UCL unfairness claim under the test set out in *Cel-Tech*. *See discussion infra*. Because Mr. Rushing has alleged sufficient facts to satisfy either test, Plaintiff adequately alleged a claim against Defendants under the unfair prong of the UCL.

### 3. Mr. Rushing has Alleged a Claim Under the Fraudulent Prong.

As Defendants allege in their MTD, "[a] business practice is fraudulent under the UCL if members of the public are likely to be deceived" and courts apply the "reasonable consumer" standard in making such determination. MTD at 19. Defendants argue Plaintiff failed to allege a claim under the UCL's fraudulent prong because (1) the advertising for and packaging of the bedding "clearly and accurately" describe the bedding and (2) Plaintiff has not sufficiently alleged how the description of the bedding would deceive a reasonable consumer. MTD at 19-20.

To the contrary, Mr. Rushing has set forth above why the Defendants' labeling of the bedding is misleading, deceptive, and neither clear nor accurate. *See generally* ¶¶ 46-115. By way of example, but not limitation, the TAC expressly recites that ASTM-compliant testing reveals that WSI's "Signature 600-Thread-Count-Sateen Bedding" is not 600 thread count as advertised, but merely 291. ¶ 72. Further, the TAC adequately alleges "reasonable consumer" reliance insofar as those consumers lack the skill, knowledge, and equipment to uncover whether the bedding are as advertised. ¶¶ 60, 94-95, 109, 134, 157, 204, 212. Further, the TAC adequately alleges that the deception could only be discovered through testing or a well-trained eye. ¶¶ 13, 116, 204. Therefore, the TAC adequately alleges a claim under the fraudulent prong of the UCL.

## C. MR. RUSHING STATED CAUSES OF ACTION FOR BREACH OF CONTRACT AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### 1. Defendants Received Sufficient Notice.

Defendants move to dismiss Mr. Rushing's breach of contract and breach of the implied covenant of good faith and fair dealing claims based upon the supposed absence of pre-suit notice.

MTD at 20, 22. Contrary to this assertion, Defendants possessed actual and/or constructive notice of the harms alleged. Mr. Rushing's complaint adequately pleaded that notice of the harms alleged was tendered on May 4, 2016 pursuant to stipulation by the Parties. ¶ 166; *see* Ex. B to TAC. Allegations of notice have been incorporated by reference into Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. *See* ¶¶ 216, 225. Importantly, "notice otherwise given within a reasonable period of time can under California law follow commencement of suit provided it is subsequently and properly pleaded." *In re HP Inkjet Printer Litig.*, No. C 05-3580 JF, 2006 WL 563048, at *6 (N.D. Cal. Mar. 7, 2006) (internal citation and quotations omitted). Further, "the parties may, by agreement, fix a time that is 'not manifestly unreasonable' for the purchaser to notify the seller of a breach." *Fresh Direct, LLC v. Blue Martini Software, Inc.*, 776 N.Y.S.2d 301, 302 (App. Div. 2004) (analyzing California's UCC). While the existence of notice is indisputable here, the sufficiency and adequacy of notice is ordinarily a question of fact not ripe for resolution at this preliminary stage of litigation. *See Abramson v. Gardner*, 253 F.2d 518, 522 (9th Cir. 1958).[13]

Moreover, as industry guidance is a matter of public record, Defendants possessed actual and/or constructive notice of the harm alleged as early as 2005. *See Donlon*, 2011 WL 6020574, at *6; *see also* 16 C.F.R. § 1.4. To that end, Mr. Rushing's complaint pleaded the contents of an FTC opinion letter opining on the very misconduct challenged. That opinion is recited, in part, as follows:

> [C]onsumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn. A possible non-deceptive way to disclose both the thread count and the yarn ply would be to state, for example, "300 thread count, 2 ply yarn." A representation of "600 thread count" for this same product would likely mislead consumers about the quality of the product being purchased.

¶ 58; *see generally*, ¶¶ 46-61. In its opinion letter, the FTC recited that appropriate disclosure of "thread count" (yarns per square inch) on labels or in advertising is governed by 15 U.S.C. § 45, which prohibits deceptive acts or practices. Honecker Decl., ¶ 3, Ex. B, (FTC Letter dated August 2, 2005). Significantly, 15 U.S.C. § 45 empowers the FTC with authority to prevent entities from using unfair methods of competition and unfair or deceptive acts or practices affecting commerce. At a

---

[13] *See also Marvin Lumber & Cedar Co. v. PPG Indus.*, 401 F.3d 901, 907 (8th Cir. 2005); *Exim Brickell LLC v. PDVSA Servs.*, 516 F. App'x 742, 749 (11th Cir. 2013); *Hobbs v. GMC*, 134 F. Supp. 2d 1277, 1285 (M.D. Ala. 2001).

minimum, Defendants are imputed with knowledge that using the ply-multiplication method would violate 15 U.S.C. § 45 and knowingly disregarding explicit guidance by the FTC concerning thread count does not relieve Defendants of liability. To that end, in representing to this Court that it knowingly employs a practice inherently inconsistent with FTC guidance and direction—namely, thread counting pursuant to 19 C.F.R. § 141.89 which is not applicable to bedding or Advertising— Defendants effectively concede that they were indisputably aware of the harms alleged. *See Haddix v. Gen. Mills, Inc.*, No. 2:15-CV-02625-MCE-AC, 2016 WL 2901589, at *8-9 (E.D. Cal. May 17, 2016) ("[b]ecause of the fact that Defendants were indisputably aware of the alleged breach prior to plaintiff's filing of the instant action, imposing § 2607's pre-suit notice requirement here would fail to serve its purpose").

Finally, even assuming the absence of adequate notice, there is no evidence that Defendants have suffered prejudice. This is confirmed by Defendants' failure to amend their conduct in response to Mr. Rushing's May 4, 2016 notice letter. Nonetheless, if this Court is willing to entertain an alternative reading, Mr. Rushing respectfully requests leave to amend the TAC and companion notice. *See Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573, 581 (C.D. Cal. 2011) ("If notice has not been provided, Plaintiff may now do so and seek leave to amend the complaint.").

### 2. Mr. Rushing Sufficiently Pleaded Breach and Causation.

Defendants argue that Mr. Rushing failed to adequately plead breach and causation. But Defendants concede that the TAC pleads breach, reciting that "Plaintiff alleges that [Defendants] breached the alleged contract by failing to provide him with bedding that matched the description." MTD at 22 (citing ¶ 223); *see also* ¶¶ 11, 73-74. At the same time, Defendants invite this Court to disregard Mr. Rushing's allegations of breach in light of its purported compliance with applicable federal authority. However, in making this blanket assertion, Defendants fail to cite to any purportedly applicable federal authority and raise factual questions improper at this juncture.[14] As to causation, Mr. Rushing adequately pleaded that "[a]s a result of Defendants' breach of contract,

---

[14] To the extent that Defendants are attempting to import their earlier reliance upon certain tariff regulations from other arguments, as detailed above, reliance upon the regulations cited by Defendants is entirely misguided.

Plaintiff and the class members have suffered damages in an amount to be determined at trial." ¶ 224. Moreover, causation is a question of fact not ripe for resolution at this preliminary stage of litigation. *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 299 F.3d 769, 787 (9th Cir.), *reh'g en banc on other grounds*, 341 F.3d 987 (9th Cir. 2003). On these ground, Defendants' MTD should be denied.

### 3. Mr. Rushing is Permitted to Plead in the Alternative.

Defendants also move to dismiss Mr. Rushing's claim for breach of the implied covenant of good faith and fair dealing on the ground that the claim is duplicative of his breach of contract claim. Although "breach of the implied covenant of good faith and fair dealing is premised on the breach of a specific contractual obligation," *Innovative Bus. Partnerships, Inc. v. Inland Ctys. Reg'l Ctr., Inc.*, 123 Cal. Rptr. 3d 525, 532-33 (App. 2011), allegations pertaining to breach of implied covenant of good faith and fair dealing and breach of contract are not mutually exclusive and may be pleaded in the alternative. *Arroyo v. Plosay*, 170 Cal. Rptr. 3d 125, 128, n.1 (App. 2014). Additionally, Mr. Rushing's claims for breach of implied covenant of good faith and fair dealing contain allegations beyond the scope of his breach of contract claim. *See, e.g.*, ¶ 229.

### D.    MR. RUSHING STATED A CAUSE OF ACTION FOR UNJUST ENRICHMENT

In arguing that Plaintiff's unjust enrichment claim fails, Defendants again misconstrue the law as well as the TAC. First, as discussed above, and contrary to Defendants' contentions otherwise, Mr. Rushing has alleged wrongful conduct by Defendants and has alleged that Defendants unjustly retained a benefit—the amount paid by Mr. Rushing and class members—that was obtained by such wrongful conduct. ¶¶ 233-38.

Contrary to Defendants' allegations, California recognizes unjust enrichment as a valid cause of action. California courts that do not recognize it as a valid cause of action have repeatedly come to this conclusion contrary to the decision in *Ghirado v. Antonioli*, 924 P.2d 996, 1002-04 (Cal. 1996), where the California Supreme Court recognized a cause of action for unjust enrichment. Yet, relying on cases that preceded *Ghirado* and did not stand for such a proposition,[15] the California Court of Appeals held in *Melchior v. New Line Prods., Inc.* that "there is no cause of action in California for

---

[15] *Lauriedale Assoc., Ltd. v. Wilson*, 9 Cal. Rptr. 2d 774, 780 (App. 1992); *Dinosaur Dev., Inc. v. White*, 265 Cal. Rptr. 525, 527-28 (App. 1989).

unjust enrichment." 131 Cal. Rptr. 2d 347, 357 (App. 2003). The *Melchior* court failed to address *Ghirado*, and certainly did not overturn it. Despite this, however, certain California state and federal courts continue to erroneously rely on *Melchior*, without offering any further analysis or explanation, to dismiss claims of unjust enrichment by claiming that California does not recognize such a cause of action. *Jogani v. Superior Court*, 81 Cal. Rptr. 3d 503, 511 (App. 2008); *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007). This Court should not do the same.

Moreover, a recent Ninth Circuit opinion demonstrates the utility of unjust enrichment claims in California. In 2015, the Ninth Circuit held that despite many California courts finding that there is no standalone cause of action for unjust enrichment or restitution in California, there is a cause of action that can arise where a plaintiff alleges unjust enrichment, specifically stating that:

> [U]njust enrichment and restitution are not irrelevant in California law. Rather, they describe the theory underlying a claim that a defendant has been unjustly conferred a benefit "through mistake, fraud, coercion, or request." . . . . **When a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution."** *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 166 Cal.Rptr.3d 864, 872 (2014).

*Astiana v. Hain Clestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (emphasis added). Since the Ninth Circuit's ruling in *Astiana*, California district courts have found a plaintiff's "'straightforward statement' that Defendants were 'unjustly enriched' due to alleged false and misleading advertising is sufficient to state a quasi-contractual claim." *Arroyo v. TP-Link USA Corp.*, No. 5:14-CV-04999, 2015 WL 5698752, at *11 (N.D. Cal. Sept. 29, 2015); *see also McMillan v. Lowe's Home Centers*, LLC, No. 115CV00695, 2016 WL 232319, at *6-7 (E.D. Cal. Jan. 20, 2016). The same should apply here. If the Court does not recognize Mr. Rushing's unjust enrichment cause of action, it should construe it as a quasi-contract claim seeking restitution under *Astiana*.

Defendants also argue that an unjust enrichment claim cannot be asserted as an alternative to breach of contract or any other claims. MTD at 24:2-14. This is untrue. In *Astiana*, the Ninth Circuit specifically held that "[t]o the extent the district court concluded that the cause of action was nonsensical because it was duplicative of or superfluous to [plaintiff's] other claims, this is not grounds for dismissal." *Astiana*, 783 F.3d at 762-63. Furthermore, since *Astiana*, California district courts as well as other courts interpreting California law have allowed for breach of contract and

unjust enrichment claims to coexist either as alternatives, *In re Fluidmaster, Inc.*, ---F. Supp. 3d---, 2016 WL 406327 at *18 (N.D. Ill. Feb. 3, 2016), or because the breach of contract claim does not address "the same subject matter" as the equitable claims. *Copart, Inc. v. Sparta Consulting, Inc.*, No. 2:14-CV-0046-KJM-CKD, 2015 WL 5357931, *5 (E.D. Cal. Sept. 14, 2015); *R. North Beach, Inc. v. Country Visions, Inc.*, No. 2:15-CV-02014-TLN-CKD, 2016 WL 1682046, *7 (E.D. Cal. April 27, 2016). Here, Mr. Rushing's equitable claims are pleaded as alternatives to his breach of contract claim and statutory claims under the UCL, FAL, and CLRA, as they address the false and misleading packaging and advertising associated with the Defendants' bedding, a subject matter not covered by the "contract" between Mr. Rushing and Defendants.[16] Defendants also do not concede the existence of a contract and go so far as to implicitly reserve the right to challenge such contract in the future.[17] Given the state of the law and the facts of this case, Mr. Rushing should be permitted to bring his cause of action as an alternative to his other claims.

**E.    MR. RUSHING HAS STANDING TO PURSUE INJUNCTIVE RELIEF**

A plaintiff has standing to seek injunctive relief if he shows that (1) "he has suffered or is threatened with a 'concrete and particularized' legal harm," (2) he has a "real and immediate threat of repeated injury," and (3) the injunctive relief sought must be likely to redress the claimed threat of injury. *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007). Defendants contend that Mr. Rushing in his individual capacity and on behalf of the proposed class lacks standing to pursue a claim for injunctive relief because there is no danger that he will be injured or misled in the future.[18] MTD at 24-25. Defendants' contention that Mr. Rushing lacks standing for injunctive relief because he has knowledge of Defendants' misconduct and can avoid future risk of harm is without merit. *Id.*

Defendants erroneously rely upon *Dachauer v. NBTY, Inc.*, No. 16-CV-00216, 2016 WL 3176612, at *1 (N.D. Cal. June 3, 2016). *Dachauer* is distinguishable from the instant matter because

---

[16] "It is not clear . . . that the label on a food product constitutes a contract between a purchaser and the manufacturer of that product." *Garrison v. Whole Foods Market Grp., Inc.*, No. 13-CV-05222, 2014 WL 2451290 at *6 n.5 (N.D. Cal. June 2, 2014).

[17] MTD at 21 n.10.

[18] Defendants do not challenge Plaintiff's standing to seek injunctive relief based on either of the other requirements.

the *Dachauer* plaintiff's allegations did not contemplate future purchases, even assuming practices were amended. Instead, the plaintiff's unwillingness to commit to future purchases of the supplement was premised upon learning that the supplement provided no benefit but posed a risk to health. *See id*. at *1. By distinction, unlike *Dachauer*, Mr. Rushing is not deterred from potential future purchases based on a potential risk to health or knowledge that the bedding cannot serve any purpose. This case is more analogous to *I.B. by & through Bohannon v. Facebook, Inc.*, 82 F. Supp. 3d 1115, 1124 (N.D. Cal. 2015).[19] There, the Court determined that "the named Plaintiffs point[ed] to definitive testimony that they would attempt to make future purchases over Facebook if Facebook changed its policy" and, as a result, "[t]he named Plaintiffs have therefore shown a real threat of future injury, and therefore have standing to bring suit for injunctive relief." *Id*. Similarly, Mr. Rushing alleged that he has an interest in purchasing bedding from Defendants in the future. ¶ 143.

Moreover, "'past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury.'" *Bates*, 511 F.3d at 985 (quoting *O'Shea v. Littleton*, 414 U.S. 488 (1974)). Defendants express no intent to cure past wrongs or cease the deceptive practice at issue. To the contrary, Defendants represent, at least by implication, their intent to continue this deceptive practice directly in contravention of ASTM standards and related FTC guidance. Accordingly, the potential for future purchases together with the past harms and continued deceptive practices by Defendants demonstrate a real and immediate threat of repeated injury.

## F.    MR. RUSHING HAS STANDING TO PURSUE CLAIMS FOR UNPURCHASED PRODUCTS

### 1.    The Injuries and Claims Associated with the Unpurchased Products Are Substantially Similar to Those Associated with the Purchased Product.

Defendants contend that Mr. Rushing does not have standing to bring claims for products he did not purchase ("Unpurchased Products"). MTD at 6. Contrary to Defendants' assertion, this Court has repeatedly held that plaintiffs in a putative class action have standing to pursue such claims, so long as the alleged injuries and types of claims are substantially similar to those arising from purchased products. *See Gallagher v. Bayer AG*, No. 14-CV-04601, 2015 WL 1056480, at *10 (N.D.

---

[19] *See also Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012).

Cal. Mar. 10, 2015); *Ang v. Bimbo Bakeries USA, Inc.*, 13-cv-01196, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014). Both qualities are present here.

Defendants claim that Plaintiff admits there are material differences between the Purchased and Unpurchased Products, precluding standing. MTD at 7-8. This is untrue and unsupported by citation to the TAC. Defendants instead rely upon an earlier, non-operative, complaint. MTD at 8 n.3. Any factual allegations that may have been in that complaint are not binding or dispositive after it has been amended. *Valdez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011); *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *Maloney v. Scottsdale Ins. Co.*, 256 Fed. Appx. 29, 31-32 (9th Cir. 2007) (unpublished). Nevertheless, *Ang* rejected a bright line rule that "there must be *physical* similarities between the products in order to confer standing on plaintiffs to challenge mislabeling claims on unpurchased products." 2014 WL 1024182, at *5. The *Ang* court explained that "the best approach . . . focuses on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products." *Id.* at *8.

The analysis of similarity between claims associated with the Purchased Products and Unpurchased Products centers on whether they will be resolved identically, *Gitson*, 2014 WL 1048640, at *9; *Ang*, 2014 WL 1024182, at *8, but a mere possibility of different outcomes is not dispositive at the pleading stage, *Ang*, 2014 WL 1024182, at *8. Contrary to Defendants suggestion, MTD at 8, Mr. Rushing did not simply list Unpurchased Products in the TAC. Rather, each claim associated with the Purchased and Unpurchased Products[20] arises from the same deceptive practice—calculating and Advertising inflated counts that do not follow industry standards or FTC guidance. *See* ¶¶ 4, 59, 70-89, 92-104. Indeed, Defendants' argument that they are legally required to use ply-multiplication, which, as shown above, means they do not follow the industry standards or FTC guidance for any of their products, creates a unified and identical issue at trial and supports finding that the claims between the Purchased and Unpurchased Products are substantially similar.

---

[20] The TAC brings claims for relief under the CLRA, the FAL, the UCL, breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment as well as a prayer for injunctive relief for both the Purchased and Unpurchased Products. ¶¶ 144-238.

Moreover, consumers who purchased an Unpurchased Product have suffered substantially similar economic injury or harm as Mr. Rushing in his purchase of the Purchased Product. When determining what injuries are the same, courts "must be careful not to employ too narrow or technical an approach." *Armstrong v. Davis,* 275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005). Here, Mr. Rushing and members of the proposed class paid premium prices for supposed high thread count bedding that was not what Defendants claimed them to be. ¶¶ 13, 75. Hence, Mr. Rushing and the proposed class suffered substantially similar economic injury giving rise to the claims set forth in the TAC.

Finally, Defendants' reliance upon *Arroyo* and *Leonhart* is misplaced, as they conveniently ignore that in each of those cases the court's decision turned on the plaintiff's failure to allege that the unpurchased products or unseen representations were "substantially similar" to the product actually purchased or marketing representations viewed. *See Arroyo*, 2015 WL 5698752, at *4; *Leonhart v. Nature's Path Foods, Inc.*, No. 5:13-cv-0492, 2014 WL 1338161, at *4 (N.D. Cal. Mar. 31, 2014). Defendants' string cite is equally unpersuasive, MTD at 7 n.2, as each of the cases cited represents an approach to standing that California courts have generally declined to follow. *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp.2d 861, 869 (N.D. Cal. 2012); *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp.3d 1197, 1229 (N.D. Cal. 2014).

Because the claims and injuries arising from the Purchased and Unpurchased Products are substantially similar, Mr. Rushing has standing to bring every claim alleged in the TAC.

**2. Mr. Rushing's Claims Based on the Unpurchased Products Were Adequately Pled.**

While Rule 9(b) generally requires pleading with particularly, plaintiffs are not required to detail each and every specific misrepresentation so long as they can establish substantial equivalence. *See Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724, 2013 WL 5487236, at *15 (N.D. Cal. Oct. 2, 2013); *Gitson*, 2014 WL 1048640 at *5. Where a disputed representation is in print, as here, plaintiffs satisfy Rule 9(b) by "identifying or attaching representative samples of [misleading materials]." *Ries v. Hornell Brewing Co., Inc.*, No. 5:10-cv-01139, 2011 WL 1299286, at *4 (N.D. Cal. Apr. 4, 2011).

Mr. Rushing has adequately pleaded that his Purchased and Unpurchased Products claims are substantially similar. *See* ¶¶ 78-79, 97-103, 112. Each bedding set, he alleges, was duplicitously marketed. ¶ 78. Each is actionably deceptive because it violates the same industry standard. ¶¶ 4, 59, 78. Going beyond *Werdebaugh*, Plaintiff has conducted industry-approved thread count testing on some of Unpurchased Products. ¶¶ 80-88. Further, Plaintiff attached a sample label to the TAC, ¶ 71, and provided a list of offending Unpurchased Products, specifying their offending representation, ¶ 76. As such, Mr. Rushing's showing of substantial similarity is distinguishable from *Wilson* and satisfies the pleading requirements of Rule 9(b).

### 3. Because Mr. Rushing Alleges Substantially Similar Claims and Injury, His Exposure to the Advertising of the Unpurchased Products Has No Effect On His Standing to Bring the Claims Outlined in the TAC.

Defendants erroneously contend that Plaintiff does not have standing to bring claims based on advertisements he did not encounter. MTD at 6. Indeed, advertising exposure has been considered irrelevant to the substantial similarity analysis. In *Dorfman v. Nutramax Labs., Inc.*, No. 13cv0873, 2013 WL 5353043, at *6-8 (S.D. Cal. Sept. 23, 2013), a consumer pursued false and misleading sales practice claims against product marketers and manufacturers for two forms of a Cosamin supplement product—ASU and DS—even though he had neither purchased nor seen advertisements for the ASU product. In denying a motion to dismiss the claims involving the ASU product, the court agreed that the consumer "need not have seen every advertisement in which the claim was made in order to challenge the advertising campaign," explaining that sufficient similarities existed between the two products' ingredients and representations that precluded dismissal. *Id.* at *6. The same is true here. Plaintiff adequately alleged analogous deceptive marketing and sales practices with respect to the Purchased and Unpurchased Products here, namely Defendants' Advertising of them with inflated thread counts that do not follow industry standards or FTC guidance. *See* ¶¶ 70-89, 92-104. Again, Defendants' MTD establishes that Defendants are engaged in a brand-wide policy (or "campaign") to not follow the industry standards or FTC guidance for their products. Nevertheless, Mr. Rushing was exposed to the advertising of the Unpurchased Products by way of his review of his bedding options through WSI's catalog and website. ¶¶ 131-33. Plaintiff has standing to bring claims for the Unpurchased Products.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

**1.    Mr. Rushing May Pursue Substantially Similar Claims Arising from Defendants' Conduct Through Its Subsidiaries.**

"Where the alter ego doctrine applies . . . corporations are treated as one for purposes of determining liability." *Fuls v. Shastina Props. Inc.*, 448 F. Supp. 983, 989 (N.D. Cal. 1978). The question of whether multiple corporations constitute an alter-ego involves factual questions inappropriate to resolve on a motion to dismiss. *See In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1121-22 (N.D. Cal. 2005); *see also Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 885 (9th Cir. 2013). Here, the TAC alleges that each Defendant was WSI's alter ego, ¶ 38, and that the Unpurchased Products were advertised and sold by those Defendants, owned or operated by WSI, ¶¶ 27-29, 33-36. Further, plaintiffs may bring claims against entities from which they did not purchase products, when their claims are substantially similar to one arising from personal economic harm. *See Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012). Because all Defendants, other than WSI, are WSI's alter-ego, and the claims and injuries arising from the Purchased and Unpurchased Products are substantially similar, Mr. Rushing has standing to bring claims against all Defendants.

## G.    MR. RUSHING DOES NOT CHALLENGE MERE "PUFFERY"

Contrary to Defendants' claim, Mr. Rushing's case is not based on puffery or generalized statements that the bedding was "luxurious." MTD at 2, 10, 18. "Whether a statement is puffery does not depend on the truth or falsity of a statement; it depends on the degree of generality or specificity. The 'puffing' rule amounts to a seller's privilege to lie his head off, so long as he says nothing specific." *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 821, 830 (C.D. Cal. 2010). Here, Mr. Rushing is challenging Defendants' specific statements about their beddings' thread counts that ascribe to them "specific or absolute characteristics" they do not possess. ¶¶ 46-96, 133-36, 139-41, 153; *Cook, Perkiss and Liehe, Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). While not disclosed for all of their bedding, Defendants Advertise each of the Purchased and Unpurchased Bedding as having a specific thread count. ¶¶ 68-91. Thread count conveys not only specificity, but also a commonly understood term of art in the textile industry that is based on an industry standard, ASTM D3775, that dictates how thread count is to be calculated. ¶¶ 46-58. It is an objective, calculable, formula with

an allowed deviation of only 5%. ¶ 59. However, thread count cannot be discerned by the average consumer's untrained, naked eye, therefore, representations as to thread-count are employed to permit a consumer to judge one bedding product against another. ¶¶ 13, 67, 72, 204. Again, the FTC opinion letter warned that Advertising thread count in a manner other than the industry standard, as Defendants do, would likely mislead consumers. *See Bohac*, 2014 WL 1266848, at *6 (finding FTC statement "warn[ed] marketers that use of 'natural' may be deceptive"). Accordingly, once Defendants went beyond their generalized statements that the Purchased and Unpurchased Products were "elegant" or "lustrous" and began peddling them as having specified thread counts, *i.e.*, "600-thread-count," their statements no longer constituted mere puffery.

## CONCLUSION

For the foregoing reasons, Mr. Rushing respectfully requests that the Court deny Defendants' MTD in its entirety. Alternatively, if the Court disagrees, Mr. Rushing requests that, pursuant to Federal Rule of Civil Procedure 15, the Court grant him leave to amend to cure any defect this Court determines to exist. As explained by the Ninth Circuit, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir.1992). While Defendants seek dismissal with prejudice, they state no reason or authority to support any argument that Mr. Rushing should be denied leave to amend. *See* MTD at 25.

Dated: July 20, 2016.        Respectfully submitted,

**ROSE LAW GROUP, PC**

*/s/ **Kathryn Honecker***
Kathryn Honecker (*pro hac vice*)
Audra Petrolle (*pro hac vice pending*)
Lauren Nageotte (*pro hac vice*)
7144 E Stetson Drive, Suite 300
Scottsdale, Arizona 85251
khonecker@roselawgroup.com
lnageotte@roselawgroup.com
docket@roselawgroup.com
Phone: 480.505.3936
Fax: 480.505.3925

**BAKER LAW, PC**

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

George Richard Baker (SBN 224003)
436 N. Stanley Avenue
Los Angeles, California 90036
richard@bakerlawpc.com
Phone: 323.452.9685

*Attorneys for Plaintiff*