UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM RUSHING,

    Plaintiff,

    v.

WILLIAMS-SONOMA, INC., et al.,

    Defendants.

Case No. 16-cv-01421-WHO

**ORDER GRANTING IN PART MOTION TO DISMISS**

Re: Dkt. No. 26

## INTRODUCTION

Plaintiff William Rushing filed this class action complaint on behalf of himself and others similarly situated, challenging the allegedly deceptive advertising practices for bedding sold by defendants WILLIAMS-SONOMA, INC. ("WSI"), WILLIAMS-SONOMA DTC, INC. ("WSDTC"), WILLIAMS-SONOMA ADVERTISING, INC. ("WSA"), WILLIAMS-SONOMA STORES, INC. ("WSS"), POTTERY BARN, INC. ("Pottery Barn"), POTTERY BARN KIDS, INC. ("Pottery Barn Kids"), POTTERY BARN TEEN, INC. ("Pottery Barn Teen"), and WEST ELM, INC. ("West Elm").[1] Rushing contends that defendants "grossly inflate" the thread count numbers in their bedding to fool consumers into buying their products. In this Order I GRANT defendants' motion to dismiss allegations about products Rushing did not purchase, because the legal theories and defenses regarding thread count in one-ply sheets (which he did not purchase) are different than in two-ply sheets, which he did purchase. I also DISMISS defendants not alleged to be liable for the product Rushing purchased. I DENY the motion in most other respects.

## BACKGROUND

Rushing alleges that defendants do not adhere to industry practice, standards, or instruction from the Federal Trade Commission ("FTC") concerning their calculation of thread count. Third

---

[1] Plaintiff alleges that all of the defendants are wholly-owned subsidiaries of WSI, but that WSI is the "manufacturer, merchant, and marketer" of the products at issue. TAC ¶¶ 1, 27-36.

Amended Complaint (TAC), ¶ 5. In support of this assertion, he relies on the American Society for Testing and Materials International (ATSM) D3775 standard, which sets the industry standard for determining thread count, according to Rushing, and requires that a textile not exceed plus or minus 5% deviation between the textile's declared and actual thread count. *Id*. ¶¶ 46-59. As also relevant to the product he purchased, ATSM D3775 requires thread count in bedding to be based on individual thread counts even if "plied." *Id*. ¶¶ 52, 59.

The TAC challenges the linen products marketed and advertised by defendants as having a thread count higher than 350 or more ("higher thread count"), as disclosed in either the names of the bedding products or as stated in the first sentence of the products' narrative descriptions, arguing that the thread count has been falsely and deceptively described. TAC ¶ 6, 8, 67. Rushing seeks to represent a class of consumers who purchased any bedding that was sold by defendants and advertised as having a "higher thread count," meaning a thread count of 350 or greater. *Id*. ¶ 14.

Rushing purchased bedding from WSI's website labelled "Signature 600-Thread-Count Sateen Bedding." The product was advertised as being sewn from "lustrous 600-thread-count two-ply Egyptian-cotton sateen." *Id*. ¶¶ 9, 68-71, 135-136. He alleged that the thread count of the product he purchased was not 600, but merely 291, and that as a result he paid an inflated price for that bedding. *Id*. ¶¶ 11, 72-73, 75, 139. He also asserts that the bedding he bought did not comply with the industry standard of having plus or minus 5% of the threads advertised (as tested under the ATSM standard) because each two-ply yarn was improperly counted as two threads. *Id*. ¶ 74.

Rushing asserts that, similar to the bedding he purchased, defendants advertised and sold 31 additional products with misleading thread counts at or above 350. *Id*. ¶ 76(a) – (ee). As to one of those products – Pottery Barn's "700-Thread-Count Sheet Set" – he states that the ATSM test revealed this bedding to have approximately a 570 thread count, which far exceeds the industry standard 5% deviation. *Id*. ¶¶ 80-82. Similarly, Pottery Barn Teen's "400 Thread-Count Sheet Set," has a thread count of approximately 208. *Id*. ¶¶ 83-84; 86-97 (West Elm's 350 thread-count sheets, having 320 count). Rushing has not tested some of the products he listed as being falsely advertised as to thread count, but based on his other testing he argues that it is "reasonable

to presume" those sheets will be found to have exaggerated thread counts as well. *Id*. ¶¶ 87, 89-90.

Rushing contends that defendants' use of specific thread counts in its marketing and advertising is designed to create the impression to consumers that: (i) thread count is important and material to a consumer's decision to purchase bedding; (ii) yarn source is important; and (iii) thread counts are accurate. *Id*. ¶ 94. These deceptive misrepresentations are reinforced by defendants' characterization of these goods as "luxury" and high quality, and part of a larger marketing strategy enacted over time. *Id*. ¶¶ 96-104.

Based on these allegations, Rushing alleges causes of action for: (i) violation of the California Consumer Legal Remedies Act ("CLRA," Cal. Civ. Code § 1750 *et seq*.), specifically section 1770(a)(5)'s proscription against representing that goods have characteristics and qualities they do not have, section 1770(a)(7)'s proscription against representing that goods are of a particular standard and quality when are not, and section 1770(a)(9)'s proscription against advertising goods with intent not to sell them as advertised; (ii) violation of California's False Advertising Law ("FAL," Cal. Bus. & Prof. Code § 17500, *et seq*.), for misleading and deceptive practices; (iii) violation of the FAL by untrue and false advertising; (iv) violation of California's Unfair Practices Law ("UCL," Cal. Bus. & Prof. Code § 17200 *et seq*.) by committing acts that are unlawful under the Federal Trade Commission Act ("FTCA"), CLRA, and FAL; (v) violation of the UCL by unfair acts; (vi) violation of the UCL by fraudulent acts; (vii) breach of contract against WSI as to deceptive advertising for the WSI brands; (viii) breach of the implied covenant of good faith and fair dealing against WSI due to the deceptive advertising for the WSI brands; and (ix) unjust enrichment against WSI due to the deceptive advertising for the WSI brands. He also seeks injunctive relief against all defendants. TAC at 48.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when

3

the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

### I. UNPURCHASED PRODUCTS

#### A. Standing under CLRA, FAL and UCL

Defendants first move to dismiss Rushing's claims as to bedding products he did not purchase for lack of standing. As explained in prior Orders, on a motion to dismiss I will allow a plaintiff to proceed with consumer protection class claims based on deceptive labels or advertising as to products she or he did not purchase when:

> the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products. That determination necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products. For example, a claim that products are illegally mislabeled as a matter of law because the labels fail to disclose something required by a statute or regulation can be resolved without a context-specific analysis of each product's label. The label is either illegal or it is not. That the products bearing the challenged label may be different—or that the labels themselves are different in other respects—is immaterial to the determination of whether the label is in fact illegal. On the other hand, a claim that a reasonable consumer would be misled by a representation on a label may well require a context-specific analysis of the appearance of the label, the misrepresentation's placement on the label, and other information contained on the label. In those circumstances, a consumer may only be allowed to pursue those claims for products with identical labels. Finally, where the actual composition or appearance of the product is legally significant to the claim at issue,

> the consumer may only be allowed to pursue claims for products with identical product composition and/or appearance.

*Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014).

Defendants argue that standard cannot be met here because the alleged deception – that the 600 thread count two-ply bedding purchased contains less than 291 threads due to defendants' failure to follow ATSM 3775's directive to count each thread singly even if "plied" as well as FTC advice as how to count two-ply threads – is materially different than Rushing's allegations regarding the unpurchased products, which consisted of bedding that was not advertised as two-ply and whose thread count is lower than advertised in violation of ATSM 3775's + or – 5% deviation.  TAC ¶¶ 9,11, 52, 58.[2]  I agree.

Rushing argues that, broadly construed, his theory of why defendants' conduct was deceptive is similar between the purchased product and the non-purchased products; defendants allegedly failed to comply with the ATSM and industry standard requiring bed linens to contain + or -5% of the threads advertised.  But whether defendants' advertising of the product Rushing purchased was materially deceptive depends upon a <u>separate and unique legal question</u>: were the ATSM, industry standards, or reasonable consumer expectations violated when defendants counted the two-ply yarns as separate threads for the thread count?  Defendants' defenses to Rushing's unique claim require "context-specific analysis" that defeats his standing to pursue claims on the unpurchased products.  In other words, because here "the actual composition or appearance of the product is legally significant to the claim at issue," Rushing may "only be allowed to pursue claims for products with identical product composition and/or appearance," meaning deceptively or illegally advertised bedding based on deceptive two-ply counts.  *See Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182 at *8.[3]

---

[2] While the TAC does not allege what ply the unpurchased products are, in his First Amended Complaint Rushing admitted that a number of the unpurchased products were single-ply.  *See* Dkt. No. 1-10 (FAC) ¶¶ 60, 63, 66.  While the contents of the prior complaints are not admissions or "legally binding" on him, they are relevant to what he may be able to plausibly allege if given leave to amend.  They indicate that he may not be able to allege that any of the unpurchased products are two-ply.

[3] Rushing cannot claim that the two-ply issue does not matter, because if defendants were allowed

Because Rushing's claims regarding his purchased product (false and deceptive advertising, Unfair Competition, breach of contract, etc.) flow from defendants' allegedly deceptive and illegal count of each two-ply yarn as two threads, he does not have standing to prosecute class claims based on defendants' alleged failure to accurately disclose non-two-ply thread counts that fall outside the accepted industry standard deviation. ATSM 3775. The legal theory and defenses applicable to his claim are legally significant and raise different questions not applicable to single-ply products. The unpurchased products, therefore, are DISMISSED from this case. Rushing is given limited leave to amend. He may identify and include in his amended complaint unpurchased products only to the extent that he can plausibly allege, consistent with Rule 11, that the unpurchased products are two-ply products that suffer from the same deception of which he complains (*e.g.*, defendants illegally or deceptively counted both plys in a two-ply yarn in order to state a higher thread count).

### B. Standing for Contract and Unjust Enrichment Claims

Defendants argue that Rushing cannot assert a breach of contract or an unjust enrichment cause of action based on quasi-contract for products whose advertisements – which formed the contract or quasi-contract – he did not see and for products he did not purchase. Since I have concluded that Rushing lacks standing to pursue claims for the unpurchased products, this argument is moot.

### C. Standing to Pursue Claims Against Defendants Who Did Not Sell or Advertise WSH Products

Defendants also argue that Rushing lacks standing to pursue claims against the defendants that did not sell or advertise the bedding he purchased. Rushing asserts that he relied on WSH's website and the catalog created by WSI, WSDTC and WSA in purchasing his product, and defendants do not dispute the claims left are properly asserted against these three defendants. TAC ¶¶ 9, 29, 30, 31.[4]

---

to count the two-ply yarn as two threads for thread-count purposes, the bedding he purchased would have a 582 thread count, which is within the + or − 5% deviation he alleges is the industry standard.

[4] Plaintiff alleges that WSI does business as Williams-Sonoma Home (WSH). TAC ¶ 29.

The only allegations regarding the other defendants are that: (i) they sell other bedding products with deceptively and illegally advertised inflated thread counts; TAC ¶¶ 32-36; and (ii) the defendants are all "alter egos, agents, partners, joint venturers, joint employers, representatives, servants, employees, successors-in-interest, co-conspirators and assigns, each of the other" and therefore "jointly and severally liable" to plaintiff. *Id*. ¶ 38.

Rushing has failed to allege *facts* to support a claim against any defendants other than WSI, WSDTC and WSA. His claims are limited to the bedding product he purchased, absent amendment. His conclusory "alter ego" allegation fails to allege any facts plausibly showing that the other defendants are alter egos or otherwise sufficiently connected to WSI, WSDTC, or WSA to be liable to Rushing on his remaining claims regarding the advertising and purchase of his bedding. Accordingly, Pottery Barn, PBKids, PBTeen, West Elm and WSS are DISMISSED with leave to amend.

## II.   WSH BEDDING

Defendants raise a number of arguments that Rushing has failed to plead plausible claims with respect to the WSH bedding he purchased. Many of them are not well-founded, at least at the pleading stage.

### A.  Safe Harbor

Defendants argue that Rushing cannot bring a claim under the CLRA, UCL, or FAL because defendants' thread-counts comply with federal law and, therefore, their conduct falls under the "safe harbor" provisions of those statutes. *See, e.g., Alvarez v. Chevron Corp*., 656 F.3d 925, 933 (9th Cir. 2011) (recognizing that plaintiffs cannot bring UCL or CLRA claims based on conduct the California legislature explicitly authorizes); *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 184 (1999) ("plaintiff may not bring an action under the unfair competition law if some other provision bars it. That other provision must actually bar it, however, and not merely fail to allow it. In other words, courts may not use the unfair competition law to condemn actions the Legislature permits. Conversely, the Legislature's

---

Defendants refer to the bedding that Rushing purchased as "WSH bedding." I will likewise refer to the bedding plaintiff purchased as WSH bedding.

mere failure to prohibit an activity does not prevent a court from finding it unfair.").

The federal law on which defendants rely to find safe harbor are tariff regulations (more specifically, Custom and Border Protection Regulations) codified at 19 C.F.R. § 141.0 *et seq*. Tariff regulations set forth "general requirements and procedures for the entry of imported merchandise" into the United States. 19 C.F.R. § 141.0. As part of those regulations, a "commercial invoice shall be presented for each shipment of merchandise at the time the entry summary is filed." 19 C.F.R. § 141.81. "The commercial invoice shall be prepared in the manner customary in the trade, contain the information required by §§ 141.86 through 141.89." 19 C.F.R. § 141.83. Under 19 C.F.R. § 141.89(a)(6), those invoices must, for cotton fabrics, include "(6) Number of single threads per square centimeter (All ply yarns must be counted in accordance with the number of single threads contained in the yarn; to illustrate: a cloth containing 100 two-ply yarns in one square centimeter must be reported as 200 single threads)." Defendants argue that since 19 C.F.R. § 141.89(a), requires commercial invoices to count each two-ply yarn as two threads, their advertising conduct falls within that safe harbor and plaintiff cannot assert his claims under the UCL, FAL or CLRA.

There are two main weaknesses with defendants' argument. First, Rushing makes a persuasive case that 19 C.F.R. § 141.89(a)(6) does not apply to bedding, but a different tariff does that does not require disclosure of thread-count. Oppo. 5-6 (relying on Harmonized Tariff Schedule of the United States (HTSUS), Chapter 63). But I need not resolve this dispute because even if 19 C.F.R. § 141.89(a)(6) applies to bedding, it speaks only to commercial invoices that must be presented at import. There is nothing in the regulation relied on by defendants that speaks to advertising, marketing, or otherwise implicates commercial *transactions* much less the *consumer transactions* at issue here.[5] Because this regulation does not expressly permit defendants' advertising conduct, it cannot bar Rushing's consumer protection claims.[6]

---

[5] For this reason, defendants' reliance on *Davis v. HSBC Bank Nevada, N*.A., 691 F.3d 1152, 1165 (9th Cir. 2012) does not support them. In *Davis*, part of the conduct challenged was expressly permitted, indeed required in consumer transactions, by the federal regulation at issue and therefore, fell within the safe harbor.

[6] Plaintiff alleges that the federal agency charged with regulating consumer transactions, the FTC,

8

### B. Rule 9(b) Particularity

Defendants also argue that Rushing's claims that sound in fraud – CLRA, UCL and FAL – do not meet the Rule 9(b) particularity standard because (i) he does not allege how he was misled by the accurate advertising of the WSH bedding as two-ply, (ii) his claim is based on an alleged violation of an "industry standard" that he does not allege he knew of, and (iii) he does not allege what he understood two-ply to mean. Rushing responds that Rule 9(b) only requires him to disclose sufficient facts showing how an alleged statement or omission could mislead a reasonable consumer. Oppo. 8.

Rushing has adequately alleged the deceptive and fraudulent nature of his claim sufficiently for Rule 9(b) purposes. In particular, he alleges that when he purchased "600 thread count" sheets for the high price of $500 he expected that "luxury" bedding to have a 600 thread count, but that is not what he received. TAC ¶¶ 68-72, 75. He plausibly alleges that reasonable consumers would be similarly misled. *Id*. ¶¶ 94, 95, 109. Allegations regarding whether Rushing saw the two-ply description on defendants' website or in other advertising (it is unclear from TAC, *see, e.g*., ¶¶ 9, 70, 135) and allegations regarding what he or reasonable consumers would have understood two-ply to mean in the context of a product labelled as having a "600-thread-count" is not required under Rule 9(b) at this juncture nor is it ripe for resolution on a motion to dismiss. *See, e.g., Williams v. Gerber Products Co*., 552 F.3d 934, 939 (9th Cir. 2008) (noting resolution of whether a challenged practice is deceptive under California's consumer protection statutes is rarely appropriate on a motion to dismiss).

### C. CLRA Claim

In addition to the safe harbor and Rule 9(b) arguments, defendants argue that Rushing cannot state his CLRA claim based on active concealment because: (i) defendants complied with all applicable laws and, therefore, cannot violate the CLRA; and (ii) plaintiff fails to allege

---

has opined that companies manufacturing or selling bedding should not count each thread in a two-ply yarn in the thread-count number advertised. TAC ¶ 58. Defendants dispute the characterization of the impact of the FTC's opinion letter and argue their conduct nonetheless is complies with the FTC guidance because they disclose the fact the yarns in the product at issue were two-ply. Reply at 9 n.12. I need not resolve these dueling contentions as to the impact of the FTC letter in order to resolve this motion to dismiss.

9

"affirmative acts" of active concealment. Mot. 15-16. I have already rejected defendants' first argument. As to the second, under the CLRA omissions contrary to a defendant's representation are actionable under the CLRA. *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (noting that California court have generally held manufacturer liable for a fraudulent omission concerning a latent defect under the CLRA, only where "the omission is 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose'" because it implicated consumer safety. (quoting *Daugherty v. American Honda Motor Co.*, 144 Cal.App.4th 824 (Ct.App.2006)).[7] The TAC does not assert a CLRA claim based on omissions contrary to an express representation, although Rushing attempts to recast it as doing so in his Opposition. *See* Oppo. 10. Instead, the CLRA claims actually pleaded are based on active concealment.[8] Where a CLRA claim sounds in active concealment, additional allegations are required. *See, e.g., Elias v. Hewlett-Packard Co.*, No. 12-CV-00421-LHK, 2014 U.S. Dist. LEXIS 16836, at *36 (N.D. Cal. Feb. 5, 2014) ("A fraudulent omission claim based on active concealment requires that Plaintiff allege specific 'affirmative acts on the part of the defendants in hiding, concealing or covering up the matters complained of.'" (quoting *Lingsch v. Savage*, 213 Cal. App. 2d 729, 734 (1963)).

Here, Rushing has alleged why thread count is important (TAC ¶¶ 12, 94, 96, 157), how consumers are unable to discern thread counts on their own and must rely on defendants' representations (*id.* ¶ 204), and how defendants prominently advertised thread count but failed to

---

[7] *See also Falk v. GMC*, 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007) ("Plaintiffs can therefore successfully pursue a CLRA claim, . . . if GM was 'obliged to disclose' the potential for problems with the speedometers in certain vehicles. A failure to disclose or concealment can constitute actionable fraud in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997).").

[8] Plaintiff's CLRA violation is based in part on express allegations that "defendants' active concealment of material facts violated § 1770(a)(5)'s proscription against representing that goods have characteristics and quantities that do not actually have. . . . Defendants' active concealment of material facts violated or § 1770(a)(7)'s proscription against representing that goods are of a particular standard, quality or grade when they are of another. . . . Defendants' active concealment of material facts violated § 1770(a)(9)'s proscription against advertising good with the intent not to sell them as advertised." TAC ¶¶ 154-156.

10

disclose their exclusive knowledge that actual thread counts were contrary to their representations. *Id*. ¶¶ 12, 113. More specific to the claim that remains, he asserts that defendants prominently advertised the thread count on his product but failed to disclose its actual knowledge that the thread count is only 291, when properly counted. TAC ¶¶ 9-11, 72. While he adequately alleged an omission contrary to an affirmative statement claim, he has not alleged "affirmative acts" to support an "active concealment claim." *But see Stanwood v. Mary Kay*, 941 F. Supp. 2d 1212, 1221 (C.D. Cal. 2012) (plaintiff had adequately pleaded "fraudulent concealment" by alleging, in addition to nondisclosure, materiality, reliance, and damages, that defendants "concealed the information in order to increase its sales from consumers like" plaintiff.).

Rushing's active concealment claims under the CLRA are DISMISSED with leave to amend. He may recast these claims as omissions made actionable by misleading affirmative misrepresentations, allege additional facts in support of the active concealment claims, or do both.

### D. UCL Claims

California's Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Each prong of the UCL – unlawful, unfair, or fraudulent – created a separate and distinct basis for liability. *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1129-30 (9th Cir. 2014).

#### 1. Unlawful

In prohibiting "any unlawful" practice, section 17200 "borrows" violations of other laws and "treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999) (internal quotations omitted). Rushing alleges that defendants' conduct is unlawful under the UCL because it: (i) violated the FTCA; (ii) violated the CLRA; and (iii) violated the FAL. I have rejected, at this stage, defendants' argument that the alleged conduct cannot be considered illegal under the consumer protection statutes because defendants' asserted compliance with the tariff regulation. Rushing has also adequately alleged what was deceptive and fraudulent (and hence illegal under at least the FTCA and UCL) in defendants' advertising. He has adequately

1   stated a claim under the illegal prong.[9]

### 2. Unfair

There are two standards for determining what is "unfair competition" under the UCL. The first standard is whether the conduct complained of threatens "an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel–Tech*, 20 Cal.4th at 187. In the context of claims brought by consumers, California Courts of Appeal have rephrased this standard to require allegations that the challenged conduct violates a "public policy" that is "tethered" to a specific constitutional, statutory, or regulatory provision. *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002). The second standard "involves balancing the harm to the consumer against the utility of the defendant's practice." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007).[10]

Rushing has adequately alleged unfair conduct under both standards; alleging that defendants' thread-count conduct is prohibited by FTC guidance and the FTCA, and alleging that any supposed utility of defendants' conduct is outweighed by the harm the deceptive conduct causes consumers (the purchase of bedding at inflated prices as the result of inflated thread counter). TAC ¶¶ 94, 95, 188, 189.

### 3. Fraudulent

The "fraudulent" prong of the UCL "requires a showing [that] members of the public are likely to be deceived." *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871 (2002). "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on" a motion to dismiss. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Similar to my conclusion under 9(b), I find that Rushing has adequately pleaded that reasonable

---

[9] Defendants challenge Rushing's apparent reliance on puffery as a source of his illegality claim. Mot. 18. In Opposition, he clarifies that he does not rely on defendants' "puffery-type" statements that its bedding is "luxurious" or "soft" for an actionable claim. Oppo. 12.

[10] California courts are split on how to define "unfair" in the consumer context, with some applying the modified *Cel-Tech* standard and others applying the balancing test. *See, e.g., Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007); *see also Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010).

consumers would be misled by defendants' failure to disclose an accurate thread count as to the product he purchased.

### E.     Breach of Contract and Implied Covenant

Defendants move to dismiss Rushing's breach of contract and implied covenant claims based on insufficient pre-suit notice and insufficient allegations of breach and causation. They also move to dismiss the related breach of implied covenant claim, arguing it is duplicative.

In California, "[t]o avoid dismissal of a breach of contract or breach of warranty claim in California, '[a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach.'" *Alvarez v. Chevron Corp*., 656 F.3d 925, 932 (9th Cir. 2011) (quoting *Stearns v. Select Comfort Retail Corp.,* 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010). "The purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court." *Id*. The Ninth Circuit in *Alvarez* explained that notice must be pre-suit and cannot be contemporaneous with filing suit, because post-suit notice "would [] completely undermine[]" the purpose of avoiding litigation. *Id*.; *see also Cardinal Health 301, Inc. v. Tyco Elecs. Corp*., 169 Cal. App. 4th 116, 135 (explaining purpose of pre-suit notice under California law); *Adkins v. Apple Inc*., 147 F. Supp. 3d 913, 921 (N.D. Cal. 2014) (dismissing consumer class action breach of express warranty claim for failure to provide pre-suit notice).

Rushing does not dispute that he did not provide any direct pre-suit notice for his breach of contract and breach of implied covenant claims. Instead, he argues that he gave actual or constructive notice of these claims in his May 4, 2016 CLRA notice. TAC ¶ 166 & Ex B. He asserts that the CLRA notice is incorporated into the TAC as pleaded with respect to the breach claims when he "incorporated" all prior paragraphs by reference into his breach claims. TAC ¶¶ 216, 225. He contends – without citing any cases on point – that because the CLRA notice described the same *harms* he alleges consumers suffered by dint of his breach claims, the CLRA notice should suffice.[11] But even if the CLRA notice could be used for the breach claims not

---

[11] The cases plaintiff relies on for the proposition that notice can be provided post-suit predate *Alvarez. See Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573, 581 (C.D. Cal. 2011); *In re*

13

United States District Court
Northern District of California

mentioned in that notice, the CLRA notice was not provided to defendants until May 4th, *the same day* the parties filed the proposed SAC pursuant to a stipulation. Dkt. No. 19.[12] Contemporaneous notice does not suffice. *Alvarez*, 656 F.3d at 932.

Rushing also argues that the industry guidance in the FTC letter (TAC ¶ 58) put defendants on "constructive notice" for potential breach claims. Oppo. 15. But the only case he relies on to support that proposition is inapposite. That case dealt with whether a construction defect "was latent or obvious" and whether there was a related duty to warn. *Donlon v. Gluck Grp., LLC*, No. CIV.A. 09-5379 JEI, 2011 WL 6020574, at *5 (D.N.J. Dec. 2, 2011). It had nothing to do with industry guidance sufficing for notice of breach of contract and implied covenant claims.[13]

In absence of on-point authority, Rushing's breach of contract and implied covenant claims are DISMISSED WITH PREJUDICE for lack of pre-suit notice.

### F.     Unjust Enrichment

Defendants argue that Rushing's stand-alone unjust enrichment cause of action fails because there is no separate unjust enrichment cause of action under California law, and any related claim exists instead as a remedy where a complaint seeks restitution. Mot. at 23. The Ninth Circuit recently clarified the law regarding unjust enrichment in California, holding that while "there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution ... [w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753,

---

*HP Inkjet Printer Litig*., No. C 05-3580 JF, 2006 WL 563048 (N.D. Cal. Mar. 7, 2006)).

[12] That stipulation mentioned the CLRA notice and explained that 30 days after the SAC was filed, plaintiff would file his TAC to seek damages under the CLRA, consistent with the CLRA's notice requirement. Dkt. No. 19.

[13] Plaintiff also relies on *Haddix v. Gen. Mills, Inc*., No. 2:15-CV-02625-MCE-AC, 2016 WL 2901589, at *9 (E.D. Cal. May 17, 2016), which discussed the exception to notice under California law when a breach of express warranty claim is brought by injured consumers against manufacturers with whom they have not dealt. Here, however, plaintiff expressly pleads that he purchased the bedding directly *from* defendants. The exception does not apply here. *See Davis v. Apperience Corp*., No. C 14-00766 WHA, 2014 U.S. Dist. LEXIS 154758, at *13 (N.D. Cal. Oct. 31, 2014) (rejecting application of exception where plaintiff dealt directly with defendant).

14

762 (9th Cir. 2015) (internal citations and quotations omitted).

Defendants also assert that because unjust enrichment is only an adjunct to a claim for restitution, it is duplicative and should be dismissed. Mot. at 23. However, the Ninth Circuit in *Astiana* also instructed that a claim for unjust enrichment should not be dismissed as duplicative or superfluous of other claims because a party may set out alternative claims. 783 F.3d at 783 (citing Fed. R. Civ. P. 8(d)(2)); *see also Khasin v. R. C. Bigelow, Inc*., No. 12-CV-02204-WHO, 2015 WL 4104868, at *2 (N.D. Cal. July 7, 2015) (allowing amendment to state unjust enrichment claim, despite presence of UCL and FAL claims seeking restitution).

Undaunted, defendants argue that because in this case Rushing has alleged a breach of contract claim, he cannot at the same time allege a restitution/unjust enrichment claim. However, I have dismissed his breach claims without leave to amend. At oral argument, defendants were not able to explain why, given the current posture of the case, the unjust enrichment claim would be duplicative.

## III.   INJUNCTIVE RELIEF

Defendants argue that Rushing's claim for injunctive relief should be stricken because now that he knows that defendants' sheets do not have the thread count they are advertised as having, he cannot be harmed by any deceptive conduct and lacks standing to seek injunctive relief. They rely on cases arising in the food and supplement mislabeling context that have held that because the plaintiffs knew the products they purchased (giving them standing to sue) included non-natural or non-organic ingredients, they could not plausibly allege that they would be misled into purchasing the products in the future, the plaintiffs did not have standing to seek injunctive relief. *See,e.g., Ham v. Hain Celestial Grp., Inc*., 70 F. Supp. 3d 1188, 1196 (N.D. Cal. 2014); *Dachauer v. NBTY, Inc*., No. 16-cv-00216-VC, 2016 U.S. Dist. LEXIS 78213, at *1-2 (N.D. Cal. June 3, 2016) ("Dachauer lacks Article III standing to pursue injunctive relief. He alleges that he would not have purchased the Vitamin E supplements had he known what he knows now. Complaint ¶71. Given what Dachauer knows now, there's no possibility that he'll be wronged again in a similar way.").

Rushing distinguishes these cases by arguing that they address unsafe or useless products

that reasonable consumers would not intend or want to purchase in the future given the nature of their claims, whereas here he does not allege the bedding is unsafe or useless but that he would in fact purchase bedding from defendants if the defendants accurately disclosed the thread count. Oppo.at 20.  He relies on *I.B. by & through Bohannon v. Facebook, Inc*., 82 F. Supp. 3d 1115, 1124 (N.D. Cal. 2015), which held that "the named Plaintiffs point to definitive testimony that they would attempt to make future purchases over Facebook if Facebook changed its policy. The named Plaintiffs have therefore shown a real threat of future injury, and therefore have standing to bring suit for injunctive relief."

I agree with Rushing.  Other recent cases in this court have found standing for injunctive relief claims where "[w]ithout injunctive relief, [plaintiff] could never rely with confidence on product labeling when considering whether to purchase Defendants' product." *Lilly v. Jamba Juice Co*., No. 13-cv-02998-JST, 2015 U.S. Dist. LEXIS 34498, at *14 (N.D. Cal. Mar. 18, 2015). That is particularly true in a case like this one where because of the nature of the product and the necessity of scientific testing to confirm the product is not as advertised, a consumer cannot easily assess the veracity of a defendant's representation when considering a future purchase.  This distinguishes this case from other product labelling cases where plaintiffs now know, for example, that "evaporated cane juice" is sugar or that "ascorbic acid" is not natural and, therefore, they will not be harmed in the future by purchasing products whose labels disclose those ingredients. *See, e.g*., *Garrison v. Whole Foods Mkt. Grp., Inc*., No. 13-cv-05222-VC, 2014 U.S. Dist. LEXIS 75271, at *20 (N.D. Cal. June 2, 2014) ("Now they know [about inclusion of non-natural ingredient in product]. There is therefore no danger that they will be misled in the future."); *Morgan v. Wallaby Yogurt Co.,* No. 13-cv-00296-WHO, 2014 U.S. Dist. LEXIS 34548, at *21 (N.D. Cal. Mar. 13, 2014) ("Here, I am limited to only granting damages since the plaintiffs now know what evaporated cane juice is and have unambiguously stated that they would not have purchased the product had they known it contained added sugar. They cannot plausibly allege that they would purchase the challenged products in the future if they were properly labeled."); *but see Duran v. Hampton Creek*, No. 3:15-cv-05497-LB, 2016 U.S. Dist. LEXIS 41650, at *18-19 (N.D. Cal. Mar. 28, 2016) (finding *Lilly* analysis persuasive, but dismissing injunctive relief claim

16

1 because it was not plausible that plaintiff could be misled in the future by "non-dairy mayonnaise"
2 label once plaintiff knew it was not "mayonnaise").

3     For that reason, Rushing may pursue his claim for injunctive relief.

## CONCLUSION

For the foregoing reasons, Rushing's claims regarding unpurchased products are DISMISSED with limited leave to amend as described in this Order. His claims against Pottery Barn, PBKids, PBTeen, West Elm and WSS are DISMISSED with leave to amend. His claims based on active concealment under the CLRA are DISMISSED with leave to amend. His claims for breach of contract and implied covenant are DISMISSED WITH PREJUDICE. Defendants' motion to dismiss is DENIED in all other respects. Plaintiff shall file his amended complaint within thirty (30) days of the date of this Order.

**IT IS SO ORDERED**.

Dated: August 15, 2016



WILLIAM H. ORRICK
United States District Judge