1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    WILLIAM RUSHING,                          Case No. 16-cv-01421-WHO

          Plaintiff,
8
                                               **ORDER GRANTING IN PART AND**
9        v.                                    **DENYING IN PART MOTION TO**
                                               **DISMISS**
10   WILLIAMS-SONOMA, INC., et al.,
                                               Re: Dkt. No. 50
          Defendants.
11

12                              **INTRODUCTION**

13         In his Fifth Amended Complaint ("FAC"), plaintiff William Rushing challenges the

14   allegedly deceptive advertising practices for bedding sold by defendants Williams-Sonoma, Inc.

15   ("WSI"), Williams-Sonoma DTC, Inc. ("WSDTC"), and Williams-Sonoma Advertising, Inc.

16   ("WSA," collectively "WSI").  He claims that WSI does not adhere to industry practice and

17   standards, or instruction from the Federal Trade Commission ("FTC") as to how to calculate

18   thread count and instead "grossly inflates" the thread count numbers advertised in its bedding.

19   FAC, ¶¶ 5, 6.  Defendants again move to dismiss, primarily with respect to unpurchased products

20   identified by Rushing.  They argue that he fails to allege facts establishing that the unpurchased

21   products are similar enough (with respect to their construction and advertising) to the product he

22   purchased as well as facts that WSI's advertising of those products was false or misleading.  Given

23   Rushing's counsel's representations at oral argument that additional facts can be alleged regarding

24   the testing of the unpurchased products, he will be given limited leave to do so.  All of defendants'

25   other challenges to the FAC are DENIED.  Accordingly, the motion to dismiss is GRANTED in

26   part with twenty days leave to amend.

27                               **BACKGROUND**

28         I granted in part and denied in part defendants' prior motion to dismiss directed to the

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

Third Amended Complaint.  August 15, 2016 Order [Dkt. No. 36].  I dismissed allegations about products Rushing did not purchase – specifically one-ply products – because the legal theories and defenses regarding thread count in one-ply bedding (that he did not purchase) differed from those applicable to the two-ply bedding (that he purchased).  Rushing was given limited leave to amend to identify any unpurchased products that are two-ply and that suffer from the same deception complained of with respect to the bedding he purchased.  August 2016 Order at 6.  I also dismissed Pottery Barn, Pottery Barn Kids, Pottery Barn Teen, and West Elm – all the defendants other than WSI, WSDTC and WSA – who were not alleged to be involved in the manufacture, marketing, or sale of the product Rushing purchased.[1]  *Id*. at 7.  Finally, I concluded that Rushing had adequately alleged an "omission contrary to affirmative statement claim" under the CLRA, but noted that he had failed to plead "affirmative acts" to support an "active concealment" claim under the CLRA.  I gave him limited leave to amend to attempt to do so.  *Id*. at 11.  I denied the motion concerning defendants' other arguments.

Rushing filed his Fourth Amended Complaint and then (by stipulation) the now-operative Fifth Amended Complaint.   He alleges that defendants violate a number of California consumer protection statutes, including the Consumer Legal Remedies Act ("CLRA," Cal. Civ. Code § 1750 *et seq*.), False Advertising Law ("FAL," Cal. Bus. & Prof. Code § 17500 *et seq*.), Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code § 17200 *et seq*.), and unjust enrichment.

As before, Rushing's allegations rely on the American Society for Testing and Materials International (ASTM) D3775 standard, which according to Rushing sets the industry standard for determining thread count by instructing that individual yarns should be counted as "single units, regardless of whether they are comprised of single or plied components" and requires that a textile not exceed plus or minus 5% deviation between the textile's declared and actual thread count.  *Id*. ¶¶ 68-83.  According to Rushing, WSI misleadingly counts two-ply yarn as two "thread units" in

---

[1] Despite naming all of these defendants and WSI dba entities separately, Rushing alleges that the "manufacturer, merchant, and marketer" of all the products at issue is WSI.  Fifth Amended Complaint ("FAC") ¶ 1.  WSDTC is named as a wholly owned subsidiary of WSI, alleged to manage WSI's online and catalog sales.  *Id*. ¶ 31.  Defendant WSA is named as a wholly owned subsidiary of WSI, alleged to have been involved in advertising the products at issue.  *Id*. ¶ 32.

1   its advertised thread counts and as a consequence, well exceeds the industry-accepted 5%

2   deviation.  He also alleges that guidance from the Federal Trade Commission counsels that both

3   the thread count and the yarn ply should be disclosed together, so that the "600 thread-count two-

4   ply" bedding he bought should have been marketed as "300 thread-count two-ply" bedding.  FAC

5   ¶¶ 7, 82.

6   Rushing seeks to represent a class of consumers who purchased "bedding" products

7   marketed and advertised by defendants as having a thread count higher than 350 or more ("higher

8   thread count") and which all use two-ply thread construction.  FAC ¶ 17.  In accordance with the

9   August 2016 Order, he specifically identifies nine product lines by name; the one he purchased

10   and eight others.  FAC ¶ 102.  However, he also purports to identify and include "other bedding,

11   including future, discontinued, and identified through discovery, that WSI sold at any time during

12   the limitations period that was made of two-ply construction and/or advertised as having a thread

13   count of 350 or higher."  *Id*.

14   Of note, and as challenged by defendants on this motion to dismiss, Rushing expanded the

15   definition of the "bedding" from "sheets and pillowcases" (as defined in the TAC) to include bed

16   sheets, pillowcases, shams, and duvets.  FAC ¶ 4.  He also arguably expands his CLRA claim

17   asserting liability based on a "duty to disclose" omissions theory, as well as the previously stated

18   omission contrary to affirmative statement and active concealment theories.  Defendants move to

19   dismiss both of those "expansions," because Rushing was not given leave to do so.

20   Defendants also move to dismiss claims based on the products Rushing did not purchase

21   and whose marketing he did not view for lack of standing (failure to allege that unpurchased

22   products' compositions and marketing are the same as the purchased product's) and failure to state

23   a claim (failure to allege facts showing that the marketing on those products is false or

24   misleading).  In addition, defendants move to dismiss Rushing's claims for products sold in retail

25   stores or through catalogs, because he did not visit a retail store or purchase through a catalog.

26   Defendants also move to dismiss claims based on purchases falling outside the applicable statute

27   of limitations as well as challenge the adequacy of Rushing's pleading of his CLRA claim.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1

**LEGAL STANDARD**

2          Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

3   if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

4   dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

5   face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A claim is facially plausible when

6   the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant

7   is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

8   omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

9   While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts

10  sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

11         In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

12  Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

13  plaintiff.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is

14  not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

15  fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir.

16  2008).

17                                      **DISCUSSION**

18  **I.      UNPURCHASED TWO-PLY PRODUCTS**

19         In response to the August 2016 Order on the motion to dismiss, Rushing dropped 23 styles

20  of single-ply bedding that he previously included in his TAC and identified by name the nine

21  products he is suing about for having advertised their high thread count (over 350) but failing to

22  disclose that WSI counts both threads in a two-ply yarn in order to achieve the high thread count

23  (contrary to the directive of the relevant ASTM and FTC guidance).  FAC ¶¶ 17, 102, 103.

24  Rushing admits in opposition that one of the identified products is in fact a single-ply product and,

25  therefore, was mistakenly included. [2]  Therefore, there are eight specifically identified products at

26  issue, one Rushing purchased and seven he did not.  Rushing also expressly defines bedding to

27  _____

28  [2] Rushing admits that he mistakenly included in his list the Pottery Barn Teen 400 Thread-Count
    Bedding, which is a single-ply product.  Oppo. 21 n.14.

                                            4

1   include not only pillowcases and sheets (which were included in his TAC) but also shams and

2   duvets.  FAC ¶ 4.

3       **A.      Expanded Definition of Bedding**

4           Defendants move to dismiss or strike Rushing's attempt to bring more products into this

5   case by redefining bedding to include shams and duvets, when his prior complaints were limited to

6   sheets and pillowcases.  Defendants argue that expansion violated my prior ruling giving limited

7   leave to amend and Rule 15.  Defendants rely on Rule 41(b) to argue that I should exercise my

8   discretionary authority and dismiss the FAC in full or, at a minimum, dismiss claims regarding

9   shams and duvets because plaintiff failed to comply with my prior Order.

10          Rushing responds that for the eight specifically identified two-ply products at issue, a few

11  of those product "lines" include not only sheets and pillowcases but also shams and duvets

12  advertised at the identical high thread count, and therefore, his amendment was within the scope of

13  the Order granting limited leave to amend.  Oppo 21.  I agree that to the extent the shams and

14  duvets are part of the same eight "lines" of products identified by Rushing in his FAC (at ¶ 102),

15  they are appropriately included in this case.

16      **B.      Standing and Adequacy of Allegations**

17          Defendants also contend that although Rushing identified the seven unpurchased two-ply

18  product lines in the FAC, he still lacks standing because he fails to allege facts plausibly showing

19  that the unpurchased products have identical compositions to the purchased product (*e.g*., they are

20  in fact two-ply), and were advertised with materially similar terms as the purchased product.

21  Defendants also assert that even if Rushing alleges sufficient facts to show standing to sue over

22  the unpurchased product lines, he fails to allege facts plausibly showing that the claims regarding

23  the advertised thread count were false and misleading (*i.e*., facts supporting his claim that the

24  seven unpurchased products did not contain the actual number of threads advertised).

25          Rushing responds that all seven unpurchased products suffer from the same material

26  defect; they are all two-ply and all advertised as having high thread counts (over 350), but

27  defendants fail to disclose that those high thread counts are only achieved because the two plies

28  are counted separately.   He asserts in his Opposition that each of the seven products are

United States District Court
Northern District of California

1   "substantially similar" to the purchased product; they are all made from the same fabric, sold

2   through a "universal advertising campaign" and convey the same misstatements and omissions

3   concerning thread count.  Oppo. 22.  He also notes that he has continued "testing" on the

4   unpurchased products.  *Id*. at 20.

5   At oral argument, his counsel further explained that testing to date showed that all seven

6   unpurchased product lines were two-ply and failed to contain the number of threads advertised.

7   She agreed that this information could be readily alleged in a further amended complaint.  Rushing

8   is therefore given limited leave to amend to allege facts showing that the unpurchased product

9   lines are two-ply and do not contain the number of threads advertised.

10   To be clear, this is not an opportunity to expand the number of product lines at issue; only

11   the eight product lines identified in the FAC at ¶ 102 may be included in the further amended

12   complaint.  Rushing has had numerous opportunities to identify the products he wants to put at

13   issue in this case, and no further expansion is allowed with the limited leave to amend I am

14   granting.  Relatedly, he cannot attempt to enlarge the scope of this case by relying on his catchall

15   allegation that he intends this case to cover "future, discontinued, and identified through

16   discovery" bedding products.  FAC ¶ 102(10).  In my prior Order, I expressly required Rushing to

17   identify – and include within the scope of this action – only "unpurchased products that are two-

18   ply products that suffer from the same deception of which he complains (*e.g.,* defendants illegally

19   or deceptively counted both plies in a two-ply yarn in order to state a higher thread count)."

20   August 2016 Order at 6.  The eight product lines currently identified by name are the *only*

21   potentially actionable products in this case.

22   **II.   STANDING TO PURSUE CLAIMS BASED ON RETAIL STORE AND CATALOG PURCHASES**

23   Defendants argue that Rushing does not have standing to sue for products sold through

24   their retail stores or catalogs.  They assert that he did not make his purchase through those means

25   and fails to adequately allege that the advertising used in the stores and in the catalogs is false and

26   misleading in the materially same way the thread count was falsely and misleadingly advertised on

27   the two-ply product he purchased.  I agree that Rushing would not have standing to sue over

28

United States District Court
Northern District of California

1    statements made in retail stores or in catalogs that he did not see *and* that were not materially

2    similar to the ones he saw.  But if advertising claims were made for the eight identified product

3    lines at issue in retail stores or catalogs that were materially similar to the ones Rushing complains

4    of (essentially the thread count and/or two-ply) and potentially relied on by the putative class,

5    those statements and the related purchases are actionable.  The retail store and catalog statements

6    more generally may also be relevant to the extent they show defendants' pattern and practice with

7    respect to promoting, and using as a marketing tool, high thread counts in their bedding product

8    lines.

9    ### III.    STATUTE OF LIMITATIONS

10       Defendants assert that the FAC has no limit on the timeframe for the claims alleged, and

11   argues that any claims accruing before the four year UCL and three year CLRA, FAL, and unjust

12   enrichment statutes of limitation should be dismissed.  They contend that the discovery rule does

13   not apply because the allegations in the FAC establish that any alleged wrong could have been

14   discovered through "reasonable diligence," based in large part on plaintiff's allegations that "low

15   thread count" sheets have different and inferior physical and tactile characteristics that distinguish

16   them from truly higher count sheets.  *See* FAC ¶ 2 ("Bedding with higher thread counts are more

17   durable, and will feel denser and smoother than those with lower thread counts"), ¶ 158 (the

18   quality of bedding Rushing received was lower than he was led to believe by the advertised high

19   thread count).  Defendants also point out that WSI was sued in 2003 for similar over-counting

20   practices with respect to thread-count.  As that case is in the "public record," they argue that

21   reasonable consumers were on notice and the discovery rule cannot apply to elongate the relevant

22   statutes of limitations.  Finally, they argue that the fraudulent concealment rule cannot apply to the

23   claims as a matter of law because no different facts are alleged to support that tolling theory, and

24   under California law plaintiff cannot simply rely on facts that are alleged to state the active

25   concealment claim itself.

26       Rushing responds, first, that because the bases for defendants' statute of limitations

27   arguments were disclosed in the Third Amended Complaint, defendants missed their opportunity

28   to raise the argument and it must be denied.  I disagree; courts in the Ninth Circuit have discretion

United States District Court
Northern District of California

1    to hear a second motion under Rule 12(b)(6) if the motion is not interposed for delay and the final

2    disposition of the case will thereby be expedited.  *Cover v. Windsor Surry Co.*, No. 14-cv-05262-

3    WHO, 2016 U.S. Dist. LEXIS 16475, at *11 (N.D. Cal. Feb. 10, 2016); *see also Amaretto Ranch*

4    *Breedables, LLC v. Ozimals, Inc.*, No. C 10-05696 CRB, 2011 U.S. Dist. LEXIS 73853, at *6 n.1

5    (N.D. Cal. July 8, 2011) ("However, courts faced with a successive motion often exercise their

6    discretion to consider the new arguments in the interests of judicial economy.").

7           But defendants' arguments are premature.  They depend on facts that have not yet been

8    developed.  While Rushing generally alleges that lower thread-count sheets like the ones he

9    purchased have tactile differences from higher thread-count bedding, those differences may not be

10   apparent right at purchase.  The alleged physical differences also extend to how the products wear

11   and how long they last; issues which will not be apparent upon purchase.  Moreover, Rushing

12   alleges that he was only able to uncover defendants' deception after testing the sheets he

13   purchased.  FAC ¶ 192 ("To verify Defendants' assertions about their products' thread counts,

14   consumers would have to do as Mr. Rushing did and hire a textile expert to test the bedding they

15   purchased. Consumers cannot test products being offered before they buy them. Besides being

16   impractical and expensive, the testing process damages the bedding being tested.").

17          Resolution of whether tolling could apply, at least with respect to the discovery rule, will

18   be aided by factual development that obviously has not occurred.  Defendants' motion to dismiss

19   based on statutes of limitations is DENIED.

20   **IV.    CLRA**

21          In his FAC, Rushing clarifies that he is asserting three different fraud-type theories under

22   the CLRA; a duty to disclose claim, an omissions based on affirmative misrepresentations claim,

23   and an active concealment claim.  Defendants argue that Rushing has failed to sufficiently allege

24   all three variants.

25          **A.    Omission Contrary to a Representation**

26          In my prior Order, I concluded that Rushing had stated a claim under the CLRA for

27   omissions in light of alleged affirmative misrepresentations as to the products' thread counts, but

28   needed to expressly assert that theory in his amended complaint.  August 2016 Order at 11.  He

United States District Court
Northern District of California

8

1   has now done so, and there is no reason on this motion to revisit my prior conclusion that he has

2   adequately stated that claim.

3       **B.      Duty to Disclose Claim**

4       Defendants argue, first, that this claim was not alleged in Rushing's prior complaints and,

5   therefore, it cannot be alleged here because Rushing was not given leave to amend to do so.

6   Defendants also argue that it cannot be alleged as a matter of law because under Ninth Circuit

7   precedent, a duty to disclose claim – in absence of any affirmative misrepresentation – can only be

8   alleged for products with safety defects.  That had been the consistent view of courts in this

9   District, until a decision by the California Court of Appeals in 2015, *Rutledge v. Hewlett–Packard

10  Co.*, 238 Cal. App. 4th 1164 (2015).  In *Rutledge*, the California Court of Appeals (Sixth District)

11  explained that prior California law does "preclude a duty to disclose material information known

12  to a manufacturer and concealed from a consumer," and rejected the argument that prior precedent

13  had limited that duty to where a product defect presented a safety concern.  *Id*. at 1174.  In

14  *Rutledge*, however, the defect at issue rendered the product – a portable laptop computer –

15  essentially useless.  *Id*. at 1175.  Since *Rutledge*, two courts in this district have allowed duty to

16  disclose claims in absence of a safety concern,[3] and one has stuck with the prior view as expressed

17  by the Ninth Circuit in *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) that

18  duty to disclose claims under California law must be limited to product defects which implicate

19  consumer safety.[4]

20      I need not choose a side in this arguable split in authority.  As the Ninth Circuit itself noted

21  in *Wilson*, omissions of material fact are actionable under the CLRA when they are "either"

22

---

23  [3] *Lenovo Adware Litigation*, No. 15-md-02624-RMW, 2016 WL 6277245, at *12-13 (N.D. Cal.
24  Oct. 27, 2016); *Norcia v. Samsung Telecommunications Am., LLC*, No. 14-CV-00582-JD, 2015
    WL 4967247, at *6 (N.D. Cal. Aug. 20, 2015).

25  [4] *Sharma v. BMW of N. Am. LLC*, No. 13-CV-02274-MMC, 2016 WL 4395470, at *5 (N.D. Cal.
26  Aug. 18, 2016).  Other cases have continued to follow *Wilson*, without acknowledging the
    arguable contrary holding in *Rutledge*. *See, e.g., Monica Sud v. Costco Wholesale Corp.*, No. 15-
27  CV-03783-JSW, 2017 WL 345994, at *8 (N.D. Cal. Jan. 24, 2017) ("Plaintiffs do not allege that
    the labor practices described in the FAC, while horrific, constitute a safety risk to consumers or
28  constitute a product defect."); *McCoy v. Nestle USA, Inc*, 173 F. Supp. 3d 954, 966 (N.D. Cal.
    2016).

United States District Court
Northern District of California

1    contrary to an affirmative representation *or* implicate a safety issue.  *Wilson v. Hewlett-Packard*

2    *Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (citing *Daugherty v. American Honda Motor Co.*, 144

3    Cal.App.4th 824 (Ct.App.2006).[5]  As noted above, Rushing has adequately alleged an omission

4    contrary to a representation.  There is no discernible difference between the two theories; they rely

5    on the same evidence and fall under the same statute.  There is nothing that Rushing can gain by

6    attempting to also allege a separate duty to disclose theory.[6]

7            **C.        Active Concealment**

8            In the prior Order I noted that Rushing had expressly pleaded an active concealment claim,

9    but had failed to allege sufficient facts to support that theory.  He was given leave to allege

10   additional facts to support that theory.  August 2016 Order at 10-11.  In order to state a claim for

11   active concealment, a plaintiff must allege that a defendant "(1) concealed or suppressed a

12   material fact; (2) was under a duty to disclose the fact to the plaintiff; (3) intentionally concealed

13   or suppressed the fact with the intent to defraud Plaintiff; and that Plaintiff (4) was unaware of the

14   fact and would not have acted as he did if he had known of the concealed or suppressed fact; and

15   (5) sustained damage as a result of the concealment or suppression of the fact."  *Elias v. Hewlett–*

16   *Packard Co.,* No. 12-CV-00421-LHK, 2014 WL 493034, at *9 (N.D. Cal. Feb. 5, 2014).  Plaintiff

17   must also allege "affirmative acts" on the part of the defendants in "hiding, concealing or covering

18   up" the material information.  *Id*. at *10.  Those affirmative acts can include affirmative denials of

19   the defect and denials of free servicing or repairs of defective parts when consumers complain, as

20   well as facts alleging that defendants concealed the defect in order to increase its sales.  *Id*.

21   (collecting cases).

22           In the FAC, Rushing alleges the following in support of the active concealment claim:

23   defendants' were sued for over-counting their threads in 2003 (FAC ¶ 196); in that lawsuit and

24   since defendants have defended their practice by relying on an inapplicable customs regulation (*id*.

25   _____

26   [5] *Rutledge* arguably added to that list situations where the defendant omitted information about a
     defect that would render the product useless for its intended purpose.

27   [6] If, as the facts are uncovered and the legal theories refined, it becomes necessary to revisit the

28   question of whether Rushing can pursue an independent duty to disclose claim under the CLRA, I
     will revisit the question at that juncture.

*United States District Court*
*Northern District of California*

¶¶ 197-200); in response to Rushing's CLRA Notice Letter, defendants' response again denied that ASTM D3775 is the industry standard for calculating thread count for bedding and failed to offer any relief to Rushing (*id*. ¶ 201); and that "to increase sales from consumers like Mr. Rushing, Defendants have engaged in more than a decade long campaign to deny that their thread count representations are false by affirmatively asserting that they are required under federal law to count individual plies." *Id*. ¶ 204.

While it is unclear at this juncture whether this claim adds anything to Rushing's CLRA cause of action (as he has stated a CLRA claim based on omissions contrary to representations), I conclude that Rushing has adequately alleged active concealment. The allegations regarding defendants' prior lawsuit and their repeated attempts to justify their alleged conduct under the customs regulation while also denying applicability of the ASTM that Rushing asserts applies, show both knowledge and affirmative denials sufficient to conclude that active concealment has been adequately pleaded. This is also a relatively straight-forward case: have defendants misrepresented the thread count in the two-ply products at issue in light of their asserted knowledge of the dueling relevant regulations? At this juncture, the claim is adequately alleged.

## CONCLUSION

The motion to dismiss the FAC is DENIED, except as to the standing and adequacy of allegations regarding the seven unpurchased products. Rushing is given limited leave to amend to allege facts supporting that the seven unpurchased products are two-ply and that testing has revealed they do not contain the number of threads defendants represent they do. He shall file his amended complaint within twenty (20) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: February 28, 2017

William H. Orrick
United States District Judge

United States District Court
Northern District of California

11