1  SHEPPARD MULLIN RICHTER & HAMPTON LLP
   P. CRAIG CARDON, Cal. Bar No. 168646
2  BENJAMIN O. AIGBOBOH, Cal. Bar No. 268531
   ERIC J. DIIULIO, Cal. Bar No. 301439
3  Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4109
4  Telephone: 415.434.9100
   Facsimile:  415.434.3947
5  Email:     ccardon@sheppardmullin.com
              baigboboh@sheppardmullin.com
6              ediiulio@sheppardmullin.com

7  *Attorneys for Defendants*

8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA,**

11              **SAN FRANCISCO DIVISION**

12

13 WILLIAM RUSHING, Individually and on      Case No. 3:16-cv-01421-WHO
   Behalf of all Others Similarly Situated,
14                                            *Assigned to the Hon. William H. Orrick*
                Plaintiff,
15                                            <u>CLASS ACTION</u>
           v.
16                                            **DEFENDANTS':**
   WILLIAMS-SONOMA, INC., a Delaware
17 corporation, also d/b/a Williams-Sonoma, and  **(1)  NOTICE OF MOTION AND MOTION**
   Williams-Sonoma Home, Pottery Barn, PB            **FOR SUMMARY JUDGMENT; AND**
18 Teen, and PB Dorm, Pottery Barn Kids,
   Pottery Barn Baby, and West Elm;           **(2)  MEMORANDUM OF POINTS AND**
19 WILLIAMS-SONOMA DTC, INC., a                    **AUTHORITIES IN SUPPORT**
   California corporation; WILLIAMS-                **THEREOF.**
20 SONOMA ADVERTISING, INC., a
   California corporation; and DOES 1-30,     <u>Hearing</u>
21                                            Date:        May 16, 2018
                Defendants.                   Time:        2:00 p.m.
22                                            Courtroom:   2

23                                            Complaint Filed:    January 29, 2016
                                              Action Removed:     March 23, 2016
24                                            7AC Filed:          April 4, 2017
                                              Trial Date:         None Set
25

26

27

28

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 16, 2018 at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 2 on the 17th floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable William H. Orrick presiding, Defendants Williams-Sonoma, Inc., Williams-Sonoma DTC, Inc., and Williams-Sonoma Advertising, Inc. (collectively "**Defendants**") will and hereby do move the Court for an order, pursuant to Fed. R. Civ. P. 56, entering judgment on all claims asserted by Plaintiff William Rushing ("**Plaintiff**") in the Seventh Amended Class Action Complaint.

Defendants' Motion for Summary Judgment (the "**Motion**") is made on grounds that:  (1) Plaintiff lacks standing to pursue claims for violation of California's Consumer Legal Remedies Act, codified at Cal. Civ. Code § 1750 *et seq.*, Unfair Competition Law, codified at Cal. Bus. & Prof. Code § 17200 *et seq.*, and False Advertising Law, codified at Cal. Bus. & Prof. Code § 17500 *et seq.*; (2) Plaintiff lacks standing to pursue and cannot state a claim for unjust enrichment under California law; and (3) even if Plaintiff had standing to pursue, and had stated claims under, California law, summary judgment of Plaintiff's California claims would still be proper because Kentucky law applies.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Eric J. DiIulio, all pleadings, papers and other documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice, and such other matters as the Court may consider.

1    Dated:  April 10, 2018                   SHEPPARD MULLIN RICHTER & HAMPTON LLP

2                                             By

3                                                 _____

4                                                        P. CRAIG CARDON

5                                                     *Attorneys for Defendants*
                                             WILLIAMS-SONOMA, INC., WILLIAMS-

6                                            SONOMA DTC, INC., and WILLIAMS-SONOMA
                                                   ADVERTISING, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     UNDISPUTED FACTS .........................................................................................2

        A.      The Parties .................................................................................................2

        B.      The "Purchase" Of The WSH Bedding .....................................................2

                1.      Plaintiff Investigates The "Purchase" In Kentucky.........................2

                2.      Plaintiff Makes The "Purchase" in Kentucky .................................3

                3.      Plaintiff Receives The "Purchase" in Kentucky..............................3

        C.      Procedural History......................................................................................4

III.    LEGAL STANDARDS APPLICABLE TO SUMMARY JUDGMENT ..........................5

IV.     SUMMARY JUDGMENT IS PROPER .........................................................................5

        A.      Plaintiff's California Claims Fail ...............................................................5

                1.      Plaintiff Lacks Statutory Standing Under the CLRA........................5

                2.      Plaintiff Lacks Statutory Standing Under The UCL And FAL.......7

                3.      Plaintiff Cannot Pursue Unjust Enrichment Under California Law.............8

        B.      Even If Plaintiff's California Claims Did Not Fail, Summary Judgment
                Would Be Proper Because Kentucky Law Applies ....................................9

                1.      There Are Material Differences Between Kentucky And California
                        Law.................................................................................................10

                        a.      There Are Material Differences Between The KCPA and
                                Plaintiff's California Statutory Claims...............................10

                        b.      Additional Material Differences Between The KCPA, On
                                The One Hand, And The UCL And FAL, On The Other
                                Hand ....................................................................................14

                        c.      Additional Material Differences Between The KCPA And
                                The CLRA ...........................................................................15

                        d.      There Are Material Differences Between Kentucky And
                                California Unjust Enrichment Law .....................................16

                2.      Kentucky Has An Interest In Applying Its Laws To Plaintiff's
                        Claims..............................................................................................16

3.    Kentucky's Interest Would Be More Impaired If Its Laws Were Not Applied .................................................................................................18

V.    CONCLUSION ..............................................................................................21

1

## <u>TABLE OF AUTHORITIES</u>

2

<b>Page(s)</b>

3

<u>Federal Cases</u>

4

*Allred v. Frito-Lay N. Am., Inc.*
  2018 U.S. Dist. LEXIS 37617 (S.D. Cal. Mar. 7, 2018)..........................................................13

5

*Andren v. Alere, Inc.*
  207 F. Supp. 3d 1133 (S.D. Cal. 2016) ...................................................................................9

6

*In re Anthem Inc. Data Breach Litig.*
  162 F. Supp. 3d 953 (N.D. Cal. 2016) ..................................................................................13

7

8

*Arnold v. Microsoft Corp.*
  2000 WL 36114007 (Ky. Cir. Ct. July 21, 2000),
  *aff'd*, 2001 WL 1835377 (Ky. Ct. App. Nov. 21, 2001) ......................................................13

9

10

*Arroyo v. TP-Link USA Corp.*
  2015 U.S. Dist. LEXIS 133473 (N.D. Cal. Sep. 29, 2015)......................................................6

11

12

*Astiana v. Hain Celestial Grp., Inc.*
  783 F.3d 753 (9th Cir. 2015)...............................................................................................8, 9

13

14

*Bennett v. Ford Motor Co.*
  2008 U.S. Dist. LEXIS 27286 (W.D. Ky. Apr. 3, 2008) ......................................................13

15

16

*Berenblat v. Apple, Inc.*
  2009 U.S. Dist. LEXIS 80734 (N.D. Cal. Aug. 21, 2009).......................................................9

17

*Brazil v. Dole Packaged Foods, LLC*
  2014 U.S. Dist. LEXIS 74234 (N.D. Cal. May 30, 2014) ............................................. passim

18

19

*Bristow v. Lycoming Engines*
  2007 U.S. Dist. LEXIS 45811 (E.D. Cal. June 14, 2007)......................................................6, 7

20

21

*Cameo, LLC v. Techni-Coat Int'l*
  2017 U.S. Dist. LEXIS 23590 (E.D. Ky. Feb. 21, 2017)......................................................16

22

*Celotex Corp. v. Catrett*
  477 U.S. 317, 323 (1986) ......................................................................................................5

23

24

*Corder v. Ford Motor Co.*
  869 F. Supp. 2d 835 (W.D. Ky. 2012) .................................................................................10

25

26

*Cover v. Windsor Surry Co.*
  2016 U.S. Dist. LEXIS 16475 (N.D. Cal. Feb. 10, 2016)............................................. passim

27

28

*Darisse v. Nest Labs, Inc.*
  2016 U.S. Dist. LEXIS 107938 (N.D. Cal. Aug. 15, 2016)........................................... passim

*Davison v. Kia Motors Am., Inc.*
  2015 U.S. Dist. LEXIS 85080 (C.D. Cal. June 29, 2015) ...................................................... passim

*Dubbs v. Glenmark Generics Ltd.*
  2014 U.S. Dist. LEXIS 65256 (C.D. Cal. May 9, 2014) ............................................................. 6

*Ewert v. eBay, Inc.*
  2010 U.S. Dist. LEXIS 108838 (N.D. Cal. Sep. 30, 2010) ......................................................... 7

*In re Facebook Privacy Litig.*
  791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd in relevant part and rev'd in part
  on other grounds*, 572 Fed. Appx. 494 (9th Cir. 2014) ............................................................ 5, 6

*Fairbank v. Wunderman Cato Johnson*
  212 F.3d 528 (9th Cir. 2000) ..................................................................................................... 5

*In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*
  2017 U.S. Dist. LEXIS 48792 (N.D. Ill. Mar. 31, 2017) .......................................................... 19

*Frezza v. Google Inc.*
  2013 U.S. Dist. LEXIS 57462 (N.D. Cal. Apr. 22, 2013) ............................................... 14, 19, 20

*Gianino v. Alacer Corp.*
  846 F. Supp. 2d 1096 (C.D. Cal. 2012) .................................................................................. passim

*Glenn v. Hyundai Motor Am.*
  2016 U.S. Dist. LEXIS 181318 (C.D. Cal. June 24, 2016) ..................................................... passim

*Goel v. Coalition Am. Holding Co.*
  2012 U.S. Dist. LEXIS 195246 (C.D. Cal. Dec. 19, 2012) ........................................................ 8

*Gooch v. E.I. DuPont de Nemours & Co.*
  40 F. Supp. 2d 857 (W.D. Ky. 1998) ....................................................................................... 15

*In Re Grand Theft Auto Video Game Consumer Litig.*
  251 F.R.D. 139 (S.D.N.Y. 2008) ............................................................................................. 13

*Granfield v. Nvidia Corp.*
  2012 U.S. Dist. LEXIS 98678 (N.D. Cal. July 11, 2012) ................................................... 19, 20

*In re Hardy*
  553 B.R. 613 (Bankr. E.D. Ky. 2016) ..................................................................................... 11

*Harman v. Sullivan Univ. Sys.*
  2005 U.S. Dist. LEXIS 10904 (W.D. Ky. June 6, 2005) ......................................................... 11

*Hathaway v. Cont'l Assurance Co.*
  2006 U.S. Dist. LEXIS 917 (W.D. Ky. Jan. 10, 2006) ........................................................... 13

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.*
2012 U.S. Dist. LEXIS 19215 (S.D. Cal. Feb. 13, 2012) ........................................11, 12, 14, 20

*Hovsepian v. Apple, Inc.*
2009 U.S. Dist. LEXIS 117562 (N.D. Cal. Dec. 17, 2009) ........................................................9

*In re Intel Laptop Battery Litig.*
2010 U.S. Dist. LEXIS 132655 (N.D. Cal. Dec. 15, 2010) ................................................7, 8, 9

*Junod v. NWP Servs. Co.*
2016 WL 6306030 (C.D. Cal. July 18, 2016) .................................................................16, 19

*Lewert v. Boiron, Inc.*
2017 U.S. Dist. LEXIS 376 (C.D. Cal. Jan. 3, 2017).............................................................12

*Littlehale v. Hain Celestial Group, Inc.*
2012 U.S. Dist. LEXIS 162530 (N.D. Cal. July 2, 2012) .......................................................12

*Martinelli v. Johnson & Johnson*
2017 WL 2257171 (E.D. Cal. May 23, 2017).......................................................................16

*Mazur v. eBay, Inc.*
257 F.R.D. 563 (N.D. Cal. 2009) .........................................................................................7

*Mazza v. Am. Honda Motor Co.*
666 F.3d 581 (9th Cir. 2012).................................................................................... passim

*Mitchell v. GM LLC*
2014 U.S. Dist. LEXIS 43943 (W.D. Ky. Mar. 31, 2014)......................................................13

*Morales v. Kraft Foods Grp., Inc.*
2017 U.S. Dist. LEXIS 97433 (C.D. Cal. June 9, 2017)........................................................12

*In re MyFord Touch Consumer Litig.*
2016 U.S. Dist. LEXIS 179487 (N.D. Cal. Sep. 14, 2016)....................................................6, 7

*Nguyen v. Wells Fargo Bank N.A.*
2015 U.S. Dist. LEXIS 100851, at *21 (C.D. Cal. Feb. 18, 2015) ...........................................8

*Oestreicher v. Alienware Corp.*
544 F. Supp. 2d 964 (N.D. Cal. 2008) ..................................................................................9

*Ouiby Inc. v. Posey*
2018 U.S. Dist. LEXIS 19502 (N.D. Cal. Feb. 6, 2018)..........................................................8

*In re Pharm. Indus. Average Wholesale Price Litig.*
230 F.R.D. 61 (D. Mass. 2005) ...........................................................................................13

*Punian v. Gillette Co.*
2016 U.S. Dist. LEXIS 34164 (N.D. Cal. Mar. 15, 2016) .......................................................9

*Rise Basketball Skill Dev., LLC v. K Mart Corp.*
     2017 WL 4865561 (N.D. Cal. Oct. 27, 2017) ................................................................5

*Robinson v. HSBC Bank USA*
     732 F. Supp. 2d 976 (N.D. Cal. 2010) ........................................................................5

*In re Target Corp. Customer Data Sec. Breach Litig.*
     66 F. Supp. 3d 1154 (D. Minn. 2014) ......................................................................13

*Taylor v. Nike, Inc.*
     2017 U.S. Dist. LEXIS 22875 (D. Or. Feb. 17, 2017) ...............................................9

*In re Tolliver*
     464 B.R. 720 (Bankr. E.D. Ky. 2012) ......................................................................12

*Werdebaugh v. Blue Diamond Growers*
     2014 U.S. Dist. LEXIS 71575 (N.D. Cal. May 23, 2014) ................................. passim

*Williams v. Oberon Media, Inc.*
     2010 U.S. Dist. LEXIS 148295 (C.D. Cal. Apr. 19, 2010) .......................................16

*Yumul v. Smart Balance, Inc.*
     733 F. Supp. 2d 1117 (C.D. Cal. 2010) ....................................................................12

State Cases

*Am. Master Lease LLC v. Idanta Partners, Ltd.*
     225 Cal. App. 4th 1451 (2014) .................................................................................16

*Buckland v. Threshold Enters., Ltd.*
     155 Cal. App. 4th 798 (2007) ...................................................................................11

*Cal. Grocers Ass'n v. Bank of Am.*
     22 Cal. App. 4th 205 (1994) ......................................................................................6

*Capitol Cadillac Olds, Inc. v. Roberts*
     813 S.W.2d 287 (Ky. 1991) ......................................................................................11

*Cel-Tech Comms., Inc. v. Los Angeles Cellular Telephone Co.*
     20 Cal. 4th 163 (1999) ..............................................................................................15

*Clayworth v. Pfizer, Inc.*
     49 Cal. 4th 758 (2010) ................................................................................................7

*F.D.I.C. v. Dintino*
     167 Cal. App. 4th 333 (2008) ...................................................................................16

*Hambrick v. Healthcare Partners Med. Grp., Inc.*
     238 Cal. App. 4th 124 (2015) ...................................................................................14

*Hernandez v. Burger*
   102 Cal. App. 3d 795 (1980) ........................................................................ 18

*in Kwikset Corp. v. Sup. Ct.*
   51 Cal. 4th 310 (2011) ........................................................................ 11, 13

*Kearney v. Salomon Smith Barney, Inc.*
   39 Cal. 4th 95 (2006) ........................................................................ 18

*Korea Supply Co. v. Lockheed Martin Corp.*
   29 Cal. 4th 1134 (2003) ........................................................................ 14

*Lectrodryer v. Seoulbank*
   77 Cal. App. 4th 723 (2000) ........................................................................ 8, 16

*McCann v. Foster Wheeler LLC*
   48 Cal. 4th 68 (2010) ........................................................................ 10, 16

*Schauer v. Mandarin Gems of Cal., Inc.*
   125 Cal. App. 4th 949 (2005) ........................................................................ 6, 7

*Starbucks Corp. v. Sup. Ct.*
   168 Cal. App. 4th 1436 (2008) ........................................................................ 11

*Sup. Steel, Inc. v. Ascent at Roebling's Bridge, LLC*
   2017 Ky. LEXIS 511 (Dec. 14, 2017) ........................................................................ 16

*In re Vioxx Class Cases*
   180 Cal. App. 4th 116 (2009) ........................................................................ 14

*Wash. Mut. Bank, FA v. Sup. Ct.*
   24 Cal. 4th 906 (2001) ........................................................................ 10

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Fed. R. Civ. P. 56(a) ........................................................................ 5

State: Statutes, Rules, Regulations, Constitutional Provisions

Cal. Bus. & Prof. Code
   §§ 17200, 17500 ........................................................................ 15
   § 17200 *et seq.* ........................................................................ 1, 5
   §§ 17204, 17535 ........................................................................ 7
   § 17500 *et seq.* ........................................................................ 1, 5

Cal. Civ. Code
    § 1750 *et seq.*.........................................................................................................1, 4
    § 1761(d) ..............................................................................................................6, 7
    §§ 1761(d), 1780(a) ................................................................................................5
    § 1780(e) ................................................................................................................15
    § 1781(b) ................................................................................................................13
    § 1782 .....................................................................................................................15

California's Consumer Legal Remedies Act
    ("CLRA") ........................................................................................................ passim

California False Advertising Law
    ("FAL") ........................................................................................................... passim

California's Unfair Competition Law
    ("UCL")............................................................................................................ passim

KRS
    § 367.220 ................................................................................................................15
    § 413.120 ................................................................................................................16

Ky. Rev Stat. Ann.
    § 367.220(1)-(3) .....................................................................................................14
    § 367.220(5) ...........................................................................................................12
    § 367.170 ................................................................................................................12

SMRH:484382939.13

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In his Seventh Amended Class Action Complaint ("**7AC**"), Plaintiff William Rushing ("**Plaintiff**") asserts several consumer protection and unjust enrichment claims under California law on behalf of "[a]ll persons…who…purchased [certain] bedding … from Williams-Sonoma, Inc."[1]  Plaintiff, however, is not a member of the class he seeks to represent because *he did not pay for the bedding giving rise to his claims against Defendant*.  Instead, the undisputed evidence establishes that a Kentucky liability company paid for the bedding using a corporate credit card issued to Plaintiff's wife and funds from the Kentucky limited liability company's bank account.  Plaintiff, therefore, lacks standing under California's Consumer Legal Remedies Act, codified at Cal. Civ. Code § 1750 *et seq.* (the "**CLRA**"), Unfair Competition Law, codified at Cal. Bus. & Prof. Code § 17200 *et seq.* (the "**UCL**"), and False Advertising Law, codified at Cal. Bus. & Prof. Code § 17500 *et seq.* (the "**FAL**"), and lacks standing to pursue (and cannot state) a claim for unjust enrichment under California law.

Even if Plaintiff had standing to pursue his California claims, summary judgment is proper because Kentucky law governs any claims Plaintiff may have against Defendants.  Plaintiff is a resident and citizen of Kentucky and reviewed the allegedly deceptive advertisements in Kentucky.  The bedding giving rise to Plaintiff's claims against Defendants (which was manufactured in Italy) was ordered in Kentucky, shipped to Kentucky, received in Kentucky, examined in Kentucky, and paid for by a Kentucky limited liability corporation (which is headquartered in Kentucky and used funds from a Kentucky bank account).  Under California's choice-of-law rules, Kentucky law applies because Kentucky's and California's consumer protection and unjust enrichment laws materially differ and Kentucky has an overriding interest in applying its laws to its residents and to conduct that occurred within its borders.  As such, the Court should enter judgment in favor of Defendants on each of Plaintiff's California claims.

/ / /

---

[1]  Defendants Williams-Sonoma, Inc. ("WSI"), Williams-Sonoma DTC, Inc. ("WSDTC"), and Williams-Sonoma Advertising, Inc. ("WSA") are referred to collectively as "Defendants."

## II.   UNDISPUTED FACTS

### A.   The Parties

Plaintiff is a citizen and resident of Kentucky.  Dkt. 49 ¶ 29.  WSI, a Delaware corporation with its principal place of business in California, sells, among other things, home furnishings through retail stores, catalogs, and the internet.  Dkt. 83 ¶ 30.  WSDTC and WSA are California entities that house direct-to-consumer sales and marketing, and retail sales and advertising, respectively.  *Id.* ¶¶ 31-32.

### B.   The "Purchase" Of The WSH Bedding

#### 1.   Plaintiff Investigates The "Purchase" In Kentucky

In early 2015, Plaintiff decided to "purchase" bedding to give to his wife for Valentine's Day.  Dkt. 81 ¶ 155; Declaration of Eric J. DiIulio ("**DiIulio Decl.**") ¶ 2, Ex. A (Resp. to WSDTC's First Set of RFAs) at Nos. 17-20.  Plaintiff had been a WSI customer in the past, and had visited a Williams-Sonoma store in Kentucky (a store that does not sell bedding).  Dkt. 81 ¶ 155.  Plaintiff had also received WSI catalogs in the mail at his home in Kentucky.  Dkt. 81 ¶ 155.  Plaintiff allegedly learned from those catalogs that WSI offers bedding.  Dkt. 81 ¶ 155.  In attempting to select bedding to give to his wife for Valentine's Day, Plaintiff alleges he reviewed a Williams-Sonoma Home catalog in Kentucky.  Dkt. 81 ¶ 156; DiIulio Decl. ¶ 2, Ex. A (Resp. to WSDTC's First Set of RFAs) at Nos. 1-4, 9, 11, 16.  Plaintiff, however, does not recall which Williams-Sonoma Home catalog he reviewed, and no longer has the catalog in his possession.  DiIulio Decl. ¶¶ 3-4, Exs. B (Resp. to WSI's First Set of RFPs) at No. 68, C (Resp. to WSI's First Set of Interrogatories) at No. 1(g).

Sometime after Plaintiff reviewed the Williams-Sonoma Home catalog, he went to the website indicated on the catalog while in his home in Kentucky.  Dkt. 81 ¶ 157; DiIulio Decl. ¶ 2, Ex. A (Resp. to WSDTC's First Set of RFAs) at Nos. 5-6.  At this time, Plaintiff "reviewed WSI's bedding options again," and, ultimately "selected...WSI's Williams-Sonoma Home King-size 'Signature 600-Thread-Count Sateen Bedding....'"  Dkt. 81 ¶ 157; DiIulio Decl. ¶ 2, Ex. A (Resp. to WSDTC's First Set of RFAs) at Nos. 7, 10, 12-15, 23.

/ / /

### 2.     Plaintiff Makes The "Purchase" in Kentucky

On or about February 10, 2015, Plaintiff "purchased" the Williams-Sonoma Home-branded "Signature 600-Thread-Count Sateen Bedding" and a set of matching pillowcases (collectively, the "**WSH Bedding**") from the Williams-Sonoma Home website because "Williams-Sonoma Home products are not sold in [his] home state." Dkt. 89 ¶ 157-58; DiIulio Decl. ¶ 2, Ex. A (Resp. to WSDTC's First Set of RFAs) at Nos. 7-8. The "purchase" was charged to a Capital One® "Spark$^{SM}$ Visa Business Card" issued to Lynn A. Rushing of The Pond Plant Lady, a Kentucky limited liability company dissolved by the Commonwealth of Kentucky on November 1, 2003 for failure to file an annual report. DiIulio Decl. ¶ 5, 6, Exs. D, E. The charge was paid on March 23, 2015 from the corporate bank account of The Pond Lady LLC ("**The Pond Lady**"), a Kentucky limited liability company organized by Lynn A. Rushing on July 6, 2005. DiIulio Decl. ¶¶ 7, 8, Exs. F, G. In a declaration submitted in support of Plaintiff's motion to quash Defendants' subpoena to Capital One Bank (USA) N.A. ("**Capital One Bank**") seeking certain records related to the "Spark$^{SM}$ Visa Business Card" issued to Lynn A. Rushing, Plaintiff, a minority member of The Pond Lady, asserted that he "recorded the purchase [of the WSH Bedding] as an early distribution to" himself. DiIulio Decl. ¶¶ 9, 10, Exs. H (Rushing Decl.) at ¶¶ 6-10, I.[2]

### 3.     Plaintiff Receives The "Purchase" in Kentucky

The WSH Bedding, which was manufactured in Italy, was shipped from Olive Branch, Mississippi to the address of the registered office of the Pond Plant Lady in Kentucky (which is also Plaintiff's home address and the registered office of The Pond Lady). DiIulio Decl. ¶¶ 2, 11, 12, Exs. A (Resp. to WSDTC's First Set of RFAs) at Nos. 21-22, J, K. Plaintiff alleges that, upon receipt of the WSH Bedding in Kentucky, he determined that it was not "of high quality,

---

[2]  Despite document requests seeking the credit card and bank card statements for the "purchase" at issue, Plaintiff did not disclose The Pond Plant Lady or The Pond Lady, or that the "purchase" was made using a "Spark$^{SM}$ Visa Business Card" issued to Lynn A. Rushing of The Pond Plant Lady, until after Defendants were required to serve a subpoena on Capital One Bank seeking credit card records because Plaintiff refused to produce the requested statements on the grounds that they are irrelevant and subject to privacy protection. DiIulio Decl. ¶¶ 3, 16, Ex. B (Resp. to WSI's First Set of RFPs) at No. 1.

1  extremely soft, and luxurious."  Dkt. 81 ¶ 164; *see also* DiIulio Decl. ¶¶ 2, 14, Exs. A (Resp. to

2  WSDTC's First Set of RFAs) at No. 24, M (Am. Resp. to WSI's First Set of Interrogatories) at

3  No. 15.  Plaintiff alleges that, while in Kentucky, he found himself "so disappointed in the quality

4  of the bedding that arrived, that he decided not to give [it] to his wife for Valentine's Day."[3]  Dkt.

5  81 ¶ 164; *see also* DiIulio Decl. ¶¶ 2, 14, Exs. A (Resp. to WSDTC's First Set of RFAs) at No. 25,

6  M (Am. Resp. to WSI's First Set of Interrogatories) at No. 15.  Plaintiff, instead, submitted the

7  WSH Bedding for "thread count testing" and alleges that results he received on April 21, 2015

8  establish that it "was only approximately 291 thread count."  Dkt. 81 ¶ 165.

9  **C.   Procedural History**

10       Plaintiff filed a Complaint on January 29, 2016 and First Amended Complaint on March 8,

11  2016.  Dkt. 1 at 1:13-15.  On April 20, 2016, Defendants filed a motion to dismiss.  Dkt. 12.

12  While the motion was pending, the parties stipulated that Plaintiff could file a Second Amended

13  Complaint and Third Amended Complaint ("**TAC**"), which Plaintiff filed on May 10, 2016 and

14  June 6, 2016, respectively.  Dkt. 19, 21, 22.  In the TAC, Plaintiff asserted nine causes of action

15  for violation of the CLRA, misleading, deceptive and untrue advertising under the FAL, unlawful,

16  unfair and fraudulent business practices under the UCL, breach of contract, breach of the implied

17  covenant, and unjust enrichment on behalf of himself and a putative class.  Dkt. 22 ¶¶ 118, 144-

18  238.  Defendants moved to dismiss the TAC on June 27, 2016.  Dkt. 26.  On August 16, 2016, the

19  Court issued its Order Granting in Part Motion to Dismiss.  Dkt. 36.

20       Plaintiff filed the Fourth Amended Complaint on September 14, 2016 and the Fifth

21  Amended Complaint on October 24, 2016, which Defendants moved to dismiss on November 14,

22  2016.  Dkt. 43, 49, 50.  On February 28, 2017, the Court issued its Order Granting in Part and

23  Denying in Part Motion to Dismiss.  Dkt. 64.  Plaintiff subsequently filed the Sixth Amended

24  Complaint on March 20, 2017 (Dkt. 74), and the operative Seventh Amended Complaint ("**7AC**")

25  on April 4, 2017, alleging the following causes of action on behalf of himself and a putative

26  nationwide class:  (1) Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*); (2)

27
28  [3]  The pillowcases were delivered on February 12, 2015.  DiIulio Decl. ¶ 13, Ex. L.  The sheet set, however, was not delivered until March 3, 2015.  *Id.*

1  Misleading and Deceptive Advertising (Cal. Bus. & Prof. Code § 17500, *et seq.*); (3) Untrue

2  Advertising (Cal. Bus. & Prof. Code § 17500, *et seq.*); (4) Unlawful Business Practices (Cal. Bus.

3  & Prof. Code § 17200, *et seq.*); (5) Unfair Business Practices (Cal. Bus. & Prof. Code § 17200, *et*

4  *seq.*); (6) Fraudulent Business Practices (Cal. Bus. & Prof. Code § 17200, *et seq.*); and (7) Unjust

5  Enrichment.  Dkt. 81 ¶¶ 142, 168-280.

6  ### III.  LEGAL STANDARDS APPLICABLE TO SUMMARY JUDGMENT

7  Summary judgment is appropriate when the evidence, viewed in the light most favorable to

8  the nonmoving party, shows "there is no genuine dispute as to any material fact and the movant is

9  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the moving party demonstrates

10  "the absence of a genuine issue of material fact with respect to an essential element of the non-

11  moving party's claim," the burden shifts to the non-moving party to defeat summary judgment by

12  setting forth specific facts showing a genuine issue for trial.  *Rise Basketball Skill Dev., LLC v. K*

13  *Mart Corp.*, 2017 WL 4865561, at *2 (N.D. Cal. Oct. 27, 2017) (citing *Celotex Corp. v. Catrett*,

14  477 U.S. 317, 323 (1986)).  The non-movant cannot discharge its burden with speculation,

15  allegations, or unsupported assertions.  *See id.*; *see also Fairbank v. Wunderman Cato Johnson*,

16  212 F.3d 528, 531-32 (9th Cir. 2000).  If the non-moving party fails to discharge its burden,

17  summary judgment is proper.  *Celotex*, 477 U.S. at 322-23.

18  ### IV.  SUMMARY JUDGMENT IS PROPER

19  **A.  Plaintiff's California Claims Fail**

20  **1.  Plaintiff Lacks Statutory Standing Under the CLRA**

21  "The CLRA provides protection to a specific category of ***consumers*** from damages

22  suffered in connection with a consumer transaction."  *Robinson v. HSBC Bank USA*, 732 F. Supp.

23  2d 976, 987 (N.D. Cal. 2010) (emphasis added).  As such, "[a] violation of the CLRA may only be

24  alleged by a consumer."  *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal.

25  2011), *aff'd in relevant part and rev'd in part on other grounds*, 572 Fed. Appx. 494 (9th Cir.

26  2014).  Under the CLRA, a "consumer" is "an individual who seeks or acquires, by purchase or

27  lease, any goods or services for personal, family, or household purposes."  Cal. Civ. Code §§

28

1761(d), 1780(a); *see also Facebook Privacy Litig.*, 791 F. Supp. 2d at 717; *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 960 (2005).

Here, The Pond Lady, *not Plaintiff*, purchased the WSH Bedding.[4]  The Pond Lady, a Kentucky limited liability corporation, is not a "consumer" under the CLRA.  *See*, *e.g.*, Cal. Civ. Code § 1761(d); *In re MyFord Touch Consumer Litig.*, 2016 U.S. Dist. LEXIS 179487, at *70 (N.D. Cal. Sep. 14, 2016) (CLRA "does not apply where the purchaser is an entity rather than an individual…."); *Bristow v. Lycoming Engines*, 2007 U.S. Dist. LEXIS 45811, at **13-14 (E.D. Cal. June 14, 2007) ("A corporation…cannot seek or acquire a [good] for 'personal, family, or household purposes,' and the language of the statute clearly envisions a person as the 'individual' permitted to bring suit."); *Cal. Grocers Ass'n v. Bank of Am.*, 22 Cal. App. 4th 205, 217 (1994) (holding that a trade group "is not a consumer of 'services for personal, family, or household purposes'") (quoting Cal. Civ. Code § 1761(d)).

That The Pond Lady may have purchased the WSH Bedding to provide it to Plaintiff (a member of The Pond Lady) as "an early distribution" (DiIulio Decl. ¶ 9, Ex. H (Rushing Decl.) at ¶¶ 6-10) does not change the fact that The Pond Lady was the *purchaser* that engaged in the *transaction* with WSI.[5]  *See*, *e.g.*, *Arroyo v. TP-Link USA Corp.*, 2015 U.S. Dist. LEXIS 133473, at *22 (N.D. Cal. Sep. 29, 2015) (CLRA "require[s] a consumer transaction between a plaintiff and a defendant…."); *Dubbs v. Glenmark Generics Ltd.*, 2014 U.S. Dist. LEXIS 65256, at **18-19 (C.D. Cal. May 9, 2014) (no standing because plaintiff's "ex-girlfriend's purchase[d]…the allegedly defective birth control pills" in alleged transaction with defendant); *Bristow*, 2007 U.S.

---

[4]  The terms applicable to Capital One® business credit cards confirm that "the Business" (The Pond Lady) and "the Business Signer" (the individual "whose signature appears on the application"—here, Lynn A. Rushing, the only person listed on The Pond Lady's credit card statements) "will be liable for all transactions made with all cards…on the" Capital One® business credit card account.  DiIulio Decl. ¶ 5, 15, Exs. D, N.  Thus, even if a purchase using The Pond Lady's corporate credit card could be considered a "consumer" purchase "for personal, family, or household purposes" under the CLRA (it cannot as set forth herein), the only possible "consumer" could be Lynn A. Rushing.  DiIulio Decl. ¶ 5, Ex. D.

[5]  Plaintiff's motion to quash Defendants' subpoena to Capital One Bank is still pending and, to date, Capital One Bank has not produced any of the requested documents including, but not limited to, the cardmember agreement for the "Spark[SM] Visa Business Card."  DiIulio Decl. ¶ 16.  Plaintiff asserts that he does not have the cardmember agreement for the "Spark[SM] Visa Business Card" in his possession, custody, or control.  DiIulio Decl. ¶ 17, Ex. P (Resp. to WSA's First Set of RFPs) at No. 2.

1   Dist. LEXIS 45811, at *14 n.9 ("[T]he language of the [CLRA] clearly contemplates that the

2   'personal purposes' be held by the purchaser, not merely some future user."); *Schauer*, 125 Cal.

3   App. 4th at 960 (dismissing CLRA claim because "by statutory definition [plaintiff's ex-husband]

4   was the consumer because it was he who purchased the ring.  Plaintiff's ownership of the ring was

5   not acquired as a result of her own consumer transaction with defendant….").

6        Moreover, Plaintiff's argument that The Pond Lady purchased the WSH Bedding so as to

7   "distribute" it to Plaintiff establishes that the purchase was *not* for "personal, family, or household

8   purposes."  Cal. Civ. Code § 1761(d).  The purchase that matters is The Pond Lady's.  *Bristow*,

9   2007 U.S. Dist. LEXIS 45811, at *14 n.9.  That Plaintiff may have intended to use those sheets,

10  after distribution from The Pond Lady, for "personal, family, or household purposes" does not

11  change The Pond Lady's *business* reason for purchasing the WSH Bedding.  *See In re MyFord*

12  *Touch Consumer Litig.*, 2016 U.S. Dist. LEXIS 179487, at *70 (CLRA "does not apply" to

13  "purchase[s] [of] items for…business…use….") (quoting *Mazur v. eBay, Inc.*, 257 F.R.D. 563,

14  568 (N.D. Cal. 2009)); *Ewert v. eBay, Inc.*, 2010 U.S. Dist. LEXIS 108838, at *26 (N.D. Cal. Sep.

15  30, 2010) (purchasers "who purchased [goods] for business purposes" are not "'consumers'

16  entitled to recovery under the CLRA") (citation omitted); *Bristow*, 2007 U.S. Dist. LEXIS 45811,

17  at *14 n.9.  Indeed, the terms to which all Capital One® business credit card applicants must agree

18  require that "***all cards…will be used solely for business or commercial purposes and not for***

19  ***personal, family or household purposes***."  DiIulio Decl. ¶ 15, Ex. N (emphasis added).  In short,

20  summary judgment is proper.

21            **2.      Plaintiff Lacks Statutory Standing Under The UCL And FAL**

22        The UCL and FAL require that plaintiff be someone "who has suffered injury in fact and

23  has lost money or property as a result of the" alleged violation of the UCL or FAL.  Cal. Bus. &

24  Prof. Code §§ 17204, 17535; *see also In re Intel Laptop Battery Litig.*, 2010 U.S. Dist. LEXIS

25  132655, at *8 (N.D. Cal. Dec. 15, 2010); *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788 (2010).

26  Here, the WSH Bedding was charged to The Pond Lady's corporate credit card—a charge that was

27  paid with funds debited from The Pond Lady's corporate bank account.  DiIulio Decl. ¶¶ 5, 7, Exs.

28  D, F.  Thus, to the extent anyone lost money as a result of WSI's alleged UCL and FAL violations,

it was The Pond Lady, not Plaintiff.  *See In re Intel Laptop Battery Litig.*, 2010 U.S. Dist. LEXIS 132655, at *9 (granting summary judgment of UCL claim because plaintiff "submitted a declaration that he purchased his laptop using funds from Dart Seasonal Products, Inc…., a small business that he co-owns.  As corporate funds were used to purchase the laptop at issue, [plaintiff] did not personally lo[]se any money in association with the transaction.").  That Plaintiff may be a shareholder or officer of The Pond Lady does not confer standing to pursue alleged losses suffered by the corporation.  *Id.* ("[A] shareholder or officer of a corporation generally cannot recover for legal injuries suffered by the corporation.  This rule applies even to a corporation's sole shareholder.") (internal citations omitted).  Thus, Plaintiff's UCL and FAL claims fail as a matter of law for lack of standing.

### 3.    Plaintiff Cannot Pursue Unjust Enrichment Under California Law

"[T]here is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'"  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citations omitted).  The Ninth Circuit, however, has held that "unjust enrichment…[is] not irrelevant in California law" because it "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'"  *Id.* (citation omitted).  Accordingly, the Ninth Circuit has held that "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution."  *Id.* (internal quotations and citations omitted).  When construed as a quasi-contract claim seeking restitution, unjust enrichment requires proof of defendant's unjust receipt and retention of a benefit at plaintiff's expense.  *See.*, *e.g.*, *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (2000).

Here, Plaintiff lacks standing to pursue a claim for unjust enrichment under California law because, to the extent any money was paid to WSI, it was paid by The Pond Lady, not Plaintiff.  *See*, *e.g.*, *Ouiby Inc. v. Posey*, 2018 U.S. Dist. LEXIS 19502, at **10-11 (N.D. Cal. Feb. 6, 2018) (holding that plaintiff "lacks standing to assert a claim for relief to the extent that [defendant] was enriched as a result of money being provided to it by someone other than [plaintiff] herself….") (citing *Nguyen v. Wells Fargo Bank N.A.*, 2015 U.S. Dist. LEXIS 100851, at *21 (C.D. Cal. Feb. 18, 2015); *Lectrodryer*, 77 Cal. App. 4th at 726); *see also Goel v. Coalition Am. Holding Co.*,

1  2012 U.S. Dist. LEXIS 195246, at *11 (C.D. Cal. Dec. 19, 2012) (granting summary judgment

2  where there was no evidence the defendant was enriched at the plaintiff's expense); *In re Intel*

3  *Laptop Battery Litig.*, 2010 U.S. Dist. LEXIS 132655, at *9 ("[A] shareholder or officer of a

4  corporation generally cannot recover for legal injuries suffered by the corporation.").

5       Moreover, because "unjust enrichment…is simply a 'theory underlying a claim that a

6  defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request'…,

7  failure to allege a substantive claim for relief — such as one under the UCL, FAL, or CLRA —

8  warrants dismissal of any additional claim for unjust enrichment." *Taylor v. Nike, Inc.*, 2017 U.S.

9  Dist. LEXIS 22875, at *24 (D. Or. Feb. 17, 2017) (quoting *Astiana*, 783 F.3d at 762) (applying

10  California law). Accordingly, because Plaintiff's "underlying causes of action fail" for lack of

11  standing, his "claim for unjust enrichment cannot stand" and must be dismissed. *Punian v.*

12  *Gillette Co.*, 2016 U.S. Dist. LEXIS 34164, at *56 (N.D. Cal. Mar. 15, 2016) (internal quotations

13  and citations omitted).[6]

14  **B.  Even If Plaintiff's California Claims Did Not Fail, Summary Judgment Would Be Proper Because Kentucky Law Applies**

15       Even if Plaintiff had standing to pursue (and could state) claims under California law,

16  summary judgment of his California claims would be proper because, under California's choice of

17  law rules, Kentucky law applies. "A federal court sitting in diversity applies the choice of law

18  rules of the forum state." *Cover v. Windsor Surry Co.*, 2016 U.S. Dist. LEXIS 16475, at *16

19  (N.D. Cal. Feb. 10, 2016) (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir.

20  2012)); *see also Darisse v. Nest Labs, Inc.*, 2016 U.S. Dist. LEXIS 107938, at *26 (N.D. Cal. Aug.

21  15, 2016) ("To determine the applicable law, a federal court sitting in diversity must look to the

22

23  ---

24  [6] *See also Taylor*, 2017 U.S. Dist. LEXIS 22875, at *24 (dismissing unjust enrichment claim because plaintiff's UCL, FAL, and CLRA failed); *Andren v. Alere, Inc.*, 207 F. Supp. 3d 1133, 1143 (S.D. Cal. 2016) ("[S]ince [p]laintiffs have failed to allege a cause of action for relief, the unjust enrichment claim also must be dismissed."); *Hovsepian v. Apple, Inc.*, 2009 U.S. Dist. LEXIS 117562, at *17 (N.D. Cal. Dec. 17, 2009) ("Because [plaintiff] has failed to allege a substantive claim for relief, the claim for unjust enrichment also will be dismissed without leave to amend."); *Berenblat v. Apple, Inc.*, 2009 U.S. Dist. LEXIS 80734, at **17-19 (N.D. Cal. Aug. 21, 2009) (dismissing unjust enrichment claim); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 975 (N.D. Cal. 2008) ("[S]ince plaintiff's fraud-based claims have been dismissed, plaintiff has no basis for its unjust enrichment claim.").

25

26

27

28

forum state's choice of law rules to determine the controlling substantive law.") (internal

quotations omitted).  In making choice of law determinations, "California courts use a

'government interest' test that involves a three-part inquiry":

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.

> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.

> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Cover*, 2016 U.S. Dist. LEXIS 16475, at **16-17 (quoting *McCann v. Foster Wheeler LLC*, 48

Cal. 4th 68, 87–88 (2010)).  Application of the "governmental interest" test establishes that

Kentucky law applies to Plaintiff's claims.

        **1.**       **There Are Material Differences Between Kentucky And California Law**

Where "two or more states are involved" a conflict of law problem "arises if the

differences in state law are material, that is, if they make a difference in th[e] litigation."  *Cover*,

2016 U.S. Dist. LEXIS 16475, at *17 (quoting *Wash. Mut. Bank, FA v. Sup. Ct.*, 24 Cal. 4th 906,

919-20 (2001)); *see also Mazza*, 666 F.3d at 590-91 (material differences are those that are "not

trivial or wholly immaterial" and "make a difference" in the case).  Here, there are material

differences between Kentucky and California law that require the Court to move to the second step

of the choice-of-law analysis.

        **a.**       **There Are Material Differences Between The KCPA and Plaintiff's California Statutory Claims**

There are several differences between the KCPA, on the one hand, and the UCL, FAL, and

CLRA, on the other hand.

First, Kentucky and California consumer protection laws have different reliance

requirements.  Kentucky, unlike California, does not require proof of reliance.  *Compare Corder v.*

*Ford Motor Co.*, 869 F. Supp. 2d 835, 838 (W.D. Ky. 2012) (the "KCPA [does] not require proof

of reliance.") *with Darisse*, 2016 U.S. Dist. LEXIS 107938, at *29 ("CLRA, UCL, and FAL claims require reliance."). Consumer protection statutes that do not require reliance materially differ from those that do.[7] *Mazza*, 666 F.3d at 591 (holding that fact that California "requires…reliance, while…other states' consumer protection statutes do not" is a "difference[] that [is] material."); *Darisse*, 2016 U.S. Dist. LEXIS 107938, at **28-31 (differences in reliance requirements "plainly are material"); *Cover*, 2016 U.S. Dist. LEXIS 16475, at **17-19 (differences between "consumer protection statutes[']…reliance requirements" are material).[8]

Second, the scienter requirements for Kentucky and California consumer protection laws differ. The KCPA requires "intentional" or "grossly negligent" conduct. *In re Hardy*, 553 B.R. 613, 625 (Bankr. E.D. Ky. 2016) (quoting *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991)); *Harman v. Sullivan Univ. Sys.*, 2005 U.S. Dist. LEXIS 10904, at *21 (W.D. Ky. June 6, 2005) (applying Kentucky law). The UCL, FAL, and CLRA "have no scienter requirement" at all. *Mazza*, 666 F.3d at 591. Differences in scienter requirements are material.

---

[7] The reliance requirement is of particular importance in this case given the evidence that suggests that Plaintiff did not rely on the alleged misrepresentations but, instead, purchased the WSH Bedding for the purpose of filing suit. *See, e.g.*, *Starbucks Corp. v. Sup. Ct.*, 168 Cal. App. 4th 1436, 1446-47 (2008) ("California does not sanction lawsuits for fraudulent misrepresentations brought by persons who, rather than having been deceived, act for the sole purpose of bringing a lawsuit against 'potential targets for litigation.'") (quoting *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 807 (2007)). For example, although Plaintiff alleges he "purchased" the WSH Bedding as gift for his wife, he never gave it to his wife or even used it. DiIulio Decl. ¶ 2, Ex. A (Resp. to WSDTC's First Set of RFAs) at Nos. 48-49. Documents produced by Plaintiff establish that, instead of using, gifting, or returning the WSH Bedding, he immediately communicated with his counsel (and longtime friend) Richard Baker (an attorney who filed a nearly identical case against Defendants 15 years ago) for legal advice and in anticipation of potential litigation *before he even received the sheet set*. DiIulio Decl. ¶ 2, 4, 13, 18, Exs. A (Resp. to WSDTC's First Set of RFAs) at No. 49, C (Resp. to WSI's First Set of Interrogatories) at No. 16, L, Q (First Supplemental Priv. Log) at Dkt. 81, Ex. F. These facts also support a finding that Plaintiff lacks standing under California consumer protection law because statutory standing does not exist where plaintiff purchased the good for the purposes of filing suit. *Buckland*, 155 Cal. App. 4th 798, 816, *disapproved on other grounds in Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 337 (2011), (no standing under UCL, FAL and CLRA "[b]ecause the costs [allegedly incurred by plaintiff] were incurred solely to facilitate her litigation….").

[8] *See also Davison v. Kia Motors Am., Inc.*, 2015 U.S. Dist. LEXIS 85080, at **7-8 (C.D. Cal. June 29, 2015) (reliance requirement differences material); *Brazil v. Dole Packaged Foods, LLC*, 2014 U.S. Dist. LEXIS 74234, at *43 (N.D. Cal. May 30, 2014) (same); *Werdebaugh v. Blue Diamond Growers*, 2014 U.S. Dist. LEXIS 71575, at *68 (N.D. Cal. May 23, 2014) (same); *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1100-02 (C.D. Cal. 2012) (same); *Horvath v. LG Elecs. MobileComm U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 19215, at **7-9 (S.D. Cal. Feb. 13, 2012) (same).

1   *See, e.g.*, *Mazza*, 666 F.3d at 591 (fact that "California laws at issue…have no scienter, whereas

2   many other states' consumer protection statutes do" is a "difference[] that [is] material."); *Glenn v.*

3   *Hyundai Motor Am.*, 2016 U.S. Dist. LEXIS 181318, at *16 (C.D. Cal. June 24, 2016)

4   ("Difference[s] in scienter requirements are generally 'material' for purposes of a choice-of-law

5   analysis.").[9]

6       Third, the burdens of proof under the Kentucky and California law differ.  Liability under

7   the KCPA requires "clear and convincing evidence of 'unfair, false, misleading, or deceptive

8   acts'." *In re Tolliver*, 464 B.R. 720, 740 (Bankr. E.D. Ky. 2012) (quoting Ky. Rev. Stat. §

9   367.170).  The UCL, FAL, and CLRA require a preponderance of the evidence.  *See, e.g.*, *Morales*

10  *v. Kraft Foods Grp., Inc.*, 2017 U.S. Dist. LEXIS 97433, at *79 (C.D. Cal. June 9, 2017); *Lewert*

11  *v. Boiron, Inc.*, 2017 U.S. Dist. LEXIS 376, at *4 (C.D. Cal. Jan. 3, 2017).  Differences in the

12  quantum of proof necessary for liability "impact the outcome of the case" and are, therefore,

13  "material."  *Glenn*, 2016 U.S. Dist. LEXIS 181318, at **20-21.

14      Fourth, the Kentucky and California consumer protection statutes are subject to different

15  statutes of limitation.  Ky. Rev. Stat. Ann. § 367.220(5) ("Any person bringing an action…must

16  bring such action within one…year after any action of the Attorney General has been terminated

17  or within two…years after the violation…."); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117,

18  1131 (C.D. Cal. 2010) ("CLRA and FAL claims are subject to a three-year statute of limitations

19  and UCL claims are subject to a four-year statute of limitations.").  Differences in the statutes of

20  limitation are material.  *Glenn*, 2016 U.S. Dist. LEXIS 181318, at *19 (differences between

21  statutes of limitation under UCL and CLRA and two-year statute of limitations under Texas law

22  material); *Darisse*, 2016 U.S. Dist. LEXIS 107938, at **28-31 (differences in statutes of

23  limitations "plainly are material").[10]  Relatedly, Kentucky, unlike California, does not provide for

24  

25  [9]  *See also Davison*, 2015 U.S. Dist. LEXIS 85080, at **7-8 (differences in scienter requirements material); *Brazil*, 2014 U.S. Dist. LEXIS 74234, at *43 (same); *Werdebaugh*, 2014 U.S. Dist.

26  LEXIS 71575, at *68 (same); *Gianino*, 846 F. Supp. 2d at 1100-02 (same); *Horvath*, 2012 U.S. Dist. LEXIS 19215, at **7-9 (S.D. Cal. Feb. 13, 2012) (same).

27  [10]  *Davison*, 2015 U.S. Dist. LEXIS 85080, at **7-8 (differences in statutes of limitations material); *Brazil*, 2014 U.S. Dist. LEXIS 74234, at *43 (same); *Werdebaugh*, 2014 U.S. Dist.

28  LEXIS 71575, at *68 (same); *Littlehale v. Hain Celestial Group, Inc.*, 2012 U.S. Dist. LEXIS

1    tolling of the statute of limitations under the "discovery rule" or "fraudulent concealment

2    doctrine." *Compare Mitchell v. GM LLC*, 2014 U.S. Dist. LEXIS 43943, at *13 (W.D. Ky. Mar.

3    31, 2014) ("[N]either the discovery rule nor the fraudulent concealment doctrine toll the statute of

4    limitations" under the KCPA), *Bennett v. Ford Motor Co.*, 2008 U.S. Dist. LEXIS 27286, at *8

5    (W.D. Ky. Apr. 3, 2008) ("[T]he discovery rule does not apply to the KCPA…."), *and Hathaway*

6    *v. Cont'l Assurance Co.*, 2006 U.S. Dist. LEXIS 917, at *9 (W.D. Ky. Jan. 10, 2006) ("[T]he

7    fraudulent concealment doctrine does not apply to causes of action arising under the KCPA.") *with*

8    *Allred v. Frito-Lay N. Am., Inc.*, 2018 U.S. Dist. LEXIS 37617, at **21-24 (S.D. Cal. Mar. 7,

9    2018) (discovery rule and fraudulent concealment doctrine apply to UCL, FAL and CLRA

10   claims).

11        Finally, unlike a plaintiff pursuing claims under the UCL, FAL, or CLRA (*see*, *e.g.*, Cal.

12   Civ. Code § 1781(b); *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 326 (2011)), courts applying

13   Kentucky law have held that a "plaintiff[] can not [*sic*] bring a class action claim under the

14   KCPA." *In re Anthem Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 999-1000 (N.D. Cal. 2016)

15   (citing *Arnold v. Microsoft Corp.*, 2000 WL 36114007 (Ky. Cir. Ct. July 21, 2000), *aff'd*, 2001

16   WL 1835377 (Ky. Ct. App. Nov. 21, 2001)).[11]   Courts have repeatedly confirmed that consumer

17   protection statutes that permit class actions are materially different from those that do not.

18   *Darisse*, 2016 U.S. Dist. LEXIS 107938, at *28 (consumer protections that allow class actions

19   "differ significantly" from those that do not); *Brazil*, 2014 U.S. Dist. LEXIS 72432, at *43

20   (differences in "restrictions on consumer protection class actions" are "material"); *Werdebaugh*,

21   2014 U.S. Dist. LEXIS 71575, at *68 (same).

22

23   ───────────────────

     162530, at **3-4 (N.D. Cal. July 2, 2012) (dismissing California common law fraud claim without
24   leave to amend because differences in statutes of limitations under California and Pennsylvania,
     the location of plaintiff's transactions, law were material).

25   [11]  *See also see also In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154,
     1165 (D. Minn. 2014) ("Plaintiffs cannot maintain a class action as to the alleged consumer-
26   protection statutory violations in…Kentucky…."); *In Re Grand Theft Auto Video Game Consumer
     Litig.*, 251 F.R.D. 139, 160 (S.D.N.Y. 2008) (the "Kentucky consumer-fraud provision does not
27   permit class-action suit"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84
     (D. Mass. 2005) ("Under the law[] of…Kentucky…, there is no right to bring a class action to
28   enforce the consumer protection statute[].")

1

**b.      Additional Material Differences Between The KCPA, On The One Hand, And The UCL And FAL, On The Other Hand**

In addition to the general differences between Kentucky and California consumer protection statutes, there are difference between the KCPA, on the one hand, and the UCL and FAL, on the other.

First, the available remedies are different—a difference courts routinely deem material because, as here, it "will affect what [a plaintiff] will ultimately be able to recover." *Glenn*, 2016 U.S. Dist. LEXIS 181318, at **17-18 ("[D]ifferences in remedies are 'material' for the purpose of the choice-of-law analysis"); *Darisse*, 2016 U.S. Dist. LEXIS 107938, at **28-31 (differences in available remedies "plainly are material").[12]   The KCPA provides that a court may "award actual damages" and "reasonable attorney's fees and costs" to the "prevailing party," order "equitable relief," and that there is no "limit[ation] on [the] right to seek punitive damages."  Ky. Rev Stat. Ann. § 367.220(1)-(3).  Neither damages (including actual or punitive) nor attorneys' fees are available under the UCL and FAL; instead, "[t]he remedies available in a UCL or FAL action are limited to injunctive relief and restitution."  *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009).[13]   Courts applying California law have found identical differences in available remedies "material."  *See*, *e.g.*, *Mazza*, 666 F.3d at 591 (differences between remedies available under UCL and FAL, on the one hand, and the "remedies permitted by other states" are "material"); *Cover*, 2016 U.S. Dist. LEXIS 16475, at **17-18 (differences between available remedies under Rhode Island law, which authorizes recovery of "actual and punitive damages," and California law, which does not, are "material and warrant consideration of each jurisdiction's interest in applying its laws."); *Frezza v. Google Inc*., 2013 U.S. Dist. LEXIS 57462, at *19 (N.D. Cal. Apr. 22, 2013)

---

[12] *See also Cover*, 2016 U.S. Dist. LEXIS 16475, at **17-18 (differences in "types of damages available" material); *Davison*, 2015 U.S. Dist. LEXIS 85080, at **7-8 (available remedy differences material); *Brazil*, 2014 U.S. Dist. LEXIS 74234, at *43 (same); *Werdebaugh*, 2014 U.S. Dist. LEXIS 71575, at *68 (same); *Gianino*, 846 F. Supp. 2d at 1100-02 (same); *Horvath*, 2012 U.S. Dist. LEXIS 19215, at **7-9 (same).

[13] *See also Cover*, 2016 U.S. Dist. LEXIS 16475, at *18 ("Under California law, damages are not available under the UCL and plaintiffs are generally limited to injunctive relief and restitution."); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148, 937, 946 (2003) ("[A]ttorney fees and damages, including punitive damages, are not available under the UCL"); *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 157 (2015) ("[A]ttorneys['] fees are not recoverable in a UCL or FAL action.").

1   (holding that differences in available remedies, including availability of statutory authority for

2   attorneys' fees, are material).

3          Second, unlike the UCL or FAL, the KCPA authorizes only persons who purchase or lease

4   goods or services "primarily for personal, family or household purposes" to bring a claim—a

5   difference that is clearly material for the reasons set forth in Section IV.A. *supra*.  Cal. Bus. &

6   Prof. Code §§ 17200, 17500; KRS § 367.220; *Gooch v. E.I. DuPont de Nemours & Co.,* 40 F.

7   Supp. 2d 857, 861-62 (W.D. Ky. 1998).  Third, under California law, the UCL and FAL

8   specifically exempt conduct "permitted" by the Legislature.  *Cel-Tech Comms., Inc. v. Los*

9   *Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 182 (1999).  The KCPA includes no such

10  exemption—a difference courts find material (and one that is made even more material by the

11  nature of Defendants' affirmative defenses).  *See Cover*, 2016 U.S. Dist. LEXIS 16475, at **17-

12  19, at *6 (difference in "statutory exemptions" as a material); Dkt. 83 ¶ 4 ("Defendants' conduct is

13  protected by the safe harbor….").

14          **c.      Additional Material Differences Between The KCPA And The CLRA**

15          The KCPA and the CLRA differ with respect to pre-suit notice requirements.  Under the

16  CLRA, a plaintiff is required to provide notice "[t]hirty days or more prior to commencement of

17  an action for damages."  Cal. Civ. Code § 1782.  The KCPA, on the other hand, imposes no pre-

18  suit notice requirement.  *See* KRS § 367.220.  Differences in pre-suit notice requirements are

19  material, even more so here because WSI challenges the effectiveness of Plaintiff's alleged pre-

20  suit notice.  *See*, *e.g.*, *Brazil*, 2014 U.S. Dist. LEXIS 72432, at *43 (material differences include

21  differences in "pre-filing notice requirements"); *Werdebaugh*, 2014 U.S. Dist. LEXIS 71575, at

22  *68 (same); *see also* Dkt. 83 ¶¶ 221-228.  Additionally, while the KCPA and CLRA provide for

23  an award of reasonable attorneys' fees to prevailing parties, the CLRA imposes stricter

24  requirements on "prevailing defendants" who must show "that the plaintiff's prosecution of the

25  action was not in good faith."  Cal. Civ. Code § 1780(e).

26  / / /

27  / / /

28  / / /

### d.    There Are Material Differences Between Kentucky And California Unjust Enrichment Law

Courts regularly find that "[t]he elements necessary to establish a claim for unjust enrichment also vary materially from state to state." *Mazza*, 666 F.3d at 591; *see also Martinelli v. Johnson & Johnson*, 2017 WL 2257171, at *6 (E.D. Cal. May 23, 2017) ("There are indeed material differences between California law and the laws of the other states governing…unjust enrichment"); *Williams v. Oberon Media, Inc.*, 2010 U.S. Dist. LEXIS 148295, at *24 (C.D. Cal. Apr. 19, 2010) ("[T]he law of unjust enrichment differs from state to state…."). Moreover, under Kentucky law, "unjust enrichment [claims] are heard and decided by the trial court, not the jury" *Sup. Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 2017 Ky. LEXIS 511, at **25-26 (Dec. 14, 2017) ("[T]here is no entitlement to a jury trial on an unjust enrichment claim."). Under California law, on the other hand, an unjust enrichment plaintiff has a right to jury trial. *See, e.g.*, *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1483-84 (2014) (holding trial court did not "err[] by submitting the issue of unjust enrichment to the jury."); *Lectrodryer*, 77 Cal. App. 4th at 728 (holding plaintiff entitled to jury trial on claim for unjust enrichment). Moreover, the statute of limitations applicable to claims under Kentucky and California law differ. *See Cameo, LLC v. Techni-Coat Int'l*, 2017 U.S. Dist. LEXIS 23590, at *9 (E.D. Ky. Feb. 21, 2017) ("Under Kentucky law, …unjust enrichment claims…are subject to the five-year statute of limitations period set forth in KRS § 413.120."); *F.D.I.C. v. Dintino*, 167 Cal. App. 4th 333, 348 (2008) ("An unjust enrichment…is governed by the three-year statute of limitations for actions based on fraud or mistake.").[14]

### 2.    Kentucky Has An Interest In Applying Its Laws To Plaintiff's Claims

Because there are material differences between Kentucky and California law, the Court must examine "each jurisdiction's interest in the application of its own law…." *Cover*, 2016 U.S. Dist. LEXIS 16475, at **16-17 (quoting *McCann*, 48 Cal. 4th at 87–88). "Every state has an

---

[14]  Even if there were no differences between Kentucky and California unjust enrichment law, given that unjust enrichment is not a standalone cause of action in California, application of Kentucky law and dismissal of Plaintiff's CLRA, UCL, and FAL claims necessarily leads to dismissal of any remaining California unjust enrichment claim. *See* Section IV.A.3. *supra*.

interest in having its law applied to its resident claimants." *Mazza*, 666 F.3d at 592 (internal

quotations and modifications omitted); *see also Junod v. NWP Servs. Co.*, 2016 WL 6306030, at

*8 (C.D. Cal. July 18, 2016) (each state "has an interest in applying its own consumer protection

laws to its…residents").  Plaintiff is a Kentucky resident; Kentucky, therefore, "has a strong

interest in applying its laws to this case." *Cover*, 2016 U.S. Dist. LEXIS 16475, at *19.[15]

Moreover, consistent with the "principle of federalism that each State may make its own reasoned

judgment about what conduct is permitted or proscribed within its borders," California law

recognizes that each state has "the predominant interest in regulating conduct that occurs within its

borders." *Mazza*, 666 F.3d at 591-92 (internal quotations omitted).  As such, because the

"purchase" of the WSH Bedding occurred in Kentucky, Kentucky "has a strong interest in

applying its own consumer protection laws to th[e] transaction[s]." *Id*. at 592; *see also Darisse*,

2016 U.S. Dist. LEXIS 107938, at *38 ("[A]ll 50 states have an interest in having their own laws

applied to the consumer transactions that took place within their borders"); *Glenn*, 2016 U.S. Dist.

LEXIS 181318, at *22 (states "obviously have an interest in having their own laws applied to the

consumer transactions that took place within their borders") (citation omitted).

      Relatedly, each state "has a valid interest in 'setting the appropriate level of liability for

companies conducting business within its territory' in order to 'create a more favorable business

climate for the companies that the state seeks to attract to do business in the state.'" *Cover*, 2016

U.S. Dist. LEXIS 16475, at *20 (quoting *Mazza*, 666 F.3d at 592).; *see also Mazza*, 666 F.3d at

592 ("[E]ach state has an interest in setting the appropriate level of liability for companies

conducting business within its territory.") (quotations omitted); *Gianino*, 846 F. Supp. 2d at 1102

("Each state carefully balances its duty to protect its consumers from injuries caused by out-of-

state businesses with its duty to shield those businesses from what the state may consider

excessive regulation or litigation.").  This "interest applies not only to in-state companies but also

to out-of-state companies which operate within its jurisdiction." *Id*.  Here, Kentucky "has a valid

---

[15]  Kentucky's interest is further strengthened by the fact that The Pond Lady, a Kentucky limited liability company with its principal of business in Kentucky, paid for the WSH Bedding.

1   interest in creating an environment catered to its own interests that applies to companies," such as

2   Defendants, "who do business in its state." *Id.*

3   **3.   Kentucky's Interest Would Be More Impaired If Its Laws Were Not Applied**

4   Where each state has an interest in the application of laws that materially differ, courts

5   "must…apply the law of the state…whose interest would be more impaired if its laws were not

6   applied." *Darisse*, 2016 U.S. Dist. LEXIS 107938, at *38 (citing *Mazza*, 666 F.3d at 590).  To

7   make this determination, the Court "must 'evaluate the nature and strength of the interest of each

8   jurisdiction in the application of its own law.'"  *Glenn*, 2016 U.S. Dist. LEXIS 181318, at *23

9   (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 108 (2006)).  Courts are not

10  "permitted to weigh the conflicting state interests to determine which conflicting state law

11  manifests the 'better' or 'worthier' social policy," and, "[i]nstead,…must recognize the importance

12  of federalism and every state's right to protect its consumers and promote those businesses within

13  its borders." *Darisse*, 2016 U.S. Dist. LEXIS 107938, at *38 (quoting *Mazza*, 666 F.3d at 593).

14  Although "California has a significant interest in applying its laws to consumer

15  transactions that took place within its borders," its "interest in applying its laws to residents of

16  other states who purchased and used [goods] in other…states is much more attenuated." *Darisse*,

17  2016 U.S. Dist. LEXIS 107938, at *39.  Indeed, "California recognizes that 'with respect to

18  regulating or affecting conduct within its borders, the place of the wrong has the predominant

19  interest.'"  *Mazza*, 666 F.3d at 593 (quoting *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802

20  (1980)); *Darisse*, 2016 U.S. Dist. LEXIS 107938, at *39; *Glenn*, 2016 U.S. Dist. LEXIS 181318,

21  at *23.  Under California law, the "place of the wrong" is "the state where the last event necessary

22  to make the actor liable occurred," *Mazza*, 666 F.3d at 593-94, not the state in which defendant is

23  located or from which an alleged misrepresentation emanated.  *See, e.g.*, *Darisse*, 2016 U.S. Dist.

24  LEXIS 107938, at *39 ("California considers the…location…where the misrepresentations were

25  communicated to the consumer as the place of the wrong.  For the out-of-state…buyers, the place

26  of the wrong is not California," where defendant was "headquartered…and ha[d] its principal

27  place of business and the location of its "marketing, sales, and engineering departments," but,

28  instead "the state where each…buyer saw [defendant's] advertising, relied on it, and bought"

-18-

defendant's product.); *Cover*, 2016 U.S. Dist. LEXIS 16475, at **20-23 (applying Rhode Island

law because, despite the fact that defendant's "marketing materials…emanated from California,

[it] is headquartered in California, and it designs its products in California," the "last events

necessary for liability in this case — the communication of the marketing materials, the purchase

of the products, and product deterioration — all occurred in Rhode Island."); *Junod*, 2016 WL

6306030, at *8 (courts applying California law "have consistently held that in misrepresentation

claims, the 'place of the wrong' is where the misrepresentations were *communicated to* the

plaintiffs, not the state from which the policies or misrepresentation originated") (emphasis in

original).[16]

Here, Plaintiff, a resident and citizen of Kentucky, reviewed the alleged misrepresentations

in Kentucky, ordered the WSH Bedding in Kentucky, paid for the "purchase" in Kentucky (using

a business credit card issued to a Kentucky limited liability company with its principal place of

business in Kentucky), had the WSH Bedding shipped to Kentucky, received the WSH Bedding in

Kentucky, and determined that the WSH Bedding (which he did not actually use) was

unsatisfactory in Kentucky.  These undisputed facts establish that Kentucky's interest is

---

[16] *See also In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 48792, at *118 (N.D. Ill. Mar. 31, 2017) (holding that "no wrong implicated by a consumer protection law could have occurred until the consumer purchased [d]efendant's product in their home state.") (applying California law); *Glenn*, 2016 U.S. Dist. LEXIS 181318, at **23-25 (rejecting argument that "the place of the wrong…is California" because defendant made the "decision at its corporate headquarters in California" to conceal a product defect); *Davison*, 2015 U.S. Dist. LEXIS 85080, at **9-11 (holding that "place of wrong" is Washington, in which plaintiff reviewed alleged misrepresentations and purchased good, not California, the location of defendant's corporate office); *Brazil*, 2014 U.S. Dist. LEXIS 72234, at **47-48 ("For nonresident consumers of [defendant's] products, the place of the wrong in not California," where defendant was headquartered and "likely made the corporate decisions regarding packaging, labeling, marketing of [the] products" at issue, "but rather the state in which [the] consumer resides."); *Werdebaugh*, 2014 U.S. Dist. LEXIS 71575, at *72 (same); *Frezza*, 2013 U.S. Dist. LEXIS 57462, at **23-24 ("[T]he last events necessary for liability—the communication of the advertisements to the plaintiffs and their reliance thereon in signing up for the trial period—took place in North Carolina, not in California.  Hence, North Carolina has a strong interest in the application of its laws to transactions at issue."); *Granfield v. Nvidia Corp.*, 2012 U.S. Dist. LEXIS 98678, at **9-10 (N.D. Cal. July 11, 2012) (holding that plaintiff "is not entitled to bring a claim under California law" because "she purchased [product] in Massachusetts"); *Gianino*, 846 F. Supp. 2d at 1103 (holding that, because "California considers the geographic location of the omission or where the misrepresentations were communicated to the consumer as the place of the wrong," the "place of the wrong as to consumers from other states is not California" although defendant was headquartered, and made decisions regarding the alleged misrepresentations, in California).

MOTION FOR SUMMARY JUDGMENT

"predominant" and that application of California law to Plaintiff's claims would significant impair Kentucky's "compelling interest in protecting their consumers from in-state injuries caused by an out-of-state company doing business within their borders, and in setting the scope of recovery for consumers under their own laws." *Darisse*, 2016 U.S. Dist. LEXIS 107938, at \*40; *see also Glenn*, 2016 U.S. Dist. LEXIS 181318, at \*\*27-28 (holding that "each of [p]laintiffs' individual claims must be governed by the consumer protection laws of their home states" because of those states' "compelling interest"); *Davison*, 2015 U.S. Dist. LEXIS 85080, at \*\*9-11 (same). Accordingly, because Kentucky's interest in the application of its laws to transactions between its residents and corporations doing business within its state outweighs California's interest," Plaintiff's "FAL, UCL, and CLRA [should be] dismissed."  *Cover*, 2016 U.S. Dist. LEXIS 16475, at \*\*23-24; *see also Frezza*, 2013 U.S. Dist. LEXIS 57462, at \*\*18-24 (dismissing North Carolina residents' UCL claim because "[a]pplying California's choice-of-law rules to the facts of this case, the court concludes that the North Carolina plaintiffs' consumer protection claims should be governed by the North Carolina consumer protection laws."); *Granfield*, 2012 U.S. Dist. LEXIS 98678, at \*\*9-10 (dismissing plaintiff's California state law claims with prejudice because "she purchased [product] in Massachusetts"); *Horvath*, 2012 U.S. Dist. LEXIS 19215, at \*\*9-10 (dismissing California claims of named plaintiffs who purchased products in foreign states because "the consumer protection law of the jurisdiction in which the transactions took place should govern each [p]laintiffs' cause of action").

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### V.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant the motion, and enter judgment in their favor on all causes of action alleged by Plaintiff in the 7AC.

Dated:  April 10, 2018                  SHEPPARD MULLIN RICHTER & HAMPTON LLP

By

_____

P. CRAIG CARDON
BENJAMIN O. AIGBOBOH
ERIC J. DIIULIO

*Attorneys for Defendants*
WILLIAMS-SONOMA, INC., WILLIAMS-
SONOMA DTC, INC., and WILLIAMS-SONOMA
ADVERTISING, INC.