UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM RUSHING,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAMS-SONOMA, INC., et al.,<br><br>Defendants. | Case No. 16-cv-01421-WHO<br><br>**ORDER ON PENDING MOTIONS**<br><br>Re: Dkt. Nos. 118, 119, 128, 132, 138, 145 |

In this putative class action case, plaintiff William Rushing, a resident and citizen of Kentucky, seeks to represent a nationwide class of purchasers of bed linens sold by defendants Williams-Sonoma, Inc., Williams-Sonoma DTC, Inc., and Williams-Sonoma Advertising, Inc. ("WSI"), who allegedly advertised misleading and false thread counts. WSI moves for summary judgment, arguing that Rushing lacks standing to pursue claims under California law because he used a company credit card to effectuate his purchase of bed linens. In the alternative, it contends that summary judgment should be granted because Kentucky law applies to Rushing's claim.

I agree that Kentucky law applies to Rushing's claims. But WSI did not argue how Rushing's individual or class claims should be resolved on their merits under Kentucky law, so its motion for summary judgment cannot be granted. As Rushing filed this case with standing under California law and a good faith belief that California law applied, I conclude that he is entitled to pre-certification discovery to attempt to locate a California resident willing to join the case as a named plaintiff if he wants to pursue the claims under California law.

**BACKGROUND**

**I. FACTUAL BACKGROUND**

Rushing, a citizen and resident of Kentucky, received WSI catalogs at his home in Kentucky. He decided to purchase high quality bedding for his wife for Valentine's Day. After

reviewing linens in a WSI catalog, he went to WSI's website. Seventh Amended Complaint (7AC) ¶¶ 155-156; Declaration of William Rushing ISO Opposition to MSJ (Dkt. No. 131-2) ¶ 18.

Rushing purchased the subject bed linens using a Capital One "Spark" Visa Business Card issued to his wife Lynn R. Rushing in the name of The Pond Plant Lady, a Kentucky limited liability company. Rushing Decl. ¶¶ 25-27; Declaration of Eric DiIulio (Dkt. No. 119-1), Ex. D. The charge was paid from the corporate bank account of The Pond Lady LLC, a Kentucky limited liability company organized by Lynn Rushing, of which Rushing is a co-owner. Rushing Decl. ¶¶ 8, 13. Rushing owns an 80% interest in The Pond Lady and his wife owns the other 20%. *Id*. ¶ 15.

Rushing declares that because he did not have a personal credit card, he used The Pond Lady LLC's company credit card for his purchase and recorded "the bedding as a draw from the business he co-owns with his wife." Rushing Decl. ¶¶ 8, 13-15, 30. Rushing recorded the transaction as a "draw" and as a personal (not business) expense on software he uses to record the company's finances; The Pond Lady's 2015 tax schedule shows the purchase amounts were deducted from his capital "account." *Id*. ¶¶ 30-31. In addition, he never mentioned The Pond Lady during the transaction, that name is not on the receipt for the bedding, the confirmation emails were sent to his personal email account, and defendants' own records identify that the bedding was "billed to" Rushing. Rushing Decl. ¶¶ 18, 20, 22, 24 & Ex. G (packaging receipt); Honecker Decl. ¶ 10, Ex. E. The purchased bedding was shipped from Mississippi to the home address of the Rushings, which is also the address of the offices of The Pond Lady in Kentucky. Rushing Decl. ¶ 24; DiIulio Decl. ¶¶ 2, 11, 12, & Ex. D.

According to Rushing, 38 times more of the specific WSI bedding at issue in this case was sold to Californians than Kentuckians in the relevant time and 23 times more (unspecified) WSI products were sold in California than in Kentucky during the relevant time. Declaration of Kathryn Honecker (Dkt. No. 131-1) ¶¶ 12, 13, Exs. G & H. In addition, the majority of defendants' "physical retail stores" are in California. Honecker Decl. ¶¶ 14-15, Exs. I, J (showing that 32 Pottery Barn stores are in California while 2 are in Kentucky, and 14 Williams-Sonoma-Home stores are in California while none are in Kentucky).

WSI and the related defendant-entities (Williams-Sonoma Advertising, Inc. (WSA) and Williams-Sonoma DTC, Inc. (WSDTC)) are all headquartered or based in California, although WSI is incorporated in Delaware. Honecker Decl. ¶¶ 6-8. Rushing asserts that these California-based entities are responsible for the marketing and advertising of the bedding at issue, although at the time of his opposition "due to deposition delays" he "has not yet had the opportunity to determine the full extent to which WSI's advertising decisions happen in California." Oppo. at 3. But he asserts, and I assume for purposes of ruling on this motion, that the key personnel who import the bedding and deal with customs, as well as those who market and deal with product development, are all based in California. *Id*. at 2-3.

## II. PROCEDURAL BACKGROUND

The operative Seventh Amended Complaint (7AC) asserts the following causes of action on behalf of Rushing and a putative nationwide class: (1) Consumer Legal Remedies Act (Cal. Civ. Code § 1750, et seq.); (2) Misleading and Deceptive Advertising (Cal. Bus. & Prof. Code § 17500, et seq.); (3) Untrue Advertising (Cal. Bus. & Prof. Code § 17500, et seq.); (4) Unlawful Business Practices (Cal. Bus. & Prof. Code § 17200, et seq.); (5) Unfair Business Practices (Cal. Bus. & Prof. Code § 17200, et seq.); (6) Fraudulent Business Practices (Cal. Bus. & Prof. Code § 17200, et seq.); and (7) Unjust Enrichment.

WSI moves for summary judgment, arguing that Rushing's California claims fail because his business purchased the sheets and, therefore, he does not have standing to bring his consumer protection claims. It argues in the alternative that even if Rushing has standing under California law, summary judgment is nonetheless proper because Kentucky law applies to his claims. In response, Rushing asks for relief under Rule 56(d), contending that I should defer ruling on the defense motion because he has not had the opportunity to take discovery that could weigh on resolution of the motion. He also opposes the motion for summary judgment on its merits, arguing that he has standing under California law and that the choice of law analysis is premature, but if reached, mandates application of California law. Defendants sought leave to file to file a sur-reply, arguing that Rushing's opposition to discovery subpoenas served by WSI show that Rushing agrees that Kentucky law applies to his claims and shows that his Rule 56(d) motion

3

should be denied because of his inequitable conduct that stalled WSI's discovery. Dkt. No. 139.

Oral argument was held on June 20, 2018. As instructed, shortly following the hearing the parties submitted a joint letter joining the issue of whether plaintiff is entitled to discovery as to the identity of absent class members. Dkt. No. 145. During this same timeframe, three discovery disputes arose in other districts as a result of subpoenas issued by WSI seeking discovery related to Rushing's purchase of the bed linens. Those three matters were transferred to this District and related to this underlying case.[1]

**LEGAL STANDARD**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony

---

[1] Two of the disputes were transferred to this Court from the Eastern District of Kentucky. In 18-cv-04366-WHO *Rushing et al v. Williams-Sonoma, Inc*., the issue is whether to quash a subpoena issued to plaintiff's wife, Lynn A. Rushing, (Case No. 18-cv-411 EDKY). In 18-mc-80122-WHO (also opened as18-cv-04368-WHO) *Rushing et al v. Williams-Sonoma, Inc*., the issue is whether to quash a subpoena issued to The Pond Lady, LLC (the company jointly owned by Lynn Rushing and plaintiff (Case No. 18-cv-420 EDKY). A third matter, 18-mc-80128-WHO *Rushing v. Williams-Sonoma, Inc*., was transferred from the District of Columbia, and concerns whether WSI's subpoena issued to Capital One Bank (U.S.A.) seeking records regarding the credit card plaintiff Rushing used to purchase that WSI bed linens should be quashed.

4

does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

## DISCUSSION

### I.  CHOICE OF LAW

"Under California's choice of law rules, the class action proponent bears the initial burden to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member. [] Such a showing is necessary to ensure that application of California law is constitutional. [] Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate 'that foreign law, rather than California law, should apply to class claims.'" *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589–90 (9th Cir. 2012) (quoting *Wash. Mut. Bank v. Superior Court*, 24 Cal.4th 906, 921 (Cal. 2001)).  "California law may only be used on a classwide basis if 'the interests of other states are not found to outweigh California's interest in having its law applied.'" *Id.* (quoting *Washington Mutual*, 24 Cal. 4th at 921).

To determine whether the interests of other states outweigh California's interest, the court looks to California's three-step governmental interest test: (1) determining whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different; (2) if there is a difference, examining each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists; and (3) if there is a true conflict, carefully evaluating and comparing the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, ultimately applying the law of the state whose interest would be more impaired if its law were not applied.  *Mazza*, 666 F.3d at 590 (quoting *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 81–82 (Cal.2010)).

WSI does not dispute that it has sufficient contacts with California so that application of California law is constitutional.  Significantly, that admission moots most of the discovery Rushing contends in his motion to defer ruling on the motion for summary judgment under Rule

5

56(d) that he needs to oppose WSI's choice of law argument. Dkt. No. 128.[2]

The crux of WSI's argument is that under the second prong: (i) there are significant, material differences between the consumer protection statutes of California and Kentucky; (ii) each state has an interest (and resulting conflict) supporting the application of its own consumer protection laws; and (iii) Kentucky's interest in having its laws applied to a transaction that was solicited from and occurred in Kentucky are paramount. Rushing contends otherwise, arguing that the differences identified by WSI are not material to the claims in this case and that because the harmful conduct emanated from California and the injury, if any, occurred through an online transaction, California's interests are paramount in regulating the conduct of California-based businesses.

### A. Material Differences

There is little dispute that there are differences between Kentucky's and California's consumer protection statutes. WSI points to a number of differences including: (a) reliance (required under California law, but not under Kentucky law); (b) scienter (required for defendant's conduct under Kentucky law, not under California law); (c) the standard of proof (clear and convincing evidence under Kentucky law, preponderance of evidence under California law); (d) statutes of limitation (a shorter statute in Kentucky than in California); (e) ability to bring a class action (prohibited under Kentucky's consumer law statute but not California's); (f) remedies (e.g., damages are allowed under Kentucky laws, but restitution is only allowed under California's Unfair Competition Law, although damages are allowed under the CLRA); (g) presuit notice (required under California's CLRA, but not under Kentucky law); and (h) safe harbor (which

---

[2] In the Rule 56(d) motion, Rushing complains that he had not yet been able to secure the following discovery: (i) the volume of WSI's sales in each state; (ii) documents identifying revenue from each state; (iii) the location of putative class members; (iv) the identification of defendants' employees with knowledge on significant subjects; (v) the location of "brick-and-mortar stores" owned by defendants; and (vi) the location of defendants' computer servers. Dkt. No. 128. WSI admits that its California presence is significant. Fundamentally, as discussed below, even assuming this missing discovery would confirm Rushing's theory that the complained of conduct (the false or misleading advertisements, labels, and decisions made as to how to count and represent thread counts) all emanated from California, that would not defeat Kentucky's significant interest in enforcing its consumer protection laws to transactions solicited from and products sent into Kentucky.

6

exists under California's UCL law but not in Kentucky). WSI notes that many of these sorts of differences were found to be material in the choice of law analysis undertaken by the Ninth Circuit in *Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581, 591 (9th Cir. 2012) (finding differences in scienter, reliance, and remedies allowed material for choice-of-law analysis); *see also Darisse v. Nest Labs, Inc*., 5:14-CV-01363-BLF, 2016 WL 4385849, at \*10 (N.D. Cal. Aug. 15, 2016) (determining on class certification that nationwide class could not be certified because of material differences in consumer protection statutes, including availability of class actions and damages); *Cover v. Windsor Surry Co*., 14-CV-05262-WHO, 2016 WL 520991, at \*6 (N.D. Cal. Feb. 10, 2016) (noting material differences between consumer protection statutes of California and Rhode Island).

Rushing responds that the differences between the California and Kentucky laws are not material to this case because Rushing satisfies the more restrictive elements of each state's laws; the reliance requirement under California law, the scienter requirement under Kentucky law, the statute of limitations requirement under Kentucky law, and clear and convincing evidence under Kentucky law. He also argues that the choice of law determination is premature because no class has yet been certified. However, there is at least one material difference described above that will not go away. This case has been brought as a nationwide class action, and Kentucky's consumer law prohibits class actions. That and the other differences could significantly impact whether a class could be certified and the scope of any such certified class. *See, e.g., Darisse v. Nest Labs, Inc*., 5:14-CV-01363-BLF, 2016 WL 4385849, at \*10 (N.D. Cal. Aug. 15, 2016) (denying certification of nationwide class under choice of law analysis).

**B.    Each State's Interests**

Rushing is a Kentucky resident. Kentucky has a strong interest in applying the laws of its state to transactions that occur in its state. As I have recognized, even where misrepresentations emanate from other states, the state where a consumer made her or his purchase typically has a valid interest in having its own law applied to out-of-state companies who operate within their jurisdiction. *Cover v. Windsor Surry Co*., 14-CV-05262-WHO, 2016 WL 520991, at \*7 (N.D. Cal. Feb. 10, 2016). Rushing contends that this analysis should not apply to purchases made

7

wholly online (or as here effectuated online after Rushing reviewed a catalog sent by defendants to Kentucky and reviewed by plaintiff in Kentucky) because while a state has a strong interest in regulating its business climate and commerce taking place physically within its borders, its interest in regulating purely online transactions is weaker. However, a "weaker" interest is still an interest.

### C. Impairment

As to whether the interests of Kentucky or California would be more impaired, WSI relies on two recent cases from this District that rejected applying California consumer protection laws to nationwide classes, even where the defendants' principal places of business were in California and the false advertising was crafted in and disseminated from California.

In the first case, *Cover v. Windsor Surry Co.*, No. 14-cv-05262-WHO, 2016 U.S. Dist. LEXIS 16475, at *20 (N.D. Cal. Feb. 10, 2016), I denied nationwide application of California consumer protection laws, limiting the case instead to the laws of Rhode Island where the plaintiff lived. Rushing attempts to distinguish that case on the grounds that the products there were sold to distributors who sold them in Rhode Island (and neighboring New England states) to Rhode Island residents, like Cover. The defendants' significant physical presence in the state supported the recognized principle that Rhode Island had "a valid interest in creating an environment catered to its own interests that applies to companies, such as Windsor, who do business in its state." *Id.* at *20. Rushing points out that there are no WSI "home stores" in Kentucky, so Kentucky's interest in exercising control over its business climate is not directly implicated. He ignores, however, that defendant WSI operates at least two brick and mortar Pottery-Barn branded stores (if not the "home" stores that sell bedding), so there is a physical presence from WSI-related defendants in that state. Honecker Decl. ¶ 15, Ex. J.[3]

In *Cover* it was also significant that there were no California-based named plaintiffs and it

---

[3] As noted above, plaintiff filed a Rule 56(d) motion, seeking discovery that is mostly relevant to the sufficiency of WSI's contacts with California (which is not disputed) but could also weigh on the significance of California's interests in having its laws applied versus the interests of Kentucky. Dkt. No. 128. However, for purposes of ruling on the choice of law issue, I will assume that the misrepresentations emanated from California, that WSI's servers (through which Rushing made his purchase) were located in California, and that the majority of the bed linens at issue were sold in California. Those facts, as assumed, do not alter the analysis as discussed below. Therefore, plaintiff's Rule 56(d) motion is DENIED.

8

was unclear how many California class members were in the putative class. *Id*. at * 21. Here, plaintiff alleges that WSI sold 38 times more of the bed linens at issue in California than in Kentucky and that WSI generally sells 23 times more product in California than in Kentucky. I can presume, therefore, that the number of California class members significantly outweighs those in Kentucky. California has a significant interest in protecting its own consumers. But that does not undermine Kentucky's recognized interest in *Rushing's* claims.

Finally, as I recognized in *Cover*, under California law "the place of the wrong has the predominant interest," and "California considers the 'place of the wrong' to be the state where the last event necessary to make the actor liable occurred." *Id*. * 23-24. Because the last events necessary for liability in that case – the communication of the marketing materials, the purchase of the products, and product deterioration — all occurred in Rhode Island, Rhode Island was the situs of the wrong. *Id*. * 23. Here, Rushing argues that because he viewed the advertising online and purchased online, the situs of the wrong can be considered California (even if the product was shipped to him in Kentucky and was never in California). However, as in *Cover*, the misrepresentations were sent by catalog and reviewed in the state of residence (here, Kentucky), the product was purchased for use in the state of residence, and the product was received in the state of residence. The only difference between *Cover* and this case is that the product was purchased online and not from a distributor.

The second Northern District case heavily relied upon by WSI dealt with an exclusively online transaction. In an order denying a motion for class certification in *Darisse v. Nest Labs, Inc.*, No. 5:14-cv-01363-BLF, 2016 U.S. Dist. LEXIS 107938, at *1 (N.D. Cal. Aug. 15, 2016), the Hon. Beth Labson Freeman concluded that despite the defendant having its principal place of business in California and California being the location of defendant's marketing, sales, and engineering departments, each state had "a compelling interest in protecting their consumers from in-state injuries caused by an out-of-state company doing business within their borders, and in setting the scope of recovery for consumers under their own laws." *Id*. at * 39-40. She concluded that "every state would be impaired in its ability to protect consumers within its borders if California law were applied to all claims of the nationwide class" and that "[e]ach class member's

9

claims instead must be governed by the laws of the state in which the transaction took place." *Id*. at *40.

Rushing cites no recent Northern District (or other California district) court case certifying or otherwise applying California consumer protection laws to a nationwide class under a choice of law analysis.[4] He does point to *Rutledge v. Hewlett-Packard Co*., 238 Cal. App. 4th 1164, 1187–88 (Cal. App. 6th Dist. 2015), *as modified on denial of reh'g* (Aug. 21, 2015). There, the California Court of Appeal reversed a trial court's failure to certify a nationwide class. However, the claim at issue there was "breach of an express warranty" (HP failed to comply with its repair obligations under the express warranty). As "the alleged injuries occurred in California where HP conducted the repairs, [] California has the 'predominant interest' in applying its law." *Id*. at 1187-88. Here, the injury occurred in Kentucky, not California.

Rushing's supplemental reliance on *Pecover v. Elec. Arts Inc*., C 08-2820 VRW, 2010 WL 8742757, at *1 (N.D. Cal. Dec. 21, 2010), is not helpful; that case predated *Mazza*. *Ehret v. Uber Techs., Inc*., 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014) is not on point because it was deciding a different question (whether to strike claims based on extra-territorial application of California law on a motion to dismiss) and it did not engage in a choice of law analysis. Plaintiff's out of circuit authority is similarly inapposite. *Images of the World, Inc. v. Contl. Am. Industries, Inc*, 04 C 7002, 2005 WL 2171193, at *3 (N.D. Ill. Aug. 30, 2005) (personal jurisdiction analysis); *Emory Group LLC v. ID Sols*., LLC, 1:14-CV-13-TWT, 2014 WL 1415021, at *3 (N.D. Ga. Apr. 10, 2014) (same).

WSI's supplemental authority, focusing on cases from this and other districts in California, supports their argument that the place of harm is predominant even for wholly online transactions where the alleged misrepresentations emanated from California and the defendants were headquartered in California. *See, e.g., Frezza v. Google Inc*., 5:12-CV-00237-RMW, 2013 WL 1736788, at *7 (N.D. Cal. Apr. 22, 2013) ("As in *Mazza*, the last events necessary for liability—

---

[4] Following the hearing, I allowed counsel to submit limited briefing on the choice of law issue. Dkt. No. 140. Both sides submitted supplemental authority. Dkt. Nos. 143, 144.

10

the communication of the advertisements to the plaintiffs and their reliance thereon in signing up for the trial period—took place in North Carolina, not in California.); *see also Larsen v. Vizio, Inc.*, SACV1401865CJCJCGX, 2015 WL 13655757, at *3 (C.D. Cal. Apr. 21, 2015) (recognizing the place of the wrong "has the predominate interest"); *Karim v. Hewlett-Packard Co.*, C 12-5240 PJH, 2014 WL 555934, at *8 (N.D. Cal. Feb. 10, 2014) ("the interests of foreign states in applying their own laws does outweigh California's interest in applying its laws on a nationwide basis").

Under a choice of law analysis, Kentucky's interest would be more significantly impaired than California's and Kentucky law applies to Rushing's claims.[5] This holding, however, does not mandate the granting of WSI's motion for summary judgment. WSI does not argue or show that Rushing's claims are not actionable under Kentucky law. Those claims, therefore, remain in this case.

### D. Motions to Quash

Because I have found Kentucky law applies to Rushing's claims and it is unclear whether Rushing intends to pursue his claims under Kentucky law and if so how that weighs on the motions to quash, I defer ruling on those motions. Instead, within twenty (20) days of the date of this Order, Rushing shall file a notice explaining whether he elects to pursue his claims under Kentucky law. If so, within five days after that notice, defendants shall file a notice electing which (if any) of their three subpoenas they wish to pursue. If Rusing continues to object to any non-withdrawn subpoenas, he shall file a notice informing the Court, within five days after defendants' notice, and the parties shall submit the matter for resolution by Magistrate Judge Sallie Kim, pursuant to the procedures outlined in Judge Kim's Standing Order.

---

[5] In a sur-reply WSI argues that in opposing subpoenas WSI issued to Rushing's wife and his co-owned company (The Pond Lady), Rushing has argued that Kentucky's marital privilege precludes discovery from Rushing's wife. Dkt. No. 139. WSI argues the admission that Kentucky privilege law applies to discovery sought for purposes of this case estops Rushing from arguing against application of Kentucky law on this motion. I do not need to rely on that argument as the choice of law analysis based on the facts shown or (for purposes of the motion, assumed) mandates application of Kentucky law to Rushing's claims. WSI's motion for leave to file the sur-reply (Dkt. No. 139) is DENIED.

## II. CLAIMS UNDER CALIFORNIA LAW

Having concluded that Kentucky law applies to Rushing's claims, resolution of WSI's challenge to Rushing's standing to pursue his claims under California law is unnecessary to resolve defendants' motion for summary judgment. However, as explained in below, I am allowing Rushing to conduct pre-certification discovery so that he can attempt to find a named plaintiff who is a resident of California to pursue the California claims.

### A. Precertification Discovery

Under California law, precertification discovery is permissible – despite the fact that I have found Kentucky law applies to Rushing's claim – as Rushing had a good faith belief that California law applied and, as briefly discussed below, standing to pursue his claims until I determined otherwise. *See CashCall, Inc. v. Super. Ct*., 159 Cal. App. 4th 273, 285 (Cal. App. 4th Dist. 2008) (after weighing any potential abuses of class action procedure created by pre-certification discovery of absent class member against the danger of such abuses, trial courts may allow precertification discovery of the identities of class members in cases in which named plaintiffs originally were appropriate members of the class and therefore had standing but subsequently lost that standing) (relying on *Parris v. Superior Court*, 109 Cal.App.4th 285, 300–301 (2003)).[6]

Here, as explained briefly below, Rushing had a good faith belief in his standing under the CLRA and the UCL, despite using a "company" credit card to make his purchase. However, now that I have determined that Kentucky law applies to his claims and find no evidence of abuse of discovery or bad faith conduct on the part of Rushing or his counsel, it is appropriate to allow Rushing leave to conduct the discovery necessary to identify a substitute named plaintiff to pursue claims under California law.

---

[6] Even where a plaintiff did not have a good faith belief in her standing and lacked standing at the suit's inception, courts may nonetheless still allow precertification discovery where the harms to the interests of absent class members outweighed the abuse of the discovery process. *See, e.g., Safeco Ins. Co. of Am. v. Super. Ct*., 173 Cal. App. 4th 814, 833 (Cal. App. 2d Dist. 2009) (even where plaintiff "abused the discovery process by continuing to pursue discovery on the merits of her claims even after she knew that she had no standing with respect to the allegations in the complaint," pre-certification discovery allowed to identify a substitute named plaintiff where "the rights of the putative class members [] outweigh[ed] the past, and the potential for further, abuse of the discovery process.").

12

**B. Rushing's Good Faith Belief in His Standing**

I write briefly to explain why I disagree with defendants' argument that, if California law applied, Rushing had no standing because he used a company credit card to make his bed linen purchase. To the contrary, he would have had standing as a consumer under the CLRA and UCL/FAL.

**1. CLRA**

A consumer under the CLRA is defined as "an individual" who purchases good for "personal, family, or household purposes." Cal. Civ. Code 1761(d). There is little dispute that the goods at issue were purchased for personal use. Contrary to defendants' argument, there is no evidence that the bed linens were purchased by the entity (The Pond Lady LLC) as a gift to or as the distribution to Rushing or his wife. There is no evidence that the bedding was purchased for the company or commercial purposes, and no indication that the business run by The Pond Lady LLC required or could have used sheets. The "distribution" is simply the release of funds that Rushing declares were already his property. The "distribution" was not the bedding.[7]

The closer question is whether Rushing can be considered an "individual" covered by the CLRA when he used a company credit card to effectuate the purchase. However, while he used the company credit card (of a defunct company), his testimony is credible that he believed he was using his own capital funds, even if they were maintained in the company's bank account. The expense was recorded as a personal, not business expense. The purchase was billed to Rushing as an individual, not the company. These uncontested facts support the conclusion that Rushing was acting as an "individual" in deciding to purchase the sheets for personal and household use.

The cases WSI relies on are inapposite. In *Bristow v. Lycoming Engines*, 2007 U.S. Dist. LEXIS 45811, at *4 (E.D. Cal. June 14, 2007), the product at issue (a small plane) was purchased by a corporation and title was held in that corporation's name, although the individual-plaintiff

---

[7] Courts have focused on the intent of the plaintiff making the purchase at the time of the purchase to determine "purpose," despite evidence that a product could be used for commercial purposes. *See, e.g., The Plane Exch., Inc. v. Francois*, CV21400784WBSKJN, 2015 WL 9031495, at *7 (E.D. Cal. Dec. 16, 2015) ("regardless of the aircraft's experimental exhibition certification, Francois purchased the aircraft with the intent to use it for personal purposes. Moreover, TPX has presented no evidence demonstrating Francois used the aircraft for commercial purposes or to generate revenue.").

13

testified that he had used personal funds to purchase the plane and that the corporation was a mere shell to avoid solicitations. In that circumstance, there was no dispute that the legal purchaser *and holder* of the goods was the corporation, not the individual. That the plane was intended for personal use could not trump the use of the corporate from to purchase and hold the plane. Here, while a corporate credit card was used and the funds paying off the charge came from a corporate account, the purchaser and holder of the goods is Rushing, not The Pond Lady LLC. And the monies used (according to undisputed facts presented by Rushing) was the property of Rushing, not the LLC. The purchaser, despite the use of the company card, is Rushing as an individual.

In *Schauer v. Mandarin Gems of California, Inc*., 125 Cal. App. 4th 949, 960 (Cal. App. 4th Dist. 2005), the plaintiff did not have standing under the CLRA because while she was given ownership of a ring by her fiance "[p]laintiff's ownership of the ring was not acquired as a result of her own consumer transaction with defendant." The rights to a remedy under the CLRA rested with plaintiff's ex-husband. Here, it was Rushing making the decision to purchase the product for personal or household use and Rushing *who made* the purchase and ultimately paid for it, despite the use of the company card to facilitate the transaction.

While WSI argues that the terms of the credit card Rushing used "likely" required purchases made with the card to be for business use, it chose to bring its motion on the record as is before it received materials it sought by subpoena from Capital One Bank.[8] WSI's motion will be resolved on the evidence before me. But even if WSI's supposition is correct, it would not change the outcome. Given the facts described above, as to which there is no real dispute, Rushing would have been a consumer under the CLRA.

### 2. UCL/FAL

WSI also argues that Rushing would not have standing under the UCL or FAL if California law applies because he did not suffer any injury as he used company funds to make the purchase. As noted above, The Pond Lady is a LLC partnership (not a corporation) and Rushing asserts that

---

[8] As noted below, WSI served a subpoena on Capital One Bank (U.S.A.) seeking this information. Rushing moved to quash the subpoena in the District of Columbia. That issue was transferred to this District and remains unresolved.

14

he is the majority shareholder. Moreover, he presents evidence that the funds he used to pay the credit debt were his (from his capital account). Finally, the expense was listed as a personal, not business expense. Therefore, while the card was a company card, the funds used to pay the charge off were Rushing's funds.

This case is unlike *In re Intel Laptop Battery Litig.*, No. C 09-02889 JW, 2010 U.S. Dist. LEXIS 132655, at *9 (N.D. Cal. Dec. 15, 2010), cited by defendants. There, the plaintiff used "corporate funds" to purchase the laptop at issue. As such, and despite the fact the plaintiff was the sole shareholder, the plaintiff "did not personally loose [sic] any money in association with the transaction. Rather, [the corporation] would have suffered the injury and lost money as a result of Defendant Intel's alleged unfair competition." *Id.* * 9. Here, while a company credit card was used, Rushing has shown evidence that the funds used to pay that charge were drawn against his capital account, not against corporate funds, and that the expense was personal not business. *See also Boswell v. Costco Wholesale Corp.*, SACV160278DOCDFMX, 2016 WL 3360701, at *4 (C.D. Cal. June 6, 2016) (plaintiff has standing under UCL despite fact that his girlfriend made the purchase using her store membership, where he alleged that he made decision to purchase and "either directly paid for the Coconut Oil and the rest of the couples' items, or reimbursed her for the Coconut Oil."); *Waller v. Hewlett-Packard Co.*, 11CV0454-LAB RBB, 2011 WL 6325972, at *6 (S.D. Cal. Dec. 16, 2011) (standing where plaintiff "and his wife were shopping together at Costco, where they have a family membership, and that he made the decision to buy the SimpleSave while she actually executed the purchase with their money.").

On the facts presented here (as to which there is no real dispute), Rushing has standing under the UCL and FAL.[9]

---

[9] WSI also argues that Rushing cannot assert a claim for unjust enrichment because he did not personally confer a benefit on WSI that WSI unjustly retained. As discussed above, that theory has been rejected. In addition, because Rushing would have had standing to bring his claim under the CLRA and UCL/FAL, he had standing to assert a claim for unjust enrichment. *See Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

### C. Scope of Pre-Certification Discovery

As discussed above, Rushing would have had standing under California's consumer protection statutes despite his using a company credit card to effectuate his purchase, assuming that California law applied. He had a good faith belief in his ability to prosecute this case. However, I have now ruled on choice of law and find that Rushing's individual claims are governed by Kentucky law. Finding no abuse in this process by Rushing or his counsel, and weighing the interests of the class[10] and defendants, I conclude that Rushing should be allowed to seek pre-certification discovery to attempt to locate a substitute named plaintiff to pursue the California law claims.

WSI argues that this discovery should not be allowed in this case because Rushing did not timely seek it or pursue resolution before Magistrate Judge Kim. Considering my conclusions above, the issue remains live. WSI also asserts that the discovery would be moot if Kentucky law applies to Rushing's claims and he should not be allowed to amend to substitute in a named plaintiff to pursue the California law claims because the deadline to amend the complaint passed (as of July 2017) and he did not affirmatively seek leave to amend despite the "years-long notice of WSI's intention to challenge" Rushing's ability to assert claims under California law. Dkt. No. 145 at 5-6.

As indicated above, while I agree with WSI's choice of law arguments, summary judgment is not appropriate because WSI did not show why it should be granted applying Kentucky law to Rushing's claims. There has been no judgment in this case. In addition, Rushing's position that he had standing under California law and should be able to pursue California law claims was made and actively litigated in good faith. He will be given leave to amend to add a named plaintiff to pursue the California claims and will be allowed to seek limited discovery for that purpose.

The scope of the discovery that Rushing seeks and the attendant procedural requirements governing that discovery remain undetermined. In the discovery dispute letter, he argues that he is entitled to both the contact information for all purchasers of the bed linens at issue or, at a

---

[10] As the docket will attest, I have found that Rushing has brought plausible claims for relief and the parties have engaged in substantial discovery over the past two years. Rather than waste that effort, the class has a strong interest in proceeding if a suitable California plaintiff can be found.

16

1  minimum, a list of the California consumers who complained about the bed linens to WSI. Dkt.
No. 145 at 1-2. As an initial matter, as the claims asserted in this case arise under California law
(although Kentucky law will be applied to Rushing's claims), the discovery to be produced will be
limited to California purchasers.

As to the procedure for securing this discovery, I agree with Rushing that *if* the discovery is limited to the identity of California consumers who complained to WSI about the bed linens at issue in this case, a *Pioneer* notice would not be required.[11] If he wants discovery of non-complaining California purchasers, a *Pioneer* notice would be required to allow those consumers to opt-out of the release of their information. The cost of sending and administering any such notice would be borne by Rushing.

Within twenty (20) days of the date of this Order, Rushing shall file a notice identifying whether he elects to seek only identifying information for complaining California purchasers or more broadly all California purchasers. If he elects the broader category of disclosure, the parties shall meet and confer as to the contents of the *Pioneer* notice and opt-out procedure. Any disputes regarding the same shall be submitted to and resolved by Judge Kim.

### III. ADMINISTRATIVE MOTIONS TO SEAL

Defendants filed conditionally under seal documents designated by Rushing as confidential in conjunction with their motion for summary judgment and plaintiff filed conditionally under seal additional documents designated confidential by WSI, as well as tax return and business information designated confidential by Rushing.

The materials designated confidential by Rushing and filed conditionally under seal by WSI are: (i) redacted copies of Spark Visa statements issued to The Pond Plant Lady by Capital

---

[11] In *Pioneer Elecs. (USA), Inc. v. Super. Ct.*, 40 Cal. 4th 360 (2007), the California Supreme Court explained that absent class members in a defective product case should be provided notice of the potential release of their information and an opportunity to opt-out of that release to protect their rights of privacy under California law before a defendant can be compelled to produce information identifying its customers to plaintiffs. The California Supreme Court recently recognized, as stated in *Pioneer,* "that consumers who had already complained about a product defect had little or no expectation their contact information would be withheld from a plaintiff seeking relief from the manufacturer on behalf of consumers." *Williams v. Super. Ct.*, 3 Cal. 5th 531, 553 (2017).

17

One (DiIulio Decl., Ex. No. D [Dkt. No. 118-2]); (ii) redacted copies of statements from Whittier Bank (Ex. F [118-3]); (iii) Articles of Incorporation for The Pond Lady LLC (Ex G [118-4]); (iv) a tax form for The Pond Lady LLC, noting it was no longer a sole member LLC (Ex I [118-5]); and (iv) a statement of change of address for The Pond Lady LLC (Ex J [118-6]). Because these materials were designated as confidential by Rushing and only conditionally filed under seal by WSI, under the Civil Local Rules if Rushing wanted to keep these materials under seal he was required to submit a declaration in support which he did not do. Civ. L. R. 79-5. Because the financial records have been redacted (so as not to disclose account numbers and other sensitive information) and as the other forms are public records as to which there is no compelling justification to seal, the motion to seal is DENIED. Dkt. No. 118. The Clerk shall UNSEAL the following docket numbers: Dkt. Nos. 118-2, 118-3, 118-4, 118-5, 118-6.

As to materials filed by Rushing and designated as confidential by Rushing, those include The Pond Lady, LLC's 2015 U.S. Income Tax Return (Ex. E to Rushing Decl. [Dkt. No. 132-8]) and a spreadsheet showing The Pond Lady, LLC's draws and financial accounting (Ex. H to Rushing Decl. [Dkt. No. 132-8]). Again, his counsel failed to provide a declaration explaining why those materials should be sealed under the compelling justification standard.[12] Despite counsel's failure to do so, the tax returns and detailed financial account information contained in these exhibits merit sealing for purposes of this motion. Therefore, the administrative motion to seal Dkt. No. 132-8 is GRANTED.

Plaintiff also filed conditionally under seal part of his opposition brief and exhibits in support because that information was designated as confidential by WSI. In accordance with the Local Rules, WSI submitted a declaration in support of that sealing. Dkt. No. 133-1. WSI does not seek to seal any portion of Exhibits A, B, and C to the Honecker Declaration.

WSI seeks to seal only Exhibits G, H and L to the Honecker Declaration, as well as two

---

[12] Plaintiff's counsel's declaration only notes that those documents were produced as "confidential" under the Protective Order in this case. Dkt. No. 132-1 ¶ 4. That a document was marked confidential under the Protective Order does not show that it merits sealing under the compelling justification standard. *See* Civ. L.R. 79-5(d)(1)(A) ("Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable.").

18

references in plaintiff's opposition brief (pg. 4:15-19 and pg. 24:6-9), because those exhibits and references contain highly confidential and proprietary sales data, proprietary vendor information, as well as testing information that discloses WSI's testing laboratories and the unique combination of characteristics that WSI tests for purposes of acceptance and the standards WSI sets for testing those characteristics. *See* Declaration of Robert J. Guite [Dkt. No. 133-1]; Declaration of Todd Cole [Dkt. No. 113-1].

As to the references to sales data in the Opposition – pg. 4:15-19 and pg. 24:6-9 – the sealing request is DENIED. WSI has failed to show compelling justifications that would justify sealing these discrete and general references to the sales of the specific products at issue for a limited time. As to the underlying sales data itself – exhibits G & H to the Honecker Declaration – the request is GRANTED for purposes of this motion only.

As to the testing data – Exhibit H to the Honecker Declaration – the request as supported by the Cole Declaration is GRANTED for purposes of this motion only.

Therefore, the Clerk shall UNSEAL Dkt. No. 132-6. Within ten (10) days of the date of this Order, plaintiff shall publicly e-file Exhibits A-C to the Honecker Declaration.

## CONCLUSION

For the foregoing reasons, WSI's motion for summary judgment is DENIED, except that Kentucky law applies to Rushing's claims.

Plaintiff's request for pre-certification discovery is GRANTED, although that request is limited to California purchasers. Any dispute over the content of a *Pioneer* notice (if required) and any remaining motions to quash shall be resolved by Judge Kim.

The previously scheduled Case Management Conference set for December 4, 2018 remains on calendar. Given the various elections required above, the parties shall be prepared to propose a new case schedule setting deadlines for Rushing to amend (to substitute in a new named plaintiff to pursue claims under California law if he so desires), for limited discovery to be taken as to any

new named plaintiff, for plaintiff's amended motion for class certification, and for trial.

**IT IS SO ORDERED.**

Dated: October 24, 2018



William H. Orrick
United States District Judge