SHEPPARD MULLIN RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal. Bar. No. 168646
ROBERT J. GUITE, Cal. Bar. No. 244590
BENJAMIN O. AIGBOBOH, Cal. Bar. No. 268531
ALYSSA M. SHAUER, Cal. Bar No. 318359
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email:        ccardon@sheppardmullin.com
              rguite@sheppardmullin.com
              baigboboh@sheppardmullin.com
              ashauer@sheppardmullin.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM RUSHING and ELIZABETH PERLIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAMS-SONOMA, INC., a Delaware corporation, also d/b/a Williams-Sonoma, Williams-Sonoma Home, and Pottery Barn; WILLIAMS-SONOMA DTC, INC., a California corporation; WILLIAMS-SONOMA ADVERTISING, INC.,<br><br>Defendants. | Case No. 3:16-cv-01421-WHO<br><br>*Assigned to the Hon. William H. Orrick*<br><br>**CLASS ACTION**<br><br>**DEFENDANTS':**<br><br>**(1)  NOTICE OF MOTION AND MOTION TO DISMISS EIGHTH AMENDED CLASS ACTION COMPLAINT; AND**<br><br>**(2)  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing<br>Date:        August 12, 2020<br>Time:        2:00 p.m.<br>Courtroom:    2<br><br>Complaint Filed:    January 29, 2016<br>Action Removed:    March 23, 2016<br>8AC Filed:        June 5, 2020<br>Trial Date:        None Set |

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 12, 2020 at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 2 on the 17th floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable William H. Orrick presiding, Defendants Williams-Sonoma, Inc. ("**WSI**"), Williams-Sonoma DTC, Inc. ("**WSDTC**"), and Williams-Sonoma Advertising, Inc. ("**WSA**" and, collectively with WSI and WSDTC, "**Defendants**") will and hereby do move the Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing all individual and class claims asserted by Plaintiff Elizabeth Perlin ("**Perlin**") in the *Eighth Amended Class Action Complaint* ("*8AC*").

*Defendants' Motion to Dismiss Eighth Amended Class Action Complaint* ("***Motion***") is made on the following grounds.  Perlin's claims for violation of California's Consumer Legal Remedies Act, codified at Cal. Civ. Code §§ 1750, *et seq*. ("**CLRA**"), violation of California's False Advertising Law, codified at Cal. Bus. & Prof. Code §§ 17500, *et seq*. ("**FAL**"), violation of California's Unfair Competition Law, codified at Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("**UCL**"), and unjust enrichment, which arise from alleged purchases in January 2011, are barred by the applicable three and four-year statutes of limitations.  The *8AC*, even with all factual allegations therein accepted as true, does not satisfy Perlin's burden of alleging facts sufficient to establish the applicability of the discovery rule or fraudulent concealment doctrine exceptions to those statutes of limitations.  Moreover, the *8AC*'s allegations actually confirm that Perlin's claims are time-barred and that no alleged exception applies.  Because Perlin's claims are time-barred, she cannot assert claims on behalf of any putative class, and the class claims must also be dismissed.

This *Motion* is based on this *Notice*, the accompanying *Memorandum of Points and Authorities*, all pleadings, papers and other documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice, and such other matters as the Court may consider.

1

SHEPPARD MULLIN RICHTER & HAMPTON LLP

2

Dated:  July 6, 2020          By _____

*/s/ P. Craig Cardon*

3

P. CRAIG CARDON

ROBERT J. GUITE

4

BENJAMIN O. AIGBOBOH

ALYSSA M. SHAUER

5

6

*Attorneys for Defendants*

WILLIAMS-SONOMA, INC., WILLIAMS-SONOMA

7

DTC, INC., and WILLIAMS-SONOMA

ADVERTISING, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ..................................................................................1

II.  RELEVANT FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY ...................2

    A.  Relevant Factual Allegations in the *8AC* .................................................2

        1.  The Parties .............................................................................2

        2.  Plaintiffs' Alleged Purchases ..................................................2

            a.  Perlin's Alleged Purchases ...............................................2

            b.  Rushing's Alleged Purchase...............................................3

    B.  Relevant Procedural History ....................................................................4

        1.  Rushing Files The *Class Action Complaint* in January 2016 and, Following Dismissal Motions, The *Seventh Amended Class Action Complaint* in March 2017 ....................................................4

        2.  Defendants' *Motion for Summary Judgment* and Related Proceedings ...........................................................................4

        3.  Plaintiffs File The *Eighth Amended Class Action Complaint* .....................6

III.  STANDARDS APPLICABLE TO MOTIONS TO DISMISS .............................................7

IV.  THE *MOTION* SHOULD BE GRANTED ......................................................................7

    A.  Perlin's Claims Are Barred By The Applicable Statutes Of Limitations .................7

        1.  Perlin's Claims Initially Accrued No Later Than January 28, 2011, Beyond The Statutes Of Limitations ............................................................8

        2.  Perlin Bears The Burden Of Pleading Facts Demonstrating A Non-Statutory Exception To The Applicable Statutes Of Limitations..................9

        3.  The *8AC* Does Not Satisfy Perlin's Burden Of Pleading The Discovery Rule Exception; Moreover, The *8AC* Demonstrates It Does Not Apply..........................................................................10

            a.  Perlin Was Aware of Facts and Circumstances Sufficient to Put a Reasonable Person on Notice in Early 2011 .........................11

            b.  The *8AC* Does Not Allege Any Facts Establishing Diligence by Perlin ....................................................................14

         4.  The *8AC* Does Not Satisfy Perlin's Burden Of Pleading Fraudulent Concealment Tolling; Moreover, The *8AC* Establishes It Does Not Apply .....................................................................................16

V.      CONCLUSION .................................................................................................................20

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Cases</u>

4

*Agape Family Worship Ctr., Inc. v. Gridiron*
  2016 U.S. Dist. LEXIS 19328 (C.D. Cal. Feb. 16, 2016) ........................................16, 17, 19, 20

5

*In re Animation Workers Antitrust Litig.*
  87 F. Supp. 3d 1195 (N.D. Cal. 2015) ...................................................................................17

6

7

*Apple Inc. v. Allan & Assocs. Ltd.*
  2020 U.S. Dist. LEXIS 55117 (N.D. Cal. Mar. 27, 2020) ..................................................16, 18

8

9

*Aryeh v. Canon Bus. Solutions, Inc.*
  55 Cal. 4th 1185 (2013)...........................................................................................................17

10

*Asghari v. Volkswagen Grp. of Am., Inc.*
  42 F. Supp. 3d 1306 (C.D. Cal. 2013)........................................................................................6

11

12

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) .................................................................................................................7

13

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) .................................................................................................................7

14

15

*Bronson v. Samsung Elecs. Am., Inc.*
  2018 U.S. Dist. LEXIS 189995 (N.D. Cal. Nov. 6, 2018).........................7, 9, 10, 11, 12, 13, 16

16

17

*Brooks v. Tarsadia Hotels*
  2019 U.S. Dist. LEXIS 98166 (S.D. Cal. June 11, 2019) ........................................................16

18

*Clark v. Hershey Co.*
  2019 U.S. Dist. LEXIS 29700 (N.D. Cal. Feb. 25, 2019)........................................11, 17, 18, 19

19

20

*Clemens v. DaimlerChrysler Corp.*
  534 F.3d 1017 (9th Cir. 2008)..................................................................................................15

21

*Conerly v. Westinghouse Elec. Corp.*
  623 F.2d 117 (9th Cir. 1980)....................................................................................................17

22

23

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*
  2015 U.S. Dist. LEXIS 84152 (N.D. Ill. June 29, 2015) .........................................................14

24

25

*Doe v. Univ. of S. Cal.*
  2019 U.S. Dist. LEXIS 170082 (C.D. Cal. Apr. 18, 2019) ...............7, 11, 13, 15, 16, 18, 19, 20

26

*Dolan v. Borelli*
  13 Cal. App. 4th 816 (1993)......................................................................................................14

27

28

*Ferranti v. Hewlett-Packard Co.*
   2015 U.S. Dist. LEXIS 121598 (N.D. Cal. Sept. 10, 2015) ..........................7, 10, 11, 12, 13, 14

*In re Ford Tailgate Litig.*
   2014 U.S. Dist. LEXIS 32287 (N.D. Cal. 2014) .......................................................................17

*Francisco v. Emeritus Corp.*
   2018 U.S. Dist. LEXIS 226456 (C.D. Cal. Jan. 10, 2018) .......................................................14

*Godhigh v. Savers, LLC*
   2016 U.S. Dist. LEXIS 119254 (N.D. Cal. Sep. 2, 2016) ...........................................................9

*Hendrix v. Novartis Pharm. Corp.*
   975 F. Supp. 2d 1100 (C.D. Cal. 2013) ............................................................................10, 15

*Hexcel Corp. v. Ineos Polymers, Inc.*
   681 F.3d 1055 (9th Cir. 2012) ...............................................................................................17

*Hunter v. Nature's Way Prods., LLC*
   2016 U.S. Dist. LEXIS 107092 (S.D. Cal. Aug. 12, 2016) ...............................................7, 10, 16

*IV Sols., Inc. v. Conn. Gen. Life. Ins. Co.*
   2015 U.S. Dist. LEXIS 181214 (C.D. Cal. Apr. 9, 2015).................................................10, 16, 20

*Jaeger v. Howmedica Osteonics Corp.*
   2016 U.S. Dist. LEXIS 16493 (N.D. Cal. Feb. 10, 2016) ..........................................................19

*Josten v. Rite Aid Corp.*
   2018 U.S. Dist. LEXIS 198124 (S.D. Cal. Nov. 20, 2018)..............................................7, 8, 11, 15

*Keilholtz v. Lennox Hearth Prods.*
   2009 U.S. Dist. LEXIS 81108 (N.D. Cal. Sept. 8, 2009).......................................................8, 13

*Kline v. Iovate Health Scis. U.S.A., Inc.*
   2017 U.S. Dist. LEXIS 44837 (S.D. Cal. Mar. 24, 2017) .............................................................7

*Knowles v. Superior Court*
   118 Cal. App. 4th 1290 (2004)................................................................................................13

*Lien Huynh v. Chase Manhattan Bank*
   465 F.3d 992 (9th Cir. 2006) ....................................................................................................7

*Lukovsky v. City & Cnty. of San Francisco*
   535 F.3d 1044 (9th Cir. 2008)............................................................................................17, 19

*Mangini v. Aerojet-General Corp.*
   230 Cal. App. 3d 1125 (1991) ............................................................................................11, 12

*Marshall v. PH Beauty Labs, Inc.*
   2015 U.S. Dist. LEXIS 68636 (C.D. Cal. May 27, 2015).........................................7, 12, 13, 15

*McCarn v. HSBC USA, Inc.*
   2012 U.S. Dist. LEXIS 162257 (E.D. Cal. Nov. 9, 2012) ........................................17

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*
   722 F. Supp. 2d 1157 (C.D. Cal. 2010)...............................................................14

*Mills v. Forestex Co.*
   108 Cal. App. 4th 625 (1993)...............................................................13

*Norgart v. Upjohn Co.*
   21 Cal. 4th 383 (1999)...............................................................8, 9, 11, 16

*Palmer v. Stassinos*
   236 F.R.D. 460 (N.D. Cal. 2006) ...............................................................14

*Peacock v. The 21st Amendment Brewery Cafe, LLC*
   2018 U.S. Dist. LEXIS 7537 (N.D. Cal. Jan. 17, 2018) ........................................6

*Perez v. GM Ltd. Liab. Co.*
   2019 U.S. Dist. LEXIS 134755 (S.D. Cal. Aug. 9, 2019)........................................18

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*
   522 F.3d 1049 (9th Cir. 2008) ...............................................................17, 18

*Plumlee v. Pfizer, Inc.*
   2014 U.S. Dist. LEXIS 23172 (N.D. Cal. Feb. 21, 2014).....................................7, 8, 9, 11, 15

*Ries v. Ariz. Bevs. United States Llc, Hornell Brewing Co.*
   287 F.R.D. 523 (N.D. Cal. 2012) ...............................................................9, 11, 14

*Rivas v. Safety-Kleen Corp.*
   98 Cal. App. 4th 218 (2002)...............................................................14

*Rivera v. Peri & Sons Farms, Inc.,*
   735 F.3d 892 (9th Cir. 2013)...............................................................7

*Rutherford v. FIA Card Servs.*
   2012 U.S. Dist. LEXIS 164287 (C.D. Cal. Nov. 16, 2012) ........................................9

*Samp v. JPMorgan Chase Bank, N.A.*
   2013 U.S. Dist. LEXIS 67958 (C.D. Cal. May 7, 2013)........................................20

*Sonner v. Premier Nutrition Corp.*
   2020 WL 3263043 (9th Cir. June 17, 2020) ........................................8

*Sprewell v. Golden State Warriors*
   266 F.3d 979 (9th Cir. 2001)...............................................................7

*Vanella v. Ford Motor Co.*
   2020 U.S. Dist. LEXIS 32151 (N.D. Cal. Feb. 24, 2020) (Orrick, J.) ....................................7, 9

*W. Mining Council v. Watt*
   643 F.2d 618 (9th Cir. 1981) ................................................................................7

*Wakefield v. Wells Fargo & Co.*
   2014 U.S. Dist. LEXIS 144142 (N.D. Cal. Oct. 9, 2014) ....................................8

*Wehlage v. EmpRes Healthcare Inc.*
   2012 U.S. Dist. LEXIS 14157 (N.D. Cal. Feb. 6, 2012) ......................................6

*In re Williams-Sonoma, Inc.*
   947 F.3d 535 (9th Cir. 2020) ...............................................................................5

*Wu v. Sunrider Corp.*
   2018 U.S. Dist. LEXIS 227591 (C.D. Cal. May 22, 2018) ...............................8, 9

*Wu v. Sunrider Corp.*
   793 Fed. Appx. 507 (9th Cir. 2019) ...................................................................10

*Yumul v. Smart Balance, Inc.*
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) .............................................................19

*Zinzuwadia v. Mortgage Elec. Registration, Inc.*
   2013 U.S. Dist. LEXIS 178500 (E.D. Cal. Dec. 19, 2013) ...............................18

**Statutes**

Cal. Bus. & Prof. Code §§ 17200 ................................................................................1, 4

Cal. Bus. & Prof. Code § 17208 ......................................................................................8

Cal. Bus. & Prof. Code §§ 17500 ...............................................................................1, 4

Cal. Civ. Code §§ 1750 ................................................1, 1, 4, 6, 7, 8, 9, 10, 12, 14, 16, 19

Cal. Civ. Code § 1783 .....................................................................................................8

Cal. Code Civ. P. § 338(a), (d) ........................................................................................8

Ky. Rev. Stat. § 367.110 ..................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 9(b) ..................................................................................................17, 19

Fed. R. Civ. P. 12(b)(6) ..............................................................................................1, 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Elizabeth Perlin purchased a set of sheets and extra pillowcases from WSI on January 19, 2011, believing that the bedding would be, among other things, high quality and durable because it was marketed as 400-thread count.  The bedding, however, ripped within days of Perlin's receipt of it in early 2011 – and despite the fact that Perlin used the bedding in the ordinary manner, followed all care instructions, and took extra precautions to avoid damaging it. Perlin did not seek to return the bedding or otherwise contact WSI.  She, instead, purchased an identical set of sheets and extra pillowcases on January 28, 2011 – nine days after her first purchase.  This bedding, according to the Perlin and the *8AC*, ripped immediately after Perlin – who, again, followed all care instructions and took extra precautions to avoid damaging the bedding – began using it in the ordinary normal and manner.  Now, nearly **10 years** after she experienced immediate alleged failures of the bedding purchased, Perlin seeks to pursue CLRA, FAL, UCL, and unjust enrichment claims based on it.

She cannot.  Because it is apparent from the face of the *8AC* that the statutes of limitations for Perlin's claims expired in January 2014 (FAL, CLRA, unjust enrichment) and January 2015 (UCL), she bears the burden of pleading specific facts establishing that a non-statutory exception to those statutes saves her untimely claims.  Perlin – who alleges in conclusory fashion that the statutes of limitations should be "tolled" by California's discovery rule or, alternatively, fraudulent concealment doctrine – has not met her burden to affirmatively plead facts supporting this conclusion.  Indeed, the *8AC* does not allege any of the facts necessary to properly assert either exception.  Nor could it.  As the *8AC* demonstrates, the discovery rule exception does not apply because, *inter alia*, Perlin had inquiry notice of alleged wrongdoing in early 2011 and did nothing for ten years.  The *8AC* also establishes the fraudulent concealment doctrine exception is similarly inapplicable because, in addition to demonstrating a decade of inaction by Perlin despite facts sufficient to put her on notice, the alleged fraudulent concealment tolling is based on the same conduct giving rise to Perlin's substantive claims – alleged conduct that cannot serve as a basis for fraudulent concealment tolling.

In short, because Perlin's claims are facially time-barred and there is no exception that saves them, the *Motion* should be granted and the individual and class claims asserted by Perlin dismissed.

## II.   RELEVANT FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

### A.   Relevant Factual Allegations in the *8AC*

#### 1.   The Parties

Rushing is a citizen and resident of Kentucky.  Dkt. 217 ¶ 32.  Perlin is a resident and citizen of California.  *Id*. ¶ 33.  The *8AC* alleges that:  (1) WSI, a Delaware corporation with its principal place of business in San Francisco, sells home furnishings through retail stores, catalogs and e-commerce, and owns and operates several trademarks or "brands"; (2) WSDTC, a California corporation with its principal place of business in San Francisco, is WSI's subsidiary responsible for managing online and catalog sales; and (3) WSA, a California corporation with its principal place of business in San Francisco, is WSI's subsidiary responsible for advertising.  *Id*. ¶¶ 34-36.

#### 2.   Plaintiffs' Alleged Purchases

##### a.   Perlin's Alleged Purchases

The *8AC* alleges that Perlin purchased Pottery Barn-branded "PB Classic 400-Thread-Count Sheet Set" and "PB Classic 400-Thread-Count Extra Pillowcases" (collectively, the "**PB Classic Bedding**") from the Pottery Barn website on January 19, 2011.  Dkt. 217 ¶ 174.  Perlin, relying on the descriptions of the PB Classic Bedding on the Pottery Barn website (including the description of its "fabric as '400-thread count' at least three times"), "expected the [PB Classic Bedding] to be 400-thread count, high quality, soft, and luxurious."  *Id*. ¶¶ 174-80.  "Shortly after purchasing the bedding" on January 19, 2011 (but before her subsequent purchase on January 28, 2011), Perlin discovered that it was "not as advertised."  *Id*. ¶ 180-81.  Perlin discovered this because – sometime in the nine days between her January 19 purchase online and January 28, 2011, and despite the fact that Perlin "followed all care instructions, and even air-dried the sheets to avoid damaging them" – the PB Classic Bedding's bottom sheet "started ripping after normal and ordinary use."  *Id*. ¶¶ 174, 179-81.  Although "disappointed," Perlin did not seek to return the bedding or otherwise contact Defendants about the issue.  *Id*. ¶ 181.

1   Perlin, instead, "bought a second…PB Classic 400-Thread Count Sheet Set and PB Classic

2   400-Thread Count Extra Pillowcases" on January 28, 2011 – the same bedding she had purchased

3   nine days earlier.  Dkt. 217 ¶ 181.  Perlin "immediately started using" the new bedding "when [it]

4   arrived."  *Id*. ¶ 183.  Perlin, "[a]gain, …followed all care instructions, …air-dried the sheets to

5   avoid damaging them, [and] used the bedding for its intended purpose."  *Id*.  Despite this, like the

6   bedding she purchased on January 19, 2011, the bottom sheet in the PB Classic Bedding

7   purchased on January 28, 2011 "started ripping shortly after she began using [it]."  *Id*.  Perlin was,

8   therefore, "extremely unhappy with the bedding" and "eventually quit using it."  *Id*. ¶ 184.

9   Perlin alleges, on information and belief, that the PB Classic Bedding she purchased

10   "contains approximately 204 threads per square inch" when measured under the ASTM

11   International's D3775-12 test method.  *Id*. ¶¶ 76, 185-86.

**b.   Rushing's Alleged Purchase**

13   Rushing purchased Williams-Sonoma Home-branded "Signature 600-Thread-Count

14   Sateen" sheets and pillowcases (collectively, the "**WSH Bedding**") from the Williams-Sonoma

15   Home website on February 10, 2015 as Valentine's Day gift for his wife.  Dkt. 217 ¶¶ 159-64.

16   The *8AC* alleges that the WSH Bedding was marketed on the website as "[s]ewn from lustrous

17   600-thread-count two-ply Egyptian-cotton sateen" and that Rushing bought it based on that

18   representation.  *Id*. ¶¶ 160-66.  When Rushing received the WSH Bedding, he immediately

19   determined that it was not "high quality," "extremely soft," or "luxurious," and, in fact, "was so

20   disappointed in the quality of the bedding…that he decided not to give [it] to his wife for

21   Valentine's Day."  *Id*. ¶ 156.

22   Rushing, who "felt betrayed" by Defendants, did not seek to return the unused WSH

23   Bedding.  Dkt. 217 ¶ 156.  He, instead, sent it to a lab to have the thread count tested in

24   compliance with "the ASTM International Standard Designation D3775-12."  *Id*. ¶¶ 100-101, 168.

25   The *8AC* alleges that the test results Rushing received on April 21, 2015 (approximately two

26   months after he made his purchase) show that the WSH Bedding has a 291 thread count if yarns in

27   each two-ply thread are not counted.  *Id*. ¶¶ 100-101.

28

**B.**     **Relevant Procedural History**

     **1.**     **Rushing Files The *Class Action Complaint* in January 2016 and, Following Dismissal Motions, The *Seventh Amended Class Action Complaint* in March 2017**

Rushing filed the *Class Action Complaint* and *First Amended Class Action Complaint* in California state court on January 29, 2016 and March 8, 2016.  Dkt. 1 at 1:13-15.  Defendants removed to this Court on March 13, 2016, respectively.  *Id.*  Following removal, Defendants filed motions to dismiss the *First Amended Class Action Complaint*, and the subsequently filed *Third Amended Class Action Complaint* (Dkt. 22) and *Fifth Amended Class Action Complaint* (Dkt. 49).  Dkt. 12, 26, 50.  After the Court entered orders granting in part and denying in part Defendants' motions to dismiss (Dkt. 36, 64), Rushing filed the *Sixth Amended Class Action Complaint* on March 20, 2017 and the *Seventh Amended Class Action Complaint* on April 4, 2017.  Dkt. 74, 81.

In the *Seventh Amended Class Action Complaint*, Rushing asserted the following causes of action on behalf of himself and a putative nationwide class:  (1) Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*); (2) Misleading and Deceptive Advertising (Cal. Bus. & Prof. Code § 17500, *et seq.*); (3) Untrue Advertising (Cal. Bus. & Prof. Code § 17500, *et seq.*); (4) Unlawful Business Practices (Cal. Bus. & Prof. Code § 17200, *et seq.*); (5) Unfair Business Practices (Cal. Bus. & Prof. Code § 17200, *et seq.*); (6) Fraudulent Business Practices (Cal. Bus. & Prof. Code § 17200, *et seq.*); and (7) Unjust Enrichment.  Dkt. 81 ¶¶ 142, 168-280.  Defendants filed the *Answer to Seventh Amended Class Action Complaint* on April 10, 2017.  Dkt. 83.

     **2.**     **Defendants' *Motion for Summary Judgment* and Related Proceedings**

On April 10, 2018, Defendants filed a *Motion for Summary Judgment* on the grounds that Rushing – a Kentucky resident that made his purchase in Kentucky – lacked standing to pursue the California CLRA, UCL, FAL and unjust enrichment claims asserted in the *Seventh Amended Class Action Complaint*, the only claims asserted by Rushing.  Dkt. 119.  On October 24, 2018, the Court entered its *Order on Pending Motions*, in which it found Rushing could not pursue the California claims.  Dkt. 170.  The *Order on Pending Motions* required that Rushing elect whether he intended to pursue claims under Kentucky law.  *Id.*  Rushing filed a notice stating that he intended to pursue claims under Kentucky law on November 13, 2018.  Dkt. 178.  No amended

complaint was filed.  The *Order on Pending Motions* also required that Defendants produce a list of California consumers that had purchased the bedding products at issue in this action, so that Plaintiff could attempt to locate a California resident to join the case as a named plaintiff to pursue claims under California law.  Dkt. 170.

Defendants sought leave to file a motion for reconsideration of the *Order on Pending Motions* and, subsequently, certification of the order for immediate appeal.  Dkt. 175, 184.  The Court denied the motion for leave to file a reconsideration motion on December 17, 2018, and the motion for certification for immediate appeal on February 25, 2019.  Dkt. 183, 193.[1]  Defendants sought a writ of mandamus from the Ninth Circuit on March 5, 2019.  *Petition for Writ of Mandamus*, *In re: Williams-Sonoma, Inc., et al.*, No. 19-70522 (9th Cir. Mar. 5, 2019), ECF No. 1; Dkt. 194.  On April 5, 2019, the Ninth Circuit issued an order staying the portion of the *Order on Pending Motions* requiring Defendants to produce customer information and requiring an answer to the writ petition by April 12, 2019.  Dkt. 195.  Following his request for an extension of the time to answer (Dkt. 196), Rushing filed his answer to the writ petition on May 7, 2019.  *Real Party in Interest-Plaintiff's Answer in Opposition to Petition for Writ of Mandamus and Stay*, *In re: Williams-Sonoma, Inc., et al.*, No. 19-70522 (9th Cir. Mar. 5, 2019), ECF No. 7.

On January 13, 2020, the Ninth Circuit granted Defendants' writ petition and vacated the portion of the *Order on Pending Motions* requiring Defendants to produce their California customer information to Rushing.  *In re Williams-Sonoma, Inc.*, 947 F.3d 535 (9th Cir. 2020); Dkt. 204.  Following a request for an extension of time to file a petition for rehearing *en banc* (Dkt. 206), Rushing filed one on February 26, 2020.  *Petition for Rehearing En Banc*, *In re: Williams-Sonoma, Inc., et al.*, No. 19-70522 (9th Cir. Mar. 5, 2019), ECF No. 40.  The Ninth Circuit denied Rushing's petition for rehearing *en banc* on March 30, 2020.  Dkt. 206.

_____

[1]  Although Defendants maintained that discovery of **any** customer information was impermissible for the purpose of seeking a new plaintiff to pursue California claims, given the Court's *Order on Pending Motions* and subsequent order denying leave to file a reconsideration motion, Defendants produced customer information for the California customers that had complained about the bedding products at issue before the Ninth Circuit issued its order staying the *Order on Pending Motions*.  Dkt. 177 at 5-7; Dkt. 187 at 5; Dkt. 189 at 2:18-3:5.

After Rushing's petition for rehearing was denied, and pursuant to the Court's November 5, 2019 order (Dkt. 203), Rushing and Defendants filed a joint administrative motion to request a case management conference within thirty days of the Ninth Circuit's March 30, 2020 order denying Rushing's petition.  Dkt. 207.  At the subsequent April 23, 2020 case management conference, the Court ordered, *inter alia*, that an eighth amended complaint be filed by June 5, 2020, and that any answer to, or motion to dismiss, the amended complaint be filed within thirty days thereafter.  Dkt. 212.

### 3.    Plaintiffs File the *Eighth Amended Class Action Complaint*

Plaintiffs filed the *8AC* on June 5, 2020.  Dkt. 217.  In it, Perlin asserts claims for violation of the CLRA, violation of the FAL, violation of the UCL, and unjust enrichment, individually and on behalf of all persons in the United States (other than Kentucky residents) that purchased the specifically-defined "Bedding Products" from WSI during the limitations period.  *Id.* ¶¶ 19, 146-147, 190-303.[2]  Rushing asserts individual claims for unjust enrichment and violation of the Kentucky Consumer Protection Act, codified at Ky. Rev. Stat. § 367.110, *et seq.  Id.* ¶¶ 298-319.[3]

---

[2]  Perlin purports to seek CLRA damages, but did not send a CLRA notice letter to Defendants until June 5, 2020 (the day she filed the *8AC*).  Dkt. 217 ¶¶ 250-51.  The *8AC*'s conclusion that Perlin may "reasonably rely" on previous CLRA notices sent by Rushing and is, therefore, "entitled to seek damages" (*id.* ¶ 50) is incorrect for at least two reasons.  First, Rushing cannot pursue CLRA claims and, therefore, "cannot put an entity on notice of CLRA claims against it." *Wehlage v. EmpRes Healthcare Inc.*, 2012 U.S. Dist. LEXIS 14157, at *22 (N.D. Cal. Feb. 6, 2012).  Second, because Rushing is no longer pursuing a CLRA claim, Perlin cannot rely on his letters.  *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1318 (C.D. Cal. 2013) (finding that because "Asghari has…withdrawn his CLRA claim[,] the other named plaintiffs and class members cannot rely on [his] CLRA letter.").  Perlin's failure to comply with the strict notice requirement, despite ample time to do, renders her CLRA damages claim subject to dismissal.  *See*, *e.g.*, *Peacock v. The 21st Amendment Brewery Cafe, LLC*, 2018 U.S. Dist. LEXIS 7537, at **20-21 (N.D. Cal. Jan. 17, 2018).  Despite this, and in the interest of efficiency, Defendants are willing to agree that, if Court does not grant the *Motion*, Perlin may amend the *8AC* solely for the purpose of alleging her claim for CLRA damages (to the extent she can), without waiver of any arguments Defendants may have with regard to her CLRA damages claim.

[3]  The *8AC* does not allege whether Rushing asserts his unjust enrichment claim under Kentucky law.  *See* Dkt. 217 ¶¶ 298-303.  Nonetheless, given the *Order on Pending Motions*, Defendants assume Rushing intends to pursue this claim under Kentucky law.

### III.   STANDARDS APPLICABLE TO MOTIONS TO DISMISS

A motion to dismiss should be granted when the complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must plead facts sufficient for a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully" and plaintiff must "raise a right to relief above the speculative level." Dkt. 36 at 4:3-5. Courts need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations" (*W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)) or accept as true allegations that contradict facts in exhibits. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### IV.   THE *MOTION* SHOULD BE GRANTED

#### A.   Perlin's Claims Are Barred By The Applicable Statutes Of Limitations

Claims that, on their face, are barred by the applicable statutes of limitations are the proper subject of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See, e.g.*, *Rivera v. Peri & Sons Farms*, Inc., 735 F.3d 892, 902 (9th Cir. 2013); *Lien Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006); *Vanella v. Ford Motor Co.*, 2020 U.S. Dist. LEXIS 32151, at **7-17 (N.D. Cal. Feb. 24, 2020) (Orrick, J.); *Kline v. Iovate Health Scis. U.S.A., Inc.*, 2017 U.S. Dist. LEXIS 44837, at *6 (S.D. Cal. Mar. 24, 2017). Indeed, courts regularly dismiss claims – including UCL, FAL, CLRA, and unjust enrichment claims – on statute of limitations grounds on a motion to dismiss.[4]

---

[4]  *See, e.g.*, *Doe v. Univ. of S. Cal.*, 2019 U.S. Dist. LEXIS 170082, at **8-20 (C.D. Cal. Apr. 18, 2019) (dismissing time-barred UCL claims); *Josten v. Rite Aid Corp.*, 2018 U.S. Dist. LEXIS 198124, at **16-19 (S.D. Cal. Nov. 20, 2018) (dismissing time-barred CLRA and unjust enrichment claims); *Bronson v. Samsung Elecs. Am., Inc.*, 2018 U.S. Dist. LEXIS 189995, at **10-13 (N.D. Cal. Nov. 6, 2018) (dismissing time-barred UCL and CLRA claims); *Kline*, 2017 U.S. Dist. LEXIS 44837, at **6-7 (dismissing time-barred FAL and CLRA claims); *Hunter v. Nature's Way Prods., LLC*, 2016 U.S. Dist. LEXIS 107092, at **31-37 (S.D. Cal. Aug. 12, 2016) (dismissing time-barred CLRA, UCL, and FAL claims); *Ferranti v. Hewlett-Packard Co.*, 2015 U.S. Dist. LEXIS 121598, at **7-15 (N.D. Cal. Sept. 10, 2015) (dismissing time-barred CLRA claims with prejudice); *Marshall v. PH Beauty Labs, Inc.*, 2015 U.S. Dist. LEXIS 68636, at **4-6 (C.D. Cal. May 27, 2015) (dismissing time-barred FAL and CLRA claims); *Plumlee v. Pfizer,*

"In a federal diversity action based on alleged violations of state law, the state statute of limitations controls." *Josten*, 2018 U.S. Dist. LEXIS 198124, at \*17; *see also Wakefield v. Wells Fargo & Co.*, 2014 U.S. Dist. LEXIS 144142, at \*\*26-27 (N.D. Cal. Oct. 9, 2014) (courts with subject matter jurisdiction under the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d), apply forum state's law to determine the "applicable statute of limitations" and "whether the limitations period should be equitably tolled…."). In California, the statute of limitations is three years for FAL, CLRA and unjust enrichment claims and four years for UCL claims. Cal. Bus. & Prof. Code § 17208; Cal. Civ. Code § 1783; Cal. Code Civ. P. §§ 338(a), (d); *Plumlee*, 2014 U.S. Dist. LEXIS 23172, at \*21; *Keilholtz v. Lennox Hearth Prods.*, 2009 U.S. Dist. LEXIS 81108, at \*8 (N.D. Cal. Sept. 8, 2009).[5]

### 1. Perlin's Claims Initially Accrued No Later Than January 28, 2011, Beyond The Statutes Of Limitations

"Under the statute of limitations, a plaintiff must bring a cause of action within the limitations period applicable thereto after accrual of the cause of action." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999). "Under California law, 'the limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues.'" *Plumlee*, 2014 U.S. Dist. LEXIS 23172, at \*21 (quoting *Aryeh v. Canon Bus. Solutions, Inc.,* 55 Cal. 4th 1185, 1191 (2013)). "The 'last element' accrual rule provides that absent any equitable exception, a claim accrues upon the occurrence of the last element essential to the cause of action." *Id.* at \*\*21-23 (internal quotations omitted). "[A] cause of action under" the UCL, FAL, or CLRA, "accrues when a defendant misrepresents or omits material information regarding a product or

---

*Inc.*, 2014 U.S. Dist. LEXIS 23172, at \*\*17-35 (N.D. Cal. Feb. 21, 2014) (granting motion for judgment on the pleadings to dismiss time-barred UCL, FAL, and CLRA claims).

[5] WSI assumes for this *Motion* that a three-year statute of limitations applies to Perlin's unjust enrichment claims. *Wu v. Sunrider Corp.*, 2018 U.S. Dist. LEXIS 227591, at \*13 (C.D. Cal. May 22, 2018) (noting that unjust enrichment claims may be subject to a two-year statute of limitations or three-year statute of limitations where the claim is based on alleged fraud or mistake). Moreover, although the UCL has a four-year statute of limitation, given the Ninth Circuit's recent decision in *Sonner v. Premier Nutrition Corp.*, 2020 WL 3263043 (9th Cir. June 17, 2020), that limitations period is likely inapplicable to Perlin, as she seeks actual damages. Nonetheless, even if a four-year limitations applies, Perlin's UCL claim is still time-barred, as set forth below.

service and a consumer makes a purchase as a result of such deceptive practices." *Plumlee*, 2014 U.S. Dist. LEXIS 23172, at *23.[6]  Similarly, an unjust enrichment claim accrues when plaintiff provides the alleged benefit to defendant.  *See Wu*, 2018 U.S. Dist. LEXIS 227591, at *14, *aff'd*, 793 Fed. Appx. 507 (9th Cir. 2019).

Perlin purchased the PB Classic Bedding on January 19, 2011 and, again, on January 28, 2011.  Dkt. 217 ¶¶ 173-184.  Thus, the latest the UCL, FAL, CLRA, and unjust enrichment claims could have accrued was January 28, 2011.  *See*, *e.g.*, *Bronson*, 2018 U.S. Dist. LEXIS 189995, at *10; *Wu*, 2018 U.S. Dist. LEXIS 227591, at *14; *Ries*, 287 F.R.D. at 534.   The statutes of limitations for those claims expired on January 28, 2014 (FAL, CLRA, unjust enrichment) and January 28, 2015 (UCL).[7]  Perlin's did not file suit until June 5, 2020.  Her CLRA, FAL, UCL, and unjust enrichment claims are, therefore, time-barred.[8]

## 2. Perlin Bears The Burden Of Pleading Facts Demonstrating A Non-Statutory Exception To The Applicable Statutes Of Limitations

Because the *8AC* establishes that Perlin filed her claims outside of the applicable statutes of limitations, "the burden shifts to plaintiff to salvage [her] claim[s] by demonstrating a non-statutory exception to the basic limitations period." *Bronson*, 2018 U.S. Dist. LEXIS 189995, at *10.[9]  The *8AC* attempts to do this – in a two paragraph section – by alleging, in conclusory

---

[6]  *See also Bronson*, 2018 U.S. Dist. LEXIS 189995, at *10 (UCL claim based on failure to disclose television defects accrued on the day plaintiff purchased television); *Ries v. Ariz. Bevs. United States Llc, Hornell Brewing Co.*, 287 F.R.D. 523, 534 (N.D. Cal. 2012) (CLRA and FAL claims accrued, and limitations period began to run, when plaintiff purchased allegedly mislabeled product); *Norgart*, 21 Cal. 4th at 397 ("The general rule for defining the accrual of a cause of action sets the date as the time 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises.'") (internal citation omitted).

[7]  The statutes of limitations for claims arising from Perlin's January 19, 2011 purchase expired on January 19, 2014 (FAL, CLRA, unjust enrichment) and January 19, 2015 (UCL).

[8]  Because Perlin's individual claims are time-barred, she "may not seek relief on behalf of h[er]self or any other member of a purported class." *Rutherford v. FIA Card Servs.*, 2012 U.S. Dist. LEXIS 164287, at *11 (C.D. Cal. Nov. 16, 2012) (citing *Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003)); *see also Godhigh v. Savers, LLC*, 2016 U.S. Dist. LEXIS 119254, at *5 (N.D. Cal. Sep. 2, 2016) (Orrick, J).

[9]  *See also Vanella*, 2020 U.S. Dist. LEXIS 32151, at *9 (plaintiff whose claims are time-barred

fashion, that the "discovery rule" and "fraudulent concealment doctrine" serve to toll the applicable statutes of limitations "at least through April 21, 2015…."  Dkt. 219 ¶¶ 144-145.[10]  The *8AC*, however, does not allege facts sufficient to satisfy Perlin's burden of pleading the applicability of either of these exceptions to the statutes of limitations.  Dismissal is proper on this basis alone.  Nonetheless, the allegations actually made in the *8AC* conclusively establish that neither exception applies and that Perlin's claims are time-barred.

### 3.   The *8AC* Does Not Satisfy Perlin's Burden Of Pleading The Discovery Rule Exception; Moreover, The *8AC* Demonstrates It Does Not Apply

California's discovery rule is an exception to the last element accrual rule that "'postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action.'"  *Ferranti*, 2015 U.S. Dist. LEXIS 121598, at **7-8 (quoting *Aryeh*, 55 Cal. 4th at 1192).[11]  Under the discovery rule, a cause of action accrues when a plaintiff:

> at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least "suspects…that someone has done something wrong" to him, "wrong" being used, not in any technical sense, but rather in accordance with its "lay understanding."  He has reason to discover the injury when he has "notice or information of circumstances to put a reasonable person on *inquiry*."

*Hendrix v. Novartis Pharm. Corp.*, 975 F. Supp. 2d 1100, 1106-07 (C.D. Cal. 2013) (internal citations omitted; emphasis in original).[12]  In short, a cause of action accrues where a reasonable

---

"on the face of the [c]omplaint" has the burden of "plausibly plead[ing] that a tolling or delayed accrual doctrine applies."); *Hunter*, 2016 U.S. Dist. LEXIS 107092, at *34 ("The burden is on the plaintiff to allege that his or her claims fall…survive based on an exception to the limitations period.") (*citing Aryeh*, 55 Cal. 4th at 879).

[10]  The discovery rule does not "toll" the statute of limitations.  Instead, it delays accrual of a cause of action where it is properly pled and proven that the discovery rule applies.  *IV Sols., Inc. v. Conn. Gen. Life. Ins. Co.*, 2015 U.S. Dist. LEXIS 181214, at *9 (C.D. Cal. Apr. 9, 2015).

[11]  Although "[t]he discovery rule's application to the CLRA is 'unsettled' inasmuch as no binding precedent exists addressing the issue," WSI assumes for the purposes of this *Motion*, without conceding, that the discovery rule applies to CLRA claims.  *Bronson*, 2018 U.S. Dist. LEXIS 189995, at *13 n.3 (quoting *Purdum v. Holmes*, 187 Cal. App. 4th 916, 924 (2010)).

[12]  *See also Wu v. Sunrider Corp.*, 793 Fed. Appx. 507, 511 (9th Cir. 2019); *Ferranti*, 2015 U.S. Dist. LEXIS 121598, at *8 ("'The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action,' thus 'plaintiffs are charged with presumptive

1   person would merely suspect wrongdoing – here, an alleged misrepresentation.

2        "'A plaintiff whose complaint shows on its face that his claim would be barred without the

3   benefit of the discovery rule must specifically plead facts to show (1) the time and manner of

4   discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'"

5   *Plumlee*, 2014 U.S. Dist. LEXIS 23172, at *26 (quoting *E–Fab, Inc. v. Accountants, Inc. Services,*

6   153 Cal. App. 4th 1308, 1319 (2007)); *accord. Doe*, 2019 U.S. Dist. LEXIS 170082, at *10;

7   *Ferranti*, 2015 U.S. Dist. LEXIS 121598, at *8.   "'The burden is on the plaintiff to show

8   diligence, and conclusory allegations will not withstand' a motion to dismiss."   *Plumlee*, 2014

9   U.S. Dist. LEXIS 23172, at *26 (quoting *E–Fab,* 153 Cal. App. 4th at 1319).   "This pleading

10  requirement is a procedural safeguard against lengthy litigation on the issue of accrual."   *Mangini*

11  *v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1150-51 (1991).[13]

12              **a.    Perlin Was Aware of Facts and Circumstances Sufficient to Put a
                        Reasonable Person on Notice in Early 2011**
13

14       The *8AC* alleges, vaguely, that Perlin only "recently" learned that the PB Classic Bedding

15  was "not as advertised."   Dkt. 217 ¶ 187.   This allegation is not sufficient to satisfy Perlin's burden

16  of specifically pleading the time and manner of her alleged discovery.[14]   Moreover, this allegation

17  _____

18  knowledge of an injury if they have information of circumstances to put them on inquiry or if they
    have the opportunity to obtain knowledge from sources open to their investigation.'") (quoting
19  *Rosas v. BASF Corp.*, 236 Cal. App. 4th 1378, 1389 (2015)); *Ries*, 287 F.R.D. at 534 ("[T]he
    discovery rule…provides that plaintiff's claim accrues 'when the plaintiff suspects or should
20  suspect that her injury was caused by wrongdoing' – not when she learns of the legal theory that
    would support recovery….   In other words, the statute runs once she is put on inquiry notice:
21  when the circumstances would lead a reasonable person to suspect wrongdoing.") (quoting *Jolly v.
    Eli Lilly & Co.,* 44 Cal. 3d 1103, 1110 (1988)); *Norgart*, 21 Cal. 4th at 397-98 (a plaintiff "has
22  reason to suspect when he has notice or information of circumstances to put a reasonable person
    on inquiry…; he need not know the specific facts necessary to establish the cause of action….")
23  (internal quotations omitted).

24  [13]   *See also Bronson*, 2018 U.S. Dist. LEXIS 189995, at **11-12 (finding plaintiff's failure to
    "plead facts as to the 'time and manner of discovery' or any diligent investigation" the "very
25  reason plaintiffs bear the burden of justifying their reliance on the discovery rule: safeguarding
    against lengthy litigation on the issue of accrual.").
26

27  [14]   *See*, *e.g.*, *Clark v. Hershey Co.*, 2019 U.S. Dist. LEXIS 29700, at *19 (N.D. Cal. Feb. 25, 2019)
    (delayed discovery not sufficiently pled because "[p]laintiffs…provided no allegations detailing
28  how they discovered the alleged unlawful labeling."); *Josten*, 2018 U.S. Dist. LEXIS 198124, at

1    directly contradicts other allegations establishing that Perlin knew the PB Classic Bedding was

2    "not as advertised" in January 2011 (*id.* ¶ 180) – circumstances that, at minimum, would lead a

3    reasonable person to at least suspect that she had allegedly been wronged.

4         Indeed, the *8AC* alleges that Perlin learned that the PB Classic Bedding she purchased on

5    January 19, 2011 was "not as advertised" when it "started ripping after normal and ordinary use"

6    (and despite the fact that Perlin "followed all care instructions, and even air-dried the sheets to

7    avoid damaging them") in the days after her purchase.  Dkt. 217 ¶¶ 174-181.  These facts –

8    immediate ripping of sheets a consumer purchased because they were expected to be high-quality

9    and durable based on the advertised thread count,[15] that were dutifully cared for, and that were

10   used in normal conditions – are more than sufficient to lead a reasonable person to "at least

11   suspect[s] that something wrong has been done to [her]."  *Ferranti*, 2015 U.S. Dist. LEXIS

12   121598, at *8 (internal quotations omitted); *see also Marshall*, 2015 U.S. Dist. LEXIS 68636, at

13   **1-6 (plaintiff on notice when she did not see the promised results in the months after she

14   purchased skin care product).[16]

15

16   _____

17   **16-19 (dismissing time-barred CLRA claims for failure to "plead the time and manner of
     [plaintiff's] discovery" defendant's "alleged scheme."); *Bronson*, 2018 U.S. Dist. LEXIS 189995,

18   at *11 (dismissing time-barred UCL and CLRA claims for, *inter alia*, failure to "plead facts as to
     the 'time and manner of discovery'….").

19   [15]  Among other things, the *8AC* alleges that consumers, including Perlin, judge their bedding
     selection based on thread count because "[b]edding with higher thread counts [is] more durable,

20   and will feel denser and smoother than those with lower thread counts."  Dkt. 217 ¶ 2; *see also*
     Dkt. 217 ¶¶ 9 (defining "higher thread count" bedding as "bedding labeled as having a thread

21   count of 350 or greater…."), 172 (alleging that Perlin, "[l]ike most consumers,…equated higher
     thread count with high quality, fine bedding."), 173-76 (alleging Perlin "believed [the PB Classic

22   Bedding] would be soft, luxurious, high-quality bedding" because she relied on Defendants'

23   alleged marketing of the bedding as 400-thread-count).

24   [16]  That the *8AC* alleges that Perlin subjectively "believed she ***may*** have something wrong to cause
     the rip or that the rip was a fluke" (Dkt. 217 ¶ 181 (emphasis added)) does not alter the analysis.

25   *See, e.g., Mangini*, 230 Cal. App. 3d at 1150 (under the discovery rule, "[t]he limitations period
     begins once the plaintiff has notice or information of circumstances to put a reasonable person on

26   inquiry….   Subjective suspicion is not required.") (internal citations omitted).   Moreover, the
     allegation that Perlin "believed she may have done something wrong" contradicts allegations that

27   Perlin followed all care instructions, air-dried the sheets to avoid damaging them, and only used

28   them in the normal and ordinary manner.  By the same token, even if Perlin believe it "may" have

1    Even if the fact that Perlin's initial PB Classic Bedding ripped immediately after she began

2    using it in a normal manner (and despite the fact she followed all care instructions and took extra

3    precautions not to damage it) was not sufficient to put a reasonable person on inquiry notice (it

4    was), the PB Classic Bedding she purchased nine days later, again, "starting ripping shortly after

5    she began using" it.  Dkt. 217 ¶ 183.  Perlin experienced these durability problems, again, despite

6    the fact that Perlin "followed all care instructions,… air-dried the sheets to avoid damaging them,"

7    and "used the bedding for its intended purpose."  *Id.*  The ripping of a second set of identical

8    bedding – bedding purchased because the consumer believed it was high-quality and durable, that

9    was cared for according to the care instructions, and was used in normal conditions – constitutes

10   information sufficient to a lead reasonable person to at least suspect that something wrong has

11   been done to her.[17]

12   In short, because Perlin "had information about circumstances that would put a reasonable

13   person on inquiry notice, …the statute commence[d] to run" in January 2011.  *Keilholtz*, 2009

14   U.S. Dist. LEXIS 81108, at *9.  That Perlin may have only "recently" learned that the PB Classic

15   Bedding she purchased – bedding which, again, ripped immediately after she began using it in

16   2011 – "was not 400 thread count" when measured under the ASTM (Dkt. 217 ¶ 181) does not

17   save her attempt to invoke the discovery rule.  A lack of specific knowledge "of the existence of a

18   viable cause of action" against Defendants (*Doe*, 2019 U.S. Dist. LEXIS 170082, at *13) or "the

19   specific causal mechanism by which…she has been injured" (*Knowles v. Superior Court*, 118 Cal.

---

21   been her own mistreatment that caused the product damage, her equivocation means that she also

22   believed she "may" not "have done something wrong."  Dkt. 217 ¶ 181.

23   [17]  *See*, *e.g.*, *Bronson*, 2018 U.S. Dist. LEXIS 189995, at *11 (even if first time red lines appear on
     a television may not "alert suspicion that plaintiff had been wronged, the red lines appearing once

24   again should have raised some suspicion"); *Ferranti*, 2015 U.S. Dist. LEXIS 121598, at **8-11
     (noting that the earliest the CLRA limitations period could have begun was March 2009 when

25   obtained a wireless printer and noticed its wireless function did not work and latest was September
     2009, when plaintiff discovered the replacement printer he received in exchange for the first

26   suffered from the same wireless function problem); *Mills v. Forestex Co.*, 108 Cal. App. 4th 625,
     649 (1993) (noting that the siding "indisputably was warping and buckling, and the paint was

27   peeling off, by the summer of 1993" and concluding that the duty of inquiry arose at that time

28   "even if [plaintiff] lacked access or an opportunity to conduct an inspection.")

1    App. 4th 1290, 1298 (2004)) is not sufficient to delay accrual of the statutes of limitations.[18]

2    Nonetheless, even if the Court assumes the truth and sufficiency of the *8AC*'s conclusory

3    allegation that Perlin "did not discover and did not have reason to discover [her] causes of

4    action…before April 21, 2015, at the earliest" (Dkt. 217 ¶ 144), Perlin's claims would still be

5    time-barred because she did not file suit until June, 5 2020 – more than five years after she

6    allegedly discovered and had reason to discover her causes of action.  The *8AC* alleges no basis for

7    delaying accrual of the statutes of limitations after April 21, 2015.[19]

8                **b.     The *8AC* Does Not Allege Any Facts Establishing Diligence by Perlin**

9            Even if the immediate failure of Perlin's two PB Classic Bedding purchases in January

10   2011 were not sufficient to forestall application of the discovery rule exception (it is, as set forth

11   _____

12   [18]   *See also Ferranti*, 2015 U.S. Dist. LEXIS 121598, at **13-14 (rejecting argument that the

13   CLRA "limitations period should begin to run when [plaintiffs] discovered there was fraud and

14   learned the [defendant] was actively concealing the alleged defect" in wireless printers because the
     "limitations period begins to run when [p]laintiffs have inquiry notice of the CLRA claim and

15   suspect wrongdoing," which "inquiry notice [was] derived from [p]laintiffs' possession of
     multiple…wireless printers with the same alleged defect…."); *Ries*, 287 F.R.D. at 534 ("[T]he

16   discovery rule…provides that plaintiff's claim accrues 'when the plaintiff suspects or should

17   suspect that her injury was caused by wrongdoing' – not when she learns of the legal theory that
     would support recovery…."); *Rivas v. Safety-Kleen Corp.*, 98 Cal. App. 4th 218, 229 (2002)

18   ("statute of limitations begins to run when the claimant 'suspects or should suspect' that his or her
     injury was 'caused by [someone's] wrongdoing[,]' not when "'the plaintiff knew or reasonably

19   should have known of the facts constituting wrongful conduct, as well as the fact of her injury and
     its relation to [the product]'") (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988));

20   *Dolan v. Borelli*, 13 Cal. App. 4th 816, 823-25 (1993).

21   [19]   To the extent Perlin intends to rely on Rushing's filing of the *Class Action Complaint* to toll the
     statute of limitations for her California claims (and she does not plead facts sufficient to establish

22   such reliance (*see Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1167
     (C.D. Cal. 2010))), she cannot.  Among other things, because Rushing lacked standing to pursue

23   claims under California law, "the filing of [the] purported class-action complaint does not toll the
     statute of limitations for those who later seek to intervene as plaintiffs." *Palmer v. Stassinos*, 236

24   F.R.D. 460, 465 (N.D. Cal. 2006) (citing *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998)); *see
     also Francisco v. Emeritus Corp.*, 2018 U.S. Dist. LEXIS 226456, at **4-8 (C.D. Cal. Jan. 10,

25   2018) (statute of limitations for putative class members' claims not tolled where named plaintiff
     lacked standing to pursue to the claims); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,

26   2015 U.S. Dist. LEXIS 84152, at **83-93 (N.D. Ill. June 29, 2015) (finding that "[b]ecause

27   [p]laintiff – a citizen of New York – "lacked standing to raise claims under the laws of any states
     other than New York, her class action did not toll the statute of limitations for any such [non-New

28   York claims…."").

above), the *8AC*'s failure to allege any diligence (reasonable or otherwise) by Perlin to investigate the circumstances of her alleged injury is.[20]   "To benefit from the discovery rule, 'the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period.'"   *Doe*, 2019 U.S. Dist. LEXIS 170082, at *10 (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005)).[21]

The *8AC* does not allege that Perlin did anything with regard to the PB Classic Bedding in the near-decade since she purchased it and it immediately ripped, and the filing of the *8AC*, other than turning the bedding purchased on January 19, 2011 into a Halloween costume and discontinuing use of the bedding purchased on January 28, 2011.  Dkt. 217 ¶¶ 144, 174-187.  The *8AC*'s conclusion that Perlin "did not discover and did not have reason to discover [her] cause[] of action…before April 21, 2015, at the earliest" (Dkt. 217 ¶ 144) is not sufficient to satisfy her burden.[22]   And the *8AC*'s failure to allege facts establishing any diligence at all dooms Perlin's attempt to invoke the discovery rule exception to the statutes of limitations.  *See*, *e.g.*, *Marshall*,

---

[20]   This holds true even if the Court accepts as true the conclusory – and contradictory – allegation that Perlin "did not discover and did not have reason to discover [her] causes of action…before April 21, 2015, at the earliest."  Dkt. 217 ¶ 144.  Even if this were true, Perlin still waited more than five years to file her claims and, as set forth below, the *8AC* does not allege any facts establishing diligence by Perlin.

[21]   *See also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) ("'A plaintiff must affirmatively excuse his failure to discover the fraud within [the limitations period] by showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry.'") (quoting *Bedolla v. Logan & Frazer*, 52 Cal. App. 3d 118, 129, (1975)); *Hendrix*, 975 F. Supp. 2d at 1107 ("In order for the discovery rule to delay the accrual of a cause of action, the plaintiff bears the burden of showing that he 'conduct[ed] a reasonable investigation of all potential causes of [his] injury," and failed to discover that the injury was wrongfully caused "despite reasonable diligence.'") (quoting *Fox*, 35 Cal. 4th at 808 (2005)).

[22]   *See*, *e.g.*, *Doe*, 2019 U.S. Dist. LEXIS 170082, at *10 ("[C]onclusory allegations [of diligence] will not withstand a dismissal of the complaint.") (internal quotations omitted); *Josten v. Rite Aid Corp.*, 2018 U.S. Dist. LEXIS 198124, at **18-19 (S.D. Cal. Nov. 20, 2018) (allegation that plaintiff "had neither actual nor constructive knowledge of the facts constituting the claims for relief until recently" not sufficient to "adequately plead tolling under the delayed discovery rule."); *Plumlee*, 2014 U.S. Dist. LEXIS 23172, at *26 ("conclusory allegations [of diligence] will not withstand a motion to dismiss.") (internal quotations omitted).

2015 U.S. Dist. LEXIS 68636, at *6 ("For purposes of the delayed discovery rule, a plaintiff discovers a cause of action when she has reason to suspect that someone has done something wrong to her.  A plaintiff cannot simply wait for specific facts necessary to establish a specific cause of action to come to her…. Here, [p]laintiff appears to have done exactly that.  Plaintiff knew in Spring 2011 that [d]efendant's product did not deliver on [d]efendant's alleged promises, yet did nothing for over three years.  The delayed discovery rule is therefore of no help to [p]laintiff, and her FAL and CLRA claims are time-barred.").[23]

### 4. The *8AC* Does Not Satisfy Perlin's Burden Of Pleading Fraudulent Concealment Tolling; Moreover, The *8AC* Establishes It Does Not Apply

"[T]he fraudulent concealment doctrine…permits tolling where the defendant 'fraudulently concealed the existence of a cause of action so that [the plaintiff], acting as a reasonable person, did not know of its existence.'" *Apple Inc. v. Allan & Assocs. Ltd.*, 2020 U.S. Dist. LEXIS 55117, at **30-31 (N.D. Cal. Mar. 27, 2020) (quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988)); *see also IV Solutions, Inc. v. Conn. Gen. Life. Ins. Co.*, 2015 U.S. Dist. LEXIS 181214, at *9 (C.D. Cal. Apr. 9, 2015) (fraudulent concealment doctrine "halts the limitations period post-accrual where the defendant, through its own fraudulent conduct, prevents

---

[23]  *See also Brooks v. Tarsadia Hotels*, 2019 U.S. Dist. LEXIS 98166, at *27 (S.D. Cal. June 11, 2019) (dismissing time-barred UCL claim because plaintiff did not allege facts demonstrating "that he made a reasonably diligent effort to investigate yet was unable to make a discovery…."); *Doe*, 2019 U.S. Dist. LEXIS 170082, at *10 ("The plaintiff bears the burden to show that she engaged in a reasonable investigation into the wrongdoing inflicted upon her….") (internal quotations omitted); *Bronson*, 2018 U.S. Dist. LEXIS 189995, at *11 (dismissing time-barred UCL and CLRA claims for, *inter alia*, failure to "plead facts as to…any diligent investigation."); *Agape Family Worship Ctr., Inc. v. Gridiron*, 2016 U.S. Dist. LEXIS 19328, at **14-16 (C.D. Cal. Feb. 16, 2016) (discovery rule inapplicable because plaintiff did not allege it was unable to discover wrongdoing despite reasonable diligence); *Hunter*, 2016 U.S. Dist. LEXIS 107092, at **35-37 (dismissing time-barred UCL, FAL, and CLRA because plaintiff "has not met her burden or pleading facts that show her diligence" including by failing to allege "facts that would support a finding that she was 'not negligent in failing to make the discovery sooner and that [s]he had no actual or presumptive knowledge of facts sufficient to put [her] on inquiry'" or "that [plaintiff] took any steps towards discovery.") (quoting *Plumlee*, 2014 U.S. Dist. LEXIS 23172, at **26-27); *Norgart*, 21 Cal. 4th at 398 ("[W]ithin the applicable limitations period," a plaintiff "must indeed seek to learn the facts necessary to bring the cause of action in the first place—he cannot wait for them to find him and sit on his rights; he must go find them himself if he can and file suit if he does….") (internal quotations omitted).

the plaintiff from learning of a claim against it."); *Aryeh*, 55 Cal. 4th at 1192 ("The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale.").

"The plaintiff bears the burden of pleading and proving fraudulent concealment." *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1214 (N.D. Cal. 2015); *see also Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012).  "'In order to establish fraudulent concealment, the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry.'"  *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Baker v. Beech Aircraft Corp.,* 39 Cal. App. 3d 315, 321 (1974)).  A plaintiff must also allege "some ***active conduct by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed***, to prevent the plaintiff from suing in time."  *Agape*, 2016 U.S. Dist. LEXIS 19328, at \*15 (quoting *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008) (emphasis added)).[24]  "Fraudulent concealment tolling must be pled with particularity under Fed. R. Civ. P. 9(b)."  *In re Ford Tailgate Litig.*, 2014 U.S. Dist. LEXIS 32287, at \*33 (N.D. Cal. 2014); *see also Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980); *Clark*, 2019 U.S. Dist. LEXIS 29700, at \*\*19-20; *In re Animation Workers*, 87 F. Supp. 3d at 1214.

Perlin's "fraudulent concealment doctrine" allegation is contained in a single paragraph in the *8AC*: "under California's fraudulent concealment doctrine, the limitations period was…tolled

---

[24]  In other words, in a false advertising or deception claim, the fraudulent concealment cannot be the underlying false advertising or deception in the cause of action.  This is because allowing a plaintiff to claim fraudulent concealment based on the same allegations giving rise to her substantive claims "would eliminate the statute of limitations."  *Lukovsky*, 535 F.3d at 1052 (internal quotations omitted); *McCarn v. HSBC USA, Inc.*, 2012 U.S. Dist. LEXIS 162257, at \*\*24-25 (E.D. Cal. Nov. 9, 2012) ("The Ninth Circuit has repeatedly rejected claims of fraudulent concealment where the plaintiffs fail to allege misrepresentation beyond the actual basis for the lawsuit.  Such arguments are untenable because they 'merge[] the substantive wrong with the tolling doctrine and 'would eliminate the statute of limitations[.]'") (internal citations omitted).

at least through April 21, 2015, based on Defendants' active deceptive conduct in concealing the Plaintiff's [*sic*]…causes of action for violations of California law as alleged more fully above." Dkt. 217 ¶ 145.  This conclusory allegation does not satisfy Perlin's burden.  *See Zinzuwadia v. Mortgage Elec. Registration, Inc.*, 2013 U.S. Dist. LEXIS 178500, at **32-34 (E.D. Cal. Dec. 19, 2013) ("[C]onclusor[y] alleg[ation] that the statute of limitations should be tolled" is insufficient). The *8AC* does not allege when the alleged fraud was discovered or facts demonstrating the circumstances under which the alleged fraud was discovered.  And, as set forth above, the *8AC* alleges facts that demonstrate that Perlin had knowledge of information sufficient to put her on inquiry in January 2011, but did nothing in the near decade before she filed the *8AC*.  *See* Section IV.A.3 *supra*; *see also Platt Elec. Supply*, 522 F.3d at 1056 (affirming motion to dismiss on statute of limitations grounds and rejecting application of fraudulent concealment doctrine where allegations demonstrated inquiry notice of potential wrongdoing).[25]  Even if the *8AC* did not allege facts establishing Perlin's inquiry notice well outside of the statutes of limitations, it does not "plead with particularity…facts [that] establish that [she] used due diligence in trying to uncover the facts [giving rise to her claims]."  *Apple*, 2020 U.S. Dist. LEXIS 55117, at *31 (N.D. Cal. Mar. 27, 2020) (internal quotations omitted); *see also Platt Elec. Supply*, 522 F.3d at 1055 ("In urging lack of means of obtaining knowledge, it must be shown that in the exercise of reasonable diligence the facts could not have been discovered at an earlier date.") (internal quotations omitted).  These failures – both individually and taken together – render Perlin's attempt to invoke the fraudulent concealment doctrine unavailing.[26]

---

[25]  Alternatively, even the truth of the *8AC*'s conclusory allegation that Perlin "did not discover and did not have reason to discover [her] cause[] of action…before April 21, 2015, at the earliest" (Dkt. 217 ¶ 144) is assumed, Perlin still waited more than five years to file suit.  *See Doe*, 2019 U.S. Dist. LEXIS 170082, at *14 ("[I]f the plaintiff discovers the existence of the claim independently, the limitations period begins to run on that date, irrespective of the defendant's continuing efforts to conceal the cause of action.").

[26]  *See, e.g.*, *Perez v. GM Ltd. Liab. Co.*, 2019 U.S. Dist. LEXIS 134755, at *9 (S.D. Cal. Aug. 9, 2019) (plaintiff "failed to allege tolling of the statute of limitations" under the fraudulent concealment doctrine because "[p]laintiff has not alleged how she discovered [d]efendant's alleged fraud or the circumstances surrounding her discovery."); *Clark*, 2019 U.S. Dist. LEXIS 29700, at *20 (fraudulent concealment doctrine tolling not sufficiently pled where

Not only does the *8AC* fail to satisfy the basic pleading requirements necessary to invoke the fraudulent concealment doctrine exception, it fails to allege (with particularity or otherwise) any "active conduct" by WSI, "above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent [her] from suing in time." *Agape*, 2016 U.S. Dist. LEXIS 19328, at *15 (internal quotations omitted). The only allegation supporting the application of concealment doctrine merely references alleged "active deceptive conduct…as alleged more fully above." Dkt. 217 ¶ 145. This vague reference to "active deceptive conduct…alleged more fully above" is not sufficient to satisfy Perlin's burden under Fed. R. Civ. P. 9(b). *See, e.g.*, *Doe*, 2019 U.S. Dist. LEXIS 170082, at *15 ("Pleading fraud under 9(b) requires the plaintiff to include allegations about the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'") (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)); *Clark*, 2019 U.S. Dist. LEXIS 29700, at *20 (finding that "plaintiffs have not met their 'heavy burden' to plead fraudulent concealment with particularity and, thus, have not adequately pleaded fraudulent concealment to toll the statute of limitations.").

Moreover, Perlin's reference to unspecified "active deceptive conduct…alleged more fully above" demonstrates that her fraudulent concealment doctrine contention is based on the same conduct giving rise to her substantive claims. *Compare* Dkt. 217 ¶¶ 65-143 *with* Dkt. 217 ¶¶ 190-303. Perlin cannot toll the statute of limitations under the fraudulent concealment doctrine by relying on the same conduct giving rise to her substantive claims. *See*, *e.g.*, *Lukovsky*, 535 F.3d at 1052 (rejecting fraudulent concealment tolling where the "alleged basis for equitable estoppel is the same as [plaintiff's] cause of action."); *Jaeger v. Howmedica Osteonics Corp.*, 2016 U.S. Dist. LEXIS 16493, at *46 (N.D. Cal. Feb. 10, 2016) ("[T]he factual basis for fraudulent concealment must differ from any cause of action for fraud that is pled."). As such, Perlin's attempt to invoke

"plaintiffs…provided no facts as to the circumstances under which the fraud was discovered."); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1133 (C.D. Cal. 2010) (dismissing time-barred UCL, CLRA, and FAL claims because, *inter alia*, plaintiff "failed to allege when the fraud was discovered, the circumstances under which it was discovered, the circumstances indicating that she was not at fault for failing to discover it earlier, and the fact that she had no actual or constructive knowledge of facts sufficient to put her on inquiry.").

1  the fraudulent concealment doctrine fails as a matter of law.  *See*, *e.g.*, *Doe*, 2019 U.S. Dist.

2  LEXIS 170082, at *19 (granting motion to dismiss time-barred claims because plaintiff's

3  substantive claims "depend upon the same factual allegations as [p]laintiff asserts for purposes of

4  fraudulent concealment to toll the statute of limitations" and "[p]laintiff failed to include any

5  allegations of wrongdoing above and beyond those that encompass the affirmative claim for

6  relief."); *Agape*, 2016 U.S. Dist. LEXIS 19328, at **15-16; *IV Sols.*, 2015 U.S. Dist. LEXIS

7  181215, at *13; (fraudulent concealment tolling not established because plaintiff did "not offer

8  evidence of misrepresentations – apart from those underlying its substantive contentions – that

9  prevented [plaintiff] from learning that it might have a claim."); *Samp v. JPMorgan Chase Bank,*

10  *N.A.*, 2013 U.S. Dist. LEXIS 67958, at *9 (C.D. Cal. May 7, 2013).

## V.    **CONCLUSION**

12         For the foregoing reasons, Defendants respectfully request that the Court grant the *Motion*

13  and dismiss all individual and class claims asserted by Perlin in the *8AC*.

14  Dated:  July 6, 2020            SHEPPARD MULLIN RICHTER & HAMPTON LLP

16                     By _____
                                        */s/ P. Craig Cardon*
17                                P. CRAIG CARDON
                                  ROBERT J. GUITE
18                                BENJAMIN O. AIGBOBOH
                                  ALYSSA M. SHAUER

19                                *Attorneys for Defendants*
20                       WILLIAMS-SONOMA, INC., WILLIAMS-
                         SONOMA DTC, INC., and WILLIAMS-SONOMA
21                                ADVERTISING, INC.

SMRH:4846-2104-6976.6