1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   P. CRAIG CARDON, Cal. Bar No. 168646
2  ROBERT J. GUITE, Cal. Bar No. 244590
   BENJAMIN O. AIGBOBOH, Cal. Bar No. 268531
3  ALYSSA M. SHAUER, Cal. Bar No. 318359
   Four Embarcadero Center, 17th Floor
4  San Francisco, California 94111-4109
   Telephone:    415.434.9100
5  Facsimile:    415.434.3947
   Email:        ccardon@sheppardmullin.com
6                rguite@sheppardmullin.com
                 baigboboh@sheppardmullin.com
7                ashauer@sheppardmullin.com

8  *Attorneys for Defendants*

9
                    **UNITED STATES DISTRICT COURT**
10
        **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**
11

12 WILLIAM RUSHING and ELIZABETH          Case No. 3:16-cv-01421-WHO
   PERLIN, individually and on Behalf of all
13 Others Similarly Situated,              *Assigned to the Hon. William H. Orrick*

14              Plaintiffs,                **CLASS ACTION**

15       v.                               **DEFENDANTS':**

16 WILLIAMS-SONOMA, INC., a Delaware      **(1)  NOTICE OF MOTION AND MOTION
   corporation, also d/b/a Williams-Sonoma,      TO COMPEL ARBITRATION AND
17 Williams-Sonoma Home, and Pottery Barn;       DISMISS JUDICIAL PROCEEDING
   WILLIAMS-SONOMA DTC, INC., a                  AS TO PLAINTIFF ELIZABETH
18 California corporation; WILLIAMS-             PERLIN; AND
   SONOMA ADVERTISING, INC.,
19                                        **(2)  MEMORANDUM OF POINTS AND
                Defendants.                     AUTHORITIES IN SUPPORT
20                                             THEREOF**

21                                        [*Declaration of Devon Jones and [Proposed]
                                          Order filed concurrently herewith*]
22
                                          Hearing
23                                        Date:         August 12, 2020
                                          Time:         2:00 p.m.
24                                        Courtroom:    2

25                                        Complaint Filed:   January 29, 2016
                                          Action Removed:    March 23, 2016
26                                        8AC Filed:         June 5, 2020
                                          Trial Date:        None Set
27

28

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 12, 2020 at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 2 on the 17th floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable William H. Orrick presiding, Defendants Williams-Sonoma, Inc. ("**WSI**"), Williams-Sonoma DTC, Inc. ("**WSDTC**"), and Williams-Sonoma Advertising, Inc. ("**WSA**" and, collectively with WSI and WSDTC, "**Defendants**") will and hereby do move the Court for:  (1) an order compelling arbitration of all claims asserted by Plaintiff Elizabeth Perlin ("**Perlin**") in the *Eighth Amended Class Action Complaint* ("*8AC*"); and (2) an order dismissing without prejudice Counts One, Two, Three, Four, Five, and Six in the *8AC* in their entirety and Count Seven in the *8AC* as to Perlin and the putative class, or in the alternative staying the above described causes of action and claims.

*Defendants' Motion to Compel Arbitration and Dismiss Judicial Proceedings as to Plaintiff Elizabeth Perlin* (the "***Motion***") is made on the following grounds.  In connection with several purchases on Defendants' website, including as recently as June 4, 2020, Perlin agreed to the Terms and Conditions ("***Terms***") on Defendants' website by affirmatively pressing "CHECKOUT" and "PLACE ORDER" buttons directly below the notice that "[b]y continuing with your purchase you agree to our terms and conditions and privacy policy."  Perlin thereby agreed to the Terms, which contain an arbitration agreement with a clause delegating to the arbitrator questions of interpretation, applicability, enforceability, or formation.  An arbitrator thus must decide whether claims stated by Perlin and the putative class must be arbitrated.  In the alternative, should this Court take up the arbitrability issue, the plain language of the agreement confirms that Perlin agreed to arbitrate any claims or disputes with Defendants, including this one.

This *Motion* is based on this *Notice*, the accompanying *Memorandum of Points and Authorities*, the Declaration of Devon Jones, all pleadings, papers and other documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice, and such other matters as the Court may consider.

1

SHEPPARD MULLIN RICHTER & HAMPTON LLP

2      Dated:  July 8, 2020              By _____
                                                      */s/ Alyssa M. Shauer*
3                                             P. CRAIG CARDON
                                              ROBERT J. GUITE
4                                          BENJAMIN O. AIGBOBOH
                                             ALYSSA M. SHAUER
5
                                          *Attorneys for Defendants*
6                                WILLIAMS-SONOMA, INC., WILLIAMS-SONOMA
                                     DTC, INC., and WILLIAMS-SONOMA
7                                          ADVERTISING, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ...........................................................................................................1

II.  RELEVANT FACTS ......................................................................................................1

   A.  Perlin's Alleged January 2011 Purchases And Claims In The *8AC* .........................1

   B.  Perlin Affirmatively Agreed To The Terms In The Checkout Process.....................2

      1.  Customers Agree To The Terms On The "Shopping Cart" Page .................2

      2.  Customers Again Agree To The Terms On The Final Page To Place
          An Order.........................................................................................................4

   C.  The Terms Include An Arbitration Clause And A Class Action Waiver..................5

III.  STANDARDS APPLICABLE TO MOTIONS TO COMPEL ARBITRATION ................6

IV.  THE *MOTION* SHOULD BE GRANTED ...........................................................................6

   A.  A Valid Contract Exists – The Terms ......................................................................6

   B.  The Arbitrator, Not The Court, Must Decide Whether The Dispute Falls
       Within The Scope Of The Arbitration Agreement .....................................................9

      1.  The Arbitration Provision In The Terms Expressly Delegates
          Arbitrability To The Arbitrator. ......................................................................9

      2.  Incorporation Of The AAA Rules In The Terms Delegates
          Arbitrability To The Arbitrator .....................................................................10

   C.  Regardless, Plaintiff's Claims Fall Within The Scope Of The Arbitration
       Agreement .................................................................................................................11

V.  CONCLUSION ..............................................................................................................13

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Cases</u>

4

*Aguilar v. Carter's, Inc.*
  2019 U.S. Dist. LEXIS 224271 (E.D. Wash. Oct. 4, 2019) .................................................9, 11

5

*Armenta v. Go-Staff, Inc.*
  2017 U.S. Dist. LEXIS 67784 (S.D. Cal. May 3, 2017) ..........................................................10

6

7

*AT&T Mobility LLC v. Concepcion*
  563 U.S. 333 (2011) ...............................................................................................................11

8

9

*Brennan v. Opus Bank*
  796 F.3d 1125 (9th Cir. 2015).............................................................................................9, 10

10

*Chen v. Sierra Trading Post, Inc.*
  2019 U.S. Dist. LEXIS 131756 (W.D. Wash. Aug. 6, 2019) ...........................................7, 8, 11

11

12

*Cooper v. Adobe Sys. Inc.*
  2019 U.S. Dist. LEXIS 177413 (N.D. Cal. Oct. 11, 2019) .......................................................11

13

14

*Cordas v. Uber Techs., Inc.*
  228 F. Supp. 3d 985 (N.D. Cal. 2017) ...................................................................................10

15

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*
  835 F.3d 1195 (10th Cir. 2016)...............................................................................................12

16

17

*Crawford v. Beachbody, LLC*
  2014 U.S. Dist. LEXIS 156658 (S.D. Cal. Nov. 5, 2014).......................................................7, 8

18

19

*In re Currency Conversion Fee Antitrust Litig.*
  265 F. Supp. 2d 385 (S.D.N.Y. 2003) ...................................................................................12

20

*DeVries v. Experian Info. Sols., Inc.*
  2017 U.S. Dist. LEXIS 26471 (N.D. Cal. Feb. 24, 2017) (Orrick, J.) .................................8, 12

21

22

*Dickey v. Ticketmaster LLC*
  2019 U.S. Dist. LEXIS 231895 (C.D. Cal. March 12, 2019)......................................................8

23

24

*Dupler v. Orbitz, LLC*
  2018 U.S. Dist. LEXIS 227724 (C.D. Cal. July 5, 2018) ..........................................................8

25

*Epic Systems Corp. v. Lewis*
  138 S. Ct. 1612 (2018) ...........................................................................................................11

26

27

*Fagerstrom v. Amazon.com, Inc.*
  141 F. Supp. 3d 1051 (S.D. Cal. 2015) ....................................................................................8

28

*Fridman v. Uber Techs., Inc.*
  2019 U.S. Dist. LEXIS 52093 (N.D. Cal. Mar. 27, 2019) ............................................11

*Graf v. Match.com, LLC*
  2015 U.S. Dist. LEXIS 90061 (C.D. Cal. July 10, 2015) ..............................................8

*Hale v. Heath*
  2016 U.S. Dist. LEXIS 92382 (S.D. Cal. Jul. 14, 2016)................................................8

*Harbers v. Eddie Bauer, LLC*
  2019 U.S. Dist. LEXIS 200703 (W.D. Wash. Nov. 19, 2019) .....................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*
  139 S. Ct. 524 (2019) .............................................................................................1, 9

*Knutson v. Sirius XM Radio Inc.*
  771 F.3d 559 (9th Cir. 2014)...............................................................................2, 6, 7

*Ko v. Anthem Cos.*
  2020 U.S. Dist. LEXIS 52851 (C.D. Cal. Jun. 15, 2020) ............................................2

*Kristian v. Comcast Corp.*
  446 F.3d 25 (1st Cir. 2006) .......................................................................................12

*Lee v. Ticketmaster L.L.C.*
  2019 U.S. Dist. LEXIS 231894 (N.D. Cal. Apr. 1, 2019)............................................7

*Lee v. Ticketmaster L.L.C.*
  2020 U.S. App. LEXIS 18718 (9th Cir. June 12, 2020) ...............................................7

*MCA Fin. Grp., Ltd. v. Gardere Wynne Sewell, L.L.P.*
  2007 WL 951959 (D. Ariz. Mar. 27, 2007) ..............................................................12

*Mohammad v. T-Mobile United States, Inc.*
  2018 U.S. Dist. LEXIS 20267 (E.D. Cal. Nov. 28, 2018) ..........................................12

*Morales v. Lexxiom, Inc.*
  2010 U.S. Dist. LEXIS 151809 (C.D. Cal. Jan. 29, 2010).........................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
  460 U.S. 1 (1983) .....................................................................................................11

*Moule v. United Parcel Serv. Co.*
  2016 U.S. Dist. LEXIS 88270 (E.D. Cal. Jul. 7, 2016)................................................8

*Nevarez v. Forty Niners Football Co.*
  2017 U.S. Dist. LEXIS 131208 (N.D. Cal. Aug. 15, 2017)...................................7, 10

*New Prime Inc. v. Oliveira*
  139 S. Ct. 532 (2019) ................................................................................................6

*Nguyen v. Barnes & Noble Inc.*
    763 F.3d 1171 (9th Cir. 2014).................................................................................7, 8

*Nicosia v. Amazon.com, Inc.*
    2020 U.S. App. LEXIS 17567 (2d Cir. June 4, 2020).....................................................9

*Oracle Am., Inc. v. Myriad Group, A.G.*
    724 F.3d 1069 (9th Cir. 2013).................................................................................10

*Peter v. Doordash, Inc.*
    2020 U.S. Dist. LEXIS 73984 (N.D. Cal. Apr. 23, 2020)........................................6, 7

*Plazza v. Airbnb, Inc.*
    289 F. Supp. 3d 537 (S.D.N.Y. 2018) ....................................................................12

*Prograph Int'l Inc. v. Barhydt*
    928 F. Supp. 983 (N.D. Cal. 1996) .........................................................................13

*Rent-A-Center, W., Inc. v. Jackson*
    561 U.S. 63 (2010) ......................................................................................1, 10, 11

*Rodriguez v. Experian Serv. Corp.*
    2015 U.S. Dist. LEXIS 187273 (C.D. Cal. Oct. 5, 2015) ..........................................7

*Sanford v. Member Works, Inc.*
    483 F.3d 956 (9th Cir. 2007)....................................................................................6

*Serafin v. Balco Properties Ltd., LLC*
    235 Cal. App. 4th 165 (2015)...................................................................................7

*Simula, Inc. v. Autoliv, Inc.*
    175 F.3d 716 (9th Cir. 1999)...................................................................................11

*Trujillo v. Gomez*
    2015 WL 1757870 (S.D. Cal. Apr. 17, 2015) ..........................................................12

*In re Uber Text Messaging*
    2019 U.S. Dist. LEXIS 102007 (N.D. Cal. June 18, 2019) ........................................6

*In re Universal Service Fund Tel. Billing Practices Litig.*
    300 F. Supp. 2d 1107 (D. Kan. 2003) .....................................................................12

*In re Verisign, Inc., Derivative Litig.*
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...................................................................12

*Windsor Mills, Inc. v. Collins & Aikman Corp.*
    25 Cal. App. 3d 987 .................................................................................................7

*Zenelaj v. Handybook Inc.*
    82 F. Supp. 3d 968 (N.D. Cal. 2015) ......................................................................10

**Statutes**

9 U.S.C. § 2 ...............................................................................................................6

9 U.S.C. § 4 ...............................................................................................................6

California's Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq*.) ...............................2

California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq*.) ...........................2

California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq*.) ........................2

Federal Arbitration Act ........................................................................................5, 6, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This putative class action was filed in 2016 asserting a variety of claims against Defendants arising out of Plaintiff William Rushing's ("***Rushing***") purchase of bedding from WSI.  Perlin joined this action as a named plaintiff for the first time in the filing of the *8AC* on June 5, 2020 based on her 2011 purchase of bedding.  On the day before she filed that complaint, and many dozens of days in the years since that purchase, Perlin made a purchase on Defendants' Pottery Barn website (the "***Website***").  In so doing, Perlin expressly agreed to the Terms.  In the Terms, Perlin and Defendants agreed to "resolve any disputes between us … through binding and final arbitration instead of through court proceedings. …  All controversies, claims, counterclaims, or other disputes arising between you and [Defendants] … will be resolved exclusively by final and binding arbitration."  They also agreed that "the arbitrator … shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of these Terms."

Under U.S. Supreme Court and Ninth Circuit authority, where an arbitration provision delegates issues of arbitrability to the arbitrator, the only issues for the Court to determine are 1) does an agreement between the parties exist, and 2) whether that agreement contains an arbitration provision.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 n.2 (2010).  Here, Perlin unequivocally agreed to the Terms which contain an arbitration provision.  All other issues, including but not limited to scope and enforceability, are reserved for the arbitrator.  This rule is so strong that the U.S. Supreme Court has found it to apply even where the allegations regarding scope or enforceability of the arbitration provision are "wholly groundless."  *Henry Schein*, 139 S. Ct. at 529.  Accordingly, the Court must compel Perlin's claims to arbitration.  The Court should dismiss without prejudice Perlin's and the putative class's claims against Defendants.

## II.     RELEVANT FACTS

### A.     Perlin's Alleged January 2011 Purchases And Claims In The *8AC*

Perlin purchased Pottery Barn-branded sheets and pillowcases from the Website on January 19, 2011.  Dkt. 217 ¶ 174.  She alleges that after normal and ordinary use, the bedding "started

ripping" in just a few days.  *Id.* ¶¶ 174, 179-81.  She thus bought a second set of each item on January 28, 2011, but alleges the same ripping again occurred.  *Id.* ¶¶ 181, 184.  Perlin first joined this action by filing the *8AC* on June 5, 2020 based on these 2011 purchases and her allegation that Defendants falsely "inflated" the thread counts in the bedding she purchased.[1]  Dkt. 217, ¶ 7.  In the *8AC*, Perlin asserts claims, individually and on behalf of a putative nationwide class (excluding Kentucky residents), for (1) violation of California's Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*) ("**CLRA**"), (2) violation of California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) ("**FAL**"), (3) violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) ("**UCL**"), and (4) unjust enrichment.  Dkt. 217 ¶¶ 19, 146-147, 190-303.

**B.**      **Perlin Affirmatively Agreed To The Terms In The Checkout Process**

Since these bedding purchases nearly a decade ago, Perlin – a "longtime WSI customer" whose "relationship with WSI spans over 25 years" (Dkt. 217 ¶ 170) – has made at least 157 separate purchases from WSI (including at least eight Website purchases in 2020).  *Declaration of Devon Jones* ("***Jones Decl.***"), ¶ 2.[2]  Perlin's most recent Website purchase was on June 4, 2020 – ***one day*** before she filed the *8AC*.[3]  *Id.*  For each Website purchase Perlin made, she completed the Website's online check-out process, as all website purchasers must.  Jones Decl., ¶ 3.  The Website contains substantially the same check-out flow process on both mobile devices and laptop or desktop computers.  *Id.* ¶ 5.

**1.**      **Customers Agree To The Terms On The "Shopping Cart" Page**

As part of that process, after selecting items for purchase, customers proceed to their

---

[1]  Perlin was not a named plaintiff in any of the previous complaints filed by Rushing.  The procedural history of this action is discussed in detail in *Defendants' Motion to Dismiss Eighth Amended Class Action Complaint* filed July 6, 2020 (Dkt. No. 218).

[2]  Evidence is appropriately introduced and considered on a motion to compel arbitration, and indeed is critical in allowing a moving party to carry its burden to prove the existence of an agreement to arbitrate by a preponderance of the evidence.  *Ko v. Anthem Cos.*, 2020 U.S. Dist. LEXIS 52851, at *9 (C.D. Cal. Jun. 15, 2020) (citing *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

[3]  Allegations in the *8AC* affirm that Perlin has read completely and is familiar with the contents of the Terms as of the date of filing – June 5, 2020 – at the latest.  *See* Dkt. 217 ¶¶ 61-62.

Shopping Cart.  *Id.* ¶¶ 3, 5.  Exemplar of the Shopping Cart page, as it would have appeared on June 4, 2020 (the date of Perlin's most recent purchase) as well as for other recent purchases including May 10, 2020 and May 25, 2020, are attached to the Jones Declaration as Exhibit A (using a desktop or laptop computer) and Exhibit D (using a mobile device).  On the Shopping Cart page, customers are told that "By continuing with your purchase you agree to our terms and conditions and privacy policy."  *Id.*  The underlined phrase "terms and conditions" is a hyperlink that, if clicked, causes a pop-up window to appear with the applicable Terms and Conditions (the "Terms").  *Id.*  There are then two buttons available to proceed with the purchase – Checkout and PayPal Checkout.  *Id.*  The relevant portions are reproduced here:

**Portion of Web Page Viewed on Mobile Device:**



**Portion of Web Page Viewed on Laptop or Desktop Computer:**



1    In one specific pathway using a mobile device, customers may bypass the Shopping Cart

2  page.  *Id.* ¶ 5.  After selecting items to purchase on a mobile device, customers are immediately

3  given the option to "View Cart" or "Checkout."  *Id.* ¶ 5.  The "View Cart" button takes customers

4  to the Shopping Cart, as described above.  *Id.*  If customers select "Checkout," they are directed to

5  a page allowing them to select either "Sign In" or "Guest Checkout."  *Id.* ¶¶ 5-6, Ex. E.  Directly

6  above the "Sign In" button, the Website again states: "By continuing with your purchase you agree

7  to our <u>terms and conditions</u> and <u>privacy policy</u>."  *Id.* ¶ 6, Ex. E.

8         **2.        Customers Again Agree To The Terms On The Final Page To Place An Order**

9    After customers complete any of the options described above, they are asked to enter billing,

10  shipping, and payment information.  *Id.* ¶¶ 4, 6.  Customers then must confirm their purchase by

11  pressing one of two the "PLACE ORDER" buttons to complete the purchase.  Jones Decl., ¶¶ 4, 6.

12  Directly above each "PLACE ORDER" button, the user is again informed: "By continuing with

13  your purchase you agree to our <u>terms and conditions</u> and <u>privacy policy</u>."  *Id.*, Exs. B, F.  The

14  underlined phrase "terms and conditions" is a hyperlink that, if clicked, causes a pop-up window to

15  appear with the applicable Terms.  *Id.*  Exemplars of this page of the check-out flow process as it

16  would have appeared on June 4, 2020 (the date of Perlin's purchase), as well as for other recent

17  purchases including May 10, 2020 and May 25, 2020, are attached to the Jones Declaration as

18  Exhibit B (using a desktop and laptop computer) and Exhibit F (using a mobile device).  The relevant

19  portions are reproduced here:

**<u>Portion of Web Page Viewed on Mobile Device:</u>**

SMRH:4822-1667-8593.3                                    MOTION TO COMPEL ARBITRATION

**Portion of Web Page Viewed on Laptop or Desktop Computer:**

By continuing with your purchase you agree to our terms and conditions and privacy policy.

PLACE ORDER

Thus, in completing her June 4, 2020 and other 2020 purchases, Perlin agreed to the Terms.

**C.     The Terms Include An Arbitration Clause And A Class Action Waiver**

The Terms[4] provide, in relevant part, as follows:

Arbitration Agreement & Waiver of Certain Rights

You and Williams-Sonoma, Inc. agree that, except as set forth below, we will resolve any disputes between us (including any disputes between you and a third-party agent of Williams-Sonoma, Inc.) through binding and final arbitration instead of through court proceedings. You and Williams-Sonoma, Inc. hereby waive any right to a jury trial of any Claim (defined below). All controversies, claims, counterclaims, or other disputes arising between you and Williams-Sonoma, Inc. or you and a third-party agent of Williams-Sonoma, Inc. (a "Claim") will be resolved exclusively by final and binding arbitration in accordance with the Rules of the American Arbitration Association ("AAA Rules"). The arbitration will be heard and determined by a single arbitrator. The arbitrator's decision in any such arbitration will be final and binding upon the parties and may be enforced in any court of competent jurisdiction. … The Federal Arbitration Act and federal arbitration law apply to this agreement. However, the arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of these Terms including, but not limited to, a claim that all or any part of these Terms is void or voidable.

…

Neither you nor Williams-Sonoma, Inc. may act as a class representative or private attorney general, nor participate as a member of a class of claimants, with respect to any Claim. Claims may not be arbitrated on a class or representative basis. The arbitrator can decide only your and/or Williams-Sonoma, Inc.'s individual Claims. The arbitrator may not consolidate or join the claims of other persons or parties who may be similarly situated.

…

THIS SECTION LIMITS CERTAIN RIGHTS, INCLUDING THE RIGHT TO MAINTAIN A COURT ACTION, THE RIGHT TO A JURY TRIAL, THE RIGHT TO PARTICIPATE IN ANY FORM OF CLASS OR REPRESENTATIVE CLAIM,

---

[4]  The current version of the Terms applicable to Pottery Barn purchases, updated April 2020, was agreed to by Perlin, at a minimum, during her Pottery Barn purchases on May 10, May 25, and June 4, 2020. *See* Jones Decl., ¶ 7, Ex. G.  Thus, while Perlin agreed to other versions of the Terms which also contained arbitration agreements, the April 2020 agreement controls.

THE RIGHT TO ENGAGE IN DISCOVERY EXCEPT AS PROVIDED IN AAA RULES, AND THE RIGHT TO CERTAIN REMEDIES AND FORMS OF RELIEF. OTHER RIGHTS THAT YOU OR WILLIAMS-SONOMA, INC. WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

Jones Decl. ¶ 7, Ex. G at 5-6 (larger font size and capitalization in original).

## III.   STANDARDS APPLICABLE TO MOTIONS TO COMPEL ARBITRATION

The Federal Arbitration Act ("**FAA**") provides that a "written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA requires courts to compel arbitration if (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of that agreement.  *Knutson*, 771 F.3d at 564-65; *see also* 9 U.S.C. § 4 ("upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").  "Unless a party specifically challenges the validity of the agreement to arbitrate, both sides may be required to take all their disputes – including disputes about the validity of their broader contract – to arbitration."  *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019).

## IV.   THE *MOTION* SHOULD BE GRANTED

### A.   A Valid Contract Exists – The Terms

Where an agreement delegates all gateway jurisdictional issues such as "the interpretation, applicability, enforceability or formation" of the arbitration agreement to the arbitrator, only "challenges to the very existence of the contract are, in general, properly directed to the court." *Peter v. Doordash, Inc.*, 2020 U.S. Dist. LEXIS 73984, at *7 (N.D. Cal. Apr. 23, 2020) (quoting *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017)); *In re Uber Text Messaging*, 2019 U.S. Dist. LEXIS 102007, at *19 (N.D. Cal. June 18, 2019) (same); *see also Sanford v. Member Works, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) ("challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration").  When deciding whether a contract containing an arbitration provision exists between the parties, courts apply

1   general principles of contract law.[5]  *See Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th

2   165, 173 (2015).  Under California law, a contract exists where the parties mutually manifest assent

3   to the terms of the agreement.  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

4   "Mutual assent may be manifested by written or spoken words, or by conduct, and acceptance of

5   contract terms may be implied through action or inaction."  *Knutson*, 771 F.3d at 565; *see generally*

6   *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992-93(1972) (because "the

7   outward manifestation or expression of assent is the controlling factor," an offeree, "knowing that

8   an offer has been made to him but not knowing all of its terms, may be held to have accepted, by

9   his conduct, whatever terms the offer contains") (internal citations omitted).

10   The Terms in this case are often classified as a "modified clickwrap", whereby a user gives

11   affirmative assent to a set of terms and conditions available by clicking a hyperlink (rather than

12   written on the page itself).  *See, e.g.*, *Nguyen*, 763 F.3d at 1176-77; *Chen*, 2019 U.S. Dist. LEXIS

13   131756, at *6 ("Constructive notice occurs when the consumer has inquiry notice of the terms of

14   service, like a hyperlinked alert, and takes an affirmative action to demonstrate assent to them.");

15   *Crawford v. Beachbody, LLC*, 2014 U.S. Dist. LEXIS 156658, at **7-8 (S.D. Cal. Nov. 5, 2014).

16   Courts applying California law recognize that a valid contract exists where (i) a consumer is

17   expressly told that by clicking a button, making a purchase, or taking some other action, they agree

18   to be bound by a set of terms and conditions; and (ii) the website contains a link to the terms directly

19   above the button or call to action.[6]  *See Lee v. Ticketmaster L.L.C.*, 2019 U.S. Dist. LEXIS 231894,

20   at **1-2 (N.D. Cal. Apr. 1, 2019) (aff'd *Lee v. Ticketmaster L.L.C.*, 2020 U.S. App. LEXIS 18718

21

22   _____
   [5]  The Terms contain a California choice of law provision.  *See* Jones Decl. ¶ 7, Ex. G at 6.

23   [6] The same result follows in the nearly indistinguishable case where the link is below, rather than
   above, the button.  *See Peter v. DoorDash*, 2020 U.S. Dist. LEXIS 73984, at **3, 13-14 (N.D. Cal.
24   Apr. 23, 2020) (holding contract enforceable where user clicked "Sign Up," below the button the
   page stated: "By tapping Sign Up, Continue with Facebook, or Continue with Google, you agree to
25   our Terms and Conditions and Privacy Statement," and the terms were hyperlinked); *Nevarez v.
   Forty Niners Football Co.*, 2017 U.S. Dist. LEXIS 131208, at **18-21 (N.D. Cal. Aug. 15, 2017)
26   (same where user clicked "Submit Order," below the button the page stated: "By continuing past
   this page, you agree to our terms of use," and the terms were hyperlinked); *Rodriguez v. Experian
27   Serv. Corp.*, 2015 U.S. Dist. LEXIS 187273, at *2 (C.D. Cal. Oct. 5, 2015) (same where user clicked
   button to continue through website, below which the website stated: "By clicking the button above
28   … you agree to our Terms of Use," and the terms were hyperlinked).

1  (9th Cir. June 12, 2020) (holding contract enforceable where on multiple occasions user clicked

2  "Place Order," directly above the button the page "informed the user that 'continuing past this page'

3  (i.e., placing an order) would indicate assent to the terms," and the terms were hyperlinked); *Dickey*

4  *v. Ticketmaster LLC*, 2019 U.S. Dist. LEXIS 231895, at **15-16 (C.D. Cal. March 12, 2019) (same);

5  *Dupler v. Orbitz, LLC*, 2018 U.S. Dist. LEXIS 227724, at **5-6 (C.D. Cal. July 5, 2018) (same

6  where text putting user "on notice of the Terms of Use [was] conspicuously located directly above

7  the 'Complete Booking' button" and the terms were hyperlinked); *DeVries v. Experian Info. Sols.,*

8  *Inc.*, 2017 U.S. Dist. LEXIS 26471, at **4, 18 (N.D. Cal. Feb. 24, 2017) (Orrick, J.) (same where

9  user clicked "Submit Secure Order," directly above the button, the page stated: "Click 'Submit

10  Secure Order' to accept the Terms and Conditions above…,'" and the terms were hyperlinked); *Hale*

11  *v. Heath*, 2016 U.S. Dist. LEXIS 92382, at **2, 11-13 (S.D. Cal. Jul. 14, 2016) (same where user

12  clicked "Get Your Free Consultation," and directly above the button was a hyperlink to the terms of

13  use); *Moule v. United Parcel Serv. Co.*, 2016 U.S. Dist. LEXIS 88270, at **14 (E.D. Cal. Jul. 7,

14  2016) (same where user clicked "Yes," above the button the page stated: "By clicking the Yes

15  button, you agree to the UPS Tariff/Terms and Conditions," and the terms and conditions were

16  hyperlinked); *Graf v. Match.com, LLC*, 2015 U.S. Dist. LEXIS 90061, at *4 (C.D. Cal. July 10,

17  2015) (same where user clicked "Continue" button and the web page stated that "by clicking on that

18  button, the user was affirming that they would be bound by the Terms of Use, which were always

19  hyperlinked"); *Crawford v. Beachbody, LLC*, 2014 U.S. Dist. LEXIS 156658, at *4 (S.D. Cal. Nov.

20  5, 2014) (same where user clicked "Place Order" button, directly above the button the page stated:

21  "By clicking Place Order below, you are agreeing that you have read and understand the . . . Terms

22  and Conditions," and the terms were hyperlinked); *see generally Nguyen*, 763 F.3d at 1177-78.[7]

23

---

24  [7] Applying the substantially similar rule under Washington law, courts in the Ninth Circuit have
repeatedly reached the same conclusion.  *See Chen v. Sierra Trading Post, Inc.*, 2019 U.S. Dist.

25  LEXIS 131756, at **4-6 (W.D. Wash. Aug. 6, 2019); *see also Fagerstrom v. Amazon.com, Inc.*,
141 F. Supp. 3d 1051, 1058 (S.D. Cal. 2015) (holding contract enforceable where user clicked

26  "Place you order," at the top of the page next to "Review your order" the page stated: "By placing
your order, you agree to Amazon.com's … *conditions of* use," and the conditions of use were

27  hyperlinked); *Harbers v. Eddie Bauer, LLC*, 2019 U.S. Dist. LEXIS 200703, at **3, 21-22 (W.D.
Wash. Nov. 19, 2019) (same where user clicked "Submit Order," directly above the button the page

28  stated: "By ordering you agree to eddiebauer.com's Privacy Policy and Terms of Use," and the terms

1      Accordingly, there can be no reasonable dispute that Perlin was expressly informed that, by

2   clicking the "Place Order" and "Checkout" buttons to complete her purchases, she assented to the

3   Terms hyperlinked directly above the "Place Order" and "Checkout" buttons.  A valid contract was

4   formed.  There can also be no dispute that the contract contained an arbitration provision. Jones

5   Decl. ¶ 7, Ex. G at 5-6 (larger font size and capitalization in original).

6   **B.    The Arbitrator, Not The Court, Must Decide Whether The Dispute Falls Within The Scope Of The Arbitration Agreement**

7          While the general rule is that the court decides whether a particular claim falls within the

8   scope of an arbitration agreement, arbitrability "can be expressly delegated to the arbitrator where

9   the [contracting] parties *clearly and unmistakably* provide otherwise."  *Brennan v. Opus Bank*, 796

10  F.3d 1125, 1130 (9th Cir. 2015) (internal citations omitted; emphasis in original); *see also Henry*

11  *Schein*, 139 S. Ct. at 529 (contracting parties "may agree to have an arbitrator decide … gateway

12  questions of arbitrability" and when they have done so, "a court may not override the contract.").

13  "In those circumstances, a court possesses no power to decide the arbitrability issue … even if the

14  court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly

15  groundless."  *Henry Schein*, 139 S. Ct. at 529.

16         The arbitration provision of the Terms clearly and unmistakably delegates the issue of the

17  arbitration provision's scope and enforceability to the arbitrator in two distinct ways.

18         **1.    The Arbitration Provision In The Terms Expressly Delegates Arbitrability To The Arbitrator.**

19

20         Delegation of arbitrability is expressly set out in the plain language of the arbitration

21  agreement.  The agreement states:  "the arbitrator, and not any federal, state, or local court or agency,

22  shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability,

23  enforceability, or formation of these Terms."  Jones Decl. ¶ 7, Ex. G at 5.  This is the quintessential

24  example of a clear and unmistakable delegation provision and is routinely enforced.  *See Rent-A-*

25

26  _____

27  were hyperlinked); *Aguilar v. Carter's, Inc.*, 2019 U.S. Dist. LEXIS 224271, at **10-11 (E.D.
    Wash. Oct. 4, 2019) (*see* ECF Dkt. No. 3) (same where user clicked "Place Order" button, directly

28  above the button the page stated: "By clicking Place Order, you are agreeing to our Legal Terms and Conditions…," and the terms were hyperlinked).

*Center*, 561 U.S. at 66, 72 (enforcing substantially the same delegation provision); *Nevarez v. Forty Niners Football Co.*, 2017 U.S. Dist. LEXIS 131208, at *46 (N.D. Cal. Aug. 15, 2017) (same); *Armenta v. Go-Staff, Inc.*, 2017 U.S. Dist. LEXIS 67784, at **8-9 (S.D. Cal. May 3, 2017) (same). Perlin thus expressly agreed to delegate arbitrability and scope to the arbitrator when agreeing to the Terms.[8]

### 2. Incorporation Of The AAA Rules In The Terms Delegates Arbitrability To The Arbitrator

The parties also agreed to delegate arbitrability to the arbitrator by incorporating the AAA Rules in the Terms.  Incorporation of "the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130-31; *Oracle Am., Inc. v. Myriad Group, A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").[9]  This Court and others have repeatedly applied the *Brennan* rule to actions brought by consumers.  *See Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 991-92 (N.D. Cal. 2017) (incorporation by reference of AAA rules in consumer contract amounted to clear and unmistakable delegation); *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 973 (N.D. Cal. 2015) ("nearly every … decision in the Northern District of California … has consistently found effective delegation of arbitrability

---

[8]     Moreover, giving effect to the express allegations of the *8AC*, Perlin must be charged with not only constructive or inquiry notice deriving from her agreement to the Terms through the check-out process (which itself is sufficient, as discussed above), but also actual notice of the entire contents of the Terms, including the arbitration provision and delegation clause. *See* Dkt. 217, ¶¶ 61-62 ("WSI never identifies its Brands on its … terms and conditions … as being a … business entity separate from WSI.").  On the same day Perlin made this most recent purchase, the Second Circuit confirmed that, in addition to the inquiry notice provided by use a website itself, a plaintiff is put on notice of website terms where the plaintiff continues to make purchases on the website despite having gained knowledge of the terms in the course of litigation against the website operator. *Nicosia v. Amazon.com, Inc.*, 2020 U.S. App. LEXIS 17567, at *4 (2d Cir. June 4, 2020) (slip op.).

[9]     Both the AAA Consumer Rules and AAA Commercial Rules provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  Consumer Arbitration Rules, American Arbitration Association, at 17 (effective Sept. 1, 2014); Commercial Arbitration Rules, American Arbitration Association, at 13 (effective Oct. 1, 2013).

regardless of the sophistication of the parties"); *Aguilar*, 2019 U.S. Dist. LEXIS 224271, at *11, n. 1; *Chen*, 2019 U.S. Dist. LEXIS 131756, at *12; *see also Cooper v. Adobe Sys. Inc.*, 2019 U.S. Dist. LEXIS 177413, at **16-17 (N.D. Cal. Oct. 11, 2019) (applying same rule to incorporation by reference of JAMS Rules).  Here, by incorporating the AAA Rules into the arbitration provision, the parties once again clearly and unmistakably delegated the issue of arbitrability, or scope, to the arbitrator.  *See* Jones Decl. ¶ 7, Ex. G at 5.  Accordingly, the Court's inquiry ends here.  This case must be compelled to arbitration in the first instance, where the arbitrator will decide arbitrability if Perlin challenges it.[10]

**C.**    <u>**Regardless, Plaintiff's Claims Fall Within The Scope Of The Arbitration Agreement**</u>

The FAA embodies a "liberal federal policy favoring arbitration agreements."  *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (internal quotation marks omitted); *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) ("The FAA embodies a clear federal policy in favor of arbitration."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (similar statement); *Rent-A-Center*, 561 U.S. at 67-68 (similar statement).  As a result, when determining whether a claim falls within the scope of an arbitration agreement, courts must indulge every presumption "in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

In applying these standards, courts hold that agreements requiring arbitration of "[a]ny dispute, claim or controversy arising out of or relating to this Agreement" is broad and presumptively covers all disputes between the parties.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (enforcing arbitration agreement governing "all" disputes that included class action waiver); *Morales v. Lexxiom, Inc.*, 2010 U.S. Dist. LEXIS 151809, * 18-19 (C.D. Cal. Jan. 29, 2010) (enforcing arbitration agreement governing "any" dispute because the language is "all encompassing" and jury trial waiver set forth in all caps "could not be clearer").

---

[10]    Dismissal is the appropriate result here.  *Fridman v. Uber Techs., Inc.*, 2019 U.S. Dist. LEXIS 52093, at *13 (N.D. Cal. Mar. 27, 2019) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)) ("In the Ninth Circuit, courts have discretion under Section 3 of the Federal Arbitration Act to either stay or dismiss claims that are subject to an arbitration agreement.").

Where the arbitration agreement is broad enough to cover claims before the date of that agreement, courts reject any argument that the agreement cannot retroactively drive claims to arbitration. *DeVries*, 2017 U.S. Dist. LEXIS 26471, at *21 ("Courts have also consistently applied arbitration agreements retroactively where the agreements explicitly subsume prior agreements or facially apply to disputes arising prior to the agreement."); *see also In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (rejecting "argument that the arbitration provision does not apply … because all the events underlying the claims occurred before the parties executed the agreement" where agreement "encompasse[d] any dispute arising out of the agreement, KPMG's services thereunder, and 'any other services provided by or on behalf of KPMG,'" and was therefore not limited by time); *Mohammad v. T-Mobile United States, Inc.*, 2018 U.S. Dist. LEXIS 20267, at *18 (E.D. Cal. Nov. 28, 2018) (arbitration clause covering "ANY AND ALL CLAIMS AND DISPUTES…" was "sufficiently broad to apply retroactively to pre-existing claims); *Trujillo v. Gomez*, 2015 WL 1757870, at *8 (S.D. Cal. Apr. 17, 2015) (broad arbitration clause that "does not include any temporal limitations" applies to claims arising before the agreement was entered into); *MCA Fin. Grp., Ltd. v. Gardere Wynne Sewell, L.L.P.*, 2007 WL 951959, at *5 (D. Ariz. Mar. 27, 2007) (same).[11]

The arbitration provision here provides that Perlin and Defendants "will resolve any disputes between us . . . through binding and final arbitration instead of through court proceedings[.]" Jones Decl. ¶ 7, Ex. G at 5.  This is exactly the type of broad provision with retroactive application

---

[11]    This rule has been applied by courts nationwide in the context of consumer claims.  *See In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1201-02 (10th Cir. 2016) (same for agreement between cable provider and consumers); *Kristian v. Comcast Corp.*, 446 F.3d 25, 32-35 (1st Cir. 2006) (in agreement between cable provider and consumers, applying broad arbitration provision to claims arising before the agreement was executed); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 551 (S.D.N.Y. 2018) (claims arising in 2009 subject to arbitration where plaintiff agreed to arbitration provision in 2011 and 2015 covering "any dispute, claim or controversy…"); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 407 (S.D.N.Y. 2003) (in agreement between bank and consumers, applying arbitration provision encompassing "[a]ny dispute, claim, or controversy . . . arising out of or relating to this Agreement, your Account, or the validity or scope of any provision of this Agreement" to alleged statutory violations "prior to [the consumer's] acceptance of the . . . cardholder agreement); *In re Universal Service Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1123-24 (D. Kan. 2003) (same for agreement between telephone service provider and customers).

discussed in the foregoing cases, and should be applied to require arbitration of Perlin's claims against all Defendants,[12] which were known to her at the time she executed the agreement. The provision applies to "any disputes between us," specifically stating the parties agree that "[a]ll controversies, claims, counterclaims, or other disputes arising between you and [Defendants] … will be resolved exclusively by final and binding arbitration." Jones Decl. ¶ 7, Ex. G at 5. Perlin agreed to this provision multiple times, including the day before joining this action by filing the *8AC*. In such a moment when Perlin's existing claims against Defendants must have been top of mind, it would do a great injustice to nevertheless release her from the binding agreement to arbitrate. The Terms to which she agreed numerous times apply to all disputes with Defendants, including those disputes that arose prior to her assent to the arbitration provision, and require that she resolve this dispute in arbitration.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, WSI respectfully requests that the Court issue an order granting the *Motion*, compelling arbitration of and dismissing without prejudice Counts One, Two, Three, Four, Five, and Six in their entirety and Count Seven as to Perlin and the putative Class.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated:  July 8, 2020        By        */s/ Alyssa M. Shauer*
                                                    P. CRAIG CARDON
                                                    ROBERT J. GUITE
                                                    BENJAMIN O. AIGBOBOH
                                                    ALYSSA M. SHAUER

                                                    *Attorneys for Defendants*

---

[12]      WSDTC and WSA may "… compel arbitration under arbitration clauses signed by their corporate parent[]… ." *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 990 (N.D. Cal. 1996).