SHEPPARD MULLIN RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal. Bar. No. 168646
ROBERT J. GUITE, Cal. Bar. No. 244590
BENJAMIN O. AIGBOBOH, Cal. Bar No. 268531
ALYSSA SONES, Cal. Bar No. 318359
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:     415.434.9100
Facsimile:      415.434.3947
Email:          ccardon@sheppardmullin.com
                rguite@sheppardmullin.com
                baigboboh@sheppardmullin.com
                asones@sheppardmullin.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| WILLIAM RUSHING and ELIZABETH PERLIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAMS-SONOMA, INC., a Delaware corporation, also d/b/a Williams-Sonoma, Williams-Sonoma Home, and Pottery Barn; WILLIAMS-SONOMA DTC, INC., a California corporation; WILLIAMS-SONOMA ADVERTISING, INC.,<br><br>Defendants. | Case No. 3:16-cv-01421-WHO<br><br>*Assigned to the Hon. William H. Orrick*<br><br>**CLASS ACTION**<br><br>**DEFENDANTS':**<br><br>**(1) NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF ELIZABETH PERLIN'S CLAIMS; AND**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><u>Hearing</u><br>Date:          June 1, 2022<br>Time:         2:00 p.m.<br>Courtroom:   2<br><br>Complaint Filed:    January 29, 2016<br>Action Removed:   March 23, 2016<br>8AC Filed:          June 5, 2020<br>Trial Date:         None Set |

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 1, 2022 at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 2 on the 17th floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable William H. Orrick presiding, Defendants Williams-Sonoma, Inc. ("**WSI**"), Williams-Sonoma DTC, Inc. ("**WSDTC**"), and Williams-Sonoma Advertising, Inc. ("**WSA**" and, with WSI and WSDTC, "**Defendants**") will and hereby do move the Court, pursuant to Fed. R. Civ. P. 56, for an order entering judgment of all claims asserted by Plaintiff Elizabeth Perlin ("**Perlin**") in the *Eighth Amended Class Action Complaint* ("***8AC***").

*Defendants' Motion for Summary Judgment of Perlin's Claims* ("***Motion***") is made on the following grounds.  Perlin's claims for violation of California's Consumer Legal Remedies Act, codified at Cal. Civ. Code §§ 1750, *et seq.* ("**CLRA**"), violation of California's False Advertising Law, codified at Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("**FAL**"), violation of California's Unfair Competition Law, codified at Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("**UCL**"), and unjust enrichment, each of which arises from Perlin's alleged purchases in January 2011, are barred by the applicable three- and four-year statutes of limitations.

This *Motion* is based on this *Notice*, the accompanying *Memorandum of Points and Authorities*, the *Declaration of Jana Dean* ("***Jean Declaration***"), *Declaration of P. Craig Cardon* ("***Cardon Declaration***"), all pleadings, papers and other documentary materials in the Court's file for this action, all matters of which this Court may or must take judicial notice, and any other matters the Court may consider.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated:  April 18, 2022                    By _____
                                                              */s/ P. Craig Cardon*
                                                   P. CRAIG CARDON
                                                   ROBERT J. GUITE
                                                   BENJAMIN O. AIGBOBOH
                                                   ALYSSA SONES

                                                   *Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF ISSUES TO BE DECIDED ...................................................2

III. UNDISPUTED FACTS .......................................................................................2

    A. Perlin's January 19, 2011 And January 28, 2011 Purchases Of The PB Classic 400-Thread-Count Sheet Set and PB Classic 400-Thread-Count Extra Pillowcases ...........................................................................................2

    B. Relevant Procedural History ......................................................................4

        1. Rushing Files The *Class Action Complaint* In January 2016 And, Following Dismissal Motions, The *Seventh Amended Class Action Complaint* In March 2017 ..............................................................4

        2. Defendants' *Motion For Summary Judgment* And Related Proceedings ........................................................................................4

        3. Plaintiffs File The *8AC* And Defendants Answer .........................5

IV. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT ...............6

V. THE *MOTION* SHOULD BE GRANTED .........................................................7

    A. Perlin's Claims Are Facially Barred By The Statutes Of Limitations ......................8

    B. Perlin Cannot Satisfy Her Burden Of Establish A Genuine Issue Of Fact Regarding An Exception To The Statutes Of Limitations .......................................10

        1. Perlin Cannot Meet Her Burden With Respect To The Discovery Rule .....................................................................................................10

            a. The Evidence Establishes That Perlin Was On Inquiry Notice In 2011 .............................................................................11

            b. Perlin Failed To Conduct A Reasonable Investigation Of All Potential Causes Of Her Injury ...................................................13

        2. Perlin Cannot Meet Her Burden With Respect To Fraudulent Concealment Tolling ...........................................................................15

            a. There Is No Evidence Of An Affirmative Act By WSI To Mislead Perlin ...........................................................................15

            b. The Undisputed Evidence Demonstrates That Perlin Had, At Least, Constructive Knowledge ..................................................18

            c. There Is No Evidence Of Diligence, Reasonable Or Otherwise, By Perlin ..................................................................18

VI. CONCLUSION ...................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Allen v. Similasan Corp.*
  96 F. Supp. 3d 1063 (S.D. Cal. 2015) .................................................................................. 18

*American Pipe & Constr. Co. v. Utah*
  414 U.S. 538 (1974) ............................................................................................................. 13

*Anagnostellis v. Pitney Bowes Inc.*
  2013 U.S. Dist. LEXIS 188275 (C.D. Cal. Mar. 5, 2013) ...................................................... 7

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) ............................................................................................................... 6

*In re Animation Workers Antitrust Litig.*
  87 F. Supp. 3d 1175 (N.D. Cal. 2015) ................................................................................. 15

*Apple Inc. v. Allan & Assocs. Ltd.*
  445 F. Supp. 3d 42 (N.D. Cal. 2020) ................................................................................... 15

*Aryeh v. Canon Bus. Solutions, Inc.*
  55 Cal. 4th 1185 (2013) ............................................................................................. 8, 10, 15

*Beasley v. Lucky Stores, Inc.*
  2020 U.S. Dist. LEXIS 13211 (N.D. Cal. Jan. 24, 2020) ..................................................... 16

*Beasley v. Lucky Stores, Inc.*
  400 F. Supp. 3d 942 (N.D. Cal. 2019) ................................................................................... 9

*Bierman v. IBM*
  2012 U.S. Dist. LEXIS 19034 (N.D. Cal. Feb. 15, 2012) ...................................................... 7

*Bronson v. Samsung Elecs. Am., Inc.*
  2018 U.S. Dist. LEXIS 189995 (N.D. Cal. Nov. 6, 2018) ......................................... 9, 10, 12

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986) ............................................................................................................... 6

*China Agritech, Inc. v. Resh*
  138 S. Ct. 1800 (2018) ......................................................................................................... 13

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*
  858 F.2d 499 (9th Cir. 1988) ............................................................................................... 15

*Contour IP Holding, LLC v. GoPro, Inc.*
  2022 U.S. Dist. LEXIS 38742 (N.D. Cal. Mar. 4, 2022) ................................................... 6, 7

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*
    2015 U.S. Dist. LEXIS 84152 (N.D. Ill. June 29, 2015) ........................................... 13

*De Los Reyes v. Ruchman & Assocs.*
    2014 U.S. Dist. LEXIS 122790 (N.D. Cal. Sep. 2, 2014) .......................................... 16

*Easter v. Am. W. Fin.*
    381 F.3d 948 (9th Cir. 2004) ..................................................................................... 16

*Eshun v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.*
    *Workers Int'l Union, AFL-CIO, CLC, Local 17*
    2020 U.S. Dist. LEXIS 234671 (E.D. Cal. Dec. 14, 2020) ....................................... 15

*Ferranti v. Hewlett-Packard Co.*
    2015 U.S. Dist. LEXIS 121598 (N.D. Cal. Sept. 10, 2015)........................... 10, 11, 12

*Fierro v. Landry's Restaurant Inc.*
    32 Cal. App. 5th 276 (2019) ...................................................................................... 13

*Fox v. Ethicon Endo-Surgery, Inc.*
    35 Cal. 4th 797 (2005) ............................................................................................... 13

*Francisco v. Emeritus Corp.*
    2018 U.S. Dist. LEXIS 226456 (C.D. Cal. Jan. 10, 2018) ........................................ 13

*Garcia v. Coleman*
    2008 U.S. Dist. LEXIS 68672 (N.D. Cal. Sep. 8, 2008) .............................................. 7

*Garrison v. Oracle Corp.*
    159 F. Supp. 3d 1044 (N.D. Cal. 2016) ............................................................... 15, 18

*Godhigh v. Savers, LLC*
    2016 U.S. Dist. LEXIS 119254 (N.D. Cal. Sep. 2, 2016) ............................................ 9

*Gonsalves v. Kaiser Sand & Gravel Co.*
    1994 U.S. Dist. LEXIS 4456 (N.D. Cal. Mar. 24, 1994) ..................................... 16, 17

*Hayes v. Martinez*
    2022 U.S. Dist. LEXIS 61971 (N.D. Cal. Apr. 1, 2022) .............................................. 6

*Hendrix v. Novartis Pharm. Corp.*
    975 F. Supp. 2d 1100 (C.D. Cal. 2013) ............................................................... 10, 13

*Hexcel Corp. v. Ineos Polymers, Inc.*
    681 F.3d 1055 (9th Cir. 2012) ................................................................................... 15

*IV Solutions, Inc. v. Conn. Gen. Life. Ins. Co.*
    2015 U.S. Dist. LEXIS 181214 (C.D. Cal. Apr. 9, 2015) .......................................... 15

*Jaeger v. Howmedica Osteonics Corp.*
    2016 U.S. Dist. LEXIS 16493 (N.D. Cal. Feb. 10, 2016).................................................. 16

*Johnson v. Henderson*
    314 F.3d 409 (9th Cir. 2002) ........................................................................................ 16

*Jolly v. Eli Lilly & Co.*
    44 Cal. 3d 1103 (1988).......................................................................................... 10, 14

*Jones v. Nutiva, Inc.*
    2016 U.S. Dist. LEXIS 129898 (N.D. Cal. Sep. 22, 2016) ...................................... 8

*Josten v. Rite Aid Corp.*
    2018 U.S. Dist. LEXIS 198124 (S.D. Cal. Nov. 20, 2018) ...................................... 8

*Kang v. Wells Fargo Bank, N.A.*
    2018 U.S. Dist. LEXIS 47719 (S.D. Cal. Mar. 22, 2018) ...................................... 16

*Keenan v. Allan*
    91 F.3d 1275 (9th Cir. 1996) .......................................................................................... 6

*Keilholtz v. Lennox Hearth Prods.*
    2009 U.S. Dist. LEXIS 81108 (N.D. Cal. Sept. 8, 2009)........................................ 8

*Knowles v. Superior Court*
    118 Cal. App. 4th 1290 (2004) ................................................................................ 10

*Lierboe v. State Farm Mut. Auto Ins. Co.*
    350 F.3d 1018 (9th Cir. 2003) ...................................................................................... 9

*Lukovsky v. City & Cnty. of San Francisco*
    535 F.3d 1044 (9th Cir. 2008) .................................................................................... 17

*Maine State Retirement Sys. v. Countrywide Fin. Corp.*
    722 F. Supp. 2d 1157 (C.D. Cal. 2010) .................................................................. 13

*Mangini v. Aerojet-General Corp.*
    230 Cal. App. 3d 1125 (1991) ................................................................................... 11

*Mark K. v. Roman Catholic Archbishop*
    67 Cal. App. 4th 603 (1998) ...................................................................................... 16

*Marshall v. PH Beauty Labs, Inc.*
    2015 U.S. Dist. LEXIS 68636 (C.D. Cal. May 27, 2015)................................. 11, 14

*McCarn v. HSBC USA, Inc.*
    2012 U.S. Dist. LEXIS 162257 (E.D. Cal. Nov. 9, 2012) .................................... 16

*MGA Entm't, Inc. v. Mattel, Inc.*
    41 Cal. App. 5th 554 (2019) ...................................................................................... 18

*Mills v. Forestex Co.*
   108 Cal. App. 4th 625 (1993)...................................................................................12

*Norgart v. Upjohn Co.*
   21 Cal. 4th 383 (1999)..................................................................................8, 9, 10

*Palmer v. Stassinos*
   236 F.R.D. 460 (N.D. Cal. 2006) .............................................................................13

*Peterson v. Sutter Med. Found.*
   2022 U.S. Dist. LEXIS 19241 (N.D. Cal. Feb. 2, 2022)..........................................15

*Plumlee v. Pfizer, Inc.*
   2014 U.S. Dist. LEXIS 23172 (N.D. Cal. Feb. 21, 2014).......................................8, 9

*Purdum v. Holmes*
   187 Cal. App. 4th 916 (2010)..................................................................................10

*In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*
   2021 U.S. Dist. LEXIS 90200 (D.D.C. May 12, 2021) ..............................................7

*Ries v. Ariz. Bevs. United States LLC, Hornell Brewing Co.*
   287 F.R.D. 523 (N.D. Cal. 2012) ...............................................................................9

*Rustico v. Intuitive Surgical, Inc.*
   424 F. Supp. 3d 720 (N.D. Cal. 2019) .......................................................................7

*Rutherford v. FIA Card Servs.*
   2012 U.S. Dist. LEXIS 164287 (C.D. Cal. Nov. 16, 2012) ........................................9

*Samp v. JPMorgan Chase Bank, N.A.*
   2013 U.S. Dist. LEXIS 67958 (C.D. Cal. May 7, 2013)...........................................17

*Santa-Maria v. Pac. Bell*
   202 F.3d 1170 (9th Cir. 2000)..................................................................................16

*Simpson v. Robert Bosch Tool Corp.*
   2014 U.S. Dist. LEXIS 29965 (N.D. Cal. Mar. 7, 2014) ......................................8, 11

*Spears v. First Am. Eappraiseit*
   2013 U.S. Dist. LEXIS 58292 (N.D. Cal. Apr. 23, 2013)........................................18

*Thornhill Publ'g Co., Inc. v. GTE Corp.*
   594 F.2d 730 (9th Cir.1979).......................................................................................7

*Timboe v. Clark*
   2022 U.S. Dist. LEXIS 61045 (N.D. Cal. Mar. 31, 2022) .......................................15

*Wakefield v. Wells Fargo & Co.*
   2014 U.S. Dist. LEXIS 144142 (N.D. Cal. Oct. 9, 2014) ..........................................8

*Walters v. Edgar*
    163 F.3d 430 (7th Cir. 1998) ................................................................................. 13

*In re Williams-Sonoma, Inc.*
    947 F.3d 535 (9th Cir. 2020) ................................................................................... 5

*Wolf v. Travolta*
    167 F. Supp. 3d 1077 (C.D. Cal. 2016) .................................................................. 7

*Wu v. Sunrider Corp.*
    2018 U.S. Dist. LEXIS 227591 (C.D. Cal. May 22, 2018) ................................. 8, 9

*Yetter v. Ford Motor Co.*
    428 F. Supp. 3d 210 (N.D. Cal. 2019) ................................................................. 18

*Yumul v. Smart Balance, Inc.*
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ................................................................. 8

<u>Statutes</u>

Cal. Bus. & Prof. Code § 17208 ................................................................................... 8

Cal. Civ. Code § 1783 .................................................................................................. 8

Cal. Code Civ. P. § 338(a) ........................................................................................... 8

Cal. Code Civ. P. § 338(d) ........................................................................................... 8

Class Action Fairness Act ........................................................................................... 8

<u>Other Authorities</u>

Fed. R. Civ. P. 56(a) .................................................................................................... 6

Fed. R. Civ. P. 56(c) .................................................................................................... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Elizabeth Perlin purchased a set of sheets and extra pillowcases from WSI on January 19, 2011, expecting the bedding to be high quality and durable because it was 400-thread-count.  Perlin's expectations were not met.  The bedding ripped within mere days of Perlin's first use of it and before she even washed it.  Despite the immediate ripping of sheets she expected to be durable, Perlin purchased an identical set of sheets and extra pillowcases nine days after her first purchase.  Again, Perlin's expectations of quality and durability were not met.  Like the first sheets, Perlin's second purchase ripped shortly after Perlin – who, followed all care instructions and took extra precautions to avoid damaging the bedding – began using it in the ordinary normal and manner.  Despite the fact Perlin *twice* experienced immediate failure of bedding she purchased because she believed it would last, Perlin waited nearly a *decade* to pursue her CLRA, FAL, UCL, and unjust enrichment claims against Defendants.

Perlin's lengthy delay in pursuing her claims dooms them.  It cannot be disputed that Perlin filed suit well after the applicable three-year (FAL, CLRA, unjust enrichment) and four-year (UCL) statutes of limitations expired.  Because Perlin's claims are facially-barred by the statutes of limitations, Perlin bears the burden of proving, with evidence, that there is a genuine issue of material fact with respect to the two statutes of limitations exceptions – the discovery rule and fraudulent concealment doctrine – that she alleges apply.  As previewed herein, Perlin will not be able to meet her burden.[1]  Perlin cannot invoke either doctrine for a number of reasons including her failure to introduce evidence of a reasonable investigation (discovery rule) or any conduct by Defendants above and beyond the alleged misrepresentations giving rise to her claims (fraudulent concealment).  Even if Perlin could invoke either doctrine, neither would save her

---

[1]  As Perlin bears the burden of proving an exception to the statute of limitations, this *Motion* merely attempts to anticipate the arguments she will make to try do so.  However, because Perlin bears the burden of proving an exception to the statutes of limitation, Defendants' reply will be of greater importance than it would be if Defendants bore the burden of proof.  As such, Defendants ask the Court to pay particular attention to their reply, as it will be Defendants' first chance to address Perlin's attempt to meet her burden.

claims, as she was clearly on inquiry notice of alleged wrongdoing approximately a decade before she filed the *8AC*. The *Motion* should be granted.

## II.      STATEMENT OF ISSUES TO BE DECIDED

The *Motion* presents the following issue to be decided (L.R. 7-4(a)(3)):   whether Perlin's CLRA, FAL, UCL, and unjust enrichment claim are barred by the statutes of limitations.

## III.      UNDISPUTED FACTS

### A.      Perlin's January 19, 2011 And January 28, 2011 Purchases Of The PB Classic 400-Thread-Count Sheet Set and PB Classic 400-Thread-Count Extra Pillowcases

In January 2011, Perlin decided that she wanted to purchase new bedding.   Dkt. 217 ¶ 172; *Cardon Decl.* ¶ 4, Ex. C at 43:5-18.   Perlin was looking for "luxurious, high quality bedding," and, "[l]ike most customers, … equated higher thread count with high quality, fine bedding."   Dkt. 217 ¶ 172; *see also Cardon Decl.* ¶ 4, Ex. C at 57:5-11, 57:17-24.   Indeed, Perlin believed that there was a direct relationship between bedding's thread count and its durability.   *Cardon Decl.* ¶ 4, Ex. C at 39:17-40:21, 57:17-24; *see also* Dkt. 217 ¶ 2 ("[b]edding with higher thread counts [is] more durable").

Thus, Perlin, aware that WSI sold "purportedly high thread count bedding" (*i.e.*, "bedding labeled as having a thread count of 350 or greater" and that Perlin believed would be, *inter alia*, high quality and durable), visited WSI's Pottery Barn website on January 19, 2011 to review bedding options.   Dkt. 217 ¶¶ 9, 171, 173.   After reviewing the options, Perlin decided to purchase and purchased Pottery Barn-branded "PB Classic 400-Thread-Count Sheet Set" and "PB Classic 400-Thread-Count Extra Pillowcases" (the "**PB Classic Bedding**").   Dkt. 217 ¶¶ 173-74; *Cardon Decl.* ¶ 4, Ex. C at 49:6-51:7.   In doing so, Perlin relied on the website's descriptions of the PB Classic Bedding "as '400-thread count' at least three times" and "expected the [PB Classic Bedding] to be 400-thread count, high quality, soft, … luxurious[,]" and "something that would last."   Dkt. 217 ¶¶ 174-80; *Cardon Decl.* ¶ 4, Ex. C at 55:5-57:24, 58:24-59:13.   Perlin, however, quickly learned that the PB Classic Bedding was "not as advertised."   Dkt. 217 ¶ 180.

When Perlin received the PB Classic Bedding she began using it immediately.   Dkt. 217 ¶ 179; *Cardon Decl.* ¶ 4, Ex. C at 73:4-17, 74:24-75:9.   After using of the bedding in a "normal and

1  ordinary" fashion for about a week, Perlin removed the sheets to wash them for the first time.

2  *Cardon Decl.* ¶ 4, Ex. C at 74:24-75:9, 76:6-15.  It was at this point that Perlin noticed a tear in the

3  bottom (*i.e.*, fitted) sheet – a tear that was not there when Perlin put the new sheets on her bed a

4  week earlier.  *Id.* at 76:21-77:21, 79:3-19; Dkt. 217 ¶ 180.  Perlin then washed the sheets

5  (following all care instructions and even air drying them to avoid damaging them), patched the

6  sheets, and remade her bed with the patched sheets.  *Cardon Decl.* ¶ 4, Ex. C at 79:16-80:13.

7  Given that the sheets – again, sheets she expected to be durable – ripped so quickly, Perlin was

8  "curious why [the sheets] would have ripped." *Id.* at 81:4-7.

9      Although Perlin was "disappointed" that the PB Classic Bedding she purchased on January

10  19, 2011 had ripped, and despite the fact she had patched it, Perlin "bought a second…PB Classic

11  400-Thread Count Sheet Set and PB Classic 400-Thread Count Extra Pillowcases" on January 28,

12  2011 – the same bedding she had purchased nine days earlier.  Dkt. 217 ¶ 181; *Cardon Decl.* ¶ 4,

13  Ex. C at 84:12-85:2.  Perlin "immediately started using" the second set of bedding "when [it]

14  arrived."  Dkt. 217 ¶ 183; *Cardon Decl.* ¶ 4, Ex. C at 95:24-96:19.  Perlin "followed all care

15  instructions, … air-dried the sheets to avoid damaging them, [and] used the bedding for its

16  intended purpose."  Dkt. 217 ¶ 183; *Cardon Decl.* ¶ 4, Ex. C at 75:10-23.  Despite this, like the

17  bedding Perlin purchased on January 19, the bottom sheet of the PB Classic Bedding purchased on

18  January 28, 2011 "started ripping shortly" – *i.e.*, less than a year – "after she began using [it]."

19  Dkt. 217 ¶ 183; *Cardon Decl.* ¶ 4, Ex. C at 97:23-98:8.  Although she was "extremely unhappy

20  with the bedding," Perlin patched the tear and continued using it.  Dkt. 217 ¶ 184; *Cardon Decl.* ¶

21  4, Ex. C at 101:13-102:6.  Perlin "eventually quit using" the bedding she purchased on January 28,

22  2011.  Dkt. 217 ¶ 184; *Cardon Decl.* ¶ 4, Ex. C at 114:18-115:3.

23      Perlin contacted WSI, stated that the sheets ripped, and asked if there was "something

24  wrong with the[m]." *Cardon Decl.* ¶ 4, Ex. C at 94:19-95:5, 103:5-18.  Perlin believes she also

25  asked for a replacement or credit.  *Id.* at 95:6-15.  At no point did she look closely at her sheets to

26  count threads or undertake any other investigation to further confirm her suspicions or obtain a

27  remedy (though she has a magnifying glass with which to do so).  *Id.* at 66:22-67:22.  Instead,

28  after storing the ripped sheets for a few years, she turned them into a Halloween costume, and then

1   disposed of them.  *Id.* at 110:3-5, 112:20-113:9.

2   **B.**     **Relevant Procedural History**

3          **1.**      **Rushing Files The *Class Action Complaint* In January 2016 And, Following**

4                  **Dismissal Motions, The *Seventh Amended Class Action Complaint* In March**

5                  **2017**

6          Plaintiff William Rushing ("**Rushing**") filed the *Class Action Complaint* and *First*

7   *Amended Class Action Complaint* in California state court on January 29, 2016 and March 8,

8   2016, respectively.  Dkt. 1 at 1:13-15.  Defendants removed to this Court.  *Id.*  Following removal,

9   Defendants moved to dismiss the *First Amended Class Action Complaint*, and the subsequently

10  filed *Third Amended Class Action Complaint* (Dkt. 22) and *Fifth Amended Class Action*

11  *Complaint* (Dkt. 49).  Dkt. 12, 26, 50.  After the Court entered orders granting in part and denying

12  in part the motions to dismiss (Dkt. 36, 64), Rushing filed the *Sixth Amended Class Action*

13  *Complaint* on March 20, 2017 and the *Seventh Amended Class Action Complaint* on April 4, 2017.

14  Dkt. 74, 81.  Defendants answered the *Seventh Amended Class Action Complaint* on April 10,

15  2017.  Dkt. 83.

16         **2.**      **Defendants' *Motion For Summary Judgment* And Related Proceedings**

17         On April 10, 2018, Defendants filed a *Motion for Summary Judgment* on the grounds that

18  Rushing – a Kentucky resident that made his purchase in Kentucky – lacked standing to pursue the

19  California CLRA, UCL, FAL and unjust enrichment claims he asserted.  Dkt. 119.  On October

20  24, 2018, the Court entered its *Order on Pending Motions*, in which it found Rushing could not

21  pursue the California claims.  Dkt. 170.  The *Order on Pending Motions* required that Rushing

22  elect whether he intended to pursue claims under Kentucky law.  *Id.*  Rushing filed a notice stating

23  that he intended to pursue claims under Kentucky law on November 13, 2018.  Dkt. 178.  No

24  amended complaint was filed.  The *Order on Pending Motions* also required that Defendants

25  produce a list of California consumers that had purchased the bedding products at issue in this

26  action, so that Plaintiff could attempt to locate a California resident to join the case as a named

27  plaintiff to pursue claims under California law.  Dkt. 170.

28

1    Defendants sought leave to file a motion for reconsideration of the *Order on Pending*

2  *Motions* and certification of the order for immediate appeal (Dkt. 175, 184), which the Court

3  denied on December 17, 2018 (Dkt. 183) and February 25, 2019 (Dkt. 193).[2]   Defendants then

4  sought a writ of mandamus from the Ninth Circuit on March 5, 2019.   *In re: Williams-Sonoma,*

5  *Inc., et al.*, No. 19-70522, *Petition for Writ of Mandamus*, Dkt. 1 (9th Cir. Mar. 5, 2019); Dkt. 194.

6  On April 5, 2019, the Ninth Circuit stayed the portion of the *Order on Pending Motions* requiring

7  Defendants to produce customer information and required an answer to the writ petition.   Dkt.

8  195.   Following his request for an extension of the time to answer (Dkt. 196), Rushing filed his

9  answer to the writ petition on May 7, 2019 (*In re: Williams-Sonoma, Inc.,* No. 19-70522, *Real*

10  *Party in Interest-Plaintiff's Answer*, Dkt. 7 (9th Cir. Mar. 5, 2019)).

11    On January 13, 2020, the Ninth Circuit granted Defendants' writ petition and vacated the

12  portion of the *Order on Pending Motions* requiring Defendants to produce their California

13  customer information to Rushing.   *In re Williams-Sonoma, Inc.*, 947 F.3d 535 (9th Cir. 2020);

14  Dkt. 204.   On February 26, 2020 Rushing filed a petition for rehearing *en banc* (*In re: Williams-*

15  *Sonoma, Inc.*, No. 19-70522, *Petition for Rehearing En Banc*, Dkt. 40 (9th Cir. Mar. 5, 2019)),

16  which the Ninth Circuit denied on March 30, 2020 (Dkt. 206).

17    **3.    Plaintiffs File The *8AC* And Defendants Answer**

18    Following an April 23, 2020 case management conference (Dkt. 212), Plaintiffs filed the

19  *8AC* on June 5, 2020.   Dkt. 217.   In it, Perlin alleges that she was deceived about the PB Classic

20  Bedding's thread count when she purchased it on January 19, 2011 and January 28, 2011 because

21  the PB Classic Bedding "contains approximately 204 threads per square inch" when measured

22  under the ASTM International's D3775-12 test method.   *Id.* ¶¶ 76, 185-86.   Based on these

---

[2]  Although Defendants maintained that discovery of ***any*** customer information was impermissible
for the purpose of seeking a new plaintiff to pursue California claims, given the *Order on Pending*
*Motions* and subsequent order denying leave to seek reconsideration, Defendants produced
customer information for the California customers that had complained about the bedding
products at issue before the Ninth Circuit issued its order staying the *Order on Pending Motions*.
Dkt. 177 at 5-7; Dkt. 187 at 5; Dkt. 189 at 2:18-3:5.   Perlin was on this list of four complaining
customers.   *Cardon Decl.* ¶ 6, Ex. E.   It was this discovery – discovery the Ninth Circuit found to
be improper – that led Rushing's counsel to Perlin and resulted in her being added as an plaintiff.

allegations, Perlin asserts CLRA, FAL, UCL, and unjust enrichment claims, individually and on behalf of all persons in the United States (other than Kentucky residents) that purchased the specifically-defined "Bedding Products" from WSI.   *Id*. ¶¶ 19, 146-147, 190-303.   Following arbitration and dismissal motions, Defendants answered the *8AC* on December 14, 2021, asserting several affirmative defenses including a statute of limitations defense.   Dkt. 262 at 42:12-17.

## IV.   <u>STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT</u>

"Summary judgment on a claim or defense is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"   *Contour IP Holding, LLC v. GoPro, Inc.*, 2022 U.S. Dist. LEXIS 38742, at *8 (N.D. Cal. Mar. 4, 2022) (Orrick, J.) (quoting Fed. R. Civ. P. 56(a)).   "Material facts are those which may affect the outcome of the case."   *Hayes v. Martinez*, 2022 U.S. Dist. LEXIS 61971, at *8 (N.D. Cal. Apr. 1, 2022) (Orrick, J.) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party."   *Id*. (citing *Anderson*, 477 U.S. at 248).

"The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact."   *Hayes*, 2022 U.S. Dist. LEXIS 61971, at *8 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).   "Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."   *Id*.   "On an issue for which the opposing party by contrast will have the burden of proof at trial …, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case."   *Id*. (quoting *Celotex*, 477 U.S. at 325).   "Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial."   *Id*. (citing Fed. R. Civ. P. 56(c)).   "The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment."   *Id*. at *9 (citing *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)).   The nonmoving party cannot discharge its burden

with speculation or conclusions.  *See, e.g., Contour IP*, 2022 U.S. Dist. LEXIS 38742, at *9 (citing *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979)).

## V.   THE *MOTION* SHOULD BE GRANTED

"Because the statute of limitations is an affirmative defense, defendants bear the initial burden on a motion for summary judgment of demonstrating that plaintiffs' claims are time barred." *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1091 (C.D. Cal. 2016); *see also Anagnostellis v. Pitney Bowes Inc.*, 2013 U.S. Dist. LEXIS 188275, at *6 (C.D. Cal. Mar. 5, 2013) (at summary judgment, "[d]efendant has [the] initial burden of establishing that the action is facially barred by the applicable … statute of limitations").  "[I]f defendants establish that plaintiffs' claims are time barred absent application of an equitable exception, plaintiffs bear the burden of demonstrating the applicability of any such exception[.]"  *Wolf*, 167 F. Supp. 3d at 1092; *see also Garcia v. Coleman*, 2008 U.S. Dist. LEXIS 68672, at *13 (N.D. Cal. Sep. 8, 2008) ("Where … plaintiff contends that the statute of limitations is not a bar based on the discovery rule or equitable tolling, the plaintiff bears the burden of proving the applicability of such.").  "Accordingly, to defeat summary judgment based on the statute of limitations where the limitations period would otherwise have run, [a plaintiff] must establish a genuine dispute of material fact with respect to the discovery rule and/or" fraudulent concealment tolling.  *Garcia*, 2008 U.S. Dist. LEXIS 68672, at **13-14.[3]

---

[3]  *See also In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, 2021 U.S. Dist. LEXIS 90200, at *54 (D.D.C. May 12, 2021) (at summary judgment, one defendant proves the statute of limitations has run, "the burden shifts back to a plaintiff who invokes an exception to the statute of limitations"); *Rustico v. Intuitive Surgical, Inc.*, 424 F. Supp. 3d 720, 737 (N.D. Cal. 2019) (at summary judgment, "[i]t is the burden of the plaintiff to show a triable issue of fact under the discovery rule and the corollary rule of fraudulent concealment when the applicable statute of limitations would otherwise bar the plaintiff's claims") (internal quotations omitted); *Bierman v. IBM*, 2012 U.S. Dist. LEXIS 19034, at *18 (N.D. Cal. Feb. 15, 2012) ("because [plaintiff] will have the burden of proof at trial to establish that he is entitled to the benefit of the discovery rule, he can defeat summary judgment only by coming forward with evidence establishing a triable issue of fact with regard to whether the discovery rule applies"); *Anagnostellis*, 2013 U.S. Dist. LEXIS 188275, at *7 (finding that, if defendant meets its initial burden, "the burden … shifts to [p]laintiff to establish that there is sufficient evidence on the record from which a reasonable trier of fact could conclude that he is entitled to invoke the delayed discovery rule").

1    A.    **Perlin's Claims Are Facially Barred By The Statutes Of Limitations**

2    "In a federal diversity action brought under state law, the state statute of limitations

3    governs." *Simpson v. Robert Bosch Tool Corp.*, 2014 U.S. Dist. LEXIS 29965, at \*5 (N.D. Cal.

4    Mar. 7, 2014) (Orrick, J.); *see also Josten v. Rite Aid Corp.*, 2018 U.S. Dist. LEXIS 198124, at \*7

5    (S.D. Cal. Nov. 20, 2018); *Wakefield v. Wells Fargo & Co.*, 2014 U.S. Dist. LEXIS 144142, at

6    \*\*26-27 (N.D. Cal. Oct. 9, 2014) (courts with Class Action Fairness Act jurisdiction apply forum

7    state's law to determine the "applicable statute of limitations" and "whether the limitations period

8    should be equitably tolled").   In California, the statute of limitations is three years for FAL,

9    CLRA, and unjust enrichment claims, and four years for UCL claims.  Cal. Bus. & Prof. Code §

10   17208; Cal. Civ. Code § 1783; Cal. Code Civ. P. §§ 338(a), (d); *Jones v. Nutiva, Inc.*, 2016 U.S.

11   Dist. LEXIS 129898, at \*26 (N.D. Cal. Sep. 22, 2016); *Plumlee v. Pfizer, Inc.*, 2014 U.S. Dist.

12   LEXIS 23172, at \*\*19-21 (N.D. Cal. Feb. 21, 2014); *Yumul v. Smart Balance, Inc.*, 733 F. Supp.

13   2d 1117, 1130 (C.D. Cal. 2010); *Keilholtz v. Lennox Hearth Prods.*, 2009 U.S. Dist. LEXIS

14   81108, at \*8 (N.D. Cal. Sept. 8, 2009).[4]

15   "[A] plaintiff must bring a cause of action within the limitations period applicable thereto

16   after accrual of the cause of action." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999).  In other

17   words, "[u]nder California law, 'the limitations period, the period in which a plaintiff must bring

18   suit or be barred, runs from the moment a claim accrues.'"   *Plumlee*, 2014 U.S. Dist. LEXIS

19   23172, at \*21 (quoting *Aryeh v. Canon Bus. Solutions, Inc.,* 55 Cal. 4th 1185, 1191 (2013)). "The

20   'last element' accrual rule provides that absent any equitable exception, a claim accrues upon the

21   occurrence of the last element essential to the cause of action." *Id*. at \*\*21-23 (internal quotations

22   omitted).   "[A] cause of action under" the UCL, FAL, or CLRA "accrues when a defendant

23   misrepresents or omits material information regarding a product or service and a consumer makes

24

25

26   [4]  WSI assumes for this *Motion* that a three-year statute of limitations applies to Perlin's unjust
     enrichment claims.  *See Wu v. Sunrider Corp.*, 2018 U.S. Dist. LEXIS 227591, at \*13 (C.D. Cal.
27   May 22, 2018) (noting that unjust enrichment claims may be subject to a two-year or three-year
     statute of limitations where the claim is based on alleged fraud or mistake).
28

a purchase as a result of such deceptive practices."  *Id.* at \*23.[5]  Similarly, an unjust enrichment

claim accrues when plaintiff provides the alleged benefit to defendant.  *See Wu*, 2018 U.S. Dist.

LEXIS 227591, at \*14, *aff'd*, 793 Fed. Appx. 507 (9th Cir. 2019).

Here, Perlin's FAL, CLRA, unjust enrichment, and UCL claims accrued on January 19,

2011 and January 28, 2011 – when she reviewed the allegedly deceptive website page and

purchased the PB Classic Bedding.  Dkt. 217 ¶¶ 173-184; *see also Bronson*, 2018 U.S. Dist.

LEXIS 189995, at \*10; *Wu*, 2018 U.S. Dist. LEXIS 227591, at \*14; *Ries,* 287 F.R.D. at 534.  The

statutes of limitation for Perlin's claims arising from her January 19, 2011 purchase expired on

January 19, 2014 (FAL, CLRA, unjust enrichment) and January 19, 2015 (UCL).  The limitations

periods for claims arising from her January 28, 2011 purchase expired on January 28, 2014 (FAL,

CLRA, unjust enrichment) and January 28, 2015 (UCL).  Perlin did not file suit until June 5, 2020.

ECF No. 217.  Her CLRA, FAL, UCL, and unjust enrichment claims are, therefore, facially barred

by the applicable statutes of limitations.[6]  That this is true cannot be disputed.  Indeed, Perlin did

not attempt to dispute that her claims are facially barred when opposing Defendants' motion to

dismiss her claims on statute of limitations grounds.  *See*, *generally*, Dkt. 230.

---

[5]  *See also Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 954 (N.D. Cal. 2019) (statute of
limitations on UCL, FAL, and CLRA labeling claims runs from purchase of product); *Bronson v.
Samsung Elecs. Am., Inc.*, 2018 U.S. Dist. LEXIS 189995, at \*10 (N.D. Cal. Nov. 6, 2018) (UCL
claim based on failure to disclose television defects accrued on the day plaintiff purchased
television); *Ries v. Ariz. Bevs. United States LLC, Hornell Brewing Co.,* 287 F.R.D. 523, 534
(N.D. Cal. 2012) (CLRA and FAL claims accrued, and limitations period began to run, when
plaintiff purchased allegedly mislabeled product); *Norgart*, 21 Cal. 4th at 397 ("The general rule
for defining the accrual of a cause of action sets the date as the time 'when, under the substantive
law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability
arises.'") (internal citation omitted).

[6]  Because Perlin's individual claims are time-barred, she "may not seek relief on behalf of
h[er]self or any other member of a purported class."  *Rutherford v. FIA Card Servs.*, 2012 U.S.
Dist. LEXIS 164287, at \*11 (C.D. Cal. Nov. 16, 2012) (citing *Lierboe v. State Farm Mut. Auto
Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003)); *see also Godhigh v. Savers, LLC*, 2016 U.S. Dist.
LEXIS 119254, at \*5 (N.D. Cal. Sep. 2, 2016) (Orrick, J.)

**B.**     **Perlin Cannot Satisfy Her Burden Of Establish A Genuine Issue Of Fact Regarding An Exception To The Statutes Of Limitations**

Because WSI has demonstrated that Perlin filed her claims outside of the applicable statutes of limitations, the burden shifts to Perlin to prove that there is triable issue of fact with regard to an exception to the statutes of limitations.  She will not be able to satisfy her burden.

**1.     Perlin Cannot Meet Her Burden With Respect To The Discovery Rule**

California's discovery rule is an exception to the statute of limitations which "'postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action.'"  *Ferranti v. Hewlett-Packard Co.*, 2015 U.S. Dist. LEXIS 121598, at **7-8 (N.D. Cal. Sept. 10, 2015) (quoting *Aryeh*, 55 Cal. 4th at 1192).[7]  Under the discovery rule, a cause of action accrues when a plaintiff:

> at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least "suspects…that someone has done something wrong" to him, "wrong" being used, not in any technical sense, but rather in accordance with its "lay understanding."

*Hendrix v. Novartis Pharm. Corp.*, 975 F. Supp. 2d 1100, 1106-07 (C.D. Cal. 2013) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397-98 (1999)) (emphasis in original).  Thus, inquiry notice does not require that a plaintiff "know the specific facts necessary to establish the cause of action" (*Norgart*, 21 Cal. 4th at (internal quotations omitted)) or "the specific causal mechanism by which ... she has been injured" (*Knowles v. Superior Court*, 118 Cal. App. 4th 1290, 1298 (2004)).  Instead, a claim accrues when a plaintiff has "notice or information of circumstances to put a reasonable person on inquiry" as to the injury, *i.e.*, when a reasonable person would believe "that someone has done something wrong to her."  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988).  "To invoke the discovery rule, a plaintiff must show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."

---

[7]  "The discovery rule's application to the CLRA is 'unsettled' inasmuch as no binding precedent exists addressing the issue."  *Bronson*, 2018 U.S. Dist. LEXIS 189995, at *13 n.3 (quoting *Purdum v. Holmes*, 187 Cal. App. 4th 916, 924 (2010)).  Nonetheless, Defendants assume for the purposes of this *Motion* only that the discovery rule applies to Perlin's CLRA claim.

*Simpson v. Robert Bosch Tool Corp.*, 2014 U.S. Dist. LEXIS 29965, at \*6 (N.D. Cal. Mar. 7, 2014) (Orrick, J.).

### a.   The Evidence Establishes That Perlin Was On Inquiry Notice In 2011

Absent an exception, Perlin's clams accrued in early 2011 when she purchased her first set of sheets.  Section V.A *supra*.  Perlin, however, alleges that her claims did not accrue until "April 21, 2015, at the earliest" because she "did not discover and did not have reason to discover [her] causes of action before" that date.  Dkt. 217 ¶ 144.[8]  Not only is this a misstatement of the discovery rule – the question is whether Perlin was on notice of facts that would give rise to a suspicion of wrongdoing not whether she had reason to "discover" her "causes of action" – it is belied by the undisputed evidence.

Here the evidence proves that Perlin purchased a sheet set she expected to be high quality and durable as a result of its advertised thread count, only to have it rip within a ***week*** of ordinary and normal use.  Section III.A *supra*.  These facts – immediate ripping of sheets a consumer purchased because they were expected to be high quality and durable based on the advertised thread count and that were used in normal conditions – are more than sufficient to lead a reasonable person to "at least suspect[s] that something wrong has been done to [her]." *Ferranti*, 2015 U.S. Dist. LEXIS 121598, at \*8 (internal quotations omitted); *see also Marshall v. PH Beauty Labs, Inc.*, 2015 U.S. Dist. LEXIS 68636, at \*\*1-6 (C.D. Cal. May 27, 2015); *Cardon Decl.* ¶ 4, Ex. C at 58:24-59:13 (Perlin would not "buy a 400-thread-court sheet with the assumption [that] it's only going to last a little while").[9]  As such, even if the discovery rule could apply, it would only delay accrual of the statute of limitations for claims arising from Perlin's January 19, 2011 by a week.

---

[8]  Perlin has disavowed the *8AC*'s April 21, 2015 discovery date as "a remnant of past complaints" that was included because accuracy was sacrificed for expediency.  Dkt. 230 at 21:21-25.

[9]  That Perlin subjectively "believed she ***may*** have done something wrong to cause the rip or that the rip was a fluke" (Dkt. 217 ¶ 181 (emphasis added); *see also Cardon Decl.* ¶ 4, Ex. C at 81:14-82:14) does not alter the analysis.  *See, e.g.*, *Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1150 (1991) (under the discovery rule, "[t]he limitations period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry….  Subjective suspicion is not required") (internal citations omitted).

Even if the fact that Perlin's initial PB Classic Bedding ripped immediately after she began using it in a normal manner was not sufficient to put a reasonable person on inquiry notice (it was), the PB Classic Bedding she purchased nine days later, again, starting ripping shortly after she began using it. *See* Section II.A *supra*. This occurred despite the fact that Perlin followed all care instructions, air dried the sheets to avoid damaging them, and used the bedding for its intended purpose. *Id.* The ripping of a ***second set of identical bedding*** – bedding purchased because the consumer believed it was high-quality and durable, that was cared for according to the care instructions, and that was used in normal conditions – constitutes information sufficient to a lead reasonable person to at least suspect that something wrong has been done to her. Thus, although a plaintiff need not be harmed twice to be put on notice of the first injury, the second tear represents the latest point at which Perlin's claims arising from both her January 19, 2011 purchase and January 28, 2011 purchase would have accrued. *See Cardon Decl.* ¶ 4, Ex. C at 117:10-17 ("Q. And it's the second [sheet set ripping] that made you realize, okay, this isn't a fluke? A. That's correct").[10] That Perlin does not recall exactly when the second sheet ripped does not forestall summary judgment. The *8AC* alleges that the sheets ripped "shortly" after Perlin began using them – a term Perlin assumed at deposition "likely" means "[l]ess than a year" (*i.e.*, sometime before January 28, 2012) but "guess[ed]" could be up to two years (*i.e.*, January 28, 2013). Dkt. 217 ¶ 180; *Cardon Decl.* ¶ 4, Ex. C at 98:9-100:7.[11] Perlin did not file suit under

---

[10] *See also Bronson*, 2018 U.S. Dist. LEXIS 189995, at *11 (even if first time red lines appeared on a television may not "alert suspicion that plaintiff had been wronged, the red lines appearing once again should have raised some suspicion"); *Ferranti*, 2015 U.S. Dist. LEXIS 121598, at **8-11 (noting that the earliest the CLRA limitations period could have begun was March 2009 when obtained a wireless printer and noticed its wireless function did not work and latest was September 2009, when plaintiff discovered the replacement printer he received in exchange for the first suffered from the same wireless function problem); *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 649 (1993) (noting that the siding "indisputably was warping and buckling, and the paint was peeling off, by the summer of 1993" and concluding that the duty of inquiry arose at that time "even if [plaintiff] lacked access or an opportunity to conduct an inspection").

[11] Despite these assumptions and guesses, Perlin repeatedly testified that she cannot recall when the second sheet set began to rip. *Cardon Decl.* ¶ 4, Ex. C at 98:9-100:7. Perlin, however, testified, definitively, that the sheets did not begin ripping more than three years after she started using them. *Id.* at 100:8-22.

1   June 5, 2020.  Dkt. 217.  Thus, even if it is assumed that the sheets ripped within the first two

2   years, Perlin's claims – which she first asserted on June 5, 2020 – would still be barred.[12]

3          **b.    Perlin Failed To Conduct A Reasonable Investigation Of All Potential**

4                 **Causes Of Her Injury**

5          "In order for the discovery rule to delay the accrual of a cause of action, the plaintiff bears

6   the burden of showing that he 'conduct[ed] a reasonable investigation of all potential causes of

7   [his] injury,' and failed to discover that the injury was wrongfully caused 'despite reasonable

8   diligence.'"  *Hendrix v. Novartis Pharm. Corp.*, 975 F. Supp. 2d 1100, 1107 (C.D. Cal. 2013)

9   (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005).  Perlin will not be able to

10  satisfy her burden of establishing a genuine issue of material fact with regard a reasonable

11  investigation of all sources of her injury.  In or around 2011, Perlin knew that two sheet sets she

---

12  [12]   To the extent Perlin intends to rely on Rushing's January 2016 filing of the *Class Action

13  Complaint* to toll the statute of limitations for her California claims (and she does not plead facts
    sufficient to establish such reliance), she cannot.  First, Perlin's statutes of limitations were not

14  tolled because they had already run.  *See Maine State Retirement Sys. v. Countrywide Fin. Corp.*,
    722 F. Supp. 2d 1157, 1166 (C.D. Cal. 2010).  Second, because Rushing lacked standing to pursue

15  claims under California law, "the filing of [the] purported class-action complaint d[id] not toll the
    statute of limitations for those who later seek to intervene as plaintiffs" such as Perlin.  *Palmer v.*

16  *Stassinos*, 236 F.R.D. 460, 465 (N.D. Cal. 2006) (citing *Walters v. Edgar*, 163 F.3d 430, 432 (7th

17  Cir. 1998)); *see also Francisco v. Emeritus Corp.*, 2018 U.S. Dist. LEXIS 226456, at **4-8 (C.D.
    Cal. Jan. 10, 2018) (statute of limitations for putative class members' claims not tolled where

18  named plaintiff lacked standing to pursue the claims); *In re Dairy Farmers of Am., Inc. Cheese
    Antitrust Litig.*, 2015 U.S. Dist. LEXIS 84152, at **83-93 (N.D. Ill. June 29, 2015) (finding that

19  "[b]ecause [p]laintiff" – a citizen of New York – "lacked standing to raise claims under the laws

20  of any states other than New York, her class action did not toll the statute of limitations for any
    such [non-New York claims").  And, even if Rushing's filing of the action could toll the statutes

21  of limitations, it would only be as to Perlin's individual claims, not claims she purports to bring on
    behalf of a class.  *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018) (citing *Am. Pipe*, 414

22  U.S. at 553) ("*American Pipe* [& *Constr. Co. v. Utah*, 414 U.S. 538 (1974)] tolls the statute of
    limitations during the pendency of a putative class action….  But *American Pipe* does not permit

23  the maintenance of a follow-on class action past expiration of the statute of limitations."); *see also

24  Fierro v. Landry's Restaurant Inc.*, 32 Cal. App. 5th 276, 292, 297 (2019) (same under California
    law).  Finally, even if Rushing's action could toll the statutes of limitations as to Perlin's

25  individual claims or the claims asserted on behalf of a class, that tolling definitively ended in
    2018, when this Court found that Rushing lacks standing to pursue California law claims and

26  Perlin first communicated with her counsel.  Dkt. 170; *Cardon Decl.* ¶ 4, Ex. C at 74:3-23.  Perlin

27  still waited (at least) a year and a half to file the *8AC* – a delay that puts her claims well outside of
    the statutes of limitations even if the latest date on which the second sheet could have ripped

28  (January 28, 2013) is used.

had purchased because the thread counts made them high quality and durable had ripped almost immediately after she began using them (and despite the fact she took several precautions to prevent damage). Believing that there was a problem she was unlikely to have caused (*Cardon Decl.* ¶ 4, Ex. C at 81:4-7), Perlin told WSI the sheets ripped and asked if there was "something wrong with the[] sheets" (*id.* at 94:19-95:5, 103:5-18). Perlin asked for a replacement or credit – further evidence that she believed WSI had wronged her – but it was not given to her. *Id.* ¶ 4, Ex. C at 95:6-15. But other than this phone call (the date and substance of which Perlin repeatedly testified she cannot remember), Perlin did nothing to investigate the ripping of two sheets she purchased because she expected them to be durable and last. *See, e.g., Cardon Decl.* ¶ 4, Ex. C at 66:22-67:2, 94:19-95:18, 139:3-12, 167:21-168:1, ¶ 5, Ex. D at Nos. 3-5.[13] Perlin's failure to undertake a reasonable investigation further dooms any application of the delayed discovery rule to toll her claims. *See, e.g., Marshall*, 2015 U.S. Dist. LEXIS 68636, at *6 ("For purposes of the delayed discovery rule, a plaintiff discovers a cause of action when she has reason to suspect that someone has done something wrong to her. A plaintiff cannot simply wait for specific facts necessary to establish a specific cause of action to come to her…. Here, [p]laintiff appears to have done exactly that. Plaintiff knew in Spring 2011 that [d]efendant's product did not deliver on [d]efendant's alleged promises, yet did nothing for over three years. The delayed discovery rule is therefore of no help to [p]laintiff, and her FAL and CLRA claims are time-barred.").

---

[13]  WSI's records indicate that Perlin's call (or calls) took place in June and September 2014 – more than a year and half after the latest date on which the second sheet could have ripped. *Dean Decl.* ¶¶ 4-5, Exs. A-B. WSI's records reflect that Perlin "adv[ised] th[a]t the sheets th[a]t she rec[ei]v[e]d had a hole in it," that WSI "adv[ised] her th[a]t the sheets should not have done th[a]t" and that WSI "would speak with a sup[ervisor] to see if they could g[i]ve her partail [*sic*] cr[e]d[i]t b[ac]k." *Id.* at ¶ 2, Ex. A. In one of these calls, Perlin stated that she believed the sheets should have lasted longer because of their thread count. *Id.* at ¶ 3, Ex. B (Perlin "feels this sheet has not held up for very long and with the thread count it should have lasted longer than it has at this point"). However, based on WSI's records and her own recollection, she did not further pursue any investigation of her potential claim. *Id.; Cardon Decl.* ¶ 4, Ex. C at 117:24-118:6. Instead, she chose to sit on her rights. *Jolly*, 44 Cal. 3d at 1111 ("Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.").

1    **2.    Perlin Cannot Meet Her Burden With Respect To Fraudulent Concealment**

2         **Tolling**

3         The fraudulent concealment doctrine "permits tolling where the defendant 'fraudulently

4    concealed the existence of a cause of action so that [the plaintiff], acting as a reasonable person,

5    did not know of its existence.'"  *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 60 (N.D.

6    Cal. 2020) (quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir.

7    1988)).[14]  "The plaintiff bears the burden of pleading and proving fraudulent concealment."  *In re*

8    *Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015); *see also Hexcel*

9    *Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012).  To establish that the

10   fraudulent concealment doctrine tolls the statute of limitations, a plaintiff must prove that:  (1)

11   "defendant took affirmative acts to mislead the plaintiff"; (2) "plaintiff did not have 'actual or

12   constructive knowledge of the facts giving rise to [his] claim' as a result of the defendant's

13   affirmative acts"; and (3) "plaintiff acted diligently in trying to uncover the facts giving rise to his

14   claim."  *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1073 (N.D. Cal. 2016) (quoting *Hexcel*,

15   681 F.3d at 1060) (alteration in original); *see also Peterson v. Sutter Med. Found.*, 2022 U.S. Dist.

16   LEXIS 19241, at *30 (N.D. Cal. Feb. 2, 2022) (Orrick, J.); *Eshun v. United Steel, Paper &*

17   *Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC, Local*

18   *17*, 2020 U.S. Dist. LEXIS 234671, at **37-38 (E.D. Cal. Dec. 14, 2020); *In re Animation*

19   *Workers Antitrust Litig.*, 87 F. Supp. 3d at 1194.

20        **a.    There Is No Evidence Of An Affirmative Act By WSI To Mislead**

21        **Perlin**

22        For fraudulent concealing tolling to apply, there must be evidence that "defendant took

23   affirmative acts to mislead the plaintiff[.]"  *Garrison*, 159 F. Supp. 3d at 1073.  These affirmative

---

24   [14]  *See also Timboe v. Clark*, 2022 U.S. Dist. LEXIS 61045, at *18 (N.D. Cal. Mar. 31, 2022)

25   (Orrick, J.) (the fraudulent concealment "doctrine 'tolls the statute of limitations where a
     defendant, through deceptive conduct, has caused a claim to grow stale'") (quoting *Aryeh v.*

26   *Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013)); *IV Solutions, Inc. v. Conn. Gen. Life. Ins.*
     *Co.*, 2015 U.S. Dist. LEXIS 181214, at *9 (C.D. Cal. Apr. 9, 2015) (fraudulent concealment

27   doctrine "halts the limitations period post-accrual where the defendant, through its own fraudulent
     conduct, prevents the plaintiff from learning of a claim against it").

28

1    acts must be "'***above and beyond*** the wrongdoing upon which the plaintiff's claim is filed, to

2    prevent the plaintiff from suing in time.'"   *De Los Reyes v. Ruchman & Assocs.*, 2014 U.S. Dist.

3    LEXIS 122790, at *14 (N.D. Cal. Sep. 2, 2014) (Orrick, J.) (quoting *Johnson v. Henderson*, 314

4    F.3d 409, 414 (9th Cir. 2002)) (emphasis added).   The fraudulent concealment doctrine

5    "necessarily" includes this requirement because, "[i]f it did not, 'the tolling doctrine [would

6    merge] with the substantive wrong, and would virtually eliminate the statute of limitations'…."

7    *Easter v. Am. W. Fin.*, 381 F.3d 948, 963 n.8 (9th Cir. 2004) (quoting *Santa-Maria v. Pac. Bell*,

8    202 F.3d 1170, 1177 (9th Cir. 2000)) (alteration in original).   Thus, in a false advertising case like

9    this one, the alleged acts of fraudulent concealment cannot be the advertising giving rise to

10   plaintiff's claim.   *Beasley v. Lucky Stores, Inc.*, 2020 U.S. Dist. LEXIS 13211, at *13 (N.D. Cal.

11   Jan. 24, 2020) (finding plaintiff not "entitled to tolling under the doctrine of fraudulent

12   concealment" because the only act alleged was defendant's "failure to disclose the alleged false

13   labelling" giving rise to plaintiff's claims).[15]   Relatedly, "fraudulent concealment [tolling is]

14   inapplicable where a defendant 'merely' fails to disclose 'evidence that the wrong has been

15   committed.'"   *Id*. at **12-13 (quoting *Mark K. v. Roman Catholic Archbishop*, 67 Cal. App. 4th

16   603, 613 (1998)); *see also Gonsalves v. Kaiser Sand & Gravel Co.*, 1994 U.S. Dist. LEXIS 4456,

17   at **10-11 (N.D. Cal. Mar. 24, 1994) ("passive concealment of information is not enough, unless

18   the defendant has a fiduciary duty to disclose the information to the plaintiff").

19          Here, as the *8AC* demonstrates, Perlin will not introduce any evidence of an affirmative act

20   by WSI above and beyond the alleged conduct giving rise to Perlin's claims.   Perlin's "fraudulent

---

22   [15]   *See also Kang v. Wells Fargo Bank, N.A.*, 2018 U.S. Dist. LEXIS 47719, at **20-21 (S.D. Cal.

23   Mar. 22, 2018) ("Fraudulent concealment does toll the statute of limitations" but a "plaintiff

     cannot merely rely on the same factual allegations that would establish the statutory violation to

24   invoke [fraudulent concealment] tolling") (internal quotations omitted)); *Jaeger v. Howmedica*

     *Osteonics Corp.*, 2016 U.S. Dist. LEXIS 16493, at *46 (N.D. Cal. Feb. 10, 2016) ("[T]he factual

25   basis for fraudulent concealment must differ from any cause of action for fraud that is pled.");

     *McCarn v. HSBC USA, Inc.*, 2012 U.S. Dist. LEXIS 162257, at **24-25 (E.D. Cal. Nov. 9, 2012)

26   ("The Ninth Circuit has repeatedly rejected claims of fraudulent concealment [tolling] where the

     plaintiffs fail to allege misrepresentation beyond the actual basis for the lawsuit" because "[s]uch

27   arguments … merge[] the substantive wrong with the tolling doctrine and 'would eliminate the

     statute of limitations'") (internal citations omitted).

28

1   concealment doctrine" allegation is contained in a single paragraph in the *8AC*: "under

2   California's fraudulent concealment doctrine, the limitations period was…tolled at least through

3   April 21, 2015, based on Defendants' active deceptive conduct in concealing the Plaintiff's

4   [*sic*]…causes of action for violations of California law as alleged more fully above."  Dkt. 217 ¶

5   145.   Setting aside the conclusory nature of this allegation, the purported "active deceptive

6   conduct" identified in Paragraph 145 of the *8AC* is the **same conduct** giving rise to Perlin's

7   substantive claims against Defendants.  *Compare* Dkt. 217 ¶¶ 65-143 *with* Dkt. *Id*. ¶¶ 190-303. [16]

8   Perlin cannot toll the statute of limitations under the fraudulent concealment doctrine by relying

9   on the same conduct giving rise to her substantive claims.  As such, Perlin's attempt to invoke the

10  fraudulent concealment doctrine fails.  *See, e.g.*, *See, e.g.*, *Lukovsky v. City & Cnty. of San*

11  *Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008) (rejecting fraudulent concealment tolling where

12  the "alleged basis … is the same as [plaintiff's] cause of action"); *IV Sols.*, 2015 U.S. Dist. LEXIS

13  181215, at *13 (finding fraudulent concealment tolling inapplicable because plaintiff did "not

14  offer evidence of misrepresentations – apart from those underlying its substantive contentions –

15  that prevented [plaintiff] from learning that it might have a claim"; granting summary judgment on

16  statute of limitations defense); *Gonsalves*, 1994 U.S. Dist. LEXIS 4456, at **10-12 (finding

17  "limitations period was not tolled" at summary judgment because plaintiff "fail[ed] to show a

18  genuine issue of material fact as to whether [defendant] fraudulently concealed the existence of his

19  cause of action" where plaintiff's fraudulent concealment argument relied on the same conduct

20  giving rise to plaintiff's substantive claims). [17]

_____

22  [16]  That this is true is supported by the fact that Perlin testified that no one (including Defendants) prevented her from investigating her claims.  *Cardon Decl.* ¶ 4, Ex C at 183:23-184:2.

23  [17]  *See also Doe*, 2019 U.S. Dist. LEXIS 170082, at *19 (dismissing time-barred claims because the claims "depend upon the same factual allegations as [p]laintiff asserts for purposes of fraudulent concealment to toll the statute of limitations" and "[p]laintiff failed to include any allegations of wrongdoing above and beyond those that encompass the affirmative claim for relief"); *Agape*, 2016 U.S. Dist. LEXIS 19328, at **15-16 (finding fraudulent concealment doctrine inapplicable because defendant's alleged conduct did not "rise 'above and beyond'" the conduct giving rise to "plaintiff's cause of action"); *Samp v. JPMorgan Chase Bank, N.A.*, 2013 U.S. Dist. LEXIS 67958, at *9 (C.D. Cal. May 7, 2013) (finding "[p]laintiffs failed to demonstrate that the statute of limitations should be" tolled under fraudulent concealment doctrine because "all

1    **b.      The Undisputed Evidence Demonstrates That Perlin Had, At Least,**

2              **Constructive Knowledge**

3        A plaintiff seeking to establish fraudulent concealment tolling must prove that she "did not

4   have actual or constructive knowledge of the facts giving rise to [her] claim as a result of the

5   defendant's affirmative acts." *Garrison*, 159 F. Supp. 3d at 1073 (internal quotations omitted);

6   *see also MGA Entm't, Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 561 (2019) ("the doctrine of

7   fraudulent concealment for tolling the statute of limitation does not come into play, whatever the

8   lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a

9   potential claim") (internal quotations omitted).  Here, the undisputed evidence demonstrates that

10  Perlin had, at minimum, constructive knowledge of facts giving rise to her claims after her second

11  set of sheets ripped.  Sections V.A and V.B.1.a *supra*.  As such, Perlin, even if Perlin could invoke

12  the fraudulent concealment doctrine, she was on notice of the facts giving rise to her claims at

13  least as early as 2011.  Thus, her claims would still be barred by the applicable statutes of

14  limitations.

15   **c.      There Is No Evidence Of Diligence, Reasonable Or Otherwise, By**

16            **Perlin**

17       Finally, just as with delayed discovery, a plaintiff seeking application of fraudulent

18  concealment tolling must prove that she "acted diligently in trying to uncover the facts giving rise

19  to his claim." *Garrison*, 159 F. Supp. 3d at 1073; *see also Yetter v. Ford Motor Co.*, 428 F. Supp.

20  3d 210, 225 (N.D. Cal. 2019) (finding plaintiff "not entitled to invoke the discovery rule or the

21  fraudulent concealment doctrine" because he failed to plausibly allege "reasonable diligence);

22  *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1071 (S.D. Cal. 2015) (applying "same reasoning"

23  to whether plaintiff exercised the diligence required to invoke the discovery rule or fraudulent

24  concealment tolling).  And, just as with the discovery rule, Perlin will not be able to show the

25  diligence necessary to invoke the fraudulent concealment tolling doctrine.  Section V.B.1.b, *supra*.

26  _____

27  of the conduct [p]laintiffs allege is 'related to the underlying wrongdoing rather than an effort to
    prevent plaintiffs from being able to sue'") (quoting *Spears v. First Am. Eappraiseit*, 2013 U.S.

28  Dist. LEXIS 58292, at *17 (N.D. Cal. Apr. 23, 2013)).

1

### VI.   <u>CONCLUSION</u>

2

For the foregoing reasons, Defendants respectfully request that the Court grant the *Motion*

3  and enter judgment in Defendants' favor on all individual and class claims asserted by Perlin in

4  the *8AC*.

5  Dated:  April 18, 2022               SHEPPARD MULLIN RICHTER & HAMPTON LLP

6

7                                        By      _____/s/ P. Craig Cardon_____

8                                                    P. CRAIG CARDON
                                                    ROBERT J. GUITE
                                                    BENJAMIN O. AIGBOBOH
9                                                    ALYSSA M. SHAUER

10                                                  *Attorneys for Defendants*
                                            WILLIAMS-SONOMA, INC., WILLIAMS-
11                                          SONOMA DTC, INC., and WILLIAMS-SONOMA
                                                ADVERTISING, INC.
12

SMRH:4846-2104-6976.6

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28