UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM RUSHING, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WILLIAMS-SONOMA, INC., et al.,<br><br>    Defendants. | Case No. 16-cv-01421-WHO<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING DEFENDANTS TO RESPOND TO PERLIN'S ADMINISTRATIVE MOTION TO SEAL**<br><br>Re: Dkt. Nos. 268, 271 |

**INTRODUCTION**

Plaintiff Elizabeth Perlin purchased sheets—the PB Classic 400-Thread-Count Sheet Set, to be precise—from defendants Williams-Sonoma, Inc., Williams-Sonoma DTC, Inc., and Williams-Sonoma Advertising, Inc. (collectively, "Williams-Sonoma") on January 19, 2011, and January 28, 2011. Both sets of sheets ripped shortly after she began using them. Several years later, Perlin learned that, based on some methods used to calculate thread count, the thread count in the PB Classic 400-Thread-Count sheets is allegedly closer to 200 threads. As a result, Perlin contends that Williams-Sonoma misleadingly advertises the thread count of certain bed linens and has brought claims under the Consumer Legal Remedies Act, False Advertising Law, Unfair Competition Law, and unjust enrichment.

Although Perlin's claims are subject to three- and four-year statutes of limitations, she did not file suit until June 5, 2020. The question that I must decide on summary judgment is whether the discovery rule or the fraudulent concealment doctrine may extend the limitations period to allow this litigation. I find that there are genuine issues of material fact concerning whether Perlin had reason to suspect that the sheets in question were misleadingly advertised prior to 2018.

1  Because Perlin has met her burden to show that the discovery rule may apply to toll the statute of
2  limitations, I **DENY** Williams-Sonoma's motion for summary judgment. I agree with Williams-
3  Sonoma, however, that Perlin has not established that the doctrine of fraudulent concealment
4  applies.

## BACKGROUND

In January 2011, Elizabeth Perlin decided that she wanted to purchase new sheets. *See* Deposition Transcript of Elizabeth Perlin ("Perlin Depo. Tr.") [Dkt. 268-2] at 42:11–18. She specifically wanted soft, luxurious sheets that were high-quality and were "going to last." *Id.* at 57:5–11. She visited Williams-Sonoma's Pottery Barn[1] website on January 19, 2011, and purchased the Pottery Barn-branded "PB Classic 400-Thread-Count Sheet Set" and "PB Classic 400-Thread-Count Extra Pillowcases" (the "PB Classic Bedding"). *Id.* at 50:11–51:7; Perlin Declaration ("Perlin Decl.") [Dkt. 272-2] ¶ 2. In the course of deciding whether to buy the PB Classic Bedding, Perlin read and relied upon the website's product description, which repeatedly claimed that the PB Classic Bedding had a 400-thread count. *See* Eighth Amended Class Action Complaint ("8AC") [Dkt. 217] ¶¶ 15, 174–76.

To Perlin's dismay, the PB Classic Bedding were "not as advertised." *Id.* ¶ 180. Within a week of using the PB Classic Bedding in a normal and ordinary fashion, she noticed a tear in the bottom fitted sheet. Perlin Depo Tr. at 76:8–24. Because she believed that "she may have done something wrong to cause the rip or that the rip was a fluke," *id.* at 82:15–83:4, Perlin decided to buy a replacement set from Williams-Sonoma. On January 28, 2011, nine days after her initial purchase, she purchased a second (identical) set of PB Classic Bedding. *Id.* at 84:13–21; Perlin Decl. ¶ 5. The second set started ripping after only a short time of regular use, which was "likely less than a year," although it could have been up to three years. Perlin Depo. Tr. at 98:4–99:16; 100:8–13; Perlin Decl. ¶ 5.

After the second set of PB Classic Bedding ripped, Perlin compared it to the lower thread count sheets that were on her daughter's bed. Perlin Decl. ¶ 6. Based on that comparison, she

---

[1] Williams-Sonoma owns the Pottery Barn brand. *See* 8AC ¶ 1.

United States District Court
Northern District of California

concluded that lower thread-count sheets "are more durable" than high thread count sheets. *Id.* As a result, Perlin, who was "extremely unhappy" with the PB Classic Bedding, has started to purchase "lower thread count sheets in hopes they were more durable." 8AC ¶ 184.

In 2014, Perlin called Williams-Sonoma's customer service to complain about the PB Classic Bedding and ask for a refund or a replacement set. Perlin Depo. Tr. at 136:21–137:2–5. According to Perlin, she was told that "there was nothing wrong with [the] sheets and denied a refund." Perlin Decl. ¶ 6. According to Williams-Sonoma's records, though, the customer service representative told Perlin that "the sheets should not have" ripped. Cardon Decl. Ex. A [Dkt. 268-2] at WSI0016075.

## PROCEDURAL HISTORY

Plaintiff William Rushing filed a putative class action against Williams-Sonoma on January 29, 2016, alleging that Williams-Sonoma deceptively advertised its bedding. [Dkt. 1]. Over the course of the litigation, Rushing, who was a resident of Kentucky, brought claims under the California Consumer Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), Unfair Competition Law ("UCL"), and unjust enrichment. *See* October 24, 2018 Order on Pending Motions [Dkt. 170] at 3. On April 10, 2018, Williams-Sonoma moved for summary judgment on the grounds that Rushing lacked standing to pursue these California claims. [Dkt. 119] at 1. On October 24, 2018, I concluded that Kentucky law applied to Rushing's claims, but granted him leave to conduct pre-certification discovery so that he could attempt to find a named plaintiff who was a resident of California who could pursue the California claims. *See* Order on Pending Motions at 12, 16–17. Pursuant to my Order, in December 2018 Williams-Sonoma produced a list of California consumers that had purchased the bedding products at issue in this litigation. Cardon Decl. Ex. E [Dkt. 268-2]. Perlin was on that list. *Id.*

In or around December of 2018, Perlin began communicating with one of Rushing's attorneys, Amber Eck.[2] Over the course of their conversations, Perlin and Eck discussed Perlin's

---

[2] In her deposition, Perlin testified that she spoke to her attorney and learned of her claims "roughly in 2018." *See* Perlin Depo. Tr. at 74:21-23; 123:1-3; 124:22-24. Perlin's opposition brief claims that she "first learned facts related to her claims in 2019," *see* Opp. at 2, 3, and "late 2019." *See* Opp. at 7. In the

3

experiences with the PB Classic Bedding, and Perlin learned that Williams-Sonoma allegedly did not comply with industry standards for advertising thread counts. Perlin Depo. Tr. at 143:25–144:3. Until that point, Perlin was not aware that the PB Classic Bedding that she had purchased was allegedly closer to 200-thread-count. Perlin Decl. ¶ 7.

Perlin filed the Eighth Amended Class Action Complaint on June 5, 2020.[3] [Dkt. 217]. For the first time, Perlin was alleged as a named plaintiff on behalf of a class of consumers with claims under California law. *Id.* ¶ 19.

On April 18, 2022, Williams-Sonoma moved for summary judgment on the basis that Perlin's claims were time-barred. Motion for Summary Judgment ("Mot.") [Dkt. 268-1] at 1. In her opposition brief, Perlin implicitly acknowledged that the statutes of limitations for her claims had lapsed but contended that two exceptions to the statute of limitations—the discovery rule and fraudulent concealment tolling—applied. *See* Opposition to Motion for Summary Judgment ("Opp.") [Dkt. 271-3] at 8. I heard oral argument on June 29, 2022.

**LEGAL STANDARD**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* at 324. The party opposing

---

discovery letter brief that the parties submitted to Magistrate Judge Sallie Kim, Perlin says that she spoke to Ms. Eck, her attorney, in December 2018, and agreed to represent that class over the course of that conversation. *See* Joint Discovery Letter Brief [Dkt. 270] at 6, 7–8. Eck submitted a declaration in connection with the previous motion to dismiss briefing that says that she spoke to Perlin in 2019. Declaration of Amber Eck [Dkt. 230-1] ¶ 6. Ultimately, however, because Perlin filed suit in 2020, my analysis regarding the relevant statutes of limitations would not change, regardless of whether the conversation occurred in late 2018 or 2019.

[3] Further background of this case is discussed in my prior orders.

4

summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

The Court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* Conclusory and speculative testimony, however, does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

Where, as here, a plaintiff contends that the statute of limitations is not a bar based on the discovery rule, the plaintiff bears the burden of proving the applicability of such. *See, e.g.*, *V.C. v. Los Angeles Unified Sch. Dist.*, 139 Cal. App. 4th 499, 516 (2006) ("It is plaintiff's burden to establish facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry.") (internal quotation marks and citation omitted). Accordingly, to defeat summary judgment based on the statute of limitations here, Perlin must establish a genuine dispute of material fact with respect to the discovery rule and/or fraudulent concealment.

## DISCUSSION

Williams-Sonoma moves for summary judgment on the basis that all of Perlin's claims are time-barred and that Perlin has not met her burden to show that a genuine issue of material fact exists with respect to the discovery rule or the doctrine of fraudulent concealment. As discussed below, I find that Williams-Sonoma has met its burden to show that Perlin's claims are facially time-barred. But I also find that there are genuine issues of material fact as to whether the discovery rule may apply, which would save Perlin's claims. As a result, summary judgment is not appropriate.

I. **CALIFORNIA'S STATUTES OF LIMITATIONS**

"In a federal diversity action brought under state law, the state statute of limitations governs." *Simpson v. Robert Bosch Tool Corp.*, No. 12-cv-05379-WHO, 2014 WL 985067, at *2 (N.D. Cal. Mar. 7, 2014); *Wakefield v. Wells Fargo & Co.*, No. 13-cv-05053-LB, 2014 WL 5077134, at *8 (N.D. Cal. Oct. 9, 2014) (applying state law to determine the statute of limitations

1    where jurisdiction exists under the Class Action Fairness Act).  In California, the statute of

2    limitations is three years for CLRA, FAL, and unjust enrichment claims, and four years for UCL

3    claims.  *See* Cal. Civ. Code § 1783 (CLRA) ("Any action brought under the specific provisions of

4    Section 1770 shall be commenced not more than three years from the date of the commission of

5    such method, act, or practice."); Cal. Code Civ. P. §§ 338(a), (d) (establishing a three-year statute

6    of limitations for FAL and unjust enrichment claims based on misrepresentations); Cal. Bus. &

7    Prof. Code § 17208 (UCL) ("Any action to enforce any cause of action pursuant to this chapter

8    shall be commenced within four years after the cause of action accrued."); *see also Plumlee v.*

9    *Pfizer, Inc.*, No. 13-cv-00414-LHK, 2014 WL 695024, at *7 (N.D. Cal. Feb. 21, 2014)

10   ("Plaintiff's UCL claim is subject to a four-year statute of limitations . . . and her CLRA and FAL

11   claims are both subject to three-year statutes of limitations.").

12       "A plaintiff must bring a claim within the limitations period after accrual of the cause of

13   action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) (citing Cal. Code Civ. P.

14   § 312).  "Generally speaking, a cause of action accrues at 'the time when the cause of action is

15   complete with all of its elements.'"  *Id.* (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397

16   (1999)).  Those elements consist of wrongdoing, harm, and causation.  *Aryeh v. Canon Bus. Sols.,*

17   *Inc.*, 55 Cal. 4th 1185, 1191 (2013).  The statute of limitations for a UCL, FAL, or CLRA claim

18   "accrues when a defendant misrepresents or omits material information regarding a product or

19   service and a consumer makes a purchase as a result of such deceptive practices."  *Plumlee*, 2014

20   WL 695024, at *7; *see also Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 534 (N.D. Cal.

21   2012) (finding that plaintiff's claims under the CLRA and FAL accrued, and limitations period

22   began to run, when consumer purchased allegedly mislabeled iced tea).

23       Perlin viewed the allegedly deceptive advertising and purchased the PB Classic Bedding

24   on January 19, 2011, and January 28, 2011.  Perlin Decl. ¶¶ 2–3, 5.  Given that she filed this

25   lawsuit on June 5, 2020, almost a decade after her purchases, her claims will be time-barred unless

26   she can show that an exception to the statutes of limitations applies.

27

28

## II. THE DISCOVERY RULE

"An important exception to the general rule of accrual is the discovery rule, which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 35 Cal. 4th at 807 (internal quotation omitted). In other words, the discovery rule "protects those who are ignorant of their cause of action through no fault of their own" by delaying accrual until "a plaintiff knew or should have known of the wrongful conduct at issue." *Apr. Enter., Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (1983).

To invoke the discovery rule, a plaintiff must show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. *Fox*, 35 Cal. 4th at 808. The plaintiff has the burden to "show diligence." *Id*. "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing." *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110 (1988); *see also Norgart*, 21 Cal. 4th at 397–98 ("[T]he plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof . . ."). The rule "mak[es] accrual of a cause of action contingent on when a party discovered or *should have* discovered that his or her injury had a wrongful cause." *Fox*, 35 Cal. 4th at 808 (emphasis in original). Within the applicable limitations period, a plaintiff must seek to learn the facts necessary to bring the cause of action in the first place—he cannot sit on his rights and wait for the facts to find him. *Norgart*, 21 Cal. 4th at 398.

Normally, whether a plaintiff has inquiry notice of potential wrongdoing is a factual question for the jury. *Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1408 (9th Cir. 1994); *see also Ovando v. Cnty. of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008) ("The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion.").

### a. There Are Genuine Questions of Fact as to When Perlin Had Notice of Her Injury.

To receive the protection of the discovery rule, Perlin must first establish the time and

7

manner in which she discovered her claims, *i.e.*, the point in which she "suspected, or should have suspected, that she had been wronged." *Jolly*, 44 Cal. 3d at 1114. This is because, "under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone had done something to her." *Id.* at 1110.

Perlin and Williams-Sonoma have different conceptions of when Perlin had or reasonably should have had notice that she had been "wronged." Williams-Sonoma maintains that Perlin was on inquiry notice in 2011 because both sets of PB Classic Bedding ripped shortly after use. Mot. at 11. From Williams-Sonoma's perspective, "the ripping of a second set of identical bedding—bedding purchased because the consumer believed it was high-quality and durable, that was cared for according to the care instructions, and that was used in normal conditions—constitutes information sufficient to lead a reasonable person to at least suspect that something wrong has been done to her." *Id.* at 12. Perlin, on the other hand, argues that her claims did not accrue under the discovery rule until she knew or had reason to know that Williams-Sonoma misrepresented the thread count, which, according to Perlin, occurred in late 2018 or 2019. Opp. at 2, 9.

Williams-Sonoma is correct that inquiry notice is triggered by a "suspicion of wrongdoing," *Jolly*, 44 Cal. 3d at 1111, and does not require the plaintiff to understand "the specific causal mechanism by which he or she has been injured." *Knowles v. Superior Ct.*, 118 Cal. App. 4th 1290, 1298 (2004). But the problem with Williams-Sonoma's theory regarding notice is that the injury of the ripped PB Classic Bedding is not the injury at the heart of Perlin's claims. Perlin's injury flows from Williams-Sonoma's allegedly false advertising of the PB Classic Bedding, not the ripping of the sheets. As Perlin explains, her "injury was that she was promised 400 thread count sheets but received 200 thread count sheets, not that she did not receive high-quality sheets." Opp. at 10. She further points out that durability and quality are not elements of her claims, and "there is no evidence the sheets ripped because they had a low thread count or even that low thread count sheets are more likely to rip." *Id.* at 11. In sum, according to Perlin, because the rips are "wholly unrelated" to her claims, she had "no reason to believe Defendants had misrepresented the thread count." *Id.*

The California Supreme Court has made clear that the discovery rule may delay accrual of

different types of claims—even claims that are related—where the plaintiff did not have any reason to suspect the second type of claim. In *Fox*, the plaintiff filed a medical malpractice action after a gastric bypass surgery resulted in severe complications. 35 Cal. 4th at 802. In the course of discovery, Fox learned that a medical device used during the surgery may have malfunctioned, causing her injury. *Id.* Fox then amended her complaint to add a products liability cause of action against the device manufacturer. *Id.* at 802–03. The device manufacturer argued that the products liability claim was time-barred and that the discovery rule did not apply. *Id.* at 803. *Fox* held that the discovery rule applied to delay accrual of the product liability claim because plaintiff's product-liability cause of action was caused by "tortious conduct of a wholly different sort" than plaintiff's medical malpractice claim. As *Fox* explained, "if a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim." *Id.* *Fox* thus supports Perlin's argument that the discovery rule delays accrual of a claim based on "tortious conduct of a wholly different sort"— here, the alleged false advertising regarding the thread-count of the PB Classic Bedding—where Perlin would not have reasonably been aware of that injury.

Perlin has put forward evidence to support her theory that she had no reason to suspect that the advertised thread counts were misrepresented in 2011. After both sets of PB Classic Bedding ripped, Perlin compared these sheets to the lower-thread count sheets and concluded that lower thread-count sheets were more durable than high thread count sheets. Perlin Decl. ¶ 6. According to Perlin's textile expert, an average consumer would not be able to determine the thread count of a sheet by feel or sight. *See* Declaration of Jennifer Rhodes ("Rhodes Decl.") [Dkt. 272-3] ¶ 3. And according to Perlin, when she called Williams-Sonoma to complain about the ripped sheets, she was told that "there was nothing wrong with [them]." Perlin Decl. ¶ 6. From Perlin's perspective, she had no reason to believe the thread count was misrepresented until she spoke to her attorney in late 2018. Perlin Decl. ¶ 7.

Williams-Sonoma responds with evidence purporting to show that Perlin associated the ripped sheets with thread count. For instance, Williams-Sonoma's customer service records show

9

that when Perlin called to complain about the ripped sheets in 2014, Perlin argued that the bedding should have held up longer based on the advertised thread count. Cardon Decl. Ex. B [Dkt. 268-2] at WSI0016080. Williams-Sonoma also cites portions of Perlin's deposition testimony where she testified that a higher thread count meant that there would be a corresponding increase in durability. Reply [Dkt. 273] at 6. From Williams-Sonoma's perspective, that evidence shows that Perlin "drew a connection between the PB Classic Bedding's advertised thread count and its durability" so that she was or reasonably should have been on inquiry notice. *Id.* at 7.

I find that there are genuine issues of material fact whether Perlin had or should have had inquiry notice of her claims before she spoke to her attorney in or around December 2018. "The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1218 (N.D. Cal. 2014) (quoting *Ovando*, 159 Cal. App. 4th at 61)). Because there are genuine questions of fact whether the ripping of the PB Classic Bedding would have put Perlin or a reasonable person on notice that the thread-count had been misrepresented, Perlin has met her burden to show that the first prong of the discovery rule has been met.

### b. There Are Genuine Questions of Fact as to Whether Perlin Conducted a Reasonable Investigation into Her Claims.

The second prong of the discovery rule requires Perlin to show that she was unable to make earlier discovery of her claims despite reasonable diligence. *Fox*, 35 Cal. 4th at 808. She must show that she "conduct[ed] a reasonable investigation *after* becoming aware of [the] injury []." *Id.* (emphasis added).

The parties' arguments about whether Perlin conducted a reasonable investigation flow directly from their opposing positions regarding when she had inquiry notice. Because she contends that she was not aware of her injury until she spoke to her attorney in December 2018, from Perlin's perspective her duty to conduct a reasonable investigation did not arise until after that conversation. Opp. at 11 (explaining that the ripping of the sheets was a different "type of wrongdoing" that "cannot trigger a duty to investigate"). Williams-Sonoma, on the other hand,

1 maintains that Perlin had inquiry notice back in 2011 and failed to conduct a reasonable
2 investigation at that point. Mot. at 14; Reply at 7–11. In support of its theory that Perlin failed to
3 conduct a reasonable investigation into the thread-count of the PB Classic Bedding, Williams-
4 Sonoma notes that she did not have the bedding tested (as Rushing did), nor did she purchase a
5 device designed to count threads, nor did she watch a YouTube video explaining how to count
6 threads. Reply at 10 & 10 n.10. It also points out that there are publicly available documents
7 from 2003 raising "virtually identical allegations" against Williams-Sonoma for its advertised
8 thread counts. *Id.* at 11.

Williams-Sonoma's arguments are grounded in the premise that Perlin had reason to
suspect that her sheets were of a lower thread-count prior to 2018. Because I have concluded that
there are disputed questions of fact whether Perlin had inquiry notice of her claims prior to 2018, I
find that there are also questions of fact whether Perlin conducted a reasonable investigation into
her claims.

In sum, Perlin met her burden to show that there are genuine issues of fact whether she
reasonably should have discovered her claims prior to 2018. As a result, the discovery rule may
apply to postpone the accrual of her claims. I therefore **DENY** Williams-Sonoma's motion for
summary judgment on the basis that her claims are time-barred.

### III. THE FRAUDULENT CONCEALMENT EXCEPTION

In addition to the discovery rule, Perlin also argues that the fraudulent concealment
exception applies to toll the statutes of limitations. I disagree. She has not met her burden to
show Williams-Sonoma affirmatively committed acts to prevent her from filing suit in time. As a
result, I find that the doctrine of fraudulent concealment does not apply.

"A close cousin of the discovery rule is the well accepted principle of . . . fraudulent
concealment." *Bernson v. Browning-Ferris Indus. of Cal., Inc.*, 7 Cal. 4th 926, 931 (1994)
(internal quotation and citation omitted) (alteration in original). "It has long been established that
the defendant's fraud in concealing a cause of action against him tolls the applicable statute of
limitations, but only for that period during which the claim is undiscovered by plaintiff or until
such time as plaintiff, by the exercise of reasonable diligence, should have discovered

1  it." *Id.* (internal citation omitted).

2  To establish that the fraudulent concealment doctrine tolls the statute of limitations, a plaintiff must show that: (1) "the defendant took affirmative acts to mislead the plaintiff"; (2) "the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to [her] claim' as a result of the defendant's affirmative acts"; and (3) "plaintiff acted diligently in trying to uncover the facts giving rise to [her] claim." *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1073 (N.D. Cal. 2016) (quoting *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012)).

Importantly, the factual basis for fraudulent concealment must be distinct from a cause of action. "Fraudulent concealment necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *De Los Reyes v. Ruchman & Assocs., Inc.*, No. 14-cv-00534-WHO, 2014 WL 4354238, at *5 (N.D. Cal. Sept. 2, 2014) (quoting *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002)). Finally, "allegations of fraudulent concealment must be pled with particularity." *Garrison*, 159 F. Supp. 3d at 1073 (citing *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 502 (9th Cir. 1988)).

Perlin provides three examples of "affirmative acts" taken to mislead her: (1) Williams-Sonoma "actively misled her with their advertising, packaging, and other representations regarding thread count"; (2) Williams-Sonoma "continue[s] to falsely advertise and sell [its] bedding to consumers"; and (3) when she called to complain about the PB Classic Bedding in 2014, she was told that "there was nothing wrong" with the sheets. Opp. at 10, 16. As explained below, none of these theories suffices to serve as the basis for a fraudulent concealment claim.

With regard to the first two theories, Perlin's claims that Williams-Sonoma "actively misled her" with advertising and "continue[s] to falsely advertise and sell" bedding are the bases for her lawsuit. Far from being "above and beyond the wrongdoing" at issue, *see Johnson*, 314 F.3d at 414, these theories of harm go to the heart of her case. Because these allegations are "related to the underlying wrongdoing rather than an effort to prevent [Perlin] from being able to sue," these allegations cannot constitute the "affirmative conduct" needed for fraudulent concealment. *See Spears v. First Am. eAppraiseIt*, No. 08-cv-00868-RMW, 2013 WL 1748284, at

12

\*5 (N.D. Cal. Apr. 23, 2013) (finding that fraudulent concealment allegations fail as a matter of law where the allegations "are part and parcel" of plaintiffs' underlying claims); *see also Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008) (explaining that an argument for tolling based on fraudulent concealment must point to active conduct that goes "above and beyond the wrongdoing upon which the plaintiff's claim is filed").

As for her third theory, Perlin has not shown that the 2014 call in which she was allegedly told that "there was nothing wrong with [the] sheets" prevented her from filing suit within the statutory window. As an initial matter, it is not immediately apparent that the statement by a customer service representative that there was "nothing wrong" with the sheets constitutes an act of intentional misrepresentation. More importantly, however, Perlin has not shown that this statement prevented her from filing suit against Williams-Sonoma. Indeed, Perlin testified at her deposition that no one prevented her from further investigating the reasons why her sheets ripped. Perlin Depo. Tr. 183:23–184:1. As a result, the call cannot serve as the basis for Perlin's theory of fraudulent concealment.

In sum, because Perlin has not met her burden to show Williams-Sonoma affirmatively committed acts to prevent her from filing suit in time, the doctrine of fraudulent concealment does not apply.

## IV. SEALING

Perlin filed portions of her opposition brief and two supporting exhibits provisionally under seal because the documents contained or referenced information which Williams-Sonoma has designated as confidential. *See* Perlin's Unopposed Administrative Motion to Seal [Dkt. 271] at 1. Pursuant to Civil Local Rule 79–5(f)(3), Williams-Sonoma was required to file a statement and/or declaration showing that the material warrants sealing within seven days of Perlin's motion. *See* L.R. 79–5(f)(3). Williams-Sonoma has not done so.

I have reviewed the information contained within these documents and I am skeptical that this information warrants sealing. I will nevertheless allow Williams-Sonoma the opportunity to address the outstanding motion. Should Williams-Sonoma wish to maintain this information under seal, Williams-Sonoma shall file a response pursuant to Civil Local Rule 79–5(f)(3) by

Wednesday, July 27, 2022.  If no response is received, the Clerk of Courts will be directed to unseal the documents contained at 271-3, 271-4, and 271-5.

**CONCLUSION**

For the foregoing reasons, Williams-Sonoma's motion for summary judgment on the basis that Perlin's claims are time-barred is **DENIED**.  Perlin has not shown that the doctrine of fraudulent concealment applies but she has established that there are genuine issues of material fact whether the discovery rule may apply to render her claims timely.

**IT IS SO ORDERED.**

Dated: July 20, 2022



William H. Orrick
United States District Judge