1  Amber L. Eck (SBN 177882)
   HAEGGQUIST & ECK, LLP
2  225 Broadway, Suite 2050
   San Diego, California 92101
3  Telephone: 619.342.8000
4  ambere@haelaw.com

5  Robert B. Carey (*pro hac vice*)
   Leonard W. Aragon (*pro hac vice*)
6  HAGENS BERMAN SOBOL SHAPIRO LLP
   11 West Jefferson Street, Suite 1000
7  Phoenix, Arizona 85003
   Telephone: 602.840.5900
8  rob@hbsslaw.com
9  leonard@hbsslaw.com

10 [Additional counsel listed on signature page]

11 Attorneys for Plaintiff and the Proposed Classes

12

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15                SAN FRANCISCO DIVISION

16 WILLIAM RUSHING and ELIZABETH          Case No.: 3:16-cv-01421-WHO
   PERLIN, individually and on behalf of all
17 others similarly situated,              **PLAINTIFF'S NOTICE OF MOTION,**
                                           **MOTION FOR CLASS**
18         Plaintiffs,                     **CERTIFICATION, AND**
                                           **MEMORANDUM OF POINTS AND**
19 v.                                      **AUTHORITIES IN SUPPORT**

20 WILLIAMS-SONOMA, INC., et al.,          Judge: William H. Orrick
21
           Defendants.                     Hearing
22                                         Date: November 9, 2022
                                           Time: 2:00 p.m.
23                                         Courtroom: 2, 17th Floor

24

25

26

27

28

**TO THE COURT, DEFENDANTS, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 9, 2022, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2 of the Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23 (b)(3), Plaintiff Elizabeth Perlin will and hereby does move the Court for an Order under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) that grants the following relief:

1. Certifies a nationwide **injunctive relief Class** under Rule 23(b)(2) for all causes of action seeking injunctive relief in Plaintiff's Eighth Amended Complaint ("Complaint") defined as:

> All persons[1] in the United States who from January 19, 2007, to the present who purchased[2] bedding, including sheets, sheet sets, pillowcases, duvet covers, and/or shams, directly from Williams-Sonoma, Inc.[3] from any of the following seven lines of bedding:
>
> 1) Williams-Sonoma Home Signature 600-Thread-Count Sateen Bedding (n/k/a Chambers 600TC Sateen Bedding)
>
> 2) Williams-Sonoma Home Greek Key Jacquard 600-Thread-Count Bedding
>
> 3) Williams-Sonoma Home Suzani Jacquard Bedding (500 TC)
>
> 4) Pottery Barn Foundations Hotel Sateen Bedding (600 TC)
>
> 5) Pottery Barn Morgan 400-Thread-Count Bedding
>
> 6) Pottery Barn PB Organic 400-Thread-Count Bedding
>
> 7) Pottery Barn PB Classic 400-Thread-Count Bedding

2. Certifies a **California Subclass** under Rule 23(b)(3) for all causes of action in the Complaint seeking monetary relief defined as:

---

[1] Excluded from the Class are Defendants, their employees, co-conspirators, officers, directors, board members, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judge and court staff to whom this case is assigned.

[2] Purchased in both class definitions includes online purchases, catalog, and in-store purchases.

[3] Williams Sonoma, Inc. d/b/a Pottery Barn and Williams Sonoma Home, and sells products, including bedding, under the brands: Williams-Sonoma, Williams-Sonoma Home, Pottery Barn, Pottery Barn Kids, Pottery Barn Baby, Pottery Barn Teen, PB Teen, PB Dorm, and West Elm. Dkt. 262, ¶¶ 45, 49.

All persons[4] in California who from January 19, 2007, to the present who purchased bedding, including sheets, sheet sets, pillowcases, duvet covers, and/or shams, directly from Williams-Sonoma, Inc. from any of the following seven lines of bedding:

1) Williams-Sonoma Home Signature 600-Thread-Count Sateen Bedding (n/k/a Chambers 600TC Sateen Bedding)

2) Williams-Sonoma Home Greek Key Jacquard 600-Thread-Count Bedding

3) Williams-Sonoma Home Suzani Jacquard Bedding (500 TC)

4) Pottery Barn Foundations Hotel Sateen Bedding (600 TC)

5) Pottery Barn Morgan 400-Thread-Count Bedding

6) Pottery Barn PB Organic 400-Thread-Count Bedding

7) Pottery Barn PB Classic 400-Thread-Count Bedding

The Injunctive Relief Class seeks injunctive relief under the Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*; False Advertising Law ("FAL"), Business and Professions Code §§ 17500, *et seq.*; and Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.* The California Subclass seeks monetary relief, and all other available relief, under the UCL, FAL, CLRA, and common law unjust enrichment.

Plaintiff further requests that the Court appoint (1) Plaintiff Perlin as class representative for all claims, and (2) Hagens Berman Sobol Shapiro LLP and Haeggquist & Eck, LLP as class counsel. The grounds for this motion are that this case meets all the requirements for class treatment under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

This motion is supported by the following **Memorandum of Points and Authorities**, and the accompanying Declarations in Support of Class Certification by the following persons:

- Elizabeth Perlin
- Leonard Aragon
- Amber Eck
- Jennifer Rhodes

---

[4] Excluded from the Class are Defendants, their employees, co-conspirators, officers, directors, board members, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judge and court staff to whom this case is assigned.

As well as the following expert reports

- Dr. Russell Lamb
- Jennifer Rhodes

In the Memorandum of Points and Authorities that follows this Motion, those declarations and reports shall be referred to by the last name of the declarant, followed by the abbreviation "Decl." or "Rep." [for example: "Perlin Decl." or "Lamb Rep."]. This Motion is also based on the pleadings and papers on file in this action and all matters of which this Court may take judicial notice.

A proposed form of order is submitted herewith.

Dated: September 28, 2022                    Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By _____ /s/ Leonard W. Aragon _____
LEONARD W. ARAGON
Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
rob@hbsslaw.com
leonard@hbsslaw.com

Amber L. Eck (177882)
HAEGGQUIST & ECK, LLP
ambere@haelaw.com

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: 510.725.3000
shanas@hbsslaw.com

George Richard Baker (SBN 224003)
BAKER LAW, PC
625 East Main Street, Suite 102B, #104
Aspen, Colorado 81611
Telephone: 970.439.5905
richard@bakerlawpc.com

Attorneys for Plaintiff

3

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES PRESENTED ...........................................................................

INTRODUCTION .......................................................................................................... 1

PROPOSED CLASSES TO BE CERTIFIED ....................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

    A.  The marketing of high thread count bedding products. ........................................ 2

    B.  WSI markets high thread count bedding products. .............................................. 3

    C.  ASTM D3775 is the industry standard for thread count. ..................................... 4

    D.  WSI knows their advertised thread counts are false. .......................................... 5

    E.  Perlin's Purchase ............................................................................................... 6

    F.  The Putative Classes .......................................................................................... 8

ARGUMENT .................................................................................................................. 9

    A.  Legal standard for class certification ................................................................ 9

    B.  Each requirement of Rule 23(A) is satisfied. ...................................................... 9

        1.  Rule 23(a)(1): the Classes are sufficiently numerous. ................................... 9

        1.  Rule 23(a)(2): questions of law and fact are common to the Classes......... 10

        2.  Rule 23(a)(3):  Plaintiff's claims are typical of the Classes' claims............. 11

        3.  Rule 23(a)(4):  the Class and Subclass' interests are adequately protected. ............... 13

    C.  A nationwide injunctive relief class is proper under Rule 23(B)(2). ................... 14

        1.  Mrs. Perlin has standing to seek injunctive relief for the Class. ................ 15

        2.  California law applies to the nationwide Injunctive Relief Class................ 17

    D.  Certification under Rule 23(B)(3) is proper for the California Subclass............ 20

        3.  Common questions, based on Defendants' common conduct, predominate......... 20

      a.  Common evidence can show WSI deceived the Subclass.................................... 21

      b.  Mrs. Perlin can show reliance and injury with common proof. .......................... 22

      c.  Mrs. Perlin can establish damages by common proof. ...................................... 23

        4.  Class action is superior here............................................................................ 24

    E.  Rule 23(G) is satisfied. ................................................................................... 25

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc., v. Connecticut Ret. Plans & Trust Funds,*
   568 U.S. 455 (2013) ......................................................................................................... 9, 22

*Astiana v. Kashi Co.,*
   291 F.R.D. 493 (S.D. Cal. 2013) .................................................................................. 11, 12

*Bates v. United Parcel Serv., Inc.,*
   511 F.3d 974 (9th Cir. 2007) (en banc) ............................................................................... 15

*Berger v. Ludwick,*
   No. C-97-0728-CAL, 2000 WL 1262646 (N.D. Cal. Aug. 17, 2000)................................. 11

*Brown v. Hain Celestial Gro., Inc.,*
   No. C 11-03082 LB, 2014 WL 6483216 (N.D. Cal. Nov. 18, 2014)................................... 23

*Comcast Corp. v. Behrend,*
   569 U.S. 27 (2013) .............................................................................................................. 24

*Compaq Computer Corp. v. Packard Bell Elecs., Inc.,*
   163 F.R.D. 329 (N.D. Cal. 1995) ........................................................................................ 21

*Daniel v. Ford Motor Co.,*
   806 F.3d 1217 (9th Cir. 2015) ............................................................................................ 22

*Ehret v. Uber Techs., Inc.,*
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) ................................................................................ 10

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ............................................................................................................ 24

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) ......................................................................................... 13, 14

*General Tele. Co. of SW v. Falcon,*
   457 U.S. 147 (1982) ............................................................................................................ 10

*Hadley v. Kellogg Sales Co.,*
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) .............................................................................. 10

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 2008) ............................................................................................ 10

*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1992) ......................................................................................... 11, 12

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) .........22, 23

*Jimenez v. Menzies Aviation*,
    No. 15-CV-02392-WHO, 2016 WL 3231106 (N.D. Cal. June 13, 2016) ...........................................9

*Johnson v. Hartford Casualty Ins. Co.*,
    No. 15-CV-04138-WHO, 2017 WL 2224828 (N.D. Cal. May 22, 2017) .......................................... 20

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ......................................................................................................... 23

*Keilholtz v. Lennox Hearth Products Inc.*,
    268 F.R.D. 330 (N.D. Cal. 2010) ..................................................................................................... 10

*Khasin v. R.C. Bigelow, Inc.*,
    No. 12-CV-02204-WHO, 2016 WL 1213767 (N.D. Cal. Mar. 29, 2016) .........................................9

*Lewis v. Casey*,
    518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (Souter, J., concurring) ............................. 17

*Lilly v. Jamba Juice Co.*,
    13-CV-02998-JST, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ................................................... 16

*Marsh v. First City Bank of Delaware*,
    No. 11-CV-052260-WHO, 2014 WL 554553 (N.D. Cal. Feb. 7, 2014) ........................................... 20

*Mass. Mut. Life Ins. Co. v. Superior Court*,
    97 Cal. App. 4th 1282 (2002) .......................................................................................................... 22

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir.2012) ............................................................................................ 9, 17, 18, 19

*McCrary v. Elations Co., LLC*,
    No. EDCV 13-00242 JGB, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ...................................... 23

*In re Napster, Inc. Copyright Litig.*,
    No. C 04-1671 MHP, 2005 WL 1287611 (N.D. Cal. June 1, 2005) ............................................... 25

*Oceguera v. Baby Trend, Inc.*,
    521CV00398JWHKKX, 2022 WL 1599869 (C.D. Cal. Jan. 14, 2022) ........................................... 15

*Prestex Inc. v. United States*,
    320 F.2d 367 (Ct.Cl. 1963) .........................................................................................................21, 23

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) ...........................................................................................21, 22, 23, 24

*Rahman v. Mott's LLP*,
    CV 13-3482 SI, 2014 WL 325241 (N.D. Cal. Jan. 29, 2014) ......................................................... 15

iii

*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) .................................................................. 15

*Rubenstein v. Gap, Inc.*,
    14 Cal. App. 5th 870 (Ct. App. 2017) .......................................................... 21

*In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*,
    20-CV-03184-HSG, 2021 WL 3191733 (N.D. Cal. July 28, 2021) ................ 21

*Tyson Foods Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ................................................................................. 20

*Vasquez v. Superior Court*,
    4 Cal. 3d 800 (1971) .................................................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 ................................................................................................ 10

*Williams v. Gerber Prods. Co.*,
    553 F.3d 934 (9th Cir. 2008) ................................................................. 10, 21

*In re Yahoo Mail Litig.*,
    308 F.R.D. 577 (N.D. Cal. 2015) ................................................................. 14

**Statutes**

Cal. Bus. & Prof. Code § 17205 ......................................................................... 19

Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ...................... *passim*

False Advertising Law, Business and Professions Code §§ 17500, *et seq.* ......... *passim*

Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.* ......................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 23 .................................................................... *passim*

Federal Rule of Civil Procedure 30 .................................................................... 14

1 H. Newberg & A. Conte, *Newberg on Class Actions*, § 4.64 (5th ed. 2015) ......... 24

## STATEMENT OF THE ISSUES PRESENTED

1.      Whether Plaintiff's proposed Class satisfies the requirements of Federal Rule of Civil Procedure 23 to warrant class certification of a 23(b)(2) class.

2.      Whether Plaintiff's proposed Subclass satisfied the requirements of Federal Rule of Civil Procedure 23 to warrant class certification of a 23(b)(3) class.

3.      Whether Elizabeth Perlin should be appointed Class Representative on behalf of the Class.

4.      Whether Hagens Berman Sobol Shapiro and Haeggquist & Eck should be appointed Co-Lead Counsel for the Class.

1   Plaintiff Elizabeth Perlin, by and through undersigned counsel, submits this memorandum of

2   points and authorities in support of her motion for class certification under the Federal Rules of Civil

3   Procedure 23(a), (b)(2), and (b)(3).

4   **INTRODUCTION**

5   A retailer must be honest when advertising its products. It should never give false

6   information or hide material information, and if there is a label on the product, it must be truthful

7   and consistent with industry standards. Here, Williams-Sonoma, Inc. and its marketing and

8   advertising subsidiaries[1] (collectively, "WSI"/"Defendants") pass off low-thread count bedding as

9   luxury high-thread count bedding to boost sales and increase prices due to the premium feature.

10  Thread count is not mere puffery, it is a unit of measure that conveys information about the

11  product's value to consumers. Consumers have been trained to look for higher thread counts as an

12  indicator of luxury when shopping for bedding but are forced to rely on WSI's thread count

13  representations because specialized expertise is required to discern thread count. Proposed class

14  members purchased items from seven lines of bedding (the "Relevant Bedding" or "Bedding

15  Products")[2] sold by WSI but were not told that WSI did not use the industry standard for calculating

16  thread count, nor did they disclose that the true thread counts were half of what WSI advertised.

17  **PROPOSED CLASSES TO BE CERTIFIED**

18  Plaintiff respectfully requests the Court certify two classes, a "Nationwide Injunctive Relief

19  Class" under Rule 23(b)(2), and a "California Subclass" seeking monetary relief[3] under Rule 23(b)(3)[4]

20  First, Plaintiff seeks certification of a **Nationwide Injunctive Relief Class** under Rule 23(b)(2) for

21  all causes of action seeking injunctive relief in Plaintiff's Eighth Amended Complaint ("Complaint").

22

23  [1] Williams-Sonoma, Inc., Williams-Sonoma DTC, Inc., and Williams-Sonoma Advertising, Inc.

24  [2] The "Bedding Products" include the following: (1) Williams-Sonoma Home Signature 600-Thread-Count Sateen Bedding (n/k/a Chambers 600TC Sateen Bedding); (2)Williams-Sonoma Home Greek Key Jacquard 600-Thread-Count Bedding; (3) Williams-Sonoma Home Suzani Jacquard Bedding (500

25  TC); (4) Pottery Barn Foundations Hotel Sateen Bedding (600 TC); (5) Pottery Barn Morgan 400-Thread-Count Bedding; (6) Pottery Barn PB Organic 400-Thread-Count Bedding; and (7) Pottery

26  Barn PB Classic 400-Thread-Count Bedding.

27  [3] The California Subclass seeks all relief available under the causes of action alleged in the Complaint.

28  [4] In the alternative, Plaintiff requests that the Court exercise its discretion to certify a narrower or broader class that the Court deems appropriate.

1

The proposed class is defined as:

> All persons in the United States who from January 19, 2007, to the present purchased[5] bedding, including sheets, sheet sets, pillowcases, duvet covers, and/or shams, directly from Williams-Sonoma, Inc.[6] from any of the Bedding Products.

Second, Plaintiff seeks certification of a **California Subclass** under Rule 23(b)(3) for all causes of action in the Complaint seeking monetary relief, including restitution. The California Subclass is defined as:

> All persons in California who from January 19, 2007 to the present who purchased bedding, including sheets, sheet sets, pillowcases, duvet covers, and/or shams, directly from Williams-Sonoma, Inc. from any of the Bedding Products.
>
> (collectively, the "Classes").

Excluded from both Classes are Defendants, their employees, co-conspirators, officers, directors, board members, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judge and court staff to whom this case is assigned. Plaintiff further requests that the Court appoint (1) Plaintiff Perlin as the class representative for all claims, and (2) Hagens Berman Sobol Shapiro LLP and Haeggquist & Eck, LLP as class counsel.

## STATEMENT OF FACTS

**A.      The marketing of high thread count bedding products.**

Thread count is routinely identified in advertisements and the product packaging for bedding.[7] While consumers may not fully understand the technical details and all of the factors that account for a fabric's cost, merchandisers' marketing efforts have taught consumers that thread count is a measurable quantity they can rely upon to identify a luxurious product.[8] Indeed, over the years, some merchants have engaged in "thread count wars," where they advertise higher and higher thread counts on their bedding to gain a greater market share.[9] Textbooks explain the true benefits of higher

---

[5] Purchased in both class definitions includes online, catalog, and in-store purchases.
[6] Williams-Sonoma, Inc., d/b/a Pottery Barn and Williams-Sonoma Home, sells products including bedding, under the brands: Williams-Sonoma, Williams-Sonoma Home, Pottery Barn, Pottery Barn Kids, Pottery Barn Baby, Pottery Barn Teen, PB Teen, PB Dorm, and West Elm. Dkt. 262, ¶¶ 45, 49.
[7] Expert Report of J. Rhodes ("Rhodes Rep."), ¶ 29, attached as Exhibit A.
[8] *Id.* ¶¶ 23, 29-30.
[9] *Id.* ¶ 31.

2

thread count fabric, like its effect on "the coarseness or fineness of a fabric, achieved by counting the number of threads contained in one square inch of fabric . . . ."[10] The public hears about the importance of thread count from advertisers and bedding retailers, including WSI.[11] Because consumers have come to consider thread count before buying bedding, higher thread count products generally costs more money.[12] And, in the case of the Bedding Products, the higher thread count products cost more than comparable products with the Bedding Products' true thread count.[13] Unfortunately, consumers must rely on a merchants' thread count representations, because a thread count's accuracy cannot be discerned by the naked eye, requires opening the product packaging and destructive expert analysis, and is often being provided for products sold remotely through catalogs and on websites.[14]

**B.    WSI markets high thread count bedding products.**

Thread count claims appear prominently on all WSI's marketing materials for the Bedding Products. Indeed, WSI puts the thread count in the name of nearly all of the Bedding products. WSI then reinforces the thread count claims in the "summary" or description of each product (1) Williams-Sonoma Home Signature 600-Thread-Count Sateen Bedding as "600-thread-count,"[15] (2) Williams-Sonoma Home Greek Key Jacquard 600-Thread-Count Bedding as "600-thread-count,"[16] (3) Williams-Sonoma Home Suzani Jacquard Bedding as "500-thread-count,"[17] (4) Pottery Barn Foundations Hotel Sateen Bedding as "600 thread count,"[18] (5) Pottery Barn Morgan 400-Thread-Count products as "400-thread-count,"[19] (6) Pottery Barn PB Organic 400-Thread-Count Bedding as

---

[10] *Id.* ¶ 23.
[11] *Id.* ¶ 23; Aragon Decl. ¶¶ 2-3, Exs. 1 at 5 (WSI0016000) ("There are two ways to spot the quality of bed linens – thread count and type of fabric."); 2 at 7 (WSI0016017) ("Thread count determines the quality of the fabric. The higher the thread count, the tighter the weave and the better the quality.").
[12] Expert Report of Dr. Lamb ("Lamb Rep."), ¶¶ 37, 56, attached as Exhibit B.
[13] *Id.*
[14] Rhodes Rep. ¶¶ 23, 49-54.
[15] Aragon Decl. ¶ 4, Ex. 3.
[16] *Id.* ¶ 5, Ex. 4.
[17] *Id.* ¶ 6, Ex. 5.
[18] *Id.* ¶ 7, Ex. 6.
[19] *Id.* ¶ 8, Ex. 7.

"400-thread-count,"[20] and (7) Pottery Barn PB Classic 400-Thread-Count Bedding as "400-thread-count."[21] These thread count claims also appear in WSI's catalogs,[22] webpages,[23] and packaging labels,[24] and remain consistent across all platforms.[25]

**C.      ASTM D3775 is the industry standard for thread count.**

Thread count is a unit of measure that requires a uniform method of calculation and representation.[26] The American Society for Testing and Materials International ("ASTM") Standard D3775 sets forth the industry standard for calculating thread count for bedding, a standard that ensures uniformity across the industry.[27] Under ASTM D3775, thread count is determined by "[c]ount[ing] individual warp ends and filling picks as single units, regardless of whether they are comprised of single or plied components."[28] ASTM standards are developed through "consensus principles," with "participation of stakeholders [who have] an interest in [the standard's] development and use."[29] A Federal Trade Commission staff advisory opinion endorsed the ASTM standard on August 2, 2005,[30] and the International Trade Commission ("ITC") issued a general exclusion order prohibiting the importation of all woven fabric products with falsely stated thread counts, meaning thread counts that do not comply with ASTM D3775.[31] The ITC's order unambiguously rejected the approach used by WSI to count threads:

> Under the ASTM Standard 3775, in order to calculate thread count, one must count "plied components" (such as twisted fibers) as "single units." The FTC has concluded that "consumers could be deceived or misled by multiplying the actual count by the number of plies within the yarn" and would likely mislead consumers about the quality of the product being purchased."[32]

---

[20] *Id.* ¶ 9, Ex. 8.
[21] *Id.* ¶ 10, Ex. 9.
[22] *See, e.g.*, *id.* ¶¶ 11-16, Exs. 10-15.
[23] *See, e.g.*, *id.* ¶¶ 4-6, 8-10, Exs. 3-5, 7-9.
[24] *See, e.g.*, *id.* ¶¶ 17-21, Exs. 16-20.
[25] *Compare, e.g.*, *id.* ¶¶ 4, 11, 17, Ex. 3, *with* Ex. 10, *with* Ex. 16.
[26] Rhodes Rep. ¶ 24.
[27] *See* Aragon Decl. ¶¶ 22-25; Exs. 21, 22 at 12-13, 23 at 4 (August 2, 2005 letter to Lindwood Wright at 2), 24 at WSI0002993 ██████████████████████.
[28] *See id.* ¶¶ 22, 26; Exs. 21 at 2, 25 at 9.1.1.
[29] *Id.* ¶ 27, Ex. 26 at WSI0012707-08.
[30] *Id.* ¶ 24, Ex. 23 at 3-4.
[31] *See id.* ¶¶ 23, 28; Exs. 22 at 12-14, 27 at 2.
[32] *Id.* ¶ 23, Ex. 22 at 12 (citations omitted).

4

**D.      WSI knows their advertised thread counts are false.**



Still, WSI ignores their own experts, and does so even when the laboratory specifically notices and points out bedding that is incorrectly advertised

WSI ignored both laboratories and continued to falsely advertise the Bedding Products' thread counts.

The discrepancy between the actual and advertised thread counts results from WSI's unabashed use of the same ply-multiplication technique that the ASTM, FTC, and ITC forbid. WSI admits that each of the Bedding Products is made of two-ply construction and that it counts the

---

[33] The Acceptance Testing Reports, however, were created in WSI's normal course of business, *see id.* ¶¶ 29-31; Exs. 28 at 2-6, 29 at 1-2 ███████████████ and they are maintained on WSI's "PLM" system, *see id.* ¶ 36, Ex. 31 at 258:22-259:22.

[34] *See, e.g., id.* ¶¶ 25, 30-31, 33-36; Exs. 24, 29-30, 32-35.

[35] Dkt. 113-1 at 1-2.

[36] *See* Aragon Decl. ¶¶ 25, 30-31, 33-35, Exs. 24 at WSI0002989-90, 2993 █████ 29 at WSI0002996-97, 3006 █████ 30 at WSI0002886-87, 2898 █████ 2 at WSI0002539-40, 2549 █████ , 33 at WSI0002950-51, 2955 █████ 34 at WSI0002579-80, 2583 █████

[37] Aragon Decl. ¶ 25, Ex. 24 at WSI000293 (emphasis added).

[38] Aragon Decl. ¶ 31, Ex. 30 at WSI0002889 (capitalization in original, emphasis added).

5

individual plies in determining thread count.[39] WSI claims that federal regulations require it to do so,[40] but customs informed it otherwise.[41] The ITC, moreover, administers the Harmonized Tariff Schedule upon which WSI relies,[42] and ruled that including the plies ("ply-multiplication") amounts to false advertising.[43] Meanwhile, WSI asserts elsewhere that ply-multiplication is "common sense,"[44] but it does not apply that "common sense" practice consistently. Indeed, there are several products (which are not the subject of this litigation) where WSI counts threads in accordance with the regulations.[45] WSI is aware that the correct standard for counting threads is the ASTM standard,[46] ████████████████████████████████████████████████████

### E.    Perlin's Purchase

On January 19, 2011, Mrs. Perlin purchased Pottery Barn's "PB Classic 400-Thread-Count Sheet Set" and "PB Classic 400-Thread-Count Extra Pillowcases" ("PB Classic") from the Pottery Barn website.[48] The bedding Mrs. Perlin purchased is included in the list of Bedding Products. Prior to purchasing the PB Classic bedding, Mrs. Perlin reviewed the website and compared the high-

---

[39] *See* Dkt. 26 at 16 (stating that "federal customs regulations require that threads within multi-ply yarns . . . be counted individually—which is how the threads were counted") (citing 19 C.F.R. § 141.89(a)); Aragon Decl. ¶¶ 32, 37, Exs. 31 at 123:5-124:20 (claiming that to determine a product's thread count, SSI would need to know the number of plies in the fabric "[b]ecause you may have yarns that are more than one ply, and they -- they need to be counted"), 36 at Nos. 31-38 (admitting that each product-at-issue includes threads made of 2-ply construction).

[40] Dkt. 26 at 16.

[41] Aragon Decl. ¶¶ 38-40, Exs. 37-39.

[42] *Id.* ¶ 41, Ex. 40.

[43] *Id.* ¶¶ 23, 28, Exs. 22 at 12-14 (ITC finding that counting individual plies violates ASTM D3775, which results in literally false claims that actually deceive consumers about a material product characteristic), 27 (ITC, in the same matter, announcing general exclusion order affecting all woven fabrics and products containing the same that are falsely advertised through the misrepresentation of thread count) at 2.

[44] *Id.* ¶ 32, Ex. 31 at 123:5-125:5.

[45] Rhodes Rep. ¶ 57.

[46] *Id.*; *see also* Aragon Decl. ¶ 24, Ex. 23 at WSI0002993 (using the ASTM D3775 testing standard to count threads).

[47] Aragon Decl. ¶¶ 25, 30-35 Ex. 31 at 123:5-125:5; Ex. 24 at WSI0002989-90; Ex. 29 at WSI0002996-97, 3006; Ex. 30 at WSI0002886-87, 2898; Ex. 32 at WSI0002539-40, 2549; Ex. 33 at WSI0002950-51, 2955; Ex. 34 at WSI0002579-80, 2583.

[48] Declaration of Elizabeth Perlin in Support of Plaintiff's Motion for Class Certification (Perlin Decl.) ¶ 4; Aragon Decl. ¶ 52, Ex. 50 (excerpt from WSI0016072 showing "list item detail" of Perlin's purchase history). Given the size of WSI0016072, only the relevant columns are included.

thread count PB Classic bedding to other high-thread count bedding.[49] WSI labeled the bedding as 400 thread count on the website and their packaging and boasted about thread count throughout the website and on the packaging.[50] The representations regarding thread count, however, were a lie.[51]

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

      The bedding also started ripping after normal and ordinary use.[53] Perlin did not know why the bedding ripped, but initially believed she may have done something wrong to cause the rip or that the rip may have been a "fluke."[54] As such, she purchased a second set of the same bedding on January 28, 2011, inspected the sheets before she put them on the bed, and—when it came time to wash them—Perlin purposely followed all washing instructions and took the extra precaution of air drying her sheets to avoid excess wear.[55] Perlin also regularly inspected her sheets after they came out of the wash and before she put them on the bed to make sure they were not damaged during the wash process.[56] But like the first set, the bottom sheet started ripping within a few years.[57] Perlin called WSI to ask about her ripped sheets.[58] WSI stated there was nothing wrong with the sheets and denied her a refund.[59]

      Perlin has made dozens of purchases at WSI, both online and in-store, since purchasing the PB Classic bedding.[60] She has also continued to purchased different lines of Pottery Barn sheets and the sheets on her bed today are the Pottery Barn brand.[61]

---

[49] Aragon Decl. ¶ 51, Ex. 49 at 50:9-51:4.
[50] Aragon Decl. ¶¶ 53, 21 Exs. 51 (WSI0011179-83), 20 (WSI0011833) (image of packaging for PB Classic 400-Thread-Count sheets).
[51] Dkt. 289-3 ¶¶ 5-6; Rhodes Rep. ¶¶ 34-35, 56.
[52] Dkt. 289-3 ¶¶ 5-6; Rhodes Rep., ¶¶ 32-44, 55-58.
[53] Perlin Decl. ¶ 4.
[54] Aragon Decl. ¶¶ 51, 53, Exs. 49 (Perlin Tr.) at 82:15-83:16, Ex. 53; Perlin Decl. ¶ 4.
[55] Aragon Decl. ¶¶ 51, 53 Exs 49 at 97:21-98:6, 51 (WSI0016072); Perlin Decl. ¶ 5.
[56] Perlin Decl. ¶ 4.
[57] Aragon Decl. ¶ 51, Ex. 49 at 98:4-100:20.
[58] Perlin Decl. ¶ 5; Dkt. 267-1 (Cardon Decl.) at Exs. B, E.
[59] Aragon Decl. ¶ 51, Ex. 49 at 39:17-40:2; Perlin Decl. ¶ 6.
[60] Aragon Decl. ¶¶ 51-52, Ex. 49 at 158:4-15, Ex. 50.
[61] Id. ¶¶ 51-52, Ex. 49 at 35:10-38:19; Ex. 50.

7

**F.      The Putative Classes**

Consumers, like Mrs. Perlin, have purchased the products at issue in this case for well over a decade.[62] WSI produced spreadsheets indicate that 466,177 of the Bedding Products were sold to consumers from 2012 to 2018,[63] many of whom live in California.[64] The records also show WSI sold at least ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ [66]

To facilitate and track these transactions, WSI maintains vast amounts of information about their sales and their consumers that can be used to identify class member. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ [69]

The list of purchasers continues to grow. From their corporate offices in California,[70] WSI continues to market many of the same products to consumers in the same manner and with the same false thread counts, although they have since changed the name of at least some of the products consumers purchased.[71] WSI has produced no evidence showing they inform consumers about their

---

[62] *See* Aragon Decl. ¶¶ 42, 50 Exs. 41, 48.
[63] *Id.*
[64] Dkt. 129 at 4 (describing location of purchasers).
[65] Aragon Decl. ¶¶ 42, 50, Exs. 41, 48; *see also id.* at ¶¶ 42, 49, Exs. 41 ████████████████████████ Dkt. 272 at ¶ 1.
[66] *See* Aragon Decl. ¶¶ 42, 50 Exs. 41, 48.
[67] *Id.* ¶ 43, Ex. 42 at WSI0014220.
[68] *Id.* ¶ 55, Ex. 43 at 136:10-137:8.
[69] *Id.* at 88:22-89:17.
[70] *See* Dkt. 129 at 2-3 (describing Defendants' ties to California).
[71] Rhodes Rep. at ¶ 59.

1  Bedding Products' true thread counts, and admitted they continue to sell and advertise the Bedding

2  Products.[72]

3  **ARGUMENT**

4  **A.     Legal standard for class certification**

5       Under Rule 23, class certification is proper if the plaintiff satisfies Rule 23(a)'s numerosity,

6  commonality, typicality, and adequacy of representation requirements and at least one Rule 23(b)

7  requirement.[73] While bearing the burden of proof, a plaintiff need only show "by a preponderance of

8  the evidence, that [Rule 23's] prerequisites have been met."[74] "Merits questions may be considered . . .

9  only to the extent . . . that they are relevant to determining whether the . . . prerequisites for class

10  certification are satisfied."[75] This action meets Rule 23's requirements.

11  **B.     Each requirement of Rule 23(A) is satisfied.**

12       **1.     Rule 23(a)(1): the Classes are sufficiently numerous.**

13       The numerosity prerequisite requires that a class be so numerous that joinder of all members

14  is impracticable. Fed. R. Civ. P. 23(a)(1). Such impracticability can be established by geographic

15  diversity among class members or the size of the class, both of which make joinder impracticable

16  here. As a forty-member class generally fulfills the requirement,[76] the putative Classes here easily

17  meets Rule 23's numerosity requirement, where WSI's records reveal that (1) they have sold more

18  than $44 million of the challenged products across the country since 2012; (2) █████████████

19  ██████████████████████████████████████████████████

20  ██████████████████████████████████████████

21  ██████

22

23

24  [72] Aragon Decl. ¶¶ 45-46, 49, Exs. 44, 47 at RFA Nos. 54, 55, 56; Dkt. 262 at ¶ 1.
    [73] *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir.2012).

25  [74] *Khasin v. R.C. Bigelow, Inc.*, No. 12-CV-02204-WHO, 2016 WL 1213767, at *2 (N.D. Cal. Mar. 29,
2016) (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011).

26  [75] *Amgen Inc., v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466, 1194 (2013).

27  [76] *Jimenez v. Menzies Aviation*, No. 15-CV-02392-WHO, 2016 WL 3231106, at *3 (N.D. Cal. June 13,
2016) (citation omitted).

28  [77] Aragon Decl. ¶¶ 42, 50, Exs. 41 (██████████████████████████████), 48; Dkt. 272 at ¶ 1.

9

1.   **Rule 23(a)(2): questions of law and fact are common to the Classes.**

The commonality prerequisite—that "there are questions of law or fact common to the class"—will be met if the class claims depend upon a "common contention. . . of such a nature that it is capable of classwide resolution—which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[78] But commonality does not require that "every issue in the case must be common to all class members."[79] Indeed, a single common legal issue may suffice, as will a common factual predicate.[80] Because UCL, FAL, CLRA, and unjust enrichment claims focus on a defendant's conduct, the causes of action at issue here are particularly well-suited for class treatment.[81] And, as many courts have explained, "the primary evidence in a false advertising case is the advertising itself."[82] In deceptive advertising cases under the UCL, CLRA, and FAL, it is well established that where "numerous consumers are exposed to the same dubious practice by the same seller [] proof of the prevalence of the practice as to one consumer would provide proof for all."[83]

The same is true here, the core facts at issue are common to all Class and Subclass members. WSI made material misrepresentations in their advertising and product labeling that each of the lines of bedding at issue had a specific measurable thread count and concealed the same material fact— ███████████████████████████████████████████████████████████████████[4] If Plaintiff proves that WSI's thread count advertising and labeling was false or misleading as to her

---

[78] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350(2011); *see* Fed. R. Civ. P. 23(a)(2).
[79] *General Tele. Co. of SW v. Falcon*, 457 U.S. 147, 157 (1982).
[80] *Dukes*, 564 U.S. at 358; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 2008).
[81] *See Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1130–31 (N.D. Cal. 2014) ("the UCL's focus is 'on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices.") (citation omitted); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017) (explaining that the "same standard for fraudulent activity governs" the CLRA, UCL, and FAL); *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010) (In unjust enrichment cases, the issue "[c]ommon to all class members and provable on a class-wide basis is whether Defendants unjustly profited from the sale of their [product].").
[82] *Williams v. Gerber Prods. Co.*, 553 F.3d 934, 938 (9th Cir. 2008) (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003)).
[83] *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971).
[84] Aragon Decl. ¶¶ 25, 31, Exs. 24 at 5, 30 at 4; Rhodes Rep. ¶¶ 55-56; Rhodes Rep. at Ex. 2.

10

1    because WSI included the plies in that count, she has proven that WSI's thread count advertising and

2    labeling for all their bedding subject to the ply-multiplication method were false or misleading for all

3    Class and Subclass members. Further, as Dr. Lamb (Plaintiff's expert) explains, all putative class

4    members were damaged as a result of purchasing these products, because along with inflating the

5    thread counts, WSI also inflated the products' prices.[85]

6          Additional legal and factual issues central to the claims in this case are common to the Class

7    and Subclass and can be proven with common evidence, including, but not limited to (1) whether

8    ASTM D-3775 is the industry standard for calculating thread count for the bedding; (2) whether WSI

9    violated the industry standards or state or federal law by counting two-ply yarns as two separate

10    threads for the thread count; (3) whether WSI's counting method made WSI's thread count

11    representations false, deceptive, or misleading to a reasonable consumer; (4) whether WSI omitted a

12    material fact by not disclosing that the thread count numbers they advertise on the bedding were not

13    calculated according to industry standards, did not match their own test results, or were unrelated to

14    thread count numbers used by merchants; (5) whether WSI knew or should have known their thread

15    count representations were false; (6) whether WSI had a duty to disclose their knowledge about the

16    thread count; and (7) whether the Class is entitled to injunctive or other relief.[86] Plaintiff's claims

17    embody questions of fact and law common to all Class and Subclass members, thus, satisfying Rule

18    23(a)'s commonality requirement.

19        **2.   Rule 23(a)(3): Plaintiff's claims are typical of the Classes' claims.**

20          The typicality prerequisite—that the plaintiff's claims must be typical of the class's claims—

21    "refers to the nature of the claim or defense of the class representative, and not the specific facts

22    from which it arose or the relief sought."[87] "The test of typicality is whether other members have the

23

24

---

[85] Lamb Rep. ¶¶ 35-37.

25    [86] *Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013) (finding "Plaintiffs seek[ing] common

26    relief in the form of restitution for their purchases and injunctions prohibiting the allegedly false advertisement to continue" as indicia of commonality).

27    [87] *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), superseded by statute on other grounds in *Berger v. Ludwick*, No. C-97-0728-CAL, 2000 WL 1262646, at *7 (N.D. Cal. Aug. 17, 2000);

28    *see also* Fed. R. Civ. P. 23(a)(3).

MOTION FOR CLASS CERTIFICATION          3:16-cv-04121-WHO

same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."[88] Typicality is construed permissibly.[89]

Mrs. Perlin is a typical Class member because, like them, she bought bedding from WSI that WSI marketed, advertised, and labeled as having a thread count approximately twice its actual count, and she paid a higher price for that bedding as a result. This was not a one-off situation unique to Mrs. Perlin but was due to WSI's policy or practice of counting each two-ply thread as two threads when calculating or advertising thread count to consumers. Mrs. Perlin was exposed to the same representations about the thread count as every other putative Class and Subclass member, regardless of whether they purchased the bedding online, in the store, or using a catalog, because all contained the same false statement of the bedding's thread count—providing a thread count double the true thread count. There was nothing unique about the advertising Mrs. Perlin saw. ███████████████ ████████████████████████████████████████████████████████████ ███████████[90] The point-of-purchase loss that Mrs. Perlin suffered because of this practice is identical to the injury other Class members suffered—they all paid more than they should have for the falsely advertised bedding.[91] Mrs. Perlin is a typical class member.

Any superficial differences between Mrs. Perlin's purchased products and the unpurchased products do not affect her typicality. This Court has already held, a plaintiff may "proceed with consumer protection class claims based on deceptive labels or advertising as to products she or he did not purchase: 'when the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products.'"[92] Here, Mrs. Perlin purchased sheet sets and extra pillowcases from the PB Classic 400-Thread Count collection. Mrs. Perlin, however, has standing to bring claims for all Bedding Products included in the proposed Class and Subclass definitions. That

---

[88] *Hanon*, 976 F.2d at 508 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985)).
[89] *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013).
[90] Aragon Decl. ¶¶ 32, 47; Exs. 31 at 125:9-25 (██████████████████████████████████████), Ex. 45 at 31:19-32:13 (███████████████████████████████████); Rhodes Rep. ¶ 59.
[91] Lamb Rep. ¶¶ 38-40.
[92] Dkt. 36 at 4 (quoting *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014).

1　list of Bedding Products represents "the unpurchased products [that] are two-ply products that suffer

2　from the same deception of which [Plaintiff] complains (*e.g.*, defendants illegally or deceptively

3　counted both plys in a two-ply yarn in order to state a higher thread count)."[93] The resolution of the

4　asserted claims will be the same between the bedding collection Mrs. Perlin purchased and the

5　unpurchased collections of bedding, because the purchased and the unpurchased products are subject

6　to the same policy (i.e. each product at issue is substantially similar in construction and purpose—

7　they are all bedding made from cotton fabric constructed from thread made from two-ply

8　construction that touts a high thread count in either its name or product description that was inflated

9　due to WSI's policy of including plies in the thread count despite industry practice to the contrary, as

10　reflected in ASTM D3775). Plaintiff's claims are therefore typical of the claims of absent Class and

11　Subclass members who bought products from any of the lines of bedding at issue.

12　　　　**3.　Rule 23(a)(4):  the Class and Subclass' interests are adequately protected.**

13　　　　The adequacy prerequisite—that the "representative parties will fairly and adequately protect

14　the interests of the class"—is met upon a showing that the plaintiff and his counsel (i) have no

15　conflicts of interest with other class members, and (ii) will vigorously prosecute the action on behalf

16　of the class.[94] Both conditions are met here.

17　　　　Plaintiff has no conflicts of interest with other Class members regarding these claims, as Mrs.

18　Perlin and putative class members all unknowingly purchased falsely advertised bedding products

19　from WSI and suffered economic losses due to the products' correlated inflated prices.[95] Mrs. Perlin

20　stands in the same shoes as all other putative class members and seeks and shares a common interest

21　in obtaining the same relief as all other Class members. Likewise, her counsel have no conflicts of

22　interest with the proposed Class or Subclass.[96]

23　　　　Plaintiff and class counsel have and will continue to aggressively prosecute this case on the

24　Class's behalf. Mrs. Perlin is familiar with her claims and her duties if appointed to represent the

25

26　[93] *See* Dkt. 36 at 6.

27　[94] Fed. R. Civ. P. 23(a)(4); *see Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).
　　[95] Perlin Decl. ¶¶ 12-13.

28　[96] Aragon Decl. ¶ 57; Eck Decl. ¶ 19.

MOTION FOR CLASS CERTIFICATION　　　　　　　　　　　　　　　　3:16-cv-04121-WHO

class; reviewed the Complaint before it was filed; defeated WSI's motion to dismiss, communicates

with her counsel; responded to written discovery requests; produced requested discovery, defeated

WSI's motion for summary judgment, opposed WSI's attempt to arbitrate her claims, and after being

sent to arbitration, successfully remanded her claims to this Court so that she could pursue claims

against WSI on behalf of herself and the putative classes.[97]

Plaintiff's counsel have also diligently represented the putative classes' interests, by serving

significant written discovery on WSI, reviewing over 16,000 pages of documents produced by WSI,

taking five depositions of WSI's employees and designated Rule 30(b)(6) designated witnesses,

successfully opposing three motions to dismiss, briefing and arguing against two motions for

summary judgement, defending against the enforcement of subpoenas issued to third-parties in

Washington, D.C., and Kentucky, and successfully defeating WSI's attempts to arbitrate Mrs. Perlin's

claims.[98] Plaintiff's counsel are also qualified and experienced in litigating class actions.[99] Thus,

Plaintiff and her counsel satisfy Rule 23(a)(4)'s adequacy requirement.

## C.   A nationwide injunctive relief class is proper under Rule 23(B)(2).

In addition to satisfying Rule 23(a) requirements, a party must satisfy one (or more) subpart

of Rule 23(b); here Plaintiff seeks certification under Rule 23(b)(2) *and* (b)(3).[100] Under 23(b)(2), a

class can be certified when "the party opposing the class has acted or refused to act on grounds that

apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole."[101] "[T]he focus [when certifying a 23(b)(2) Class] is not

on the claims of individual class members, but rather whether [the defendant] has engaged in a

'common policy.'"[102] And in the class context, only the named plaintiff needs to establish standing for

---

[97] Perlin Decl. ¶¶ 10-11, 14.

[98] Aragon Decl. ¶ 60; Eck Decl. ¶ 22.

[99] Aragon Decl. ¶¶ 55, 60- 64, Ex. 53; Eck Decl. ¶¶ 2-3, 6, 8, 10, 14-15, 17, 22.

[100] *Ellis*, 258 F.R.D., at 538, n.37 (certifying claim under both (b)(2) and (b)(3)) (citing *Kartman v. State Farm Mut. Auto Ins. Co.*, 634 F.3d 883, 895 (7th Cir. 2011) (citations omitted)).

[101] Fed. R. Civ. P. 23(b)(2).

[102] *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 599 (N.D. Cal. 2015) (citing *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir.1988).

injunctive relief.[103] To establish standing for prospective injunctive relief, Mrs. Perlin must demonstrate: (1) she "has suffered or is threatened with a concrete and particularized legal harm," (2) "a real and immediate threat of repeated injury," and (3) the injunctive relief sought must be likely to redress the claimed threat of injury.[104] And while past wrongs do not necessarily mean there is a real and immediate threat of repeated injuries, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury."[105]

### 1.   Mrs. Perlin has standing to seek injunctive relief for the Class.

Mrs. Perlin has standing to seek injunctive relief for three reasons. First, Mrs. Perlin suffered concrete and particularized legal harm when WSI overcharged her for falsely advertised bedding based on its practice of improperly counting two-ply threads as two separate threads.[106] Not only did WSI defraud Mrs. Perlin when she purchased sheets and extra pillowcases on separate occasions, WSI continues to use and defend their deceptive thread count practice to this day.

Second, Mrs. Perlin has a real and immediate threat of injury because she continues to shop at WSI and purchase sheets.[107] And while Mrs. Perlin no longer purchases high thread count sheets (at any retailer), she continues to purchase bedding from WSI and there is nothing to prevent WSI from mislabeling other bedding products sold in their stores.[108] Mrs. Perlin is not protected by the fact she knows that WSI misrepresents the thread count for the Bedding Products because (1) a consumer cannot determine with the naked eye whether a product conforms to a thread count stated in

---

[103] *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc) (citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001).

[104] *Id.*; *Oceguera v. Baby Trend, Inc.*, 521CV00398JWHKKX, 2022 WL 1599869, at *5 (C.D. Cal. Jan. 14, 2022) (recognizing "[i]njunctive relief arising from consumer protection laws requires special consideration" and holding that changes to advertising that may prevent plaintiff from being harmed in the future is insufficient to defeat standing for injunctive relief); *see also* Dkt. 36 at 16.

[105] *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

[106] *See* Lamb Rep. ¶¶ 29-56.

[107] Aragon Decl. ¶¶ 51-52, Ex. 49 at 158:4-15, Ex. 50; *see also Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (finding Plaintiff had standing to pursue injunctive relief where they alleged intention to purchase products in the future); *Rahman v. Mott's LLP*, CV 13-3482 SI, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014) (rejecting Defendant's argument that "plaintiff lacks standing for injunctive relief because plaintiff is now fully aware of the alleged misrepresentations.").

[108] *Id.* ¶¶ 51-52, Ex. 49 at 39:11-40:2 ("I kind of gave up on thread count being important…."); 35:10-38:19, Ex. 50.

advertising materials,[109] (2) WSI can easily change the names of the Bedding Products, (3) WSI can create new product lines with mislabeled thread counts, and (4) there is no representation on the packaging that would allow Mrs. Perlin or class members to identify products with improper thread counts.[110] Nor is there any evidence the store employees would be able to identify mislabeled bedding to help inform prospective buyers that sheets are inconsistent with industry standards.[111] To the contrary, the evidence shows that WSI continues to mislabel their bedding and have no intent to discontinue the practice.[112] For these reasons, Mrs. Perlin is in real and immediate threat of repeated injury,[113] as are all class members.

Third, the injunctive relief Mrs. Perlin seeks will redress the threat of injury by enjoining WSI from continuing to market their bedding as containing thread counts unsupported by testing in accordance with the current version of ASTM D3775.[114] WSI has two ways to comply with an injunction against deceptive labeling of their bedding: (1) they could stop identifying thread count on their bedding, or (2) they could identify thread counts in accordance with the industry standard, ASTM D3775, which does not count two-ply yarn as two threads.[115] This relief applies to Plaintiff and class members equally by ensuring that when making a decision to purchase bedding from WSI in the future they can trust that advertised thread count numbers on all relevant products are accurate.[116] Because such relief will redress the harm for the entire class, the third and final prong is

---

[109] Dkt. 289-3 (Rhodes Decl.) ¶¶ 3-4.

[110] *Lilly v. Jamba Juice Co.*, 13-CV-02998-JST, 2015 WL 1248027, at *3 (N.D. Cal. Mar. 18, 2015) (holding that: "When a consumer discovers that a representation about a product is false, she doesn't know that another, later representation by the same manufacturer is also false. She just doesn't know whether or not it's true. A material representation injures the consumer not only when it is untrue, but also when it is unclear whether or not is true."); *see also, e.g.*, Aragon Decl. Exs. 16-18.

[111] *See, e.g.*, Aragon Decl. ¶ 54, Ex. 52.

[112] Rhodes Rep. ¶ 59.

[113] *Id.* at *4 (recognizing that past-purchaser plaintiffs are the most likely to be injured in the absence of an injunction).

[114] Dkt. 217, Prayer for Relief, ¶ B.

[115] Disclosure that it is using a method other than the industry standard is no longer an option following the International Trade Court's General Exclusion Order prohibiting the importation of bedding with thread counts that do not comply with ASTM D3775. *See* Aragon Decl. ¶¶ 27, 32, Exs. 22 at 12-14, 27 at 2.

[116] Dkt. 81, ¶ 167.

MOTION FOR CLASS CERTIFICATION                                        3:16-cv-04121-WHO

1  met. Mrs. Perlin has standing to pursue relief for the Injunctive Relief Class.[117]

2      **2.   California law applies to the nationwide Injunctive Relief Class**

3         "Under California's choice of law rules, the class action proponent bears the initial burden to

4  show that California has 'significant contact or significant aggregation of contacts' to the claims of each

5  class member."[118] "Once the class action proponent makes this showing, the burden shifts to the other

6  side to demonstrate 'that foreign law, rather than California law, should apply to class claims.'"[119]

7         Here, California law applies to the Injunctive Relief Class's claims because WSI has a

8  significant aggregation of contacts to the state that directly relate to the alleged harm. WSI is

9  headquartered in California, and maintains numerous offices, distribution, and call centers in the

10  state.[120]



16  As such, there can be no dispute

17  that Mrs. Perlin has met her burden—WSI has sufficient contacts or aggregation of contacts to apply

18  California law to the claims of the Injunctive Relief Class.[123]

---

19

20  [117] *See Lewis v. Casey*, 518 U.S. 343, 395, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) ("One class
representative has standing, and with the right to sue thus established...the propriety of awarding

21  classwide relief...does not require a demonstration that some or all of the unnamed class could
themselves satisfy the standing requirements for named plaintiffs.") (Souter, J., concurring).

22  [118] *Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 589–90 (9th Cir. 2012), overruled by *Olean*

23  *Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, on other grounds, 31 F.4th 651 (9th Cir. 2022)
(cleaned up).

24  [119] *Id.*
[120] Dkt. 262, ¶¶ 35-36; Aragon Decl. ¶ 49, Ex. 47, Nos. 92-94 (admitting that Defendants have

25  distribution and call centers in California).
[121] *See, e.g.*, Aragon Decl. ¶¶ 44, 47-48, Exs. 43 at 32:9-12, 35:12-37:5, 45 at 42:12-19, 47:10-17, 49:24-

26  50:5, 57:25-58:10, 46 at 24:5-7, 46:11-18, 58:15-16.
[122] *Id.*

27  [123] *Mazza,* 666 F.3d at 590 (holding that California has constitutionally significant aggregation of contacts
to state when defendant and advertising agency that produced fraudulent advertising are located in state

28  and a substantial number of class members are in the state).

1    The burden now shifts to WSI to demonstrate that foreign law, rather than California law,

2   should apply to the Class's injunctive relief claims. California law will apply if "the interests of other

3   states are not found to outweigh California's interest in having its law applied."[124] To determine

4   whether the interests of other states outweigh California's interest, the court applies the three-step

5   governmental interest test: (1) whether the relevant law of each potentially affected jurisdictions with

6   regard to the particular issue in question is the same or different; (2) if there is a difference, the court

7   examines each jurisdiction's interest in the application of its own law under the circumstances of the

8   particular case to determine whether a true conflict exists; and (3) if the court finds there is a true

9   conflict, it compares the nature and strength of the interest of each jurisdiction in applying its own law

10   to determine which state's interest would be more impaired if its policy were subordinated to the policy

11   of the other state and applies the law of the state whose interest would be more impaired if its law were

12   not applied.[125]

13    WSI cannot meet their burden for three reasons. First, even if WSI can show differences in

14   each state's law, a "problem only arises if differences in state law are material, that is, if they make a

15   difference in this litigation."[126] Mere variations in state law are irrelevant; "[a]ny differences…must have

16   a *significant* effect on the outcome of the trial in order to present an actual conflict in terms of choice of

17   law."[127] And while several courts have found material differences between the consumer protection

18   statutes in California and elsewhere,[128] those findings have generally come in cases seeking certification

19   under Rule 23(b)(3), where the application of a particular state's law will impact the right to recover

20   damages for class members in different states. There is no such risk here because an injunction will only

21   enjoin WSI, a California corporation, and will not release or impact a class member's right to seek relief

22   in their home state. And because WSI is headquartered in California, the injunction would have

23   nationwide effect even if the order prohibiting fraudulent marketing is only directed at the California-

24

25   ---

[124] *Mazza*, 666 F.3d at 590 (citation omitted).

26   [125] *Id.* (citing *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 81–82, 105 Cal.Rptr.3d 378, 225 P.3d 516 (Cal.2010) (citations and quotations omitted).

27   [126] *Id.* (citations omitted).

[127] *Id.* (emphasis added) (citing *In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 882 (3d Cir.1984)).

28   [128] *See, e.g., id.* at 591.

MOTION FOR CLASS CERTIFICATION                                    3:16-cv-04121-WHO

based corporation. In other words, the outcome of the trial here is no different due to differences in other state's laws.

Second, even if there are material differences in state law, there is no true conflict. No state has a law permitting a foreign corporation who was determined to have engage in false advertisement by a court in its home state to falsely advertise thread counts to its residents. California's consumer protection laws are also cumulative, meaning any relief afforded elsewhere does not preclude relief under California law.[129] If some state, for example, were to issue a stricter injunction against WSI stores in that state, there would be no conflict with the injunction proposed here. Nor does an injunction against false advertising issued by a corporation's home state impact another "state's valid interest in shielding out-of-state businesses from what the state may consider to be excessive litigation," a fundamental concern for the *Mazza* court and its progeny.[130] Any state can still attract business by applying its own laws to its residents, just as California can hold domestic corporations to rules that prohibit false and deceptive advertisements emanating from California.[131]

Third, even if there is a conflict, and there is not, California has "the predominant interest" in regulating conduct that occurs within its border.[132] Again, WSI's false advertisements emanate from California, and there can be no real dispute that California can regulate a domestic corporation's conduct in the state.[133] WSI has chosen California as its home and the California Legislature has prohibited certain conduct by corporations based in California. And because no state has an interest in a foreign corporation falsely advertising thread counts to its residents, California's interest in prohibiting false advertisements by California corporations outweighs any interest a foreign state might have. A state's policy concerns in striking a balance between protecting consumer and attracting foreign business, for example, are not implicated by the injunction Plaintiff seeks. A resident consumer in a foreign state is still limited to damages (or lack thereof) under his or her state's consumer protection

---

[129] *See* Cal. Bus. & Prof. Code § 17205.
[130] *See e.g., Id.* at 592.
[131] *Id.* at 591-592.
[132] *Id.* at 592 (citing *McCann*, 28 Cal.4th at 97).
[133] *Id.* at 591 ("It is a principle of federalism that "each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders.") (citation omitted).

laws. But even if there is *some* impact, California undoubtedly has a "predominate interest" in prohibiting a domestic corporation's from falsely advertising from the State.

In short, Mrs. Perlin has standing to bring injunctive relief claims under California law, and there can be little dispute that WSI has acted or refused to act on grounds that apply generally to the Injunctive Relief Class—specifically, WSI continues to falsely advertise the thread count of certain bedding sold by WSI.[134] And to the extent there is a choice of law dispute, California law applies under the State's governmental interest test. Certification of an injunctive relief class is appropriate under Rule 23(b)(2).

**D.    Certification under Rule 23(B)(3) is proper for the California Subclass.**

In addition to the nationwide Injunctive Relief Class, Plaintiff seeks certification of a California Subclass under Rule 23(b)(3). Certification of the California Subclass is proper because "the questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**3.    Common questions, based on Defendants' common conduct, predominate.**

A common issue exists where "the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof."[135] Common issues predominate where they represent "a significant aspect of the case and they can be resolved for all members in a single adjudication . . . ."[136] So long as "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper . . . even though other important matters will have to be tried separately, such as damages or . . . affirmative defenses peculiar to some individual class members."[137] False advertising claims, such as

---

[134] Aragon Decl. ¶ 32, Ex. 31 at 125:9-25; Rhodes Rep. ¶ 59.
[135] *Johnson v. Hartford Casualty Ins. Co.*, No. 15-CV-04138-WHO, 2017 WL 2224828, at *15 (N.D. Cal. May 22, 2017) (quoting *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).
[136] *Marsh v. First City Bank of Delaware*, No. 11-CV-052260-WHO, 2014 WL 554553, at *10 (N.D. Cal. Feb. 7, 2014) (quoting *Hanlon*, 150 F.3d at 1022; 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986)).
[137] *Tyson Foods, Inc.*, 136 S. Ct. at 1045 (*quoting* 7AA C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1778, 123-24 (3d ed. 2005)).

20

1  those alleged here, are particularly apt to resolution under Rule 23(b)(3).[138]

2            **a.   Common evidence can show WSI deceived the Subclass.**

3          Plaintiff's UCL, CLRA, and FAL claims are all governed by the "reasonable consumer"

4  test.[139] The test asks whether the false or misleading advertising is "likely to deceive" a "reasonable

5  consumer."[140] Because the test looks to a hypothetical, reasonable consumer, individualized evidence

6  is irrelevant, and common proof will suffice for all class members.[141] Here, Mrs. Perlin can prove with

7  common evidence that ASTM D3775 represents the industry standard for calculating thread count,[142]

8  and that WSI's advertised thread counts do not comport with ASTM D3775.[143] A claim that conflicts

9  with the industry standard is a misrepresentation.[144] WSI, moreover, admits that the Bedding

10  Products are two-ply; they have a policy or practice of calculating thread count to include both plies;

11  and WSI produced laboratory testing results reporting true thread counts of half the amounts

12  advertised. Either the industry standard allows WSI to include plies in their thread counts or it does

13  not. Plaintiff's textile expert claims the industry standard does not allow WSI to count the plies, and

14  this proof is common to all class members. Because the evidence is substantively the same whether

15  there is one or 1000 class members, Mrs. Perlin can answer common questions regarding WSI's

16

17  [138] *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015) (citation omitted).

18  [139] *Williams*, 552 F.3d at 938; *Rubenstein v. Gap, Inc.*, 14 Cal. App. 5th 870, 876-77 (Ct. App. 2017); *In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, 20-CV-03184-HSG, 2021 WL 3191733, at *7 (N.D.

19  Cal. July 28, 2021).
   [140] *Id.*

20  [141] *See, e.g., Pulaski*, 802 F.3d at 986 (holding, "…a court need not make individual determinations

21  regarding entitlement to restitution.  Instead, restitution is available on a classwide basis once the class representative makes the threshold showing of liability under the UCL and FAL.")

22  [142] First, fabric retailers and procurers require manufacturers/distributors to comply with ASTM D3775, which shapes consumer perceptions of thread counts. Rhodes Rep. ¶¶ 29, 41-44. ████████

23  ████████████████████████████████████████████████████████████████████████████████

24      *ee* Aragon Decl. ¶¶ 25, 31, 33-35, Exs. 24 at 5, 29 at 11, 30 at 13 ███████████████
   ████████████████████████████ 32 at 11, 33 at 6, 34 at 5. Further,

25  thread count has been calculated without reference to the number of plies in yarn since the 1960s. *See Prestex Inc. v. United States,* 320 F.2d 367, 372-73 (Ct.Cl. 1963) (comparing contractually specified

26  fabric with fabric actually produced by defendant).
   [143] *See, e.g.,* Aragon Decl. ¶ 31, Ex. 30 at 4. *See also* Rhodes Rep. ¶ 14.

27  [144] *See Compaq Computer Corp. v. Packard Bell Elecs., Inc.,* 163 F.R.D. 329, 336 (N.D. Cal. 1995) (citation omitted) (non-compliance with industry standards demonstrates that a claim is not only misleading

28  but "literally false").

1    deception with common evidence.

2                    **b.  Mrs. Perlin can show reliance and injury with common proof.**

3           Mrs. Perlin is not required to show individualized proof of reliance and injury.[145] Classwide

4    reliance and injury is proven by showing the misrepresentations or omissions were material.[146]

5    Because materiality is judged using an objective, reasonable consumer standard and disclosure is

6    judged by looking at the defendant's conduct, materiality and disclosure will either exist or not exist

7    for the entire class.[147] Materiality and disclosure are therefore common questions applicable to all

8    Subclass members, not questions that may affect individual members differently.

9           Plaintiff need not prove the materiality of a defendant's representations or omission at class

10   certification stage to establish Rule 23(b)(3) predominance.[148] Nevertheless, a fact is material under

11   any of three scenarios: (1) "if a reasonable consumer would attach importance to it," (2) "the maker

12   of the representation knows or has reason to know that its recipient regards or is likely to regard the

13   matter as important in determining his choice of action," or (3) the government's prohibition of "a

14   particular misleading advertising practice is evidence that the legislature has deemed that the practice

15   constitutes a 'material' misrepresentation," to which courts defer.[149] Here, Plaintiff can establish

16   materiality through common evidence supporting each of these three scenarios.

17          First, Plaintiff's economist expert, Dr. Lamb, offers his own market research evidence, along

18   with other industry research—common evidence—to show that a reasonable person shopping for

19   bedding would attach importance to the stated thread count's accuracy in making her purchasing

20   decision.[150] Second, Plaintiff can rely on common evidence described in Dr. Lamb's report and

21

22   _____
     [145] *Pulaski*, 802 F.3d at 985-986.

23   [146] *See id.*; *see also Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292-93 (2002)
     (affirming that a showing of material misrepresentations to the class raises an inference of reliance as

24   to the entire class) (collecting cases); *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)
     (recognizing that under the UCL and the CLRA, there is a presumption of reliance when the

25   omission is material).
     [147] *Amgen*, 133 S. Ct. at 1195-97; *Pulaski & Middleman, LLC*, 802 F.3d at 986; *Daniel*, 806 F.3d at 1225.

26   [148] *Amgen Inc.*, 133 S. Ct. at 1191 (proof of materiality "is not a prerequisite to class certification.").
     [149] *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en*

27   *banc* (July 8, 2013) (citations omitted).
     [150] Lamb Rep. ¶¶ 19-25, 26-27.

28
                                                    22

     MOTION FOR CLASS CERTIFICATION                                              3:16-cv-04121-WHO

1    elsewhere to show that WSI knew or should have known that their target market was likely to

2    consider thread count important, given WSI's and the industry's marketing and promotional efforts

3    to spread that message to consumers. Plaintiff's textile expert, Jennifer Rhodes, for example, details

4    the industry standard for counting and stating thread counts, and how the industry intentionally uses

5    thread count to show one product is "better" than another.[151] Finally, common evidence will show

6    that the ITC, the judicial body governing importers, like WSI, has found thread count in bedding to

7    be material to consumers, and on that ground, banned the importation of bedding that does not

8    comply with ASTM D3775.[152] Indeed, the prohibition of "…a particular misleading advertising

9    practice is evidence that the [government] has deemed that the practice constitutes a 'material'

10   misrepresentation…"[153] Materiality is therefore a common question answered by common proof.

11              **c.  Mrs. Perlin can establish damages by common proof.**

12              Plaintiff seeks restitution under the UCL, FAL, and CLRA, as well as damages under the

13   CLRA and common law unjust enrichment. While Plaintiff's damages model must be tied to viable

14   causes of action, this does not require Plaintiff to prove damages at the class certification stage.[154]

15   Plaintiff need only demonstrate the existence of a viable damages model that makes use of common,

16   classwide evidence.[155] The inquiry's "focus is on the difference between what was paid and what a

17   reasonable consumer would have paid at the time of purchase without the fraudulent or omitted

18   information."[156] This standard calls for objective, common evidence.

19              Further, the issue at class certification is not which expert is the most credible, or "best," but

20   rather has Plaintiff demonstrated that there is a way to prove a class-wide measure of damages

21   through generalized proof.[157] The analysis of Dr. Lamb, Plaintiff's economics expert, establishes a

22

23   [151] Rhodes Rep. ¶¶ 29, 48; *see also Prestex Inc.*, 320 F.2d at 373 (noting thread count "deviations can
     hardly be termed less than substantial, with a direct effect on the quality of the cloth").

24   [152] *See* Aragon Decl. ¶¶ 27, 32, Exs. 22 at 12-14, 27 at 2.

     [153] *Hinojos*, 718 F.3d at 1107 (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 332 (2011)).

25   [154] *See McCrary v. Elations Co., LLC*, No. EDCV 13-00242 JGB, 2014 WL 1779243, at *15 (C.D. Cal.
     Jan. 13, 2014); *Brown v. Hain Celestial Gro., Inc.*, No. C 11-03082 LB, 2014 WL 6483216, at *19 (N.D.
26   Cal. Nov. 18, 2014).

     [155] *Brown*, 2014 WL 6483216, at *19.

27   [156] *Pulaski & Middleman, LLC*, 802 F.3d at 989.

28   [157] *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017).

                                                23

basis upon which the Court can determine an appropriate award of restitution or damages using common evidence. His report contains two primary findings: First, "all or nearly all proposed Class Members would have been impacted by the Defendants' Challenged Conduct in that they paid more for the Relevant Bedding Products they purchased than they would have in the absence of the Challenged Conduct."[158] Second, "it is possible to calculate an estimate of damages using a formulaic methodology on a class-wide basis without individual inquiry."[159] To measure the price premium that resulted from the deceptive thread count claims, Dr. Lamb proposes two well accepted methods: (i) a direct benchmark approach and/or (ii) a hedonic pricing model. Both methods rely upon common evidence.[160]

The Ninth Circuit has affirmed that such a methodology meets the *Comcast*[161] standard, explaining that the damages calculation "need not account for benefits received after purchase because the focus is on the value of the service at the time of purchase.…[U]nder the UCL and FAL, the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information."[162] Because Dr. Lamb has presented a workable and widely accepted methodology to measure classwide damages using common evidence, common issues predominate.

### 4. Class action is superior here.

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy."[163] As with most false advertising cases, a class action is the *only* fair and efficient method to adjudicate WSI's misconduct, as Subclass members and attorneys would be unlikely to expend the resources to prosecute individual actions given the modest potential recovery for each Subclass member.[164] Aggregating Subclass members' claims into a class action

---

[158] Lamb Rep. ¶¶ 28-37, 56.
[159] *Id.* ¶¶ 38-56.
[160] *Id.*
[161] *See generally Comcast Corp. v. Behrend*, 569 U.S. 27, 42 (2013).
[162] *Pulaski & Middleman, LLC*, 802 F.3d at 989.
[163] Fed. R. Civ. P. 23(b)(3).
[164] *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("Economic reality dictates that petitioner's suit proceed as a class action or not at all."); 1 H. Newberg & A. Conte, *Newberg on Class Actions*, § 4.64 (5th ed. 2015).

1  would also alleviate the burden on the judiciary that would be imposed by thousands of individual

2  actions while also protecting consumers from false and deceptive advertising and avoiding

3  inconsistent standards of conduct for WSI.[165] Plaintiff is also unaware of any individual litigation

4  regarding this issue pending against WSI, this forum is desirable as the majority of the witnesses have

5  been located in or near the forum, and Plaintiff does not anticipate any difficulty in managing this

6  class action.[166] Class members are also easy to ascertain without extensive individual inquiries using

7  data on WSI's servers.[167] Having satisfied Rule 23(b)(3)'s prerequisites, certification is proper.

8  **E.      Rule 23(G) is satisfied.**

9          Finally, Plaintiff seeks the appointment of Hagens Berman Sobol Shapiro and Haeggquist &

10 Eck as Class Counsel pursuant to Rule 23(g). Plaintiff's counsel in this case have survived three

11 motions to dismiss, fully briefed and argued two motions for summary judgment, secured significant

12 fact discovery, retained experts to address textile and damages issues, defeated WSI efforts to

13 arbitrate Mrs. Perlin's claims (an attempt to defeat classwide relief), and have diligently represented

14 the Class's interests.[168] The attorneys at both firms have meaningful experience handling class actions

15 and complex litigation, are well versed in the underlying law, and are prepared to devote whatever

16 additional resources are necessary to see this matter through to fruition.[169]

17                                **CONCLUSION**

18         Plaintiff respectfully requests the Court certify this case as a class action. Alternatively,

19 Plaintiff requests that the Court exercise its discretion to certify a narrower or broader class that the

20 Court deems appropriate. Plaintiff also requests that the Court appoint her as the class representative

21 and appoint Hagens Berman Sobol Shapiro and Haeggquist & Eck as class counsel.

22

23

24 _____

[165] *See In re Napster, Inc. Copyright Litig.*, No. C 04-1671 MHP, 2005 WL 1287611, at *9 (N.D. Cal. June
1, 2005).

25 [166] Aragon Decl. Ex. 43 at 32:9-12, 35:12-37:5; Ex. 45 at 42:12-19, 47:10-17, 49:24-50:5, 57:25-58:10;
Ex. 46 at 24:5-7, 46:11-18, 58:15-16.

26 [167] Aragon Decl. ¶ 43, Ex. 42 at WSI0014220 ███████████████████████████████████

27 [168] Aragon Decl. ¶ 60.

28 [169] Aragon Decl. ¶¶ 55, Ex. 55-64; Eck Decl. ¶¶ 2-3, 6, 8, 10, 14-15, 17, 22.

MOTION FOR CLASS CERTIFICATION                                    3:16-cv-04121-WHO

1  Dated: September 28, 2022                    Respectfully submitted,

2                                               HAGENS BERMAN SOBOL SHAPIRO LLP

3
                                               By _____/s/ Leonard W. Aragon_____
4                                                    LEONARD W. ARAGON
                                               Robert B. Carey (*pro hac vice*)
5                                              Leonard W. Aragon (*pro hac vice*)
                                               11 West Jefferson Street, Suite 1000
6                                              Phoenix, Arizona 85003
7                                              rob@hbsslaw.com
                                               leonard@hbsslaw.com
8
                                               Amber L. Eck (177882)
9                                              HAEGGQUIST & ECK, LLP
                                               225 Broadway, Suite 2050
10                                             San Diego, California 92101
11                                             ambere@haelaw.com

12                                             Shana E. Scarlett (SBN 217895)
                                               HAGENS BERMAN SOBOL SHAPIRO LLP
13                                             715 Hearst Avenue, Suite 202
                                               Berkeley, California 94710
14                                             Telephone: 510.725.3000
15                                             shanas@hbsslaw.com

16                                             George Richard Baker (SBN 224003)
                                               BAKER LAW, PC
17                                             625 East Main Street, Suite 102B, #104
                                               Aspen, Colorado 81611
18                                             Telephone: 970.439.5905
19                                             richard@bakerlawpc.com

20                                             Attorneys for Plaintiff

21

22

23

24

25

26

27

28