Amber L. Eck (177882)
HAEGGQUIST & ECK, LLP
225 Broadway, Suite 2050
San Diego, California 92101
Telephone: 619.342.8000
ambere@haelaw.com

Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: 602.840.5900
rob@hbsslaw.com
leonard@hbsslaw.com

[Additional Counsel on Signature Page]

Attorneys for Plaintiffs and the Proposed Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM RUSHING and ELIZABETH PERLIN, individually and on behalf of all others similarly situated,<br><br> Plaintiffs,<br><br>v.<br><br>WILLIAMS-SONOMA, INC., et al.,<br><br> Defendants. | Case No.: 16-cv-01421-WHO<br><br>**CLASS ACTION**<br><br>**PLINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: William H. Orrick<br><br><u>Hearing</u><br>Date: September 13, 2023<br>Time: 2:00 p.m.<br>Courtroom: 2, 17th Floor |

# TABLE OF CONTENTS

I.      Arguments and cases only raised in footnotes should be deemed waived...................................... 1

II.     Perlin has met each Rule 23(a) requirement. ................................................................... 1

  A.      The typicality prong is met.......................................................................................... 1

    1.    Defendants' statute of limitations argument does not make Perlin atypical............................ 1

    2.    Perlin is typical of class members subject to arbitration clauses. ................................. 4

  B.      The Motion establishes commonality.......................................................................... 6

  C.      The Motion establishes Adequacy. ............................................................................. 7

III.    The Court can certify a Rule 23(b)(2) under California law. ......................................... 8

  A.      Defendants did not identify a true conflict between the laws of each state. ......................... 9

  B.      California's interests outweigh any other state's interest. ......................................... 10

  C.      Perlin has standing to seek injunctive relief........................................................... 11

IV.     The 23(b)(3) class should be certified because Perlin has established predominance............. 12

  A.      Whether a reasonable consumer was deceived is a common question. ................................ 12

  B.      Exposure does not create individual issues. ............................................................. 17

  C.      There is no advertising variation that impacts predominance. .................................. 18

  D.      Perlin has shown materiality with common evidence. ............................................. 18

  E.      The SOL defense and arbitration clause do not raise individual issues.............................. 20

V.      Perlin has established a valid, common method to measure damages........................................ 21

  A.      Dr. Lamb's direct benchmark approach. ................................................................. 22

  B.      Dr. Lamb's hedonic regression approach. ............................................................... 23

VI.     A Class Action is Superior.................................................................................... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
  ML132438PSGPLAX, 2017 WL 2559615 (C.D. Cal. June 7, 2017) ............................................... 19

*Aberin v. Am. Honda Motor Co., Inc.*,
  2021 WL 1320773 (N.D. Cal. Mar. 23, 2021) ............................................................................................3

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455, 133 S. Ct. 1184 (2013) ...................................................................................... 13

*Avilez v. Pinkerton Gov't Servs., Inc.*,
  596 Fed. Appx. 579 (9th Cir. 2015) ...................................................................................... 5, 8

*Bailey v. Rite Aid Corp.*,
  338 F.R.D. 390 (N.D. Cal. 2021) ............................................................................................. 17

*Brazil v. Dole Packaged Foods*,
  2014 WL 2466559 (N.D. Cal. May 30, 2014) ........................................................................ 25

*Broomfield v. Craft Brew All., Inc.*,
  2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ................................................................. 16, 19

*Campanelli v. Image First Healthcare Laundry Specialists, Inc.*,
  2018 WL 6727825 (N.D. Cal. Dec. 21, 2018) ...........................................................................6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2013 WL 5429718 (N.D. Cal. June 20, 2013) ................................................................... 22, 25

*Colgan v. Leatherman Tool Grp., Inc.*,
  38 Cal. Rptr. 3d 36 (Cal. Ct. App. 2006) ........................................................................13, 15, 18

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ................................................................................... 21, 22, 24, 25

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ...................................................................................... 22

*Consumer Advocates v. Echostar Satellite Corp.*,
  8 Cal. Rptr. 3d 22 (Cal. Ct. App. 2003) ................................................................................. 13

*Corral v. Staples the Office Superstore LLC*,
  2023 WL 2347445 (C.D. Cal. Feb. 6, 2023) ..............................................................................2

*Day v. AT & T Corp.*,
  63 Cal. App. 4th 325 (1998) ........................................................................................... 12, 13

*Elkies v. Johnson & Johnson Servs., Inc.*,
    2018 WL 11223465 (C.D. Cal. Oct. 18, 2018) ............................................................... 22

*First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*,
    569 F. Supp. 2d 929 (N.D. Cal. 2008) ..........................................................................1

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
    326 F.R.D. 592 (N.D. Cal. 2018) ......................................................................... 14, 19

*Gold v. Lumber Liquidators, Inc.*,
    323 F.R.D. 280 (N.D. Cal. 2017) ................................................................................ 14

*Hadley v. Kellogg Sales Co.*,
    324 F. Supp. 3d 1084 (N.D. Cal. 2018) ................................................................ *passim*

*Hawes v. Macy's Inc.*,
    346 F. Supp. 3d 1086 (S.D. Ohio 2018) ................................................................ 16, 20

*Hawes v. Macy's Stores W., Inc.*,
    2022 WL 194407 (S.D. Ohio Jan. 22, 2022) ......................................................17, 20, 25

*Hawkins v. Kroger Co.*,
    337 F.R.D. 518 (S.D. Cal. 2020) ..................................................................................2

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ............................................................................... 8, 17

*Image Tech. Servs. v. Eastman Kodak Co.*,
    125 F.3d 1195 (9th Cir. 1997) .................................................................................... 23

*Jolly v. Eli Lilly & Co.*,
    44 Cal.3d 1103 (1988) (en banc) ............................................................................... 21

*Krommenhock v. Post Foods, LLC*,
    2020 WL 2322993 (N.D. Cal. May 11, 2020) ............................................................. 24

*Lawson v. Grubhub, Inc.*,
    13 F.4th 908 (9th Cir. 2021) .................................................................................. 5, 6

*Lilly v. Jamba Juice Co.*,
    2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ......................................................... 11, 12

*Lindblom v. Santander Consumer USA, Inc.*,
    2018 WL 573356 (E.D. Cal. Jan. 26, 2018)............................................................... 3, 4

*In re McCormick & Co., Inc., Pepper Products Mktg. & Sales Practices Litig.*,
    422 F. Supp. 3d 194 (D.D.C. 2019) ....................................................................... 14, 15

*Moheb v. Nutramax Labs. Inc.*,
    2012 WL 6951904 (C.D. Cal. Sept.4, 2012) ................................................................ 18

*Mullins v. Premier Nutrition Corp.*,
   2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ................................................................. 13

*Nguyen v. Nissan N. Am., Inc.*,
   487 F. Supp. 3d 845 (N.D. Cal. 2020) ........................................................................... 2

*O'Connor v. Uber Techs., Inc.*,
   904 F.3d 1087 (9th Cir. 2018) ................................................................................. 5, 6

*In re Qualcomm Antitrust Litig.*,
   328 F.R.D. 280 (N.D. Cal. 2018) ................................................................................ 14

*Quezada v. Loan Ctr. of California, Inc.*,
   2009 WL 5113506 (E.D. Cal. Dec. 18, 2009) ................................................................ 2

*Randolph v. J.M. Smucker Co.*,
   303 F.R.D. 679 (S.D. Fla. 2014) ................................................................................ 24

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) .................................................................................................... 4

*In re Rubber Chemicals Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005) ............................................................................... 22

*Schechner v. Whirlpool Corp.*,
   2019 WL 4891192 (E.D. Mich. Aug. 13, 2019) ............................................................ 24

*Schofield v. Delta Air Lines, Inc.*,
   2019 WL 955288 (N.D. Cal. Feb. 27, 2019) ........................................................... 8, 17

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ................................................................................................. 10

*Spotswood v. Hertz Corp.*,
   2019 WL 498822 (D. Md. Feb. 7, 2019) ...................................................................... 6

*Stromberg v. Qualcomm Inc.*,
   14 F.4th 1059 (9th Cir. 2021) ................................................................................... 10

*Syufy Enterprises v. Am. Multicinema, Inc.*,
   793 F.2d 990 (9th Cir.1986) ..................................................................................... 23

*Taafua v. Quantum Glob. Techs., LLC*,
   2020 WL 95639 (N.D. Cal. Jan. 8, 2020) ...................................................................... 8

*In re Takada*,
   2023 WL 1442844 (N.D. Cal. Feb. 1, 2023) .................................................................. 1

*Testone v. Barlean's Organic Oils, LLC*,
   2021 WL 4438391 (S.D. Cal. Sept. 28, 2021) .............................................................. 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    267 F.R.D. 583 (N.D. Cal. 2010) ............................................................. 22, 23

*In re TFT-LCD,*
    2011 WL 1752784 (N.D. Cal. May 9, 2011) ..................................................6

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ....................................................................... 12

*In re Tropicana Orange Juice Mktg. & Sales Practices Litig.,*
    2019 WL 2521958 (D.N.J. June 18, 2019) ................................................ 15

*Turrey v. Vervent, Inc.,*
    2023 WL 163200 (S.D. Cal. Jan. 11, 2023) .................................................4

*Vizzi v. Mitsubishi Motors N. Am., Inc.,*
    2010 WL 11515266 (C.D. Cal. Feb. 22, 2010) ......................................... 4, 8

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ..........................................................................1

*Williams v. Sinclair,*
    529 F.2d 1383 (9th Cir. 1975) ............................................................. 21

*Woods v. Vector Mktg. Corp.,*
    2015 WL 5188682 (N.D. Cal. Sept. 4, 2015) ...............................................7

**Statutes**

California Civil Code § 1783 ........................................................................3

California Civil Code § 1770 ...................................................................... 13

**Other Authorities**

Federal Rule of Civil Procedure 23 ................................................1, 8, 13, 25

U.S. Constitution Article IV ...................................................................... 11

Plaintiff Elizabeth Perlin files the following Reply in Support of Plaintiff's Motion for Class Certification. The Opposition raises issues that are primarily merits arguments that need not be resolved to determine whether the class should be certified under Rule 23. Defendants also try to manufacture "individual" issues that defeat predominance, but each can be resolved with common evidence that generates common answers. Defendants have presented no reason why the Court should not certify a nationwide 23(b)(2) injunctive relief class and California 23(b)(3) damages class.

## I.      Arguments and cases only raised in footnotes should be deemed waived.

Defendants cite 67 cases and several arguments solely in the footnotes. On several pages, more than half the page is single-spaced footnotes. *See, e.g.*, Opp'n at 32, 37, 39 42. This obvious attempt to circumvent the (extended) page limit should not be rewarded. All cases and arguments raised only in the footnotes should be ignored should be waived. *In re Takada*, 2023 WL 1442844, at *2 (N.D. Cal. Feb. 1, 2023); *First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*, 569 F. Supp. 2d 929, 935 n. 1 (N.D. Cal. 2008).

## II.      Perlin has met each Rule 23(a) requirement.

Defendants challenge all parts of Rule 23(a), except numerosity. Defendants' arguments under typicality, commonality, and adequacy are substantially similar—which is expected as the criteria often overlap. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 fn. 5 (2011).

### A.      The typicality prong is met.

Typicality asks whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Defendants do not argue class members' claims are substantively different than Perlin's claims, nor can they. Perlin's and putative class members' core facts and legal issues are the exact same—whether Defendants made material misrepresentations in advertising and product labeling. Defendants instead argue that Perlin is atypical because she is subject to a statute of limitations defense and is not subject to arbitration. Each argument is easily dismissed.

#### 1. Defendants' statute of limitations argument does not make Perlin atypical.

Defendants argue Perlin is atypical because she is subject to a statute of limitations ("SOL") defense. But in the Ninth Circuit, a plaintiff is atypical only if she is "subject to unique defenses

which threaten to become the focus of the litigation." *See Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 858 (N.D. Cal. 2020) (internal quotations and citation omitted). In *Nguyen*, for example, the court explicitly found, unlike here, that the class representative's claims were untimely. *Id.* at 857-58. Because the class representative's claims were untimely, the SOL defense would "become the focus of the litigation," making his claims atypical. *Id. Nguyen* and its progeny, relied on heavily by Defendants, stand for the unremarkable proposition that a time-barred plaintiff or a plaintiff unable to make a meritorious defense to the SOL argument is atypical. *Id.*; *see also Quezada v. Loan Ctr. of California, Inc.*, 2009 WL 5113506, at *7 (E.D. Cal. Dec. 18, 2009) (plaintiff was atypical when his claim was filed "well past" the SOL and was still subject to an upcoming summary judgment motion that would bind class members not subject to the defense).

Here, the Court has denied summary judgment and held it is a question of fact for the jury whether Perlin's claims are timely, making *Nguyen* inapposite. Dkt. 283. Further, courts routinely reject the argument that the SOL defense precludes certification under the typicality prong when, as here, the proposed class representative has colorable defenses against the claim. *See Corral v. Staples the Office Superstore LLC*, 2023 WL 2347445, at *15 (C.D. Cal. Feb. 6, 2023) (rejecting the defendants' argument under *Nguyen* that the class representative is atypical because the plaintiff raised a plausible defense to the SOL argument); *Hawkins v. Kroger Co.*, 337 F.R.D. 518, 540 (S.D. Cal. 2020) (SOL defense does not defeat typicality because the "pleadings and testimony" were sufficient, "at class certification stage," to find that the plaintiff's claim was not barred by SOL.) (citing *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 566 (S.D. Cal. 2012) ("'Given a sufficient nucleus of common questions, the presence of the individual issue of compliance with the statute of limitations' need not bar class certification.") (quoting *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975)).

There is also no reason to believe the SOL defense will become "the focus of the litigation." Defendants already moved for summary judgment based on the SOL pointing to only four exhibits, and two declarations authenticating documents. *See, e.g.*, Dkt. 268-1 and 268-2. As such, the defense requires only minimal testimony from Perlin, and a few records from Defendants. This meager evidence, most of which relates to Perlin's underlying claims (such as her purchase records), is hardly a threat to overwhelm the litigation.

Defendants, however, allege the defense will also require expert evidence that high thread count sheets are more durable, Opp'n at 8, but there is no such evidence. The only expert evidence in the record is that thread count is not a reliable indicator of durability. Dkt. 307-1 at 153:25-154:7. But even if Defendants somehow find evidence that thread count equals durability, it will support Perlin's claims that class members were harmed, the harm was material, and class members were damaged when they did not receive more durable sheets. Defendants' alleged expert testimony is therefore intertwined and subordinate to the merits. The defense, at most, has the potential to become a second question for the jury to consider when reviewing the *same* evidence.[1]

The SOL defense is also not "unique" to Perlin, only the argument that Perlin's sheets ripped is unique and that minor issue will not overwhelm the trial. The class begins in 2007, meaning only those who bought within the last three years are immune to the defense. *See, e.g.*, Cal. Civ. Code § 1783. A defense that applies to most class members is not unique. *Aberin v. Am. Honda Motor Co., Inc.*, 2021 WL 1320773, at *16 (N.D. Cal. Mar. 23, 2021) (SOL prevents typicality "where *only* the class representative is *uniquely* subjected to a statute of limitations defense.") (emphasis in original) (citation omitted). Perlin alleges that no reasonable consumer knew or should have known that Defendants misrepresented the thread count, and that applies to all class members subject to the defense. *See, e.g.*, Dkt. 272 at 2. This question can be answered with common evidence, or lack thereof, because Defendants have not produced any evidence showing that consumers knew or should have known they had a claim. The only evidence is that Perlin's sheets ripped, a minor issue for the jury to consider, as previously explained.

The caselaw Defendants cite is inapposite because it involves cases where the class representative's claims were almost certainly barred by the SOL thereby derailing the case for those not subject to the defense. In *Lindblom v. Santander Consumer USA, Inc.*, 2018 WL 573356, at *5-7 (E.D. Cal. Jan. 26, 2018), for example, the plaintiff defined the class as those who "paid a fee [to defendant] during the applicable limitations period," but plaintiff did not pay the fee during that

---

[1] The Court could also bifurcate the trial, allowing the SOL defense to go forward first. This too would ameliorate any concern with the issue overwhelming the trial.

period and was not even part of the class she sought to represent. *Id.* She was atypical because she is the *only* person in the class subject to an SOL defense. *Id.* Here, most class members are subject to the limitations defense and the Court has held that the defense is for the jury. *Lindblom* has no application. The other cases Defendants string cite are equally useless for the same reasons. *See, e.g.,* *Turrey v. Vervent, Inc.,* 2023 WL 163200, at *5 (S.D. Cal. Jan. 11, 2023) (because the court already found the class representative's claims are time barred, the plaintiff cannot represent those with timely claims); *Vizzi v. Mitsubishi Motors N. Am., Inc.,* 2010 WL 11515266, at *2 (C.D. Cal. Feb. 22, 2010) (finding SOL defense was a "…*significant hurdle* for [plaintiff] to overcome in order to maintain a viable claim," and likely resulted in weaker settlement.") (emphasis added).

Because Perlin's and putative class members' claims are identical in fact and law, and the SOL defense Perlin faces will be a minor part of the trial, Perlin has easily met the typicality prong.

### 2. Perlin is typical of class members subject to arbitration clauses.

Next, Defendants argue Perlin is atypical because she seeks to represent class members subject to an arbitration agreement, and she is not subject to the same agreement. Opp'n at 10. This is factually incorrect. Perlin is subject to the same arbitration clause and class action waiver (collectively "Arbitration Clause") as all other Defendants. Dkt. 219; *see also* 219-1, Ex. G, Jones Decl. ¶ 7. Notably, the arbitration clause was created *after* the putative class claims were pending in federal court and there is nothing in the clause giving consumers notice of the pending claims. *Id.* Perlin intends to show that the Arbitration Clause, including the delegation clause requiring any dispute involving the "interpretation, applicability, enforceability, or formation" of the clause to be decided by an arbitrator, is unconscionable and unenforceable when applied to claims already pending in this lawsuit. *See* Dkt. 233 at 6 n. 1, 15 n. 7 (reserving right to challenge applicability and scope of the terms containing the arbitration clause, including the delegation clause); *Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 71–72 (2010) (recognizing the right to challenge delegation clause and arbitration waiver on class-wide basis). Because these arguments apply to all class members who entered into an arbitration agreement and Perlin is subject to the same substantive arbitration clause as other putative class members, Perlin's claims are typical.

Defendants argue Perlin is not subject to the arbitration clause because an arbitrator found

that her claims are not subject to the April 2020 version of the agreement. *See* Aragon Reply Decl.

Ex. 1 (Arbitrator Order Granting Perlin Motion to Remand) ██████████████████

████████████████████████████████████████████████████ *See id.* at 6-7 ████████████

████████████████████████ Further, the arbitrator never considered earlier arbitration

clauses Perlin executed when making purchases from Defendants. *See, e.g.*, Dkt. 281-1 (claiming

Perlin entered into multiple arbitration agreements). Because Perlin is still subject to the 2020

arbitration clause—and previous arbitration clauses (which Defendants have not argued are

substantively different)—her claims are the same as all other class members subject to arbitration.

Perlin explicitly reserved the right to challenge the arbitration clause, including the delegation

clause, on behalf of the entire class, and she is exercising that right now. Dkt. 233 at 6 n. 1, 15 n. 7.

This Court never considered whether the delegation clause or arbitration clause is unenforceable as

to Perlin or the class. *See* Dkt. 252 at 2-3 (compelling arbitration but recognizing that Perlin reserved

the right to challenge the delegation clause and arbitration agreement and identifying the only

question presented as "whether WSI waived its right to compel arbitration as to Perlin by litigating

this case against [former class representative] Rushing for years without moving to arbitrate.").

Perlin's argument that the arbitration clause is not applicable to the claims pending in this lawsuit is

the *exact* same defense to arbitration applicable to all class members who executed the agreement.

Defendants' argument that her successful challenge to the clause means she is atypical leads to an

absurdity—any putative class representative who successfully defeats a motion to compel arbitration

before class certification would by atypical as to all other putative class members subject to the

clause even if the clause is unenforceable as to all class members. This is not the law.

Each case Defendants cite involves a class representative who, unlike Perlin, never entered

into the arbitration agreement or excluded themselves from the agreement at the beginning.[2] In

---

[2] *See, e.g.*, *Lawson v. Grubhub, Inc.*, 13 F.4th 908, 913 (9th Cir. 2021) (plaintiff and one other did not sign class action waiver, all other class members signed); *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 Fed. Appx. 579 (9th Cir. 2015) (same); *O'Connor*, 904 F.3d at 1093 (plaintiffs exercised their right to opt out of the arbitration clause but were not permitted to do so on behalf of the class).

1    *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, 2018 WL 6727825, at *8 (N.D. Cal. Dec. 21,

2    2018), for example, the court held that the class representative's claims were not typical because she

3    had not "signed an arbitration agreement," unlike putative class members who had signed a "valid"

4    arbitration agreement. Here, Perlin agreed to the same arbitration agreement as putative Class

5    members and, unlike *Campanelli*, Perlin can and has alleged the agreement does not apply to pending

6    claims. The cases Defendants string cite have no application for the same reasons. Perlin's claims are

7    typical.

8          **B.**    **The Motion establishes commonality.**

9          Defendants' commonality argument mirrors their typicality argument and fails for the same

10    reasons. Defendants argue the Motion does not establish commonality because some putative class

11    members are subject to a class action waiver and arbitration clause.[3] Opp'n at 5. Perlin, however,

12    agreed to the same agreement as all class members and challenges whether that Arbitration Clause,

13    including the delegation clause, is enforceable—this is a common question. *Cf. O'Connor v. Uber*

14    *Techs., Inc.,* 904 F.3d 1087, 1091 (9th Cir. 2018) (reversing district court's determination that

15    arbitration agreement was unconscionable but also implicitly recognizing class representative's right

16    to challenge arbitration clause as unconscionable for entire class). And whether the arbitration clause

17    covers the class claims was not resolved by the arbitrator and, as a merits issue, would be resolved by

18    this Court after certification. *See In re TFT-LCD*, 2011 WL 1752784, at *4 (N.D. Cal. May 9, 2011)

19    (recognizing that a motion to compel arbitration against unnamed class members must occur after

20    class certification because putative class members are not parties to an action before certification.).

21          The case Defendants cite supports Perlin's position. In *Tan v. Grubhub* the plaintiffs argued

22    the arbitration clause was unconscionable. 2016 WL 4721439, at *3 (N.D. Cal. July 19, 2016), aff'd

23    sub nom. *Lawson*, 13 F.4th 908. The trial court agreed this was a common question and certified the

24    class. *Id.* The Ninth Circuit later vacated the certification because it found that the arbitration was *not*

25

26    ───────────────────

[3] Defendants cite several out of jurisdiction cases for the proposition that commonality does not

27    exist when some class members are subject to arbitration and others are not, but these cases involve situations where, unlike here, the class representative is not subject to the clause and cannot

28    challenge the clause. *See, e.g.*, *Spotswood v. Hertz Corp.*, 2019 WL 498822, at *11 (D. Md. Feb. 7, 2019).

1   unconscionable as a matter of law. The court's holding confirms that legal challenges to an

2   arbitration agreement are common questions. The Ninth Circuit's ruling resolved the issue for the

3   class, the *sin qua non* of commonality. Because the arbitration clause presents common questions, and

4   Defendants make no other challenge to commonality, commonality is met.

5          **C.     The Motion establishes Adequacy.**

6          A class representative is adequate under 23(a)(4) if she has no conflicts of interest and will

7   prosecute the action vigorously. *Woods v. Vector Mktg. Corp.*, 2015 WL 5188682, at *12 (N.D. Cal.

8   Sept. 4, 2015). Defendants argue that Perlin is inadequate under 23(a)(4) for the same reasons she is

9   allegedly atypical: (1) "She is [] subject to a limitations defense while others are not," and (2) she is

10  not subject to arbitration. Opp'n at 12. Defendants' argument fails under the adequacy prong for the

11  same reasons it fails under typicality and commonality. *See* Adequacy's Relationship to Typicality, 1

12  *Newberg and Rubenstein on Class Actions* § 3:57 (6th ed.) (recognizing that typicality and commonality

13  "tend to merge with the adequacy-of-representation requirement").

14         First, Perlin is subject to the same arbitration clause as putative class members and is

15  asserting the same defenses. Defendants again cite to cases where, unlike here, the class

16  representative never agreed to an arbitration clause and is therefore an inadequate class

17  representative to challenge the agreement. *See, e.g.*, *Tan*, 2016 WL 4721439, at *3 (representative had

18  opted out of arbitration agreement and therefore could not challenge the agreement). Because Perlin

19  is subject to the same arbitration clause and is raising the same defenses to the clause as the class,

20  she has no conflicts with the class. Nor can Defendants contend she will not vigorously prosecute

21  the claims. She has done so before an arbitrator and continues to do so here.

22         Second, there is no rule that class representatives subject to an SOL defense cannot

23  represent those not subject to the defense. *See* 1 *Newberg*, at § 3:58. The relevant questions when

24  determining adequacy is whether Perlin has conflicts of interest with the class or is capable of

25  vigorous representation. *Id.* "As to the latter question, the relevant inquiry is whether the plaintiffs

26  maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation."

27  *Id.* at 943 (cleaned up). Here, Perlin has no conflict with class members not subject to the defense

28  because she already defeated Defendants' motion for summary judgment based on the SOL and the

1   remaining issue for trial will be trivial. Dkt. 283 at 14. The defense, moreover, affects *all* class

2   members because Perlin argues she and all other *consumers* have no reason to know that Defendants

3   misrepresented the thread count in the relevant Bedding Products. *Id.* at 12-13; *see also Schofield v.*

4   *Delta Air Lines, Inc.*, 2019 WL 955288, at *2-4 (N.D. Cal. Feb. 27, 2019) (rejecting typicality and

5   commonality challenge, and finding no conflict under adequacy prong, because SOL defense will

6   eventually affect all class member and turns on "common evidence or patterns of evidence."); Dkt.

7   292 at 2 (defining relevant "Bedding Products"). Because all class members are already subject to or

8   will likely face the defense, Perlin has a strong nexus with all class members to defeat the defense.[4]

9       Perlin has no conflicts with the class and has shown she will vigorously represent the entire

10  class, in part by presenting a meritorious defense to the SOL claim and the arbitration agreement.

11  Defendants do not challenge adequacy under any other grounds; adequacy is met.[5]

12  **III.   The Court can certify a Rule 23(b)(2)[6] under California law.**

13      Defendants argue a 23(b)(2) injunctive relief class is not certifiable because California law

14  cannot be applied nationwide. Opp'n at 14. This is wrong under the California governmental interest

15  test, a test each party concedes governs this issue. *Id.* "Under that test, the objectors [to the

16  application of California law] must prove (1) the law of the foreign state materially differs from the

17  law of California, meaning that the law differs with regard to the particular issues in question; (2) a

18  true conflict exists, meaning that each state has an interest in the application of its own law to the

19  circumstances of the particular case; and (3) the foreign state's interest would be more impaired than

20  California's interest if California law were applied." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d

21

22  _____

    [4] Defendants' caselaw is inapposite because in each case the court recognized that, unlike here, the
23  class representative's claims were likely to be dismissed because of the SOL defense and most class
    members were not subject to the defense. *See Taafua v. Quantum Glob. Techs., LLC*, 2020 WL 95639,
24  at *8 (N.D. Cal. Jan. 8, 2020); (recognizing that the class representative's claims are "significantly
    weaker" than those with timely claim and that approximately half the class was not subject to the
25  defense); *Vizzi*, 2010 WL 11515266, at *2 (same).

26  [5] In the unlikely event Perlin is not typical or adequate as to other class members subject to
    arbitration or the statute of limitations, she asks that the Court exclude them from the class. *See, e.g.,*
27  *Avilez*, 596 Fed. Appx. 579 (recognizing right of trial court to exclude class members).

    [6] Defendants argue the 23(b)(2) class is not certifiable because the *Motion* does not satisfy Rule 23(a).
28  For the reasons already stated, the Motion satisfies Rule 23(a); Defendants' argument is baseless.

539, 562 (9th Cir. 2019) (cleaned up). The first prong is irrelevant here. Perlin agrees, for this Motion, that the relevant consumer protection laws in each state are different. Defendants, however, fail to meet their burden of showing that foreign law, rather than California law, should apply under the second and third prong. *Mazza*, 666 F.3d at 589-90 (holding that "once the class action proponent [demonstrates that California law is constitutional], the burden shifts to the other side to demonstrate that foreign law, rather than California law, should apply to the class claims.")

### A.     Defendants did not identify a true conflict between the laws of each state.

Defendants argue that "non-California states have a strong interest in applying their laws," Opp at 15, but that is not the standard. The question is whether a true conflict exists, meaning "the court examines each jurisdiction's application of its own law under the circumstances of the particular case to determine whether a true conflict exists." *Mazza*, 666 F.3d at 590 (citing *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 81–82 (Cal.2010)). Here, the issue is not whether a California court can adjudicate claims of out-of-state residents and award damages based on past transactions. The issue is whether a California court can enjoin a California corporation from future misrepresentations after it finds that the corporation violated California law. On this issue, there is no true conflict. Defendants cannot point to any foreign law that lets a foreign corporation make misrepresentations in contravention of an injunction issued by its home state. Nor would any state have a legitimate interest in impairing California's desire to regulate conduct within its borders.

Defendants do not refute this argument, instead they argue, "non-California states have a strong interest in applying their own laws." Opp'n at 15. Defendants reason, "each state has a strong interest in applying its own consumer protection laws to transactions within its borders." *Id.* Putting aside that the question is whether each state's interests conflict, not whether the interests exist, the proposed injunction does not enjoin a *transaction* outside California. Perlin seeks an injunction "enjoining Defendants from further misstating thread count in advertising and marketing their bedding," conduct created and implemented in California before the transaction takes place. *See* 8AC Prayer for Relief at B. In other words, Defendants are prohibited from mislabeling or falsely advertising thread counts in their labeling and marketing materials, items created in California by a California corporation *before* the transaction occurs. *See* Answer ¶ 23 (admitting principal place of

9

1    business is California); *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1069 (9th Cir. 2021) (recognizing

2    that federalism ensures "each State may make its own reasoned judgment about what conduct is

3    permitted or proscribed within its borders.") (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538

4    U.S. 408, 422 (2003)).

5           Defendants cite *Stromberg, supra,* for the proposition that states have an interest in how best to

6    enforce their law and regulate commerce in their states. But the injunction Perlin seeks follows this

7    mandate. States can still let Defendants mislead consumers or limit recovery in their state. But

8    California is within their rights to prohibit a domestic corporation from producing advertisements

9    and marketing materials in *California. Mazza*, 666 F.3d at 592. Here, Perlin asks a California Court to

10   prohibit a California corporation from creating misrepresentations in advertising and marketing

11   emanating from California, nothing more. There is no true conflict of law.

12          **B.   California's interests outweigh any other state's interest.**

13          Even if there were a true conflict, the Court must still evaluate, "…the nature and strength

14   of the interest of each jurisdiction in the application of its own law to determine which state's

15   interest would be more impaired if its policy were subordinated to the policy of the other state, and

16   [] applies the law of the state whose interest would be more impaired if its law were not applied." *Id.*

17   at 590. The only foreign-state interests Defendants identify are a "compelling interest in protecting

18   [its] consumers from in-state injuries" and "in setting the scope of recovery for consumers under

19   their own laws." Opp'n at 16. This is not enough. The California injunction does not affect how

20   states interact with consumers. The injunction does not govern past purchases; it prohibits conduct

21   in California by a California corporation. States still have the right to enforce their own consumer

22   laws and consumers are still bound by whatever state law applies to their purchase of Bedding

23   Products from Defendants. If a class action in a particular state is prohibited, it is still prohibited, at

24   least in state court. *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 415–16

25   (2010) (allowing federal class action to proceed in federal court even though state legislature passed

26   rule prohibiting class action unless specifically allowed by statute). If a claim is untimely or damages

27   are limited under a particular state's law, the claims are still so limited. *See* Dkt. 170 at 10-11. The

28   injunction does not impair the ability of foreign state to regulate local commerce.

1    The only states affected are those who do not allow injunctions or where injunctions are

2    more difficult to obtain. Defendants waived this issue by not substantively analyzing it, but even if it

3    is considered those states have no interest in impairing California's right to regulate conduct

4    occurring in its border or to allow a foreign corporation to ignore an injunction issued by its home

5    state under its homes state's laws. *See* U.S. Const. art. IV, § 1 (Full faith and credit clause requiring

6    each state to honor the laws and judgments of courts of other states). But assuming they do, that

7    interest does not override California's interest in prohibiting misrepresentations by a California

8    corporation under California law. On balance, California must have the right to enforce its laws

9    against domestic corporations and must be allowed to proscribe conduct within its borders. *Mazza*,

10   666 F.3d at 592. Until Defendants relocate to another state, they are bound by California law and

11   subject to an injunction in the state under the state's laws. Any balancing undoubtedly favors

12   applying California law.

13          **C.      Perlin has standing to seek injunctive relief.**

14          Defendants argue that Plaintiff does not have standing to pursue injunctive relief because she

15   stated she no longer purchases "higher thread count" bedding. While this quote is accurate, when

16   Perlin's full testimony is considered, she said that when purchasing bedding now she "…kind of

17   gave up on thread count being important and an indicator of durable, luxury sheets." Aragon MCC

18   Decl., Ex. 49 at 39:11-40:2. Perlin said that she still purchases bedding from Pottery Barn and

19   Pottery Barn Kids, and Defendants own records show she has purchased high thread count bedding

20   from Pottery Barn *after* filing the complaint. *Id.* at Ex. 49 at 35:10-38:19; Ex. 50, WSI0016072 (Perlin

21   purchased high thread count bedding on October 28, 2021).[7] Because she continues to purchase

22   bedding, including high thread count bedding, from Defendants, she is in real and immediate threat

23   of repeated injury. *Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015)

24   (recognizing past purchasers are the most likely to be injured without an injunction). Perlin is not

25   protected by the fact she knows that Defendants misrepresent thread counts for the Bedding

26

27   _____

     [7] *See also* https://www.potterybarn.com/products/grand-organic-sheet-set/?pkey=s~grand%20
     embroidered %20organic%20Cotton%20sheet%20set~3 (visited Aug. 11, 2023) (noting 400 thread
28   count).

1   Products because (1) consumers cannot determine thread count on their own, (2) Defendants can

2   easily change the names of the Bedding Products, (3) they can create new product lines with

3   mislabeled thread counts, and (4) there is no disclosure on the packaging that would allow Perlin to

4   identify products with improper thread counts. *Id.* at *3. For these reasons, Perlin has standing to

5   pursue injunctive relief under 23(B)(2).

6   **IV.    The 23(b)(3) class should be certified because Perlin has established predominance.**

7          Defendants present multiple issues they claim defeat predominance, but each can be resolved

8   by common evidence that generates common answers. Defendants claim Perlin's common evidence

9   is insufficient, but even if the evidence is—despite its strength—eventually found to be insufficient,

10  that is a merits question and is meaningless here. *See Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084,

11  1115 (N.D. Cal. 2018) ("[E]ven if Kellogg is correct in its assertion that Plaintiff has failed to

12  provide sufficient evidence of deception and materiality, that failure has no bearing on whether

13  common questions will predominate over individual questions in the instant case.").

14         **A.    Whether a reasonable consumer was deceived is a common question.**

15         Defendants argue that deception can be proven only by showing consumers understand that

16  thread count is determined by ASTM D3775 or its methodology. Opp'n at 18. This is incorrect.

17  *Hadley*, 324 F. Supp. 3d at 1099 (there is no requirement plaintiff must show a uniform

18  understanding among putative class members as to the meaning of the challenged statements or that

19  class members share a specific belief). Because deception under the CLRA and the UCL is based on

20  a "reasonable consumer" test, "Plaintiff need only make 'an *objective* showing of a probability that a

21  'significant portion' of the relevant consumers acting reasonably 'could be misled' by the challenged

22  statements." *Id.* (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (emphasis added)). To

23  make this showing, a plaintiff must show that the statement is actually false or has a tendency to

24  mislead. *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 332 (1998); *In re Tobacco II Cases*, 46 Cal. 4th

25  298, 312 (2009). Here, Perlin has made an objective showing, by common evidence, that

26  Defendants' actions are false and have a tendency to mislead in with the following common

27  evidence:

28         **False Statements**: Common evidence shows the thread count on the Bedding Products'

12

1    packaging and advertisements is false because it is inconsistent with the industry standard[8] used by

2    retailers. *See, e.g.*, MCC Ex. A, ¶¶ 12-14 (expert testimony establishing industry standard and showing

3    that Bedding Product thread counts are literally false); Aragon MCC Decl. ¶ 23, Ex. 22 at 12-14

4    (U.S. Int'l Trade Comm. ALJ order explaining that mislabeled thread count is "literally false," which

5    results in "actual deception");[9] *Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 48 (Cal. Ct.

6    App. 2006), as modified on denial of reh'g (Jan. 31, 2006) (holding that for "the showing of

7    deception, 'the primary evidence in a false advertising case is the advertising itself.'") (citation

8    omitted); *see also* Cal. Code § 1770(a)(5), (7); and (9).

9        **Consumer testimony**: Perlin, a typical consumer, explained that she expected to receive

10   400 thread count sheets when she purchased her bedding from Defendants and was deceived when

11   she found it was 200 thread count. *See Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d at 48 (holding that

12   the plaintiffs' testimony supported finding of consumer deception); *Consumer Advocates v. Echostar*

13   *Satellite Corp.*, 8 Cal. Rptr. 3d 22, 30 (Cal. Ct. App. 2003) (holding a reasonable consumer may be

14   deceived by promises of a certain quantity of goods or services that were not given).

15       **Consumer Surveys**: Consumer survey expert, Brian Sowers, conducted a consumer survey

16   in response to the expert report of Sarah Butler, first disclosed in the Opposition to Motion for

17   Class Certification. *See* Expert Report of Brian Sowers attached hereto as **Ex. A**. The Sowers survey

18   finds that 42.7% of relevant consumers, and 34.6% of a subset of California consumers, were

19   deceived by the mislabeled sheets. *Id.* at ¶ 16; *Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at

20

21   ───────────
     [8] Defendants argue that "industry standard" and deception are not coterminous. But Perlin is not
22   making that argument. The failure to follow industry standard when counting threads does not make
     a product "per se" deceptive or unlawful. The stated thread count on advertising and product
23   labeling, which does not follow the standard used by Defendants and other retailers, makes the
     statement false and likely to deceive a reasonable person. *See, e.g.*, *Day v. AT & T Corp.*, 63 Cal. App.
24   4th at 332.

25   [9] Defendants claim regulatory materials cited by Plaintiff are insufficient to show industry standard,
     deception, or materiality. But Perlin is not arguing any evidence by itself is sufficient (although it
26   may be), she is presenting each piece as cumulative evidence that a jury can use to find industry
     standards, deception, and materiality. Defendants' criticisms are merits issues that need not be
27   resolved at class certification. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 133 S.
     Ct. 1184 (2013) (holding that merits questions "may be considered—but only to the extent—that
28   they are relevant to…" determine Rule 23 prerequisites are satisfied).

───────────
13

1    *4–5 (N.D. Cal. Apr. 15, 2016) (consumer survey evidence supported finding of deception);

2    *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 612 (N.D. Cal. 2018) (same).

3    Generally, figures between 25% and 50% are viewed as "solid support" for a finding of a likelihood

4    of deception. McCarthy on Trademarks and Unfair Competition §§ 32:188, 32:193 (5th ed.). Any

5    criticism of Sowers or Perlin's textile expert Rhodes "raises a merits question, not a basis to deny

6    class certification." *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 308 (N.D. Cal. 2018). "The

7    question now is not 'whether the expert is right or wrong, just whether his [or her] testimony has

8    substance such that it would be helpful to a jury.'" *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280,

9    294 (N.D. Cal. 2017) (citation omitted).

10   **Regulatory Opinions**: A Federal Trade Commission staff advisory opinion endorsed the

11   ASTM standard for bedding on August 2, 2005, and stated that while labeling is not required

12   deceptive labeling is prohibited. The FTC also stated that "…consumer could be deceived or misled

13   by the practice of stating an *inflated thread count*, achieved by multiplying the actual count by the

14   number of plies within the yarn." Aragon MCC Decl. ¶ 24, Ex. 23 at 3-4 (emphasis added). Later,

15   The International Trade Commission ("ITC") issued a general exclusion order prohibiting the

16   importation of all woven fabric products with falsely stated thread counts, meaning thread counts

17   that do not comply with ASTM D3775. Aragon MCC Decl. ¶ 28, Ex. 27 at 2. The ITC order also

18   stated that the multiplying the number of plies by the thread count is a false count and "consumers

19   could be deceived or misled by multiplying the actual count by the number of plies with the yarn,

20   and would likely mislead consumers about the quality of the product being purchased." *In re*

21   *McCormick & Co., Inc., Pepper Products Mktg. & Sales Practices Litig.*, 422 F. Supp. 3d 194, 245–46

22   (D.D.C. 2019) (construing California law and recognizing that industry regulations that "directly or

23   indirectly" find conduct deceptive is common evidence of deception).

24   **Industry Publications and Textbooks**: Perlin has developed common evidence from

25   these sources to show deception. Home Textiles Today, for example, wrote in September 2005 that

26   the FTC opinion, *supra*, "eliminates any vagueness" about stating thread count, agreeing with the

27   2005 FTC opinion that the "non-deceptive way to disclose both the thread count and the yarn play

28   would be to state, for example: '300 thread count, two-ply yarn.' A representation of '600 thread

14

count' for this same product would likely mislead consumers about the quality of the product being purchased." MCC Ex. B ¶ 18 (citing Michele SanFilippo, *Thread Count Game Slammed by FTC*, HOME TEXTILES TODAY, Sept. 12, 2005, accessed at http://hometextilestoday.com/article/477501-thread-count-game-slammed-by-ftc). A leading textiles textbook similarly explains that "misstating thread count "causes doubt and confusion for consumers," and that thread count is a measure of fabric quality and "…has long been recognized by consumers as a tool to determine quality"—the higher the thread count the higher the quality. *Id.* (citing *J.J. Pizzuto's Fabric Science* Joseph J. Pizzuto, et al. (10th ed. 2012) at 96, 345).

**Omissions:** ████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████ MCC Ex. A, ¶ 47.
Consumers are likely to be deceived because Defendants do not disclose their deviation from industry standard, a standard Defendants know is the correct standard for counting threads. MCC Ex. A, ¶ 47; Aragon Decl. ¶ 24, Ex. 23 at WSI0002993. *Hadley*, 324 F. Supp at 1099 (deception can be shown with defendants' own internal documents).

Perlin has identified common evidence that a reasonable jury could use to infer Defendants' statements regarding thread count are false or have a tendency to deceive. *Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d at 46-47 (holding that the "misleading character" of a given representation "appears on applying its words to the facts," and that courts can use common sense when adjudicating liability under the FAL and CLRA).[10] Nothing more is required.

Defendants, however, argue the ASTM D3775 is not an industry standard, and they may make any representation they want regarding thread count. Putting aside there is no support for this

---

[10] Defendants' caselaw is inapposite because it involves cases with "scant" evidence whereas here the evidence demonstrates that consumers are likely to be deceived. *Compare In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, 2019 WL 2521958, at *12 (D.N.J. June 18, 2019) (the "only evidence of materiality [and deception]" was an opinion from the FDA commissioner that certain language is non-conforming but he did not say consumers "would have considered the [] label at all or what meaning, if any, a reasonable consumer would have attached to it." *with* Sec. IV (A) and (B).

1    position,[11] it does not create individual issues. The existence of deception is an objective question

2    based on a reasonable consumer, it is common to the class and "ideal for certification." *See Broomfield*

3    *v. Craft Brew All., Inc.*, 2018 WL 4952519, at *11 (N.D. Cal. Sept. 25, 2018). Whether Defendants

4    made false statements and whether consumers are likely to be deceived is determined using common

5    evidence, even *if* Perlin is incorrect. *See Hadley*, 2018 WL 3954587, at *21. Defendants' arguments

6    regarding ASTM do not raise individual questions, predominance is satisfied.

7          Defendants rely heavily on *Adam v. AQ Textiles, LLC*, which found, under Massachusetts

8    law and federal warranty law, that there is no legal requirement for a manufacturer (not a retailer) to

9    use the ASTM standard when labeling products. 2021 WL 3475677, at *5 (M.D.N.C. Aug. 6, 2021*).

10   *Adam* also found that the plaintiffs presented no evidence at the pleading stage that ASTM is the

11   industry standard. *Id. Adam* is inapposite. First, Perlin does not argue that non-compliance with the

12   ASTM standard is *per se* unlawful. Perlin argues that when labeling and advertising the Bedding

13   Products with a thread count, it is misleading to a reasonable consumer for a *retailer* not to use the

14   industry standard under California law. A court construing *California* law on this exact same subject

15   agrees. *See Hawes v. Macy's Inc.*, 346 F. Supp. 3d 1086, 1094 (S.D. Ohio 2018) (denying motion to

16   dismiss UCL, CLRA, and FAL claim that defendants misrepresented thread counts by labeling

17   sheets with inaccurate thread counts).

18         The plaintiffs' claims in *Adams* were also dismissed at the pleading stage, and provided

19   substantially less evidence to support their position that ASTM is the industry standard than Perlin

20   presents here. *Id.* at *5. Perlin provides the same evidence as the *Hawes* plaintiffs, *plus* expert reports,

21   Defendants' own testimony and documents, and other common evidence that ASTM is the industry

22   standard. *See* analysis, *supra,* at 15. Again, a court construing California law on a complete record

23   certified a class action settlement with the understanding that ASTM is the industry standard for

24

25   [11] Defendants claim, without evidence, that ASTM is *only* used as a "technical standard for
     businesses" when "buying and selling fabric rolls," Opp'n at 21▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ MCC Ex. A ¶ 57. Perlin
     has also "defined" thread count and presented substantial evidence that ASTM is an "industry
27   standard" for retailers and manufacturers, and Defendants disputes to the contrary is for the merits.
     *See* MCC Ex. A ¶¶ 45-48; *see also* Sec. IV(A), (B).
28

1    retailers counting thread counts in bedding products. *Hawes v. Macy's Stores W., Inc.*, 2022 WL

2    194407, at *2 (S.D. Ohio Jan. 22, 2022). Macy's, a major retailer, admits ASTM is the industry

3    standard for cotton bedding. *Id.* In any event, whether ASTM is an industry standard and whether it

4    is likely to deceive consumers is a common question that can be answered with common evidence.

5         **B.   Exposure does not create individual issues.**

6         Defendants claim Plaintiff has not shown that thread count claims appear prominently on all

7    WSI marketing materials for the Bedding Products. Opp'n at 22. This is incorrect. Whether class

8    members have been exposed to Defendants' deceptive statements regarding thread count is

9    answered by looking at the advertisements and packaging itself, which is common evidence. *Bailey v.*

10   *Rite Aid Corp.*, 338 F.R.D. 390, 400 (N.D. Cal. 2021) ("noting that in 'numerous cases involving

11   claims of false-advertising, class-wide exposure has been inferred' where the alleged

12   misrepresentation is on the packaging of the item being sold or where there is a high likelihood that

13   'in the process of buying the product' the consumer would have been exposed to the allegedly

14   deceptive conduct") (citing *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 895 (N.D. Cal. 2015)

15   (collecting cases)).

16        Perlin has presented evidence that each of the seven *lines* of Bedding Products contain the

17   statement that the bedding is approximately twice the actual thread count on the website (*see, e.g.*,

18   Aragon MCC Decl. at Exs. 3-5, 7-9), statements associated with the sale of the product (*see, e.g.*, *Id.* at

19   Exs. 6, 10-15), and in most cases the packaging itself (*see, e.g.*, *Id.* at Exs. 16-20). This evidence is

20   sufficient to show class-wide exposure. *See In re Hyundai*, 926 F.3d at 560 ("[w]hen

21   misrepresentations are made as part of a nationwide, concerted marketing effort, it makes no

22   difference to the predominance analysis whether consumers encounter them in different guises.");

23   *Hadley*, 324 F. Supp. 3d at 1099 (recognizing that class-wide exposure is inferred when alleged

24   misrepresentation is "prominently displayed" and class members are exposed to the same

25   representations)(citations omitted). Plaintiff has shown uniform and consistent exposure to the

26   deceptive statements, based on common evidence, that is sufficient for a factfinder to find that class

27

28

1    members were exposed to the deceptive conduct.[12]

2        **C.    There is no advertising variation that impacts predominance.**

3        Defendants argue that Plaintiff did not show that a reasonable person would be deceived by

4    because some sheets state the number of plies. Opp'n at 34-35. This "difference" is not a relevant

5    consideration in assessing predominance. The method for calculated thread count under ASTM is

6    not affected by the number of plies. MCC Ex. A, ¶¶ 27, 31. And there is no evidence the knowing

7    the number of plies means consumer knew that thread counts would be double the industry

8    standard. Irrelevant variations in advertising do not raise individual issues. The evidence shows that

9    consumers would believe that thread counts, whether the number of plies is advertised or not,

10   would be deceived when the thread count is double the industry standard and that Defendants do

11   not disclose their idiosyncratic counting method. This does not create individual issues.[13]

12       **D.    Perlin has shown materiality with common evidence.**

13       The parties agree that the UCL, FAL, and CLRA permit an inference of reliance, causation,

14   and damages for certification purposes if Perlin presents common evidence that Defendants made a

15   material misrepresentation. Opp'n at 23. Defendants, however, argue materiality exists only if class

16   members uniformly understand that thread counts are determined using ASTM D3775 and would

17   attach importance to the fact they are not. Opp'n at 24. This is not the law. "[M]ateriality under the

18   FAL, CLRA, and UCL are governed by an objective 'reasonable consumer test.'" *Hadley*, 324 F.

19   Supp. 3d at 1116. "A reasonable consumer is the ordinary consumer acting reasonably under the

20   circumstances and is not versed in the art of inspecting and judging a product, in the process of its

21   preparation or manufacture...." *Colgan*, 38 Cal. Rptr. 3d at 48 (cleaned up). "Because deception and

22

23   ─────────────────────────────
     [12] Plaintiff can also show that ████████████████████████████

24   █████████████ Declaration of Leonard W. Aragon to Plaintiff's Reply ISO Motion for Class
     Certification (Reply Decl.) at Ex. 2, WSI Suppl. Resp. to Interrog. 12, pp. 13-14.

25   [13] Defendants' reliance on *Moheb v. Nutramax Labs. Inc.*, 2012 WL 6951904, at *7 (C.D. Cal. Sept.4,
     2012), is unfounded because the court found there was no widespread campaign and many class

26   members did not see the false statement and "relied on the recommendations of doctors,
     veterinarians, reviews, articles, or retailers' sales pitches in deciding to purchase and use..." the

27   product. *Id.* at *7. Here, the misrepresentation is part of a widespread campaign for each *line* of
     Bedding Products and is *also* on the packaging for most products. Aragon MCC Decl. at Exs. 3-20.

28

materiality are objective questions, Plaintiff 'has no burden to establish that there is a uniform understanding among putative class members as to the meaning of' the challenged [] statements, "or that all or nearly all of [the class members] shared any specific belief." *Hadley*, 324 F. Supp. 3d at 116. To show materiality, Perlin need only make, "…an objective showing of a probability that a 'significant portion' of the relevant consumers acting reasonably 'could be misled' by the challenged statements. *Id.* (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).[14] Here, Plaintiff has presented substantial evidence that the alleged misrepresentation was material to consumers.

**Marketing Survey**: Plaintiff's marketing expert, Brian Sowers, tested the effect of the thread-count misrepresentation and found that consumers consider thread count a material consideration when purchasing bedding. *See* Ex. A ¶¶ 16(d); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 612-613 (N.D. Cal. 2018) (survey evidence sufficient to prove materiality); *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *10 (N.D. Cal. Sept. 25, 2018).[15]

**Textile Expert**: Jennifer Rhodes, textile expert with more than 25 years of relevant experience in the textile industry (including the retail industry) explains why thread count is material to consumers because it is an indicator of quality. MCC Ex. A ¶¶ 1-8, 23, 29 Ex. 1 (CV).[16]

**Industry Publications and Textbooks**: Plaintiff's textile expert cited multiple textbooks and guides for the textile industry explaining why thread count matters to consumers, primarily as a proxy for quality; Kathryn L. Hatch, *Textile Science*, West Publishing Co.: Minn., 1993; Cline Hallet and Amanda Johnston, *Fabric for Fashion: The Complete Guide* (2014)). She also explained how

---

[14] Defendants cite cases where the misrepresentation is inherently ambiguous with no defined standard, such as "natural vanilla" or the word "energy" in "five-hour energy." *See, e.g., In re 5-Hour Energy Mktg. & Sales Practices Litig.*, ML132438PSGPLAX, 2017 WL 2559615, at *8 (C.D. Cal. June 7, 2017); *see also* Opp'n at 26. These cases have no application because Perlin has presented common evidence of an industry standard and consumers' understanding that thread count equates to quality.

[15] The Sowers Report also explains why the Butler Report's finding that "consumers consider a wide-range of factors when purchasing [] bedding" Opp'n at 27, is unreliable, but such issues are for trial and Perlin reserves the right to seek to exclude Butler. *See, e.g., Hadley*, 324 F. Supp. 3d at 1116-117 (holding plaintiffs are not required to prove that the challenged statement is "the sole or even the predominant or decisive factor influencing" the decision to buy the product.) (citation omitted).

[16] Defendants' consumer survey purports to show that materiality does not exist. But this survey is further common evidence that supports certification and a merits dispute that need not be resolved at this stage. *Testone v. Barlean's Organic Oils, LLC*, 2021 WL 4438391, at *4 (S.D. Cal. Sept. 28, 2021).

19

1   consumers preferred higher thread count in bedding, leading to "thread-count wars." *Id.* at ¶¶ 29-31;

2   *see also* MCC Ex. B ¶¶ 19-25.

3       **Industry Experts**: Linwood E. Wright III the experts for Macy's in *Hawes* admitted that

4   thread count is material consumers. *Hawes*, 2022 WL 194407, at *16 (holding that Wright's letter to

5   FTC that "thread-count is an important indicator of fabric quality for bedsheets" supports a finding

6   that thread count is a material factor in consumers' choice of bedsheets)' *see also* MCC Ex. B ¶ 23.

7       **Prominent Advertising**: Prominent deceptive statements on advertisement is sufficient to

8   find materiality. *Id.* (holding that efforts by Macy's to give thread count "prime billing" on packaging

9   was common evidence of materiality). Here, thread count was usually in the title of the bedding and

10  always prominently displayed in the advertising accompanying the packaging.

11      **Econometric Analysis**: Dr. Lamb proposed two models that will calculate the premium

12  consumers pay for higher thread counts: the direct benchmark approach and the hedonic pricing

13  model. MCC Ex. B ¶¶ 41-52. Lamb has not run the models yet because discovery on damages is

14  forthcoming per this Court's scheduling orders, Dkt. 82, but both models isolate the value given to

15  thread count in consumer transactions and will show by common evidence whether consumers pay

16  more for higher thread counts, which would show materiality (or lack thereof). *Id.*; *Hawes*, 2022 WL

17  194407, at *16 (holding a direct correlation between price and thread-count based on expert's

18  damage model can show materiality).

19      Plaintiff has submitted enough common evidence for a reasonable factfinder to find that

20  thread count is a material factor in consumers' choice of bedding. Perlin need not show that

21  consumers understand the nuances of how thread counts are determined to find materiality. *See, e.g.*,

22  *Hadley*, 324 F. Supp. 3d at 1116 (recognizing that the Ninth Circuit recently reversed a denial of class

23  certification where "the district court found that plaintiff had 'offered no evidence that consumers

24  uniformly interpret the statement' 'Helps Maintain a Healthy Heart' 'in a particular manner.'") (citing

25  *Bradach v. Pharmavite, LLC*, 735 Fed. Appx. 251 (9th Cir. 2018)). Common questions predominate.

26      **E.    The SOL defense and arbitration clause do not raise individual issues.**

27      Defendants argue that the SOL defense and arbitration clauses applicable to certain class

28  members raises individual issues and defeats predominance. But for the reasons already stated in the

20

1   typicality and commonality sections, these defenses can be answered with common evidence. Perlin

2   alleges that that the discovery rule applies because no consumer would know that the Bedding

3   Products were mislabeled, and the only evidence Defendants produced was that Perlin should have

4   known that her sheets were mislabeled because they ripped. The Court already held this issue is for

5   the jury, and Defendants have not identified evidence to support any other individual issues that

6   must be resolved at trial. Defendants point to individual issues allegedly raised by former class

7   representative Rushing, but he is not a class member. Because Defendants cannot identify evidence

8   that individual class members knew or should have known that their claims accrued and discovery

9   on this issue is over, there are no individual issues to litigate on behalf of class members. *See Jolly v.*

10  *Eli Lilly & Co.*, 44 Cal.3d 1103, 1109-10 (1988) (en banc) (claims do not accrue until plaintiff

11  suspects or should suspect that her injury was caused by wrongdoing); *Williams v. Sinclair*, 529 F.2d

12  1383, 1388 (9th Cir. 1975) ("The existence of a statute of limitations issue does not compel a finding

13  that individual issues predominate over common ones.").

14          Similarly, the arbitration clause does not create individual issues for the same reasons stated

15  in the typicality and commonality sections—Perlin is challenging the same arbitration clause

16  applicable to class members. This is a common question with a common answer. *See* analysis, *supra*,

17  Sec II (A)(2), (B). And whether consumers are subject to an arbitration clause is easily determined by

18  reviewing Defendants' records. Defendants have already demonstrated that they can identify

19  consumers who made online purchases after 2016 using their data files. Dkt. 219-1 ¶ 2 (identifying

20  Perlin's records and isolating online purchases). Whether someone purchased a product online after

21  2016 and is therefore subject to an arbitration clause is not a contested issue, it is a records

22  evaluation, and clearly not a threat to predominate over common questions.

23  **V.     Perlin has established a valid, common method to measure damages.**

24          "At class certification, plaintiff must present a likely method for determining class damages,

25  though it is not necessary to show that his method will work with certainty at this time." *Chavez*, 268

26  F.R.D. at 379 (cleaned up). Here, Perlin proposes two alternative models for measuring class-wide

27  damages that comply with *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), as they are directly "tied"

28  to Plaintiff's theory of the case: the direct benchmark approach and the hedonic regression model.

1   MCC Ex. B ¶¶ 43-44. Each isolates the value assigned to thread count in consumer transactions. *Id.*

2        The direct benchmark approach analyzes the product's price but for Defendants' conduct by

3   comparing the prices of the relevant Bedding Products to similar products without the false

4   statements regarding thread count. *Id.* If the benchmarks are substantively different from the

5   Relevant Bedding Products, Dr. Lamb proposes using the hedonic pricing model to measure the

6   impact of the harm. *Id.* ¶¶ 44-52. The hedonic pricing model is used to determine whether a specific

7   feature of a good contributes to the price. *Id.* ¶ 46. It uses a multiple regression analysis which

8   explains the movements in one variable, the "dependent variable" (here, price), by examining the

9   behavior of several other variables, the "independent variables" (here, thread count, fabric type,

10  weave pattern, size, and color). *Id.* ¶ 49. The multiple regressions "control" for the effect of the

11  other variables by isolating each independent variable's impact on the dependent variable. *Id.* Dr.

12  Lamb proposes using the hedonic pricing model to isolate the effect of thread count on price.

13       Dr. Lamb's models are valid methods for calculating class-wide damages. *In re Cathode Ray*

14  *Tube (CRT) Antitrust Litig.*, 2013 WL 5429718, at *21 (N.D. Cal. June 20, 2013), (noting both the

15  benchmark comparison approach and the hedonic regression model to be among the "widely-

16  accepted" models for calculating the but for price); *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D.

17  346, 354 (N.D. Cal. 2005) (approving the benchmark comparison approach); *In re TFT-LCD (Flat*

18  *Panel) Antitrust Litig.*, 267 F.R.D. 583, 606 (N.D. Cal. 2010) (noting that courts have accepted

19  multiple regression analyses as means of proving injury and damages class wide.); *In re ConAgra*

20  *Foods, Inc.*, 90 F. Supp. 3d 919, 1028 (C.D. Cal. 2015) (hedonic regression). Perlin's proposed

21  damages model fit Perlin's liability theory and thus satisfy *Comcast*.

22       A.     **Dr. Lamb's direct benchmark approach.**

23       Defendants argue a direct comparison is "only acceptable where the product at issue and

24  benchmark product are identical but for the false advertising." Opp'n at 42. This argument is

25  contrary to the law. *See Elkies v. Johnson & Johnson Servs., Inc.*, 2018 WL 11223465, at *9 (C.D. Cal.

26  Oct. 18, 2018) (any difference in comparators "would go to the weight of the testimony surrounding

27  that model, not to a question of whether Plaintiffs have come up short under *Comcast*"); ABA

28  Section of Antitrust Law, Proving Antitrust Damages: Legal and Economic Issues 57, 62 (2d ed.

22

2010) ("perfection is not required, and adjustments may be used to account for differences");

Michele Molyneaux, *Quality Control of Economic Expert Testimony*, 35 Ariz. St. L.J. 1049, 1054 (2003)

(yardstick only need be substantially similar). Further, the benchmarks and the comparators here are

substantially similar but for the difference in advertised thread count. Rhodes Rpt. Ex. 2. Rhodes'

report identifies the substantial similarities between each relevant bedding product and comparator.

*Id.* The marketing, weave structure, and fiber content are nearly identical for each of these. *Id.*

Defendants identify one primary difference between the Relevant Bedding Products and the

comparators—ply count—and contend that the products cannot be identical because none of the

proposed benchmarks are two-ply. Mot at 43.[17] But the way Defendants count their sheets, plies are

inextricably linked to Defendants' thread count. In other words, ply is tied to the false advertising

that Lamb isolates. Defendants have not shown that the differences between products make the

comparators unsuitable benchmarks, and any dispute is for the jury. *Image Tech. Servs. v. Eastman*

*Kodak Co.*, 125 F.3d 1195, 1221 (9th Cir. 1997) (whether chosen benchmark is a proper comparator

presents a question of fact for the jury); *Syufy Enterprises v. Am. Multicinema, Inc.*, 793 F.2d 990, 1003

(9th Cir.1986) (comparability is a question of fact).[18]

Similarly, it does not matter that Dr. Lamb has not yet identified which price he intends to

use to measure these differences (list price or price "actually paid"). At this stage, Dr. Lamb need

not complete or run his damages model. "Plaintiffs need only demonstrate a proposed method for

determining damages that is not so insubstantial as to amount to no method at all." *In re TFT-LCD*

*Antitrust Litig.*, 267 F.R.D. 583, 606 (N.D. Cal. 2010) (internal quotation omitted). Nor can Dr.

Lamb be faulted for not completing his analysis when discovery related to damages has not yet

occurred. Dr. Lamb's model is sufficient to measure damages for the class.

### B. Dr. Lamb's hedonic regression approach.

---

[17] Defendants note, for the first time, that two of the products were marketed as two-ply but were
not in fact two-ply. Mot. at 43, n. 57. But this is irrelevant because ply has no relation to thread
count or how consumers perceive thread count. MCC Ex. A, ¶¶ 27, 31.

[18] Defendants' reliance on *Algarin v. Maybelline, LLC*, is misplaced. 300 F.R.D. 444 (S.D. Cal. 2014).
There, the plaintiff "did not even attempt to isolate the amount attributed solely to the alleged
misrepresentation." *Id.* at 460. Here Plaintiff has identified all substantially similar comparators.

Defendants argue the hedonic pricing method does not fit Plaintiff's liability theory because it measures the price associated with increased thread count, not a *representation* of increased thread count. Opp'n at 45. Defendants claim that under their pricing model, which is disputed and was not disclosed to Plaintiff before Defendants' Opposition, Defendants' misrepresentation does not impact price. *Id.* Setting aside that Perlin has not had the opportunity to conduct discovery into this disputed claim, Dkt. 82, Defendants' assertion that Dr. Lamb's model does not consider pricing is false. Dr. Lamb proposes using real transaction data, to isolate the impact of thread count on price. MCC Ex. B ¶¶ 46-49. Transaction data reflects both what Williams-Sonoma would sell the product at and what purchasers would pay for it. If Williams-Sonoma's assertions are true, that thread-count representations do not affect price, Dr. Lamb's model will reflect that. But Defendants' previously undisclosed pricing model does not affect whether Perlin has presented an adequate damages model for class certification.

Defendants' reliance on *Schechner v. Whirlpool Corp.*, 2019 WL 4891192, at *8 (E.D. Mich. Aug. 13, 2019) is unfounded. This district rejected the Michigan court's reasoning and confirmed that challenges to a damages model that does not consider changes in pricing or price premia goes to the weight not admissibility. *Krommenhock v. Post Foods, LLC*, 2020 WL 2322993, at *2 n. 3 (N.D. Cal. May 11, 2020). And *Herron v. Best Buy Stores, LP*, supports Plaintiff's proposed damages methodology. 2018 WL 1960659, *3 (E.D. Cal. Apr. 26, 2018) (the proper measure of damages is the "difference between the product as labeled and the product as received); *see also Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 698 (S.D. Fla. 2014) (damages model must isolate the premium associated with the misrepresentation). In line with *Herron* and *Randolph*, Dr. Lamb proposes isolating the cost associated with the advertised increased thread count in comparison to what the Class actually received: sheets with approximately half the threads.

Defendants also claim that because Dr. Lamb has left the door open to identify additional independent variables, his model does not satisfy *Comcast*. Opp'n at 46. But Dr. Lamb has identified the known, independent variables sufficient to run his model: thread count, fabric type, weave pattern, size, and color. MCC Ex. B ¶ 49. Identifying known independent variable at class certification is all that is necessary, and it is reasonable, even prudent, for him to "leave the door

1   open to other variables." *Hawes*, 2022 WL 194407, at *4-5. Further, Dr. Lamb must leave the door

2   open to identify additional independent variables because Perlin has not been permitted to obtain

3   discovery related to damages. Dkt. 82. "[Defendants] cannot use damages discovery as both a sword

4   and a shield." *Brazil v. Dole Packaged Foods*, 2014 WL 2466559, at *18 (N.D. Cal. May 30, 2014).[19]

5       Dr. Lamb has shown the additional information he needs to perform the regression analysis,

6   if any, is "likely to become available" and thus he has presented a sufficiently reliable model for class

7   certification. *In re CRT*, 2013 WL 5429718, at *21–23. He identifies three data sources in

8   Defendants' possession from which he can gather information related to the independent variables:

9   transaction data, Williams-Sonoma's websites, and the Customer Data Warehouse (CDW). MCC Ex.

10  B ¶¶ 31, 54. Defendants' corporate designee confirmed that the CDW maintains Defendants' Stock

11  Keeping Unit (SKU) descriptions, *id.* ¶ 54, and Dr. Lamb explains SKU's can identify these

12  characteristics and provides examples of how SKUs identify each characteristic. *Id.* ¶ 31. And

13  detailed information relating to payment methods, discounts, and returns are all housed on the

14  CDW, and the websites contain further descriptions of relevant characteristics. *Id.* ¶¶ 31, 54. Lamb's

15  hedonic regression model satisfies *Comcast*.[20] *In re CRT*, WL 5429718, at *21–23.

16  **VI.    A Class Action is Superior.**

17      Defendants argue there are manageability concerns that make a class action inferior to

18  individual actions. But Perlin has shown she can prove the Rule 23 elements with common evidence

19  that generates common answers. Defendants claim there are individual issues but identify none. A

20  class action is the only way for consumers to remedy this wrong. If a class is not certified, there will

21  be no individual actions. For the reasons stated in this Reply and the MCC, Perlin respectfully

22  requests that the Court certify the Nationwide 23(b)(2) class and the California damages subclass.

23

24  [19] *Brazil v. Dole Packaged Foods, LLC* (*Brazil II*) is procedurally inapposite. 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014). Discovery in *Brazil II* was complete, and defendants moved for decertification

25  when the court determined the regression model could no longer isolate for the alleged harm. *Id.* at *6. The Court had no issues with pre-completion-of-discovery draft reports. *Id.* at *3.

26  [20] Defendants' argument that there is likely insufficient product variation for a hedonic regression model to be reliable is mere conjecture. On this issue, they point to the benchmark products

27  identified by Rhodes. Opp'n at 48. These benchmarks were chosen specifically because they were

28  nearly identical to the Relevant Bedding Products.

Dated: August 14, 2023

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By _____/s/ Leonard W. Aragon_____
   LEONARD W. ARAGON
Robert B. Carey (*pro hac vice*)
Leonard W. Aragon (*pro hac vice*)
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
rob@hbsslaw.com
leonard@hbsslaw.com

Amber L. Eck (177882)
HAEGGQUIST & ECK, LLP
225 Broadway, Suite 2050
San Diego, California 92101
ambere@haelaw.com

Shana E. Scarlett (SBN 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: 510.725.3000
shanas@hbsslaw.com

George Richard Baker (SBN 224003)
BAKER LAW, PC
625 East Main Street, Suite 102B, #104
Aspen, Colorado 81611
Telephone: 970.439.5905
richard@bakerlawpc.com

Attorneys for Plaintiff