1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   P. CRAIG CARDON, Cal. Bar No. 168646
2  ROBERT J. GUITE, Cal. Bar No. 244590
   BENJAMIN O. AIGBOBOH, Cal. Bar No. 268531
3  ALYSSA SONES, Cal. Bar No. 318359
   Four Embarcadero Center, 17th Floor
4  San Francisco, California 94111-4109
   Telephone:   415.434.9100
5  Facsimile:   415.434.3947
   Email:       ccardon@sheppardmullin.com
6                rguite@sheppardmullin.com
                 baigboboh@sheppardmullin.com
7                ashauer@sheppardmullin.com

8  *Attorneys for Defendants*

9
                    **UNITED STATES DISTRICT COURT**
10
      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**
11

12 WILLIAM RUSHING and ELIZABETH          Case No. 3:16-cv-01421-WHO
   PERLIN, individually and on Behalf of
13 all Others Similarly Situated,          *Assigned to the Hon. William H. Orrick*

14                Plaintiffs,              **DEFENDANTS':**

15         v.                             **(1) NOTICE OF MOTION AND**
                                              **MOTION TO COMPEL**
16 WILLIAMS-SONOMA, INC., a                   **ARBITRATION; AND**
   Delaware corporation, also d/b/a
17 Williams-Sonoma, Williams-Sonoma       **(2) MEMORANDUM OF POINTS**
   Home, and Pottery Barn; WILLIAMS-          **AND AUTHORITIES IN**
18 SONOMA DTC, INC., a California             **SUPPORT THEREOF**
   corporation; WILLIAMS-SONOMA
19 ADVERTISING, INC.,                     *[[Proposed] Order filed concurrently*
                                          *herewith]*
20                Defendants.
                                          <u>Hearing</u>
21                                        Date:        June 18, 2025
                                          Time:        2:00 p.m.
22                                        Courtroom:   2

23                                        Complaint Filed:   January 29, 2016
                                          Action Removed:    March 23, 2016
24                                        8AC Filed:         June 5, 2020
                                          Trial Date:        None Set
25

26

27

28

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 18, 2025 at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 2 on the 17th floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable William H. Orrick presiding, Defendants Williams-Sonoma, Inc. ("WSI"), Williams-Sonoma DTC, Inc. ("WSDTC"), and Williams-Sonoma Advertising, Inc. ("WSA" and, collectively with WSI and WSDTC, "Defendants") will and hereby do move the Court for an order compelling arbitration of all claims asserted in the Eighth Amended Class Action Complaint class members who agreed to WSI's Terms and Conditions or The Key Rewards Terms and Conditions containing an arbitration provision and excluding those class members from the certified class.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the previously-filed Declaration of Jon Quinn (ECF No. 357-1), Declaration of Nicole Zagar (ECF No. 357-2), Declaration of Shiva Harris (ECF No. 357-3), and Declaration of Benjamin O. Aigboboh (ECF No. 357-4), all pleadings, papers and other documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice, and such other matters as the Court may consider.

Dated:  May 9, 2025

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By _____ */s/ P. Craig Cardon*_____
P. CRAIG CARDON
ROBERT J. GUITE
BENJAMIN O. AIGBOBOH
ALYSSA SONES

*Attorneys for Defendants*
WILLIAMS-SONOMA, INC., WILLIAMS-SONOMA DTC, INC., and WILLIAMS-SONOMA ADVERTISING, INC.

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 7

I.    INTRODUCTION .......................................................................................................... 7

II.   RELEVANT FACTS ..................................................................................................... 7

    A.    WSI's Products, Gift Registries, and Loyalty Program ............................. 7

    B.    WSI's Terms And Conditions ..................................................................... 8

        1.    Website and Mobile Application Terms and Conditions ............... 8

        2.    The Key Rewards Loyalty Program Terms and Conditions .......... 8

III.  ISSUE TO BE DECIDED .............................................................................................. 9

IV.   LEGAL STANDARDS .................................................................................................. 9

V.    THE *MOTION* SHOULD BE GRANTED ................................................................ 10

    A.    There Is An Agreement To Arbitrate Under California Law ................. 10

        1.    Online Purchasers ........................................................................ 11

        2.    Wedding and Other Gift Registrants .......................................... 12

        3.    Key Rewards Members ................................................................ 13

    B.    The Arbitration Agreement Delegates Scope Questions Or
        Encompasses The Claims ......................................................................... 14

        1.    The Website Terms Delegate Scope Questions or
            Encompass the Claims ................................................................. 14

            a.    The March 2016, January 2020, April 2020, and
                January 2023 Website Terms Delegate Gateway
                Issues to the Arbitrator ......................................................... 14

            b.    The October 2023 and November 2024 Website
                Terms Delegate Scope Questions to the Arbitrator ........... 15

            c.    The January 2025 Website Terms Encompass the
                Class Members' Claims ........................................................ 16

        2.    The Rewards Terms Delegate Scope Questions or
            Encompass the Claims ................................................................. 17

            a.    The August 2017, May 2018, August 2021,
                November 2021, and October 2022 Rewards Terms
                Delegate Gateway Issues to the Arbitrator ......................... 17

b.    The April 2024 and August 2024 Rewards Terms Delegate Scope Questions to the Arbitrator........................ 18

c.    The January 2025 Rewards Terms Encompass the Class Members' Claims ........................................................ 18

VI.    CONCLUSION ................................................................................. 19

MOTION TO COMPEL ARBITRATION

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

<u>Federal Cases</u>

4

*ABF Capital Corp. v. Osley*
    414 F.3d 1061 (9th Cir. 2005)....................................................................10

5

*Anderson v. Amazon.com., Inc.*
6
    490 F. Supp. 3d 1265 (M.D. Tenn. 2020) ...............................................12

7

*AT&T Techs., Inc. v. Commc'n Workers*
8
    475 U.S. 643 (1986)..........................................................................16, 19

9

*Brennan v. Opus Bank*
    796 F.3d 1125 (9th Cir. 2015)....................................................................14

10

*Ciprianni v. Omni La Costa Resort & Spa*
11
    2017 WL 1281856 (S.D. Cal. Apr. 6, 2017) ...............................................9

12

*Dean Witter Reynolds Inc. v. Byrd*
13
    470 U.S. 213 (1985)....................................................................................9

14

*Dickey v. Ticketmaster LLC*
    2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) ...................................15, 17

15

*Dohrmann v. Intuit, Inc.*
16
    823 Fed. Appx. 482 (9th Cir. 2020) .........................................................12

17

*Duarte v. JPMorgan Chase Bank, Nat'l Ass'n*
18
    2021 WL 5299908 (C.D. Cal. Nov. 15, 2021)......................................9, 10

19

*In re Facebook Biometric Info. Privacy Litig.*
20
    185 F. Supp. 3d 1155 (N.D. Cal. 2016)....................................................10

21

*First Options of Chicago, Inc. v. Kaplan*
    514 U.S. 938 (1995).................................................................................10

22

*Gillette v. First Premier Bank*
23
    2013 WL 3205827 (S.D. Cal. June 24, 2013) .........................................10

24

*H.K. Cont'l Trade Co. v. Nat. Balance Pet Foods*
25
    2023 WL 2664246 (C.D. Cal. Mar. 28, 2023) .........................................14

26

*Hansen v. Integrity Assets LLC*
    2021 WL 5999317 (C.D. Cal. Dec. 20, 2021) .........................................10

27

*Henry Schein, Inc. v. Archer & White Sales, Inc.*
28
    586 U.S. 63 (2019).................................................................................14

*Henry v. Napa Valley Unified*
2016 WL 7157670 (N.D. Cal. Dec. 8, 2016) ............................................... 9, 10, 12, 14

*Hoffman v. Citibank, N.A.*
546 F.3d 1078 (9th Cir. 2008) ............................................................................ 10

*Hosseini v. Upstart Network, Inc.*
2020 WL 573126 (E.D. Va. Feb. 5, 2020) ........................................................... 12

*Lara v. Onsite Health, Inc.*
896 F. Supp. 2d 831 (N.D. Cal. 2012) (applying California contract
formation law where parties were California residents) .................................. 10

*McGrath v. DoorDash, Inc.*
2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) ......................................................... 9

*Mortensen v. Bresnan Communs., LLC*
722 F.3d 1151 (9th Cir. 2013) ................................................................. 16, 18, 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
460 U.S. 1 (1983) ............................................................................................ 16, 18

*Nguyen v. Barnes & Noble Inc.*
763 F.3d 1171 (9th Cir. 2014) ............................................................................ 10

*Patrick v. Running Warehouse, LLC*
93 F.4th 468 (9th Cir. 2024) ...................................................................... 10, 11, 12

*Prograph Int'l Inc. v. Barhydt*
928 F. Supp. 983 (N.D. Cal. 1996) ..................................................................... 13

*Ramirez v. Elec. Arts Inc*
2021 WL 843184 (N.D. Cal. Mar. 5, 2021) ..................................................... 15, 17

*In re Ring LLC Priv. Litig.*
2021 WL 2621197 (C.D. Cal. June 24, 2021) ...................................................... 12

*Serfontein v. Ford Motor Co.*
2023 WL 5207465 (C.D. Cal. Mar. 8, 2023) ....................................................... 13

*Tate v. Progressive Fin. Holdings*
2017 WL 4804354 (C.D. Cal. Oct. 24, 2017) ................................................. 16, 19

Federal: Statutes, Rules, Regulations, Constitutional Provisions

American Arbitration Association Commercial Arbitration Rules
Rule 13 ................................................................................................................ 15
Rule 14 ................................................................................................................ 15

Case No. 3:16-cv-01421-WHO
MOTION TO COMPEL ARBITRATION

Federal Arbitration Act ............................................................................................. 9, 14

Title 9 United States Code
    § 2 ................................................................................................................. 9

Case No. 3:16-cv-01421-WHO
MOTION TO COMPEL ARBITRATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On February 21, 2024, the Court certified the following class (the "Class"):

> All persons in California who from January 19, 2007 to the present who [*sic*] purchased bedding, including sheets, sheet sets, pillowcases, duvet covers, and/or shams, directly from Williams-Sonoma, Inc. from any of the Bedding Products.

ECF No. 342 at 30:25-27.   Many Class members, however, agreed to terms and conditions with arbitration agreements and class action waivers when:  (1) making an online purchase from WSI between March 2016 and the present; (2) creating a WSI gift registry online between August 2022 and the present; (3) registering online for a non-credit card WSI loyalty account between July 2019 and the present; or (4) applying online for a credit card WSI loyalty account between May 2023 and the present.  These individuals cannot pursue claims in court as part of a class action. The Court, therefore, should grant the Motion compel to arbitration and exclude from the Class the claims of any Class members who agreed arbitrate with Defendants.

## II.    RELEVANT FACTS

### A.    WSI's Products, Gift Registries, and Loyalty Program

WSI sells high-quality home products.  ECF No 262 ¶ 34.[1]  Consumers can purchase its products through its eCommerce websites (williams-sonoma.com, potterybarn.com, potterybarnkids.com, potterybarnteen.com, westelm.com, rejuvenation.com, markandgraham.com, and greenrow.com) and mobile applications (Williams Sonoma, Pottery Barn, Pottery Barn Kids Shopping, Pottery Barn Teen Shopping, and West Elm). ECF No. 357-3 ¶ 3.  Consumers can also create gift registries for weddings or other events such as birthdays or anniversaries featuring WSI's products through its eCommerce websites.  *Id*. ¶ 17.  WSI also offers

---

[1]  WSDTC and WSA are California corporations and WSI subsidiaries responsible for direct-to-consumer sales and marketing (WSDTC) and retail sales and advertising (WSA).  ECF No. 262 ¶¶ 35-36.

consumers the opportunity to become a members of its The Key Rewards loyalty program by applying for a WSI-branded credit card (currently referred to as "Gold Key Rewards")—via an application available through WSI's eCommerce websites—or by creating non-credit card loyalty accounts (currently referred to as "Silver Key Rewards") through WSI's eCommerce websites.  ECF No. 357-1 ¶¶ 3-5, Exs. A-C.

**B.    WSI's Terms And Conditions**

      **1.    Website and Mobile Application Terms and Conditions**

WSI's eCommerce websites and mobile applications include Terms and Conditions ("Website Terms").  ECF No 357-2 ¶ 3.  Since March 2016, the Website Terms have contained a provision entitled "Arbitration Agreement & Waiver of Certain Rights" that requires arbitration of disputes before the American Arbitration Association ("AAA") and includes a class action waiver.  *Id*. ¶ 4, Exs. 1-7.  Consumers who have made an online purchase since March 2016 and/or who have created a wedding or other gift registry since August 2022 have been notified that they are agreeing to the Website Terms when they click the button or buttons necessary to complete the purchase or create the registry.  ECF No. 357-3 ¶¶ 4-17, Exs. A-G; *see also* ECF No. 219-1; ECF No. 219-2.

      **2.    The Key Rewards Loyalty Program Terms and Conditions**

Membership in The Key Rewards program is subject to The Key Rewards Terms and Conditions ("Rewards Terms").  ECF No. 357-2 ¶¶ 5-6, Exs. 8-15.  Since at least August 2017, the Rewards Terms have contained a provision entitled "Arbitration Agreement & Waiver of Certain Rights" that requires arbitration of disputes before the AAA and includes a class action waiver.  *Id*.  Since at least July 2019, consumers who have registered for a non-credit card membership in The Key Rewards program (*e.g.*, Silver Key members) have been notified that, by doing so, they are agreeing to the Rewards Terms.  ECF No. 357-1 ¶ 5, Exs. B-C.  Since at least May 2023, consumers who have applied to become a member of WSI's Key Rewards Program by applying for a WSI-branded credit card have been notified that,

1  by doing so, they are agreeing to the Rewards Terms. *Id*. ¶ 4, Ex. A.

2  ### III.    ISSUE TO BE DECIDED

3        Whether Class members who made an online purchase from WSI between

4  March 2016 and the present, created a WSI gift registry online between August 2022

5  and the present, registered online for a non-credit card WSI loyalty account between

6  July 2019 and the present, or applied online for a credit card WSI loyalty account

7  between May 2023 and the present entered into an agreement to arbitrate that

8  delegates arbitrability questions to the arbitrator or, alternatively, encompasses the

9  claims at issue.

10  ### IV.    LEGAL STANDARDS

11        Under the Federal Arbitration Act ("FAA"), a "written provision in

12  any…contract evidencing a transaction involving commerce to settle by arbitration a

13  controversy thereafter arising out of such contract or transaction…shall be valid,

14  irrevocable, and enforceable[].]" 9 U.S.C. § 2.[2]  The FAA therefore "mandates that [a]

15  district court[] *shall* direct the parties to proceed to arbitration" if it finds the parties

16  have agreed to arbitrate. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)

17  (emphasis in original).    Thus, it "restricts a court's inquiry…to two threshold

18  questions: (1) whether there was an agreement to arbitrate between the parties; and

19  (2) whether the agreement covers the dispute." *Duarte v. JPMorgan Chase Bank*,

---

20  [2] It is undisputed that the FAA applies for two reasons.  ECF No. 357 at 4:20-8; ECF
21  No. 360; *see also Henry v. Napa Valley Unified*, 2016 WL 7157670, at *4 (N.D. Cal.
    Dec. 8, 2016) ("[F]ailure to address in an opposition arguments raised in an opening
22  motion…constitutes waiver or concession of the argument").  First, there is a "nexus
    to interstate commerce" because WSI, a Delaware corporation, "is unquestionably
23  multi-state in nature" and offers its goods and services "to customers of diverse
    citizenship" (including Kentucky resident Rushing).  *Ciprianni v. Omni La Costa*
24  *Resort & Spa*, 2017 WL 1281856, at **1-2 (S.D. Cal. Apr. 6, 2017); *see also* ECF No.
25  217 ¶ 32; ECF No. 262 ¶ 34.  Second, the Website Terms since January 2020 and the
    Rewards Terms since August 2021 provide the FAA and federal arbitration law apply
26  to the arbitration agreement.  *Zagar Decl.* ¶¶ 4, 6, Exs. 2-7, 10-15; *see also*
27  *McGrath v. DoorDash, Inc.*, 2020 WL 6526129, at *5 (N.D. Cal. Nov. 5, 2020) (FAA
    applicable because agreement "expressly provide[d] that the FAA governs").

28

1    *Nat'l Ass'n*, 2021 WL 5299908, at *2 (C.D. Cal. Nov. 15, 2021).  If the answer to both

2    questions is yes (or if the answer to the first question is yes and the second question

3    is that it must be decided by the arbitrator), the parties must arbitrate.  *See, e.g., id*;

4    *Gillette v. First Premier Bank*, 2013 WL 3205827, at *2 (S.D. Cal. June 24, 2013).

5                        **V.    THE *MOTION* SHOULD BE GRANTED**

6    **A.    There Is An Agreement To Arbitrate Under California Law**

7            Federal courts apply ordinary state-law principles governing contract

8    formation when determining whether an arbitration agreement exists.  *First Options*

9    *of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  These courts generally look to

10   the law of the forum state to determine the applicable law.  *Nguyen v. Barnes &*

11   *Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).  Here, it is undisputed that

12   California law applies to formation questions.  ECF 357 at 5:10-6:2; ECF No. 360; *see*

13   *also Henry*, 2016 WL 7157670, at *4.  The Website Terms and Rewards Terms

14   contain an enforceable California choice-of-law provision.  ECF No. 357-2 ¶¶ 4, 6,

15   Exs. 1-15.[3]  Even if they did not, California law would apply because Defendants and

16   the Class members are California residents.  *See, e.g., Lara v. Onsite Health, Inc.*,

17   896 F. Supp. 2d 831, 838 (N.D. Cal. 2012) (applying California contract formation law

18   where parties were California residents); *see also* ECF No. 262 ¶¶ 34-36; ECF No.

19   342 at 30:25-27.

20           Under California law, a contract exists where the parties mutually manifest

21   assent to the terms of the agreement.  *See, e.g., Patrick v. Running Warehouse, LLC*,

22

_____

23   [3]  California courts honor a choice-of-law provision where the chosen state has a
     substantial relationship to the parties or their transaction or there is any other
24   reasonable basis for the chosen law. *See, e.g., Hoffman v. Citibank, N.A.*, 546 F.3d
     1078, 1082 (9th Cir. 2008); *Hansen v. Integrity Assets LLC*, 2021 WL 5999317, at *3
25   (C.D. Cal. Dec. 20, 2021).  Both exist where one party is a resident of the chosen
     state. *See, e.g., ABF Capital Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005); *In re*
26   *Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1168-69 (N.D. Cal.
     2016).  Here, all parties are California residents.  ECF No. 262 ¶¶ 34-36; ECF No.
27   342 at 30:25-27.

28

93 F.4th 468, 476 (9th Cir. 2024).  As such, in the online context, an agreement exists where the consumer:  (1) had actual or inquiry (*i.e.*, "reasonably conspicuous") notice of the terms; and (2) took some action to unambiguously manifest assent to those terms.  *Id*.

### 1.    Online Purchasers

Class members who made an online purchase between March 2016 and the present had reasonable notice of the Website Terms.  To complete the purchase, each Class member had (or has) to click the "CHECKOUT" or similar button directly below notice that "[b]y continuing you agree to our terms and conditions and privacy policy" (March 2016 to February 2018), directly below the notice that "[b]y continuing with your purchase you agree to our terms and conditions and privacy policy" (February 2018 to September 2020), or directly above the notice that "[b]y continuing with your purchase you agree to our terms and conditions and privacy policy" (September 2020 to the present).  *Harris Decl.* ¶¶ 4, 8, 14, Exs. A, C, E.  The underlined phrase "terms and conditions" in the notice was/is a hyperlink that, if clicked, took/takes the customer to the Website Terms.  *Id*.

Those same Class members were (or are) also required to click a "PLACE ORDER" button directly below the notice that "[b]y continuing you agree to our terms and conditions and privacy policy (March 2016 to September 2018), directly below the notice that "[b]y continuing with your purchase you agree to our terms and conditions and privacy policy" (February 2018 to September. 2020), or directly below the notice that "[b]y placing an order, you agreeing to our Privacy Policy and Terms of Use" (September 2020 to the present).  *Harris Decl.* ¶¶ 6, 10, 11, 15, Exs. B, D, F.  The underlined phrase "terms and conditions" was, and the underlined phrased "Terms of Use" is, a hyperlink that, if clicked, took/takes the customer to the Website Terms.  *Id*.

Courts recognize an agreement exists in these circumstances—*i.e.*, where (1) a consumer is told that, by clicking a button, they agree to terms, (2) there is a link to

1  the terms adjacent to the button, and (3) the consumer clicks the button.  *See*, *e.g.*,

2  *Patrick*, 93 F.4th at 475-77 (consumer clicked "Place Order" or "Submit Order" button

3  adjacent to notice that, by doing so, consumer agreed to terms); *Dohrmann v. Intuit,*

4  *Inc.*, 823 Fed. Appx. 482, 483-84 (9th Cir. 2020) (users "required to click a 'Sign In'

5  button" above notice that, by doing so, they were agreeing to terms). Not only are

6  these "modified or hybrid clickwrap/browsewrap agreement[s]" regularly found valid

7  in California (*In re Ring LLC Priv. Litig.*, 2021 WL 2621197, at *5 (C.D. Cal. June 24,

8  2021)), they are "routinely upheld" around the country. *Anderson v. Amazon.com.,*

9  *Inc.*, 490 F. Supp. 3d 1265, 1274-75 (M.D. Tenn. 2020); *see also Hosseini v. Upstart*

10  *Network, Inc.*, 2020 WL 573126, at *4 (E.D. Va. Feb. 5, 2020).   Indeed, Perlin

11  conceded the checkout process establishes the existence of an agreement when she

12  did not dispute that she agreed to the Website Terms by making online purchases in

13  2020 in opposition to Defendants' motion to compel arbitration—a motion the Court

14  granted.[4]   ECF No. 219; ECF No. 233; ECF No. 252; *see also Henry*, 2016 WL

15  7157670, at *4.

16        **2.**     **Wedding and Other Gift Registrants**

17        Class members who created a gift registry between August 2022 and the

18  present had reasonable notice of the Website Terms.  To create a registry, each Class

19  member had or has to click the "CREATE REGISTRY" button above the notice that

20  "[b]y clicking on 'Create Registry' you agree to our <u>terms and conditions</u> and <u>privacy</u>

21  <u>policy</u>." ECF No. 357-3 ¶ 17, Ex. E.  The underlined phrase "<u>terms and conditions</u>" in

22  the notice was/is a hyperlink that, if clicked, took/takes the customer to the Website

23  Terms.  *Id.*  As set forth above, courts regularly recognize that an agreement exists in

24  these same circumstances.

25  [4]   Notably, while Perlin did "reserve[] the right to challenge the applicability and

26  scope of the [t]erms, and specifically the right to challenge the arbitration clause in

27  the…[t]erms"—a purported reservation for which there is no authority and has no

28  effect—she did not reserve the right to challenge her agreement to Terms.  ECF No.

  233 at 1:27-28; *see also id.* at 10:4-5.

1          **3.    Key Rewards Members**

2          Class members who registered for a non-credit card loyalty rewards account

3    between July 2019 and the present had reasonable notice of the Rewards Terms.  To

4    create such an account, the Class Member was/is required to click the "SUBMIT"

5    button above the statement "[b]y submitting, you agree to our <u>Terms and</u>

6    <u>Conditions.</u>"  *Quinn Decl.* ¶ 5, Exs. B-C.  The phrase "<u>Terms and Conditions</u>" was/is a

7    hyperlink that, if clicked, took/takes the Class member to the Rewards Terms.  *Id*.

8    Further, each Class members who has applied for credit card loyalty account since

9    May 2023 has had reasonable notice of the Rewards Terms because he or she was

10   required to click the "CONTINUE" button and affirmed that, by submitting their

11   application, he or she was "[a]cknowledging that I have read and agree to the Gold

12   Key Rewards Terms & Conditions."    The phrase "Gold Key Rewards Terms &

13   Conditions" was/is a hyperlink that, if clicked, takes the consumer to the Rewards

14   Terms.  Again, as set forth above, courts regularly recognize that an agreement exists

15   in these same circumstances.

16                                            * * *

17         In short, Class members were explicitly told that if they clicked the required

18   button, they were agreeing to the relevant terms.  Each Class member who made an

19   online purchase between March 2016 and the present, created a gift registry online

20   between August 2022 and the present, registered for a non-credit card rewards

21   account online between July 2019 and the present, or applied for a branded credit

22   card rewards account online between May 2023 and the present clicked the button.

23   An agreement to arbitrate exists between WSI and each such Class member—an

24   agreement that may be enforced by WSI and its subsidiaries WSDTC and WSA.  *See*,

25   *e.g.*, *Serfontein v. Ford Motor Co.*, 2023 WL 5207465, at *2 (C.D. Cal. Mar. 8, 2023)

26   (non-signatory subsidiary may enforce arbitration agreement entered into by parent);

27   *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 990 (N.D. Cal. 1996) ("Agency

28   principles have been held to permit nonsignatory corporations to compel arbitration

1    under arbitration clauses signed by their corporate parents").

2    **B.    The Arbitration Agreement Delegates Scope Questions Or**

3    **Encompasses The Claims**

4    Generally, a court decides whether a claim falls within the scope of an

5    arbitration agreement.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

6    However, this determination can be "clearly and unmistakably" delegated to the

7    arbitrator.  *Id*.[5]  Where there is such a delegation, the only issue for the court is

8    whether an agreement to arbitrate exists.  *Henry Schein, Inc. v. Archer & White*

9    *Sales, Inc.*, 586 U.S. 63, 68 (2019).  Here, all pre-January 2025 Website Terms and

10    Rewards Terms delegate the scope question to the arbitrator.  Thus, any contention

11    that they do not apply to any particular Class member's claims must be decided by

12    the arbitrator.  And, although the post-2025 Website Terms and Rewards Terms do

13    not delegate scope questions, they encompass any Class member claims arising from

14    the purchase of WSI bedding.[6]

15    1.    **The Website Terms Delegate Scope Questions or Encompass the**

16    **Claims**

17    *a.    The March 2016, January 2020, April 2020, and January 2023*

18    *Website Terms Delegate Gateway Issues to the Arbitrator*

19    The March 2016, January 2020, April 2020, and January 2023 Website Terms

20    _____

21    [5] Because the arbitration agreement is governed by the FAA, whether there has been

22    a delegation is determined under the federal substantive law of arbitrability absent
"clear and unmistakable evidence that the parties agreed to apply non-federal

23    arbitrability law."  *H.K. Cont'l Trade Co. v. Nat. Balance Pet Foods*, 2023 WL
2664246, at *7 (C.D. Cal. Mar. 28, 2023) (quotations omitted). The California choice-

24    of-law provision in the Website Terms and Reward Terms does not constitute such
evidence.  *Id*. at **7-8.

25    [6] Perlin did not dispute, and therefore conceded, that the pre-2025 arbitration

26    agreement contains a valid delegation clause or that the post-2025 arbitration
agreement encompasses the claims in her opposition to Defendants' Motion to Modify

27    Class Definition.  ECF No. 357 at 9:4-10:13; ECF No. 360; *see also Henry*, 2016 WL
7157670, at *4.

28

1   require arbitration "in accordance with" AAA rules.  ECF No. 357-2 ¶ 4, Exs. 1-4.

2   This incorporation of AAA rules is "clear and unmistakable evidence that the

3   contracting parties agreed to arbitrate arbitrability" because the rules give an

4   arbitrator the "'the power to rule on his or her own jurisdiction, including any

5   objections with respect to the existence, scope, or validity of the arbitration

6   agreement or to the arbitrability of any claim or counterclaim[.]'"  *Ramirez v. Elec.*

7   *Arts Inc*, 2021 WL 843184, at *4 (N.D. Cal. Mar. 5, 2021) (quoting AAA Comm. Arb.

8   Rule 13); *see also* ECF No. 357-4 ¶ 2, Ex. A (same language in AAA Consumer Arb.

9   Rule 14).  In addition to incorporating AAA rules, the January 2020, April 2020, and

10  January 2023 Website Terms provide that the arbitrator "shall have the exclusive

11  authority to resolve any dispute relating to the interpretation, applicability,

12  enforceability, or formation of the[]" Website Terms and, therefore, expressly

13  delegate gateway issues to the arbitrator.  *See, e.g.*, *Dickey v. Ticketmaster LLC*, 2019

14  WL 9096443, at *8 (C.D. Cal. Mar. 12, 2019) (finding near-identical provision

15  delegated arbitrability).

16       Because there is no dispute that an agreement to arbitrate exists between (1)

17  WSI and any Class member who made an online purchase between March 2016 and

18  October 2023 (when the January 2023 Website Terms were replaced) and (2) WSI

19  and any Class member would created a gift registry between August 2022 and

20  October 2023, the claims of all such Class members must be compelled to arbitration.

21       b.    *The October 2023 and November 2024 Website Terms Delegate*

22            *Scope Questions to the Arbitrator*

23       Like the March 2016, January 2020, April 2020, and January 2023 Website

24  Terms, the October 2023 and November 2024 Website Terms require arbitration "in

25  accordance with" AAA rules.  ECF No. 357-2 ¶ 4, Exs. 1-6.  As set forth above, this

26  incorporation generally serves to delegate the determination of gateway issues like

27  enforceability and applicability to the arbitrator.  Unlike the earlier Website Terms,

28  however, the October 2023 and November 2024 Website Terms specifically require

1    that a court "determine whether the parties have entered into a valid and enforceable

2    agreement to arbitrate[.]"   *Id.* ¶ 4, Exs. 5-6.   The result is that question of

3    applicability of the arbitration provision in the October 2023 and November 2024

4    Website Terms has been delegated to the arbitrator.   Thus, the claims of any Class

5    member who agreed to the October 2023 or November 2024 Website Terms must be

6    compelled to arbitration unless the Class member can prove that the arbitration

7    agreement is unenforceable.   *See, e.g.*, *Mortensen v. Bresnan Communs., LLC*, 722

8    F.3d 1151, 1157 (9th Cir. 2013) ("parties challenging the enforceability of an

9    arbitration agreement bear the burden of proving that the provision is

10   unenforceable").

11         c.   *The January 2025 Website Terms Encompass the Class Members'*

12              *Claims*

13        Although the January 2025 Website Terms incorporate AAA rules, they

14   specifically require that a court "determine…the arbitrability of any Claim or

15   counterclaim[.]"   ECF No 357-2 ¶ 4 Ex. 7.[7]   In making this determination, a court

16   must resolve "any doubts concerning the scope of arbitrable issues…in favor of

17   arbitration" (*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25

18   (1983)) and only deny arbitration when "it may be said with positive assurance that

19   the arbitration clause is not susceptible of an interpretation that covers the asserted

20   dispute" (*AT&T Techs., Inc. v. Commc'n Workers*, 475 U.S. 643, 650 (1986)

21   (quotations omitted)).   "The party opposing arbitration bears the burden of

22   establishing that the arbitration provision…does not encompass the claims at issue."

23   *Tate v. Progressive Fin. Holdings*, 2017 WL 4804354, at *3 (C.D. Cal. Oct. 24, 2017).

24

25   [7]  As with the October 2024 and November 2024 Website Terms, the January 2025
     Website Terms require a court determine whether the parties "have entered into a
26   valid and enforceable agreement to arbitrate[.]"   ECF No 357-2 ¶ 4 Ex. 7. And, as
     with the October 2024 and November 2024 Website Terms, it is the Class members'
27   burden to demonstrate that the January 2025 Website Terms are unenforceable.
     *See, e.g.*, *Mortensen*, 722 F.3d at 1157.

28

Here, the January 2025 Website Terms require arbitration of "any controversies, claims, counterclaims, or other disputes between" the consumer and WSI (each a "Claim") including "any existing or future Claims...not individually filed in a court of law prior to the date [the consumer] agreed to" the terms.  ECF No 357-2 ¶ 4, Ex. 7, 15.  This provision encompasses claims arising from WSI's alleged false advertising of bedding products regardless of whether the claim accrued before, at the time of, or after agreement to the January 2025 Website Terms.  As such, the claims of any Class member who agreed to the January 2025 Website Terms by making an online purchase should be compelled the arbitration.

## 2. The Rewards Terms Delegate Scope Questions or Encompass the Claims

### a. *The August 2017, May 2018, August 2021, November 2021, and October 2022 Rewards Terms Delegate Gateway Issues to the Arbitrator*

The August 2017, May 2018, August 2021, November 2021, and October 2022 Rewards Terms require arbitration "in accordance with" AAA rules.  ECF No. 357-2 ¶ 4, Exs. 8-12.  As such, the arbitrator must decide gateway issues such as scope and enforceability.  *Ramirez*, 2021 WL 843184, at *4; *see also* ECF No. 357-4 ¶ 2, Ex. A. In addition to incorporating AAA rules, the August 2021, November 2021, and October 2022 Rewards Terms provide that the arbitrator "shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of the[]" Rewards Terms and, therefore, expressly delegate gateway issues to the arbitrator.  *See, e.g.*, *Dickey*, 2019 WL 9096443, at *8.

Because there is no dispute that an agreement to arbitrate exists between any Class member who (1) registered for a non-credit card loyalty rewards account between July 2019 and April 2024 (when the October 2022 Rewards Terms were replaced) or (2) applied for a credit card loyalty account between May 2023 and April 2024, the claims of all such Class members must be compelled to arbitration.

Case No. 3:16-cv-01421-WHO
MOTION TO COMPEL ARBITRATION

1           *b.*     *The April 2024 and August 2024 Rewards Terms Delegate Scope*

2                      *Questions to the Arbitrator*

3           Like the August 2017, May 2018, August 2021, November 2021, and October

4   2022 Rewards Terms, the April 2024 and August 2024 Rewards Terms require

5   arbitration "in accordance with" AAA rules.  ECF No. 357-2 ¶ 4, Exs. 8-14.  As set

6   forth above, this incorporation generally serves to delegate the determination of

7   gateway issues like enforceability and applicability to the arbitrator.  Unlike the

8   earlier Rewards Terms, however, the April 2020 and August 2024 Rewards Terms

9   specifically require that a court "determine whether the parties have entered into a

10  valid and enforceable agreement to arbitrate[.]"  *Id*. ¶ 4, Exs. 13-14.  The result is

11  that the question of applicability of the arbitration provision in the April 2024 and

12  August 2024 Rewards Terms has been delegated to the arbitrator.  Thus, the claims

13  of any Class member who agreed to the April 2024 and August 2024 Rewards Terms

14  must be compelled to arbitration unless the Class member can prove that the

15  arbitration agreement is unenforceable.  *See, e.g.*, *Mortensen*, 722 F.3d at 1157.

16          *c.*     *The January 2025 Rewards Terms Encompass the Class Members'*

17                     *Claims*

18          Although the January 2025 Rewards Terms incorporate AAA rules, they

19  specifically require that a court "determine…the arbitrability of any Claim or

20  counterclaim[.]"  ECF No 357-2 ¶ 4 Ex. 15.[8]  In making this determination, a court

21  must resolve "any doubts concerning the scope of arbitrable issues…in favor of

22  arbitration" (*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25) and only deny

23  arbitration when "it may be said with positive assurance that the arbitration clause

24

---

25  [8]  As with the April 2024 and August 2024 Rewards Terms, the January 2025
    Rewards Terms require a court determine whether the parties "have entered into a

26  valid and enforceable agreement to arbitrate[.]"  ECF No 357-2 ¶ 4 Ex. 15.  And, as
    with the April 2024 and August 2024 Rewards Terms, it is the Class members'

27  burden to demonstrate that the January 2025 Rewards Terms are unenforceable.
    *See, e.g.*, *Mortensen*, 722 F.3d at 1157.

28

1  is not susceptible of an interpretation that covers the asserted dispute" (*AT&T*, 475
2  U.S. at 650 (quotations omitted).   Again, it the Class members who "bear[] the
3  burden of establishing that the arbitration provision…does not encompass the claims
4  at issue."  *Tate*, 2017 WL 4804354, at *3.

5      Here, like the January 2025 Website Terms, the January 2025 Rewards Terms
6  require arbitration of "any controversies, claims, counterclaims, or other disputes
7  between" the consumer and WSI (each a "Claim") including "any existing or future
8  Claims…not individually filed in a court of law prior to the date [the consumer]
9  agreed to" the terms.  ECF No 357-2 ¶ 4, Ex. 15.  This provision encompasses claims
10 arising from WSI's alleged false advertising of bedding products regardless of
11 whether the claim accrued before, at the time of, or after agreement to the January
12 2025 Rewards Terms.  As such, the claims of any Class member who agreed to the
13 January 2025 Rewards Terms by making an online purchase must be compelled
14 arbitration to arbitration unless those Class members can prove the January 2025
15 Rewards Terms' arbitration provision is unenforceable.  *See*, *e.g.*, *Mortensen*, 722 F.3d
16 at 1157.

17              **VI.    CONCLUSION**

18     For the foregoing reasons, WSI respectfully requests that the Court issue an
19 order granting the Motion, compel to arbitration the claims of Class members who
20 agreed to the Website Terms and/or Rewards Terms when making an online
21 purchase from WSI between March 2016 and the present, creating a WSI gift
22 registry online between August 2022 and the present, registering online for a non-
23 credit card WSI loyalty account between July 2019 and the present, or applying
24 online for a credit card WSI loyalty account between May 2023 and the present, and
25 exclude those Class members from the Class.

26 / / /
27 / / /
28 / / /

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated: May 9, 2025        By        /s/ P. Craig Cardon
                                    P. CRAIG CARDON
                                    ROBERT J. GUITE
                                    BENJAMIN O. AIGBOBOH
                                    ALYSSA SONES

                                    *Attorneys for Defendants*
                          WILLIAMS-SONOMA, INC., WILLIAMS-
                          SONOMA DTC, INC., and WILLIAMS-SONOMA
                                    ADVERTISING, INC.

SMRH:4921-4341-7614.3